Sonia S. Waisman, Esq., State Bar No. 153010
Email: swaisman@mwwdlaw.com
Heather L. McCloskey, Esq., State Bar No. 193239
Email: hlmccloskey@mwwdlaw.com
McCLOSKEY, WARING, WAISMAN & DRURY LLP
2401 Pacific Coast Highway, Suite 206
Hermosa Beach, CA 90254
Telephone No.: (310) 524-0400
Facsimile No.:  (310) 524-0404

Attorneys for Plaintiff
HARTFORD FIRE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CARSON MADRONA COMPANY, LLC; OHIO SECURITY INSURANCE COMPANY; AMERICAN FIRE AND CASUALTY COMPANY; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:23-cv-06259-SK<br><br>Hon. Sallie Kim, Magistrate Judge<br>Courtroom C<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, EQUITABLE INDEMNITY AND EQUITABLE CONTRIBUTION** |

Plaintiff HARTFORD FIRE INSURANCE COMPANY ("Hartford" or "Plaintiff") hereby alleges as set forth herein.

## INTRODUCTION

1. This is an action for declaratory relief, under the Declaratory Judgment Act, 28 U.S.C. § 2201, in which Hartford seeks an adjudication of its rights and obligations (if any) with respect to claims for insurance benefits asserted by an alleged Additional Insured in connection with an underlying lawsuit captioned *Gary Mountain, et. al v. DP Electric, et al.,* Alameda County Superior Court Case No. RG17857926, including the cross-complaints filed therein by David Luis Perez and his wife Donna Perez (collectively, the "Underlying Lawsuit"). Hartford also seeks equitable indemnity, contribution and subrogation from the alleged Additional Insured's direct primary liability insurer.

2. Defendant CARSON MADRONA COMPANY, LLC ("Carson Madrona") is a defendant in the Underlying Lawsuit and has sought defense and indemnity from Hartford as an additional insured ("Additional Insured") for claims asserted against it in the Underlying Lawsuit, under an insurance policy issued by Hartford to Ashley Furniture Industries Inc. ("Ashley") (the "Hartford Policy," as more fully described later in this Complaint). Hartford disputes Carson Madrona's position but has defended Carson Madrona subject to a full reservation of rights.

3. Defendant OHIO SECURITY INSURANCE COMPANY ("Ohio Security") issued a primary liability insurance policy or policies to Carson Madrona as the named insured thereunder. Ohio Security has declined to defend Carson Madrona or participate in Carson Madrona's defense in the Underlying Lawsuit, instead contending that Hartford has the sole obligation to do so, and that Ohio Security's primary policy is excess over the Hartford Policy.

4. Defendant AMERICAN FIRE AND CASUALTY COMPANY ("American Fire") issued an excess liability insurance policy or policies to Carson Madrona as the named insured thereunder.

## JURISDICTION

5. Jurisdiction is proper in this Court under 28 U.S.C. §1332 based on diversity of citizenship, as set forth below, because this dispute is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## PARTIES

6. Plaintiff Hartford is, and at all relevant times was, a corporation organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut, and is, and at all relevant times was, authorized to transact business within the State of California.

7. Defendant Carson Madrona is a California limited liability company with its principal place of business in Los Angeles County, California.

8. Defendant Ohio Security is, and at all relevant times was, a corporation organized under the laws of the State of Ohio, with its principal place of business in Dover, New Hampshire, and is, and at all relevant times was, authorized to transact business within the State of California.

///

9. Defendant American Fire is, and at all relevant times was, a corporation organized under the laws of the State of New Hampshire, with its principal place of business in Boston, Massachusetts, and is, and at all relevant times was, authorized to transact business within the State of California.

10. The true names and capacities of Defendants DOES 1 through 20, inclusive, are presently unknown to Hartford and, therefore, Hartford sues said Defendants by such fictitious names. Based on information and belief, each such Defendant is either a person or entity that engaged in some of the acts and omissions alleged herein and/or is otherwise liable jointly and severally with all other Defendants herein or is an insurance company that may have issued insurance policies under which Defendants may assert claims relating to the Underlying Lawsuit. Hartford will amend this Complaint to state the true names and capacities of the fictitiously named Defendants once they are ascertained.

## VENUE

11. Venue is proper in the Northern District of California, pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events that are the subject matter of this action and the Underlying Lawsuit occurred within the Northern District.

## GENERAL ALLEGATIONS

**A.     The Lease and the Lease Termination Agreement**

12. On or about January 17, 2012, Carson Madrona as lessor entered into a written lease agreement (the "Lease") with "Warehouse and Delivery Solutions, Inc., a California corporation, [d]ba - Ashley Furniture" ("WDS") as lessee, in which Carson Madrona leased to the lessee a portion of the warehouse located at 6195 Coliseum Way ("Leased Premises").

13. On information and belief, in April of 2016, Stoneledge Furniture LLC ("Stoneledge"), an affiliate of Ashley, entered into an Asset Purchase Agreement with WDS and, as part of that Agreement, was assigned WDS's interest in the Lease.

14. Under the terms of the Lease, the "Tenant," agreed to defend and indemnify Carson Madrona against claims "arising out of or in any way connected to . . . the Tenant's use of the Premises, subject to certain limitations and exceptions, and to have Carson Madrona be a named

1. insured on the Tenant's comprehensive general liability insurance policy, the limit was which was to be at least $2 million for each occurrence.

15. The Lease required the landlord, Carson Madrona, to repair and maintain all structural components of the property, including all common areas; the tenant had no responsibility for the common areas.

16. In a December 21, 2017 Lease Termination Agreement between Stoneledge and Carson Madrona, however, both parties ***fully and unconditionally waived, released and forever discharged each other "from any and all obligations, claims,*** demands, losses, damages, liabilities . . . controversies, ***actions or causes of action, whether known or unknown . . .arising directly or indirectly out of, based upon, or related in any way to the Premises or the Lease,***" subject to certain exceptions not relevant to this action.  (Emphasis added.)

**B.     The Underlying Lawsuit**

17. On or about May 17, 2016, David Perez ("Perez") received a service call to repair a partial power outage at 6195 Coliseum Way.  Perez determined that the source of the electrical issues was a blown fuse in the main electrical panel located in a common area, which was *not* within the Leased Premises.  Perez and Gary Mountain ("Mountain"), an employee of Ashley and/or Stoneledge, suffered injuries when Perez was replacing fuses in the main electrical panel.

18. On or about April 24, 2017, Mountain and his wife filed suit against Perez and Carson Madrona.  The Mountains' claims were later resolved by settlement.

19. On or about November 30, 2017, Carson Madrona filed a cross-complaint against WDS and Stoneledge, which was later dismissed with prejudice.

20. On or about May 9, 2018, Perez and his wife filed a cross-complaint against Ashley and Stoneledge (collectively, "Ashley/Stoneledge"), Carson Madrona, and Carson Madrona's property manager -- Diane Pregerson Glazer as Trustee of the Diane Pregerson Glazer Survivor's Trust dba SanOak Management Company ("SanOak"); shortly thereafter they filed a first amended cross-complaint ("Cross-Complaint") against the same parties.

21. The Perezes' claims proceeded to trial and on July 10, 2023, the jury returned a verdict of $25.5 million in favor of David and Donna Perez.  The jury apportioned liability as

follows: 50% against Carson Madrona, and 50% against SanOak.  The jury attributed zero responsibility to Ashley/Stoneledge.

22. Notices of appeal have been filed by Carson Madrona and San Oak, as well as by the Perezes.

**C.     Defense of Carson Madrona**

23. Carson Madrona originally tendered its defense and indemnity of Mountain's complaint in the Underlying Lawsuit to Ashley/Stoneledge pursuant to the Lease.  Ashley/Stoneledge initially accepted the tender but, upon development of the facts and circumstances surrounding the incident, withdrew from the defense of Carson Madrona in December of 2019, asserting that the Underlying Lawsuit did not allege claims within the scope of the defense/indemnity provision of the Lease.

24. Upon Ashley/Stoneledge's withdrawal from Carson Madrona's defense, with no lapse in the defense, Hartford agreed to defend Carson Madrona as a potential Additional Insured under the Hartford Policy, pursuant to a reservation of all rights, including the right to seek reimbursement of sums paid, to the extent allowed by law.

25. By 2019, and indeed by the time the Perezes filed their original cross-complaint on May 9, 2018, unbeknownst to Hartford, the Lease Termination Agreement already had been entered, thereby terminating any obligation under the Lease for Ashley to obtain insurance for Carson Madrona as an Additional Insured under Ashley's own insurance policy.

26. Carson Madrona's direct primary insurer, Ohio Specialty, refused to defend Carson Madrona in the Underlying Lawsuit, asserting that the policy it issued to Carson Madrona attaches excess to the Hartford Policy issued to Ashley.

27. As facts developed in the Underlying Lawsuit, making it clear that Carson Madrona's alleged liability did not arise out of the Leased Premises or any conduct of Ashley, Hartford notified both Carson Madrona and Ohio Security of Hartford's position that it had no duty to defend or indemnify Carson Madrona, and urged Ohio Security to defend its direct insured, Carson Madrona.  Although Ohio Security defended and is defending property manager SanOak, it has refused to defend or participate in the defense or settlement of Carson Madrona.

**D.      The Insurance Policies**

*The Hartford Policy*

28.     The Hartford Policy – policy number 41 CSE S30502 issued to Ashley for the period from January 1, 2016 to January 1, 2017 -- includes Commercial General Liability ("CGL") coverage with a limit of $2 million per "occurrence," subject to a $1 million per "occurrence" deductible.

29.     The Insuring Agreement of the Commercial General Liability portion of the Hartford Policy provides, in part:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.      Insuring Agreement**
>
> > **a**.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

30.     Carson Madrona is not named as an insured or Additional Insured on the Hartford Policy.  However, Section II (Who Is An Insured) of the Hartford Policy provides for coverage of "Additional Insureds When Required by Written Contract, Written Agreement or Permit," for certain listed subcategories of entities, but only if Ashley has "agreed, in a written contract [or] written agreement" that such person or organization be added as an additional insured on Ashley's policy.

31.     The Hartford Policy also contains an amendatory endorsement entitled "Additional Insured – Designated Person or Organization" ("AI Endorsement"), with a Schedule that identifies the name of the Additional Insured as "Blanket Where Required By Written Contract or Agreement," and which provides in part:

> **A.**     **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury', "property damage" or "personal and

advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

    **1.**    In the performance of your ongoing operations; or

    **2.**    In connection with your premises owned or rented to you.

However:

\* \* \*

    **2.**    If coverage provided to the additional insured is required by contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

\* \* \*

32.    Section IV (Conditions) of the Hartford Policy includes Condition No. 4 (Other Insurance"), which is modified by endorsement as follows:

    **A.**    Paragraph **4.**, the **Other Insurance** Condition **(Section IV – Commercial General Liability Conditions)**, is replaced by the following:

    **4.**    **Other Insurance**

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except when purchased specifically to apply in excess of this insurance.

If this insurance is excess, we will have no duty under this Coverage Part to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

\* \* \*

    **B.**    Paragraph **2.e.** of **Section IV – Commercial General Liability Conditions** is replaced by the following:

    **e.**    **Additional Insureds Other Insurance**

If we cover a claim or "suit" under this Coverage Part that may also be covered by other insurance available to an additional insured, such additional insured must submit such claim or "suit" to the other insurer for defense and indemnity.

### *The Ohio Security Primary Policy*

33.    Ohio Security issued primary commercial general liability insurance to named insured Carson Madrona Company, LLC, including Policy No. BLS (16) 56862638, effective August 31, 2015 to August 31, 2016 (the "Ohio Security Primary Policy"), with a liability limit of $1 million per occurrence.

///

34. Section IV (Conditions) of the Ohio Security Primary Policy provides, in part:

> **4. Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover . . . our obligations are limited as follows:
>
> **a. Primary Insurance**
>
> This insurance is primary except when Paragraph b. below applies. . .
>
> **b. Excess Insurance**
>
> (1) This insurance is excess over:
>
> * * *
>
> (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operation, or the products or completed operations, for which you have been added as an additional insured.

35. On information and belief, Ohio Security does not deny that the Ohio Security Primary Policy provides defense and indemnity coverage for the Perez Cross-Complaint (and in fact, Ohio Security is defending its other insured, SanOak under this policy), but Ohio Security asserts that its primary policy attaches excess to the Hartford Policy.

### *The American Fire Excess Policy*

36. American Fire issued excess liability insurance to named insured Carson Madrona Company, LLC, including Policy No. ESA (16) 56862638, effective August 31, 2015 to August 31, 2016, which sits directly above the Ohio Security Primary Policy and is subject to a $10 million liability limit.

### FIRST CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT – Against All Defendants)

### (*No Duty To Defend Carson Madrona*)

37. Hartford realleges and incorporates the allegations set forth in each of the preceding paragraphs, as though fully set forth herein.

38. An actual controversy has arisen and now exists between Hartford and the Defendants as to whether a duty to defend Carson Madrona ever arose under the Hartford Policy.

///

39. Hartford contends that it has no obligation under the Hartford Policy to defend Carson Madrona in the Underlying Lawsuit, and that no such obligation ever arose.

40. Ohio Casualty and American Fire (collectively, the "Insurer Defendants") and Carson Madrona have disputed and, on information and belief, continue to dispute Hartford's position that Hartford has no duty to defend Carson Madrona and that no such duty ever arose.

41. Hartford seeks a judicial determination and declaration as to its rights and obligations under the Hartford Policy.  In particular, Hartford seeks a judicial declaration that Hartford has no duty to defend Carson Madrona, and that no such duty ever arose.

42. Such judicial declaration is necessary and appropriate at this time for Hartford to ascertain its rights and duties with respect to the Defendants' demands that Hartford defend Carson Madrona in the Underlying Lawsuit.

## SECOND CLAIM FOR RELIEF

## (DECLARATORY JUDGMENT – Against All Defendants)

**(*Even If Hartford Had a Duty To Defend Carson Madrona, Any Such Duty Has Terminated*)**

43. Hartford realleges and incorporates the allegations set forth in each of the preceding paragraphs, as though fully set forth herein.

44. An actual controversy has arisen and now exists between Hartford and the Defendants as to whether a duty to defend Carson Madrona (if any such duty ever arose) under the Hartford Policy has terminated.

45. Even if the Court were to determine that there was ever a potential for coverage and corresponding duty to defend Carson Madrona under the Hartford Policy, Hartford contends that such obligation (if any) terminated at the time facts existed and/or were discovered that negated any potential for coverage for Carson Madrona as an alleged Additional Insured under the Hartford Policy.

46. Carson Madrona and the Insurer Defendants have disputed and, on information and belief, continue to dispute Hartford's position that even if a duty to defend initially arose, it has since terminated.

///

47. Hartford seeks a judicial determination and declaration as to its rights and obligations under the Hartford Policy. In particular, Hartford seeks a judicial declaration that even if the Court were to find that Hartford had a duty to defend initially, any such duty has since terminated.

48. Such judicial declaration is necessary and appropriate at this time for Hartford to ascertain its rights and duties with respect to the Defendants' demands that Hartford defend Carson Madrona in the Underlying Lawsuit.

## THIRD CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT – Against All Defendants)

***(No Duty To Indemnify Carson Madrona in the Underlying Lawsuit;***

***and No Prospective Duty to Defend*)**

49. Hartford realleges and incorporates the allegations set forth in each of the preceding paragraphs, as though fully set forth herein.

50. An actual controversy has arisen and now exists between Hartford and the Defendants as to whether Hartford has an obligation to indemnify Carson Madrona under the Hartford Policy, in connection with any settlement or final judgment in the Underlying Lawsuit.

51. Hartford contends it has no obligation under the Hartford Policy to indemnify Carson Madrona in connection with the Underlying Lawsuit because the claims alleged therein do not fall within the scope of coverage afforded Carson Madrona as an alleged Additional Insured under the Hartford Policy and that, as such, Hartford has no prospective duty to defend or to contribute toward the defense of Carson Madrona in the Underlying Lawsuit.

52. Carson Madrona and the Insurer Defendants have disputed and, on information and belief, continue to dispute Hartford's position that it has no duty to indemnify Carson Madrona and no prospective duty to defend Carson Madrona in the Underlying Lawsuit.

53. Hartford seeks a judicial determination and declaration as to its rights and obligations under the Hartford Policy. In particular, Hartford seeks a judicial declaration that Hartford has no duty to indemnify Carson Madrona in connection with the Underlying Lawsuit and no prospective duty to defend.

54. Such judicial declaration is necessary and appropriate at this time for Hartford to ascertain its rights and duties with respect to the Defendants' demands that Hartford indemnify Carson Madrona in connection with the Underlying Lawsuit and prospectively defend Carson Madrona.

## FOURTH CLAIM FOR RELIEF

**(EQUITABLE INDEMNITY – Against Ohio Security and the DOE Defendants)**

55. Hartford realleges and incorporates the allegations set forth in each of the preceding paragraphs, as though fully set forth herein.

56. Equitable indemnity applies where one party pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party. Subject to its reservations of right, Hartford has paid and continues to pay toward Carson Madrona's defense of the Underlying Lawsuit, notwithstanding its position that Carson Madrona is not entitled to Additional Insured coverage under the Hartford Policy and that, in any event, the Hartford Policy is excess to the Ohio Security Policy by virtue of the above-quoted "Other Insurance" endorsement in the Hartford Policy.

57. Pursuant to principles of equitable, partial or total indemnity, therefore, Ohio Security and DOES 1 through 10, and each of them, owe all or a substantial part of the defense fees and costs Hartford has paid or will pay in connection with Carson Madrona's defense of the Underlying Lawsuit, as well as for all sums Hartford has paid and/or may pay in the future in connection with Carson Madrona's ongoing defense and/or any settlement or final judgment in the Underlying Lawsuit.

58. To the extent the Court finds that, under the doctrine of equitable indemnity, Ohio Security and/or any of the DOE Defendants are obligated to indemnify Hartford for any costs of Carson Madrona's defense and/or indemnity related to the Underlying Lawsuit that Hartford has paid and/or may pay in the future, Hartford seeks reimbursement of such amounts from such parties.

///

///

**FIFTH CLAIM FOR RELIEF**

**(CONTRIBUTION – Against Ohio Security and the DOE Defendants)**

59. Hartford realleges and incorporates the allegations set forth in each of the preceding paragraphs, as though fully set forth herein.

60. Equitable contribution applies to apportion costs among insurers that share the same level of liability on the same risk as to the same insured. The purpose of equitable contribution is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of another.

61. Subject to its reservations of right, Hartford has paid and continues to pay toward Carson Madrona's defense of the Underlying Lawsuit, notwithstanding its position that Carson Madrona is not entitled to Additional Insured coverage under the Hartford Policy and that, in any event, the Hartford Policy is excess to the Ohio Security Policy.

62. Hartford denies that it has any obligation to pay any portion of Carson Madrona's defense of the Underlying Lawsuit, or to contribute toward any settlement or final judgment in the Underlying Lawsuit. However, if Hartford is found to be responsible for any portion of Carson Madrona's defense of the Underlying Lawsuit and/or any portion of any settlement or judgment in the Underlying Lawsuit, the doctrine of equitable contribution would apply and such sums must be allocated equitably between Hartford and Ohio Security (and the DOE Defendants).

63. Ohio Security and DOES 1 through 10, and each of them, have not paid their equitable shares of the sums incurred to defend Carson Madrona in the Underlying Lawsuit, while Hartford has paid more than its equitable share.

64. If the Court determines that Hartford owes any portion of Carson Madrona's defense and/or any portion of any settlement or final judgment, Hartford is entitled to contribution from Ohio Security and DOES 1 through 10, and each of them, for all sums that Hartford has paid and may pay in the future in excess of Hartford's equitable share toward Carson Madrona's defense of the Underlying Lawsuit and toward any settlement or judgment in the Underlying Lawsuit.

///

///

65. Hartford is informed and believes and thereon alleges that, if and to the extent Ohio Security and/or the DOE Defendants are not found to be 100% responsible under the doctrine of equity indemnity, substantial justice requires that the costs of defending Carson Madrona in the Underlying Lawsuit should be allocated among Hartford, Ohio Security and DOES 1 through 10, and each of them, pursuant to principles of equitable contribution. Ohio Security and DOES 1 through 10 should be required to reimburse Hartford for an equitable share of all defense fees and costs incurred by Hartford on behalf of Carson Madrona in defense of the Underlying Lawsuit and any portion of any settlement or final judgment Hartford may pay on behalf of Carson Madrona in the Underlying Lawsuit.

66. To the extent the Court finds that, under principles of equitable contribution, Ohio Security and/or any of the DOE Defendants are obligated to contribute toward any costs of Carson Madrona's defense and/or indemnity related to the Underlying Lawsuit that Hartford has paid or may pay in the future, Hartford seeks reimbursement of such amounts from such parties.

## SIXTH CLAIM FOR RELIEF

### (SUBROGATION – Against Ohio Security)

67. Hartford realleges and incorporates the allegations set forth in each of the preceding paragraphs, as though fully set forth herein.

68. Equitable subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss.

69. Subject to its reservations of right, Hartford has paid and continues to pay toward Carson Madrona's defense of the Underlying Lawsuit, notwithstanding its position that Carson Madrona is not entitled to Additional Insured coverage under the Hartford Policy and that, in any event, the Hartford Policy is excess to the Ohio Security Policy.

70. Hartford denies that it has any obligation to pay any portion of Carson Madrona's defense of the Underlying Lawsuit, or to contribute toward any settlement or final judgment in the Underlying Lawsuit; and Hartford further contends that Ohio Security, rather than Hartford, owes a duty to defend and indemnify Carson Madrona. Under the doctrine of equitable subrogation,

Hartford "stands in the shoes" of Carson Madrona and hereby asserts Carson Madrona's rights against its own insurer, Ohio Security.

71. Ohio Security has not paid its equitable share of the sums incurred to defend Carson Madrona in the Underlying Lawsuit, while Hartford has paid more than its equitable share.

72. To the extent the Court finds that, under the doctrine of equitable subrogation, Ohio Security is obligated to indemnify Hartford for any costs of Carson Madrona's defense and/or indemnity related to the Underlying Lawsuit that Hartford has paid and/or may pay in the future, Hartford seeks reimbursement of such amounts from Ohio Security.

## PRAYER FOR RELIEF

WHEREFORE, Hartford prays for judgment as follows:

1. On the First Claim for Relief, Hartford seeks a judicial determination and declaration that Hartford has no duty to defend Carson Madrona in the Underlying Lawsuit, and that no such duty ever arose;

2. On the Second Claim for Relief, Hartford seeks a judicial determination and declaration that Hartford if the Court determines Hartford initially has a duty to defend Carson Madrona in the Underlying Lawsuit, any such duty has terminated;

3. On the Third Claim for Relief, Hartford seeks a judicial determination and declaration that Hartford has no duty to indemnify Carson Madrona for any settlement or adverse judgment in the Underlying Lawsuit and, as such, Hartford has no prospective duty to defend or to contribute toward the defense of Carson Madrona in the Underlying Lawsuit;

4. On the Fourth Claim for Relief, under the doctrine of equitable indemnity, Hartford seeks an order awarding Hartford all sums it has paid or may pay in the future toward Carson Madrona's defense and/or indemnity related to the Underlying Lawsuit, from Ohio Security and the DOE Defendants, in an amount to be proven at trial.

5. On the Fifth Claim for Relief, Hartford seeks an order awarding Hartford equitable contribution from Ohio Security and the DOE Defendants, toward sums Hartford has paid or may pay in the future toward Carson Madrona's defense and/or indemnity related to the Underlying Lawsuit in an amount to be proven at trial.

     6.     On the Sixth Claim for Relief, under the doctrine of equitable subrogation, Hartford seeks an order awarding Hartford all sums it has paid or may pay in the future toward Carson Madrona's defense and/or indemnity related to the Underlying Lawsuit, from Ohio Security, in an amount to be proven at trial;

     7.     Ordering that Hartford be awarded its costs of suit; and

     8.     Such other and further relief as the Court deems just and proper.

Dated: January 30, 2024

**McCLOSKEY, WARING, WAISMAN & DRURY LLP**

By:  */s/ Sonia S. Waisman*
       Sonia S. Waisman
       Heather L. McCloskey
       Attorneys for Plaintiff
       HARTFORD FIRE INSURANCE COMPANY