1 | JEAN PIERRE NOGUES (SBN 84445), jpn@msk.com
YAKUB HAZZARD (SBN 150242), yxh@msk.com
2 | IAN T. LOGAN (SBN 328857), itl@msk.com
MITCHELL SILBERBERG & KNUPP LLP
3 | 2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
4 | Telephone: (310) 312-2000
Facsimile: (310) 312-3100
5
Attorneys for Defendant
6 | Carson Madrona Company, LLC

7

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10

11 | HARTFORD FIRE INSURANCE COMPANY, | CASE NO. 3:23-CV-06259-SK

12 | Plaintiff, | **DEFENDANT, COUNTER-CLAIMANT AND THIRD PARTY PLAINTIFF CARSON MADRONA COMPANY,**

13 | v. | **LLC'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY**

14 | CARSON MADRONA COMPANY, LLC; | **JUDGMENT AGAINST HARTFORD FIRE INSURANCE COMPANY AND**

15 | OHIO SECURITY INSURANCE COMPANY; AMERICAN FIRE AND | **ACE PROPERTY & CASUALTY INSURANCE COMPANY AS TO**

16 | CASUALTY COMPANY; and DOES 1 through 10, inclusive, | **COVERAGE; NOTICE OF MOTION AND MEMORANDUM OF POINTS AND**

17 | Defendants. | **AUTHORITIES**

18 | | [Declaration of Yakub Hazzard filed concurrently]

19 | AND ALL RELATED COUNTERCLAIMS

20 | AND THIRD PARTY COMPLAINTS | Date:    February 20, 2025
Time:    10:00 AM

21 | | Place:   San Francisco Courthouse
Courtroom 4 – 17th Floor

22 | | 450 Golden Gate Avenue
San Francisco, Ca 94102

23 | | Filed Date:  December 4, 2023

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on February 20, 2025, in the courtroom of the Honorable Vince Chhabria, of the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 4, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA, 94102, at 10:00 AM, or as soon thereafter as the matter may be heard, Defendant, Counter-claimant, and Third Party Plaintiff Carson Madrona Company, LLC ("Carson Madrona"), shall and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 56, for an order granting partial summary judgment.

Carson Madrona seeks an order for partial summary judgment in favor of Carson Madrona that:

(a)    Insurance policy number 41 CSE S30502 issued by Plaintiff and Counter-defendant Hartford Fire Insurance Company ("Hartford") provides coverage to Carson Madrona for the claims made and judgment entered against it in *Mountain v. DP Electric, et al.*, Alameda Superior Court Case No. RG 17857916 (the "Underlying Lawsuit");

(b)    Insurance policy number G27937500 001 issued by Third-Party Defendant Ace Property & Casualty Insurance Company ("Ace"), provides coverage to Carson Madrona for the claims made and judgment entered against it, in the Underlying Lawsuit;

(c)    Hartford and Ace are required to indemnify Carson Madrona for the judgment entered against it in the Underlying Lawsuit, including pre- and post-judgment interest and costs; and

(d)    Because Hartford has a duty to indemnify Carson Madrona, it also had a duty to defend Carson Madrona in the Underlying Lawsuit.

Carson Madrona also seeks a grant of summary judgment in its favor and against Hartford on the First, Second and Third Claims for Relief asserted in Hartford's First Amended Complaint, each of which asserts there is no coverage and no duty to indemnify or defend Hartford with respect to the claims asserted in the Underlying Lawsuit.

Finally, Carson Madrona seeks judgment in its favor on the First Claim for Relief in its Counterclaims against Hartford and First Claim for Relief in its Third-Party Complaint against Ace, each of which seeks a declaration that Hartford and Ace have duties to defend and indemnify Carson Madrona from the claims asserted against it in the Underlying Lawsuit.

This Motion is made on the following grounds:

1.    Under the terms of a lease between Carson Madrona and Ashley,[1] Ashley was required to maintain general liability insurance naming Carson Madrona as an insured under such insurance;

2.    Ashley procured such insurance from Hartford and Ace;

3.    Under the express terms of that insurance, and as Ashley's landlord, Carson Madrona is an additional insured as to "liability arising out of the ownership, maintenance or use of that part of the land or premises leased to" Ashley;

4.    The claims made and judgment entered against Carson Madrona in the Underlying Lawsuit arose out of Ashley's ownership, maintenance and use of the leased premises;

5.    Alternatively,  Carson Madrona is an additional insured as to bodily injury and property damage "caused, in whole or in part, by [Ashley's] acts or omissions or the acts or omissions of those acting on [Ashley's] behalf: (1) In the performance of [Ashley's] ongoing operations; [or] (2) In connection with [Ashley's] premises owned by or rented to [Ashley]."

6.    The claims made in the Underlying Lawsuit asserted that the injuries to claimant Perez were caused in whole or in part by the acts or omissions of Ashley or of those acting on its behalf in the performance of Ashley's operations and/or in connection with the premises rented to Ashley by Carson Madrona.

7.    Because the Underlying Lawsuit is covered under the Hartford and Ace policies, the insurers also had a duty to defend Carson Madrona.

---

[1] As used in this Motion, the term "Ashley" refers collectively to Warehouse and Delivery Solutions, Inc. dba Ashley Furniture, Stoneledge Furniture, LLC and Ashley Furniture Industries, Inc.

1    This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

2  Authorities, the Declaration of Yakub Hazzard and exhibits submitted concurrently herewith, and

3  any such other evidence and argument as may be introduced at or before the time of the hearing.

4

5  DATED:  December 31, 2024                    RESPECTFULLY SUBMITTED,

6                                               JEAN PIERRE NOGUES
                                                 YAKUB HAZZARD
7                                               IAN T. LOGAN
                                                 MITCHELL SILBERBERG & KNUPP LLP
8

9

10  By: _____
                                                     Yakub Hazard
11                                                   Attorneys for Defendant
                                                     Carson Madrona Company, LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................8

II.     RELEVANT FACTUAL BACKGROUND .......................................................9

        A.      The Lease and Relevant Insurance Policies .........................................9

        B.      The Accident and Underlying Lawsuit ................................................13

        C.      Ashley and Hartford Initially Defend, But Hartford Withdraws from the
                Defense, and Both Hartford and Ace Refuse to Indemnify Carson Madrona
                for Its Loss .........................................................................................14

III.    ARGUMENT ....................................................................................................15

        A.      Carson Madrona Is an Additional Insured Entitled to Coverage for the Claims
                in the Underlying Lawsuit Under Both the Hartford and Ace Policies.................16

                1.      California Law re Interpretation of Insurance Policies .............................16

                2.      As Ashley's Lessor and Because It Was Required to Be Named by the
                        Lease, Carson Madrona Is an Additional Insured Under the Hartford
                        and Ace Policies as to the Claims Asserted by the Perezes in the
                        Underlying Action ..................................................................17

                3.      Alternatively, Because the Perez's Injury Was Caused in Whole or in
                        Part by the Acts of Ashley or Those Acting on Its Behalf, Carson
                        Madrona Is Also Covered Under the "Catch All" Additional Insured
                        Provisions of the Hartford Policy .........................................21

        B.      The Post-Occurrence Lease Termination Agreement Does Not Absolve
                Hartford or Ace from Coverage .............................................................23

        C.      The Insurers Had a Duty to Defend Carson Madrona...........................................26

IV.     CONCLUSION ...............................................................................................26

1

### TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*A.C. Label, Inc. v. Transamerica Ins. Co*,
    48 Cal. App. 4th 1188 (1996) ................................................................ 17, 25

5

6

*Acceptance Ins. Co. v. Syufy Enterprises*,
    69 Cal.App.4th 321 (1999) ................................................................ 19, 20, 21

7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................... 15

8

9

*Fireman's Fund Ins. Cos. v. Atlantic Richfield Co.*,
    94 Cal. App. 4th 842 (2001) ........................................................................ 20

10

11

*Garza v. Chavez*,
    2014 WL 3571721 (C.D. Cal. Mar. 4, 2014) .................................................. 15

12

13

*Hartford Cas. Ins. Co. v. Travelers Indemn. Co.*,
    110 Cal. App. 4th 710 (2003) .................................................................. 9, 20

14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................... 15

15

16

*Montrose Chemical Corp. v. Admiral Ins. Co.*,
    10 Cal. 4th 645 (1995) ............................................................................... 17

17

*Palmer v. Truck Ins. Exchange*,
    21 Cal.4th 1109 (1999), 90 Cal.Rptr.2d 647, 988 P.2d 568 ............................ 20

18

19

*Sec. & Exch. Comm'n v. Criterion Wealth Mgmt. Servs., Inc.*,
    2022 WL 1215786 (C.D. Cal. Apr. 25, 2022) ................................................. 15

20

21

*Truck Ins. Exch'g v. AMCO Ins. Co.*,
    56 Cal. App. 5th 619 (2020) .................................................................. 18, 19

22

23

*Valley Forge Ins. Co. v. Zurich Am. Ins. Co.*,
    2014 WL 4980302 (N.D. Cal. Sept. 30, 2014) ............................................... 21

24

*Vitton Constr. Co., Inc. v. Pac. Ins. Co.*,
    110 Cal. App. 4th 762 (2003) ...................................................................... 20

25

*Yahoo, Inc. v. National Union Fire Ins. Co.*,
    14 Cal. 5th 58 (2022) ............................................................................ 16, 17

26

27

28

CARSON MADRONA COMPANY, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

**STATUTES**

Cal. Code Civ. Proc.
    § 685.010.................................................................................................................23

**OTHER AUTHORITIES**

Fed. R. Civ. P.
    56..............................................................................................................................2
    56(a) .......................................................................................................................15

CARSON MADRONA COMPANY, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

4

5

6

7

8

9

10

11

12

    This case arises out of a 2016 accident in which an arc flash burned an electrician performing repairs on an electrical system that arced.  That accident resulted in a lawsuit in which the jury awarded the electrician and his wife $25.5 million.  Carson Madrona Company, LLC ("Carson Madrona") was an additional insured under policies issued by Hartford Fire Insurance Company ("Hartford") and Ace Property & Casualty Insurance Company ("Ace") that cover the loss incurred as a result of the accident.  While Hartford initially defended the underlying action, it withdrew from the defense after the jury verdict was rendered, and both it and Ace have refused to indemnify Carson Madrona for any portion of the judgment.  By this motion, Carson Madrona seeks a partial summary judgment enforcing those insurance policies and requiring Hartford and Ace to indemnify and defend Carson Madrona.

13

14

15

16

17

18

19

20

21

22

23

24

25

    The bases for Carson Madrona's motion are quite simple: the lease between Carson Madrona and Ashley (the "Lease"),[2] required that Carson Madrona be named as an insured on Ashley's general liability policies.  The general liability policy issued by Hartford (the "Hartford Policy") expressly and automatically made lessors, such as Carson Madrona, additional insureds for losses arising from Ashley's use or maintenance of the premises covered by the Lease (the "Leased Premises") whenever a lease required them to be so named.  The accident resulting in the claims made and judgment entered in *Mountain v. DP Electric, et al.*, Alameda Superior Court Case No. RG 17857916 (the "Underlying Lawsuit") indisputably arose from Ashley's use and maintenance of the Leased Premises.  In addition, the Hartford Policy made Carson Madrona an additional insured as to bodily injury and property damage "caused, in whole or in part, by [Ashley's] acts or omissions or the acts or omissions of those acting on [Ashley's] behalf: (1) In the performance of [Ashley's] ongoing operations; [or] (2) In connection with [Ashley's] premises owned by or rented to [Ashley]."

26

27

28

---

[2] As used in this Motion, the term "Ashley" refers collectively to Warehouse and Delivery Solutions, Inc. dba Ashley Furniture, Stoneledge Furniture, LLC and Ashley Furniture Industries, Inc.

Based on the foregoing, Hartford has a duty to defend and indemnify Carson Madrona. And because Ace's umbrella policy (the "Ace Policy") provides "follow form" coverage for additional insureds wherever the Hartford Policy provides coverage, Ace also has a duty to defend and indemnify Carson Madrona.

Hartford and Ace have attempted to rationalize their refusal to indemnify and defend Carson Madrona in two ways.  First, they claim that an agreement between Ashley and Carson Madrona,  entered into in late 2017 (the "Lease Termination Agreement)—long after the accident occurred and the Underlying Lawsuit was filed—absolves them of any responsibility, despite the fact that nothing therein releases any insurers.  Hazzard Decl. Ex. 16 §§ 7.1, 7.2.  Second, they claim that, even though the jury found that Ashley was negligent in connection with the incident, it did not impose liability on Ashley, and therefore there is no coverage for Carson Madrona.

Hartford and Ace are wrong on both counts. The claim in the Underlying Litigation arose during a period when the Lease requiring Ashley to name Carson Madrona as an additional insured was in force, and therefore as Ashley's lessor and as required by the Lease, Carson Madrona was indisputably an additional insured.  The liability arose from Ashely's use and maintenance of the Leased Premises, and was caused in whole or in part by Ashley or persons acting on its behalf.  And while the Lease Termination Agreement (entered into after the accident occurred and the Underlying Lawsuit was filed, and coverage under the occurrence-based Hartford and Ace policies attached) released ***Ashley***, nothing in that Agreement releases ***Hartford, Ace or any other insurer*** from their obligations to Carson Madrona as an additional insured.

## II.	RELEVANT FACTUAL BACKGROUND

### A.	The Lease and Relevant Insurance Policies

On or around January 17, 2012, Carson Madrona leased a portion of its warehouse located at 6195 Coliseum Way, Oakland, California (the "Leased Premises"), to Warehouse and Delivery Solutions, Inc., dba Ashley Furniture ("WDS"), pursuant to the Lease.  Hazzard Decl. Ex. 1. Subsequently, WDS assigned the Lease to Stoneledge Furniture, LLC, dba Ashley Furniture

1   Homestore ("Stoneledge").   Hazzard Decl. Ex. 2.  As noted above, WDS, Stoneledge, and Ashley

2   Furniture Industries, Inc. are collectively referred to as "Ashley."

3        The Lease, among other things, required Ashley:

4        (a)    To maintain "electrical systems to the extent located within the [Leased Premises]."

5               Hazzard Decl. Ex. 1 at 17, § 6.2.

6        (b)    To defend and indemnify Carson Madrona for any claim "arising out of or in any

7               way connected with, and Landlord shall not be liable to Tenant on account of (a)

8               Tenant's use of the Premises; [and] (b) the conduct of Tenant's business or anything

9               else done or permitted by Tenant to be done in or about the Premises…." *Id.* Article

10              18.

11       (c)    To obtain liability insurance for "any and all liability for personal injury … arising

12              out of the operations, maintenance, use or occupancy of the [Leased Premises],"

13              which insurance must be "primary and noncontributing (meaning that Landlord may

14              look solely to the insurance provided hereunder with respect to a covered claim and

15              shall not be required to make a claim under any other insurance Landlord may

16              have)."  *Id.* at 27-28, § 23.1; and

17       (d)    To name Carson Madrona as an insured under the liability policies it was required to

18              maintain.  *Id.*

19       As required by the Lease, Ashely Furniture did obtain liability insurance.  The primary

20   policy applicable for the period involved in this case was the Hartford Policy issued by Hartford,

21   policy number 41 CSE S30502.  Hazzard Decl. Ex. 3.  The Hartford Policy covers the period from

22   January 1, 2016 to January 1, 2017, and includes occurrence-based Commercial General Liability

23   ("CGL") coverage[3] with a liability limit of $2 million per occurrence plus defense costs, subject to

24   a $1 million per occurrence deductible.  *Id.*  The Hartford Policy contains provisions which

25   automatically made any landlord of Ashley and any party whom Ashley agreed in writing to make

26   an insured under its policies additional insureds.  *Id.* § II.6 c and f.  Carson Madrona is an

---

[3] The Hartford Policy and the Ace Policy discussed below cover claims, whenever made, that result from occurrences during the term of the Policy, which is January 1, 2016 through January 1, 2017.

CARSON MADRONA COMPANY, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

additional insured under the Hartford Policy by reason of its status as Ashley's landlord and because the Lease requires that it be so named. *See* Hazzard Decl. Ex. 1 at 27, § 23.1.

With respect to Carson Madrona's additional insured status, the Hartford Policy provides:

"**SECTION II – WHO IS AN INSURED**

The following person(s) or origination(s) are an additional insured when you have agreed, in a written contract [or] written agreement . . . that such person be added as an additional insured on your policy, provided the injury or damage occurs subsequent to the execution of the contract or agreement.

. . .

Each of the following is also an insured:

. . .

**Additional Insureds When Required by Written Contract, Written Agreement Or Permit**

The following person(s) or organization(s) are an additional insured when you have agreed, in a written contract, written agreement or because of a permit issued by a state or political subdivision, that such person or organization be added as an additional insured on your policy, provided the injury or damage occurs subsequent to the execution of the contract or agreement.

A person or organization is an additional insured under this provision only for that period of time required by the contract or agreement.

. . .

**c.  Lessors of Land or Premises**

Any person or organization from whom you lease land or premises, but only with respect to liability arising out of the ownership,

maintenance or use of that part of the land or premises leased to

you."

. . .

**f. Any Other Party**

Any other person or organization who is not an insured under

Paragraphs **a.** through **e.** above, but only with respect to liability for

"bodily injury", "property damage" or "personal and advertising

injury" caused, in whole or in part, by your acts or omissions or the

acts or omissions of those acting on your behalf:

In the performance of your ongoing operations;

In connection with your premises owned by or rented to you . . . .

Hazzard Decl. Ex. 3 at 75, § II.6.[4]

In addition, Ashley secured the Ace Policy, a Commercial Umbrella Liability policy from

Ace, policy number G27937500 001. The Ace Policy provides coverage for, among other things,

sums an insured becomes legally obligated to pay for bodily injury and property damage.  Hazzard

Decl. Ex. 4 at 173, § 1.A.  The Ace Policy was effective from January 1, 2016 to January 1, 2017

and has $25 million limit.  Hazzard Decl. Ex. 4 at 165.  The Ace Policy contains the following

language:

"**II.  WHO IS AN INSURED**

. . .

B. Each of the following is also an 'insured':

. . .

Any person or organization, if insured under the 'underlying

insurance', provided that coverage provided by this policy for any

---

[4] The coverage grants in Sections II.6.c and II.6.f are repeated in several endorsements to the
Hartford Policy, none of which name Carson Madrona.  *See* Part III.A.3 *infra* for further
discussion.

1    such insured is no broader than coverage provided by 'underlying

2    insurance".[5]

3    Ex. 4 at 174-75, § II. Thus, the Ace Policy provides that every person or entity which is an insured

4    under the Hartford Policy is also an insured under the Ace Policy.  Thus, Carson Madrona is an

5    additional insured under the Ace Policy, to the same extent it is an additional insured under the

6    Hartford Policy.

7    **B.    The Accident and Underlying Lawsuit**

8    On or about May 17, 2016, Ashley's warehouse superintendent, Gary Mountain

9    ("Mountain"), called an electrician, David Perez ("Perez"), to make electrical repairs to address

10   flickering lights at the Leased Premises.  Hazzard Decl. Ex. 5 ("Mountain Depo.") at 43:14-44:8,

11   80:2-9.  Perez came to the Leased Premises and visited the electrical room.  *Id*. at 46:19-50:2.

12   Unable to fix the problem there, Perez and Mountain went to the main electrical distribution panel

13   ("MDP").  *Id*. at 47:22-28:48:23; Hazzard Decl. Ex. 6 ("Perez Depo.") at 38:11-43:10.  The MDP

14   is located in the property's exterior common area, outside of the Leased Premises.  *Id*.; Ex. 5

15   (Mountain Depo.) at 88:12-89:12.

16   Without contacting Carson Madrona to obtain permission to access the MDP, Mountain

17   and Perez accessed the MDP.  *Id*.  Perez pulled out a bolt switch inside the MDP and began testing

18   fuses.  Hazzard Decl. Ex. 6 (Perez Depo.) at 44:4-20; 45:8-25.  He noticed that one fuse inside the

19   switch was broken and replaced it with a spare fuse he found inside the cabinet.  *Id*. 46:2-47:13;

20   54:12-18.  At that point, Mr. Perez said, "I hate this part," and reinserted the bolt switch into the

21   MDP.  Hazzard Decl. Ex. 5 ("Mountain Depo.") at 51:17-52:17.  Suddenly, an arc flash explosion

22   occurred.  *Id*.  Both Mountain and Perez suffered severe burn injuries in the arc flash incident.  *Id*.;

23   Ex. 6 (Perez Depo.) at 56:1-3.

24   On or about April 24, 2017, Mountain and his wife filed suit against Perez and Carson

25   Madrona.  Hazzard Decl. Ex. 7.  The Mountains' suit against Perez and Carson Madrona settled

26   prior to trial.  Hazzard Decl. ¶ 21.  However, Perez and his wife, Donna, filed a cross-complaint

27

28   [5] The Ace Policy lists the Hartford Policy as one of the "underlying insurance" policies.  Hazzard
     Decl. Ex. 4 at 168.

13

1    (and shortly thereafter, an amended cross-complaint) against Ashley, Stoneledge, Carson

2    Madrona, Carson Madrona's property manager—Diane Pregerson Glazer as Trustee of the Diane

3    Pregerson Glazer Survivor's Trust dba SanOak Management Company ("SanOak"), and SanOak's

4    property manager, Jeremy Blanchard.  Hazzard Decl. Exs. 8 and 9.  The gist of the Perezes'

5    negligence theory against Carson Madrona and SanOak was that they had illegally installed, or

6    failed to inspect and replace, an under-rated bolt switch in the MDP.  The MDP was rated for 480

7    volts but the bolt switch was rated for 240 volts.  According to the Perezes, the under-rated bolt

8    switch caused an arc flash explosion. *Id*.

9         On July 10, 2023, a jury awarded $20,500,000 to David Perez and $5,000,000 to Donna

10   Perez (for loss of consortium), assigning fault for the arc flash incident to Carson Madrona and

11   San Oak, and finding that Ashley Furniture was negligent in connection with the incident.

12   Hazzard Decl. Ex. 10.[6]  Thereafter, Judgment was entered on the verdict, and Carson Madrona,

13   SanOak and the Perezes appealed.  Hazzard Decl. ¶ 18.  During the appeal, the parties settled their

14   dispute.  *Id*.

15        **C.    Ashley and Hartford Initially Defend, But Hartford Withdraws from the**

16             **Defense, and Both Hartford and Ace Refuse to Indemnify Carson Madrona**

17             **for Its Loss**

18        Carson Madrona initially tendered the underlying lawsuit to Ashley to defend and

19   indemnify pursuant to the terms of the Lease.  ECF 8 (Hartford FAC) ¶ 23.  Ashley initially

20   accepted the tender but then in or about December 2019, Ashley withdrew from the defense of

21   Carson Madrona asserting that the Underlying Lawsuit did not allege claims within the scope of

22   the defense/indemnity provision of the Lease.  Hazzard Decl. Ex. 11.  In addition, Carson

23   Madrona's liability insurance carrier, Ohio Security Insurance Company, tendered the Underlying

24   Lawsuit to Hartford to defend and indemnify Carson Madrona pursuant to the terms of the

25   Hartford Policy.  Ashley's insurer, Hartford, thereafter agreed to defend Carson Madrona.

26

27   ───────────────

28   [6] The jury found that Blanchard was not negligent. Hazzard Decl. Ex. 10 at 339.

1    Hazzard Decl. Ex. 12.[7]  However, after the jury returned its verdict, Hartford withdrew from its

2    defense of Carson Madrona, and refused to defend Carson Madrona in appealing the judgment.

3    Hazzard Decl. Exs. 13, 14.  Moreover, Hartford and Ace have both refused to indemnify Carson

4    Madrona for the judgment it has suffered.  Hazzard Decl. ¶ 19.

5

6    **III.    ARGUMENT**

7          A moving party is entitled to summary judgment "if the movant shows that there is no

8    genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

9    Fed. R. Civ. P. 56(a).  If the moving party sustains this burden, the nonmoving party must then

10   identify specific facts that demonstrate a dispute exists as to material facts.  *Id*. at 56(c).  Although

11   a court must construe all facts and draw all reasonable inferences therefrom in the light most

12   favorable to the non-moving party, the non-movant must show sufficient evidence to create a

13   genuine issue of material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

14   574, 585-87 (1986).  A party cannot avoid summary judgment on an issue if its "evidence is

15   merely colorable." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  Indeed, "[t]he

16   mere existence of a scintilla of evidence . . . will be insufficient." *Id*. at 252.

17         Moreover, "conclusory, speculative testimony in affidavits and deposition testimony that is

18   unsupported by specific facts is insufficient to raise genuine issues of fact and defeat summary

19   judgment." *Garza v. Chavez*, 2014 WL 3571721, at *9, n.10 (C.D. Cal. Mar. 4, 2014); *Sec. &*

20   *Exch. Comm'n v. Criterion Wealth Mgmt. Servs., Inc.*, 2022 WL 1215786, at *8 (C.D. Cal. Apr.

21   25, 2022) ("'uncorroborated and self-serving' testimony will not create a genuine issue of material

22   fact") (quoting *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir. 2002)).

23         Here, there can be no doubt that Carson Madrona is an additional insured under the

24   Hartford and Ace Policies, or that the claims asserted against it in the Underlying Lawsuit are

25   covered.  Nor is there any basis for the insurers' assertion that the Lease Termination Agreement

26   ───────────────

27   [7] In late December 2017, more than 18 months after the incident, Ashley and Carson Madrona
     terminated the Lease.  Hazzard Decl. Ex. 15.  In the Termination Agreement, the parties released
28   one another from all obligations under the Lease except for specified obligations not relevant here.
     *Id*. at 369, §§ 7.1, 7.2.

1   somehow absolves them from providing defense and indemnity coverage to Carson Madrona as an

2   additional insured.

3       A.      **Carson Madrona Is an Additional Insured Entitled to Coverage for the Claims**

4               **in the Underlying Lawsuit Under Both the Hartford and Ace Policies**

5               1.      **California Law re Interpretation of Insurance Policies**

6           In response to a certified question from the Ninth Circuit, the California Supreme Court

7   recently summarized the law concerning how insurance policies are to be interpreted and applied

8   in *Yahoo, Inc. v. National Union Fire Ins. Co.*, 14 Cal. 5th 58 (2022):

9               "The relevant principles are well settled. In *Palmer v. Truck Ins.*

10              *Exchange*, we said: 'While insurance contracts have special features,

11              they are still contracts to which the ordinary rules of contractual

12              interpretation apply.' [Citation.] Thus, 'the mutual intention of the

13              parties at the time the contract is formed governs interpretation.

14              [Citation.] If possible, we infer this intent solely from the written

15              provisions of the insurance policy. [Citation.] If the policy language

16              is clear and explicit, it governs.' (*Palmer v. Truck Ins.*

17              *Exchange* (1999) 21 Cal.4th 1109, 1115, 90 Cal.Rptr.2d 647, 988

18              P.2d 568 (*Palmer*).) Similarly, in *Boghos v. Certain Underwriters at*

19              *Lloyd's of London*, we said: 'Our goal in construing insurance

20              contracts, as with contracts generally, is to give effect to the parties'

21              mutual intentions. [Citations.] If contractual language is clear and

22              explicit, it governs. [Citations.] If the terms are ambiguous [i.e.,

23              susceptible of more than one reasonable interpretation], we interpret

24              them to protect 'the objectively reasonable expectations of the

25              insured. [Citations.] Only if these rules do not resolve a claimed

26              ambiguity do we resort to the rule that ambiguities are to be resolved

27              against the insurer.' *Boghos v. Certain Underwriters at Lloyd's of*

28

*London* (2005) 36 Cal.4th 495, 501, 30 Cal.Rptr.3d 787, 115 P.3d

68.)"

*Id*. at 67 (brackets and emphasis in original; internal quotation marks removed).

Carson Madrona submits that under the clear and explicit language of the Hartford and Ace Policies, and given the undisputed facts in the Underlying Lawsuit, there is coverage for the injuries suffered and claims asserted by the Perezes.  While Hartford submits there is no need to look beyond the language of the policies here, interpreting the Policies to provide coverage also protects Carson Madrona's reasonable expectations of coverage in such circumstances.  And, of course, any unresolved ambiguities must be interpreted against Hartford and Ace and in favor of coverage.

**2.       As Ashley's Lessor and Because It Was Required to Be Named by the Lease, Carson Madrona Is an Additional Insured Under the Hartford and Ace Policies as to the Claims Asserted by the Perezes in the Underlying Action**

It is undisputed that Carson Madrona was Ashley's lessor under the Lease.  Hazzard Decl. Ex. 1.  Nor is there any dispute that the Lease was in effect as of May 17, 2016, the date on which the accident in which Mountain and Perez were injured occurred.  It also is undisputed that the Lease required Ashley to name Carson Madrona as an insured under the policies Ashley was required to maintain under the Lease.  *Id*. at 27-28, § 23.1.  Thus, it is indisputable that under the plain language of the Hartford Policy Section II.6.c, and Ace Policy Section III.B quoted above, Carson Madrona was an additional insured entitled to coverage under the Hartford and Ace Policies for liability "arising" on May 17, 2016[8] "out of the ownership, maintenance or use of that part of the land or premises leased to" Ashley.  Hazzard Decl. Ex. 1 at 27-28, § 23.1; Ex. 3 at 76, § II.6.c; Ex. 4 at 174, § II.B.

---

[8] As discussed at greater length in part III.B below, because the Hartford and Ace Policies are both occurrence based, "coverage…is established at the time the complaining party was actually damaged."  *Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 669-70 (1995); *A.C. Label, Inc. v. Transamerica Ins. Co,* 48 Cal. App. 4th 1188, 1192 (1996).  The injury or loss is the triggering event under such policies, and an insurer whose policy is in force at that time is responsible for indemnifying and defending the insured, regardless of when any claim for the loss is made.

1    Nor can there be any question that the accident and the resulting injuries and liability arose

2   out of Ashley's maintenance or use of the premises leased to it.  Ashley called Perez to address a

3   flickering light problem in its Leased premises.  Perez attempted to fix the problem by first

4   checking the electrical service within Ashley's Leased Premises.  When that did not resolve the

5   problem, Perez and Gary Mountain of Ashley (without Carson Madrona's permission) opened the

6   MDP to address the flickering light problem in Ashley's premises.  The arc flash occurred while

7   they were attempting to repair the flicker problem occurring in Ashley's premises.  Plainly, then,

8   Perez's injuries and Carson Madrona's liability arose from Ashley's use and maintenance of the

9   leased premises.

10    Cases like *Truck Ins. Exch'g v. AMCO Ins. Co.*, 56 Cal. App. 5th 619 (2020), make this

11   clear.  In that case, a vehicle crashed through a restaurant, injuring two patrons.  The patrons sued

12   the restaurant and the landlords for the restaurant, alleging that the property lacked safety

13   measures that would have protected the patrons.  Summary judgment was granted for the

14   restaurant owner but denied for the landlords, who knew a similar accident had occurred years

15   earlier but failed to implement safety measures to prevent a recurrence. The landlords settled the

16   action with the restaurant patrons.

17    The landlords' insurer, respondent Truck Insurance Exchange, then sued the restaurant's

18   insurer, appellant AMCO Insurance Company, for equitable contribution, asserting that AMCO

19   wrongfully denied Truck's request that AMCO defend and indemnify the landlords.  Like the

20   Lease in this case, the restaurant lease required that the restaurant name landlords as additional

21   insureds under the restaurant's liability policies.  *Id*. at 624.  The restaurant obtained liability

22   insurance under which the landlords were additional insureds.  That policy provided, in part, that

23   "[a]ny person…from whom you [restaurant] lease premises is an additional insured, but only with

24   respect to their liability arising out of your use of the premises leased to you."  *Id*.  AMCO

25   asserted, similar to the insurers here, that the loss did not arise out of the restaurant's use or

26   occupancy of the premises, citing the summary judgment in favor of the restaurant in the

27   underlying case.  *Id*. at 622.

28

CARSON MADRONA COMPANY, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Both the trial and appellate courts rejected AMCO's assertion, and found that indeed there

2   was coverage under the restaurant's policy.  In affirming the trial court's decision,[9] the court of

3   appeal concluded that "[t]he phrase 'arising from' in a general liability insurance policy requires

4   only a minimal causal connection, which existed here, and the respective liability of the parties is

5   irrelevant to the additional insured provision."  *Id*.  It explained:

6          "'California courts have consistently given a broad interpretation to

7          the terms "arising out of" or "arising from" in various kinds of

8          insurance provisions. It is settled that this language does not import

9          any particular standard of causation or theory of liability into an

10         insurance policy. Rather, it broadly links a factual situation with the

11         event creating liability, and connotes only a minimal causal

12         connection or incidental relationship.'"

13  *Id*. at 630, quoting *Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal.App.4th 321, 328 (1999)

14  ("*Syufy*").  In holding that such a connection existed, it noted that the patrons were present on the

15  premises because of the restaurant; had the restaurant not been in use, the patrons would not have

16  been sitting there when the car crashed through the building.  *Truck Ins. Exch'g*, 56 Cal. App. 5th

17  at 631.

18  Similarly here, Perez was invited to the premises by Ashley; he would have not been there

19  had it not been for Ashley's use of and maintenance of the Leased Premises; he engaged in the

20  repair activity that resulted in his injuries at Ashley's request and for the benefit of its use of the

21  Leased Premises.  In short, Perez would not have been injured but for Ashley's use and

22  maintenance of the leased premises.  That suffices to meet the minimal connection or incidental

23  relationship test for "arising under" coverage.  *Id*. at 630.

24  *Syufy* confirms this point.  In that case, Syufy hired contractor CC to upgrade lighting and

25  temperature controls at one of its theaters.  CC had a general liability policy which named Syufy

26  as an additional insured with respect to any liability "arising out of" CC's work.  A CC employee

27  ─────────────────────

28  [9] The trial court decided the coverage issue in a bench trial based on stipulated facts and the
    parties' briefs.  *Id*. at 622.

had a finger severed by a roof hatch that fell as he climbed down from the roof.  He sued Syufy on the theory that it had failed to maintain a safe closing mechanism on the hatch and had failed to warn him of its defective condition.  69 Cal. App. 4th 321, 324-25.  CC's insurer provided a defense to Syufy, and funded a $400,000 settlement.  The insurer thereafter sued Syufy and Syufy's insurer claiming that there was no coverage under the CC policy and seeking indemnification and contribution.  *Id*. at 325.  The trial court granted summary judgment in favor of Syufy and its insurer, and CC's insurer appealed.

The court of appeal affirmed the summary judgment noting the broad interpretation of "arising from" and "arising out of" as quoted above, calling it a "common-sense approach" to interpretation of general liability policies.  *Id*. at 328.[10]  Finding the relationship between the injury and CC's work to be "more than incidental," the court held that "[t]he fact that the defect was attributable to Syufy's negligence is irrelevant, since the policy language does not purport to allocate coverage according to fault."  *Id*. at 328-29.

So too here.  Neither the Hartford Policy nor the Ace Policy conditions additional insured coverage for a landlord on Ashley being ***liable*** for the injury or loss.  They only require that a minimal connection or incidental relationship between the loss and Ashley's use or maintenance of the Leased Premises to trigger coverage.  And as cases like *Truck* and *Syufy* demonstrate, such a connection exists here.  *See also Hartford Cas. Ins. Co. v. Travelers Indemn. Co.*, 110 Cal. App. 4th 710, 716 (2003) (Hartford concedes landlord would be covered as additional insured for wrongful death of tenant employee who fell from deck outside leased premises under policy using "arising under" language; court finds coverage under arguably more restrictive policy); *Vitton Constr. Co., Inc. v. Pac. Ins. Co.,* 110 Cal. App. 4th 762, 768 (2003) (where policy "grants coverage for liability 'arising out of' the named insured's work, the additional insured is covered without regard to whether injury was caused by the named insured or the additional insured"); *Fireman's Fund Ins. Cos. v. Atlantic Richfield Co.,* 94 Cal. App. 4th 842 (2001) (contractor's

---

[10] The court also held that even if the term "arising from" or "arising out of" were ambiguous and not already repeatedly construed by California (and other) courts, construction rules requiring that insurance contract be construed in accordance with an insured's reasonable expectations or coverage and resolving ambiguities in favor of coverage would lead to the same result.  69 Cal. App. 4th at 327.

employee injured by defective step in ARCO plant; ARCO entitled to coverage as additional insured under policy providing such coverage for liability "arising out of" contractor's work); *Valley Forge Ins. Co. v. Zurich Am. Ins. Co.*, 2014 WL 4980302 (N.D. Cal. Sept. 30, 2014) (court followed *Syufy* to find contractor's policy provided additional insured coverage to owner for injury to contractor employees due to collapse of owner's deteriorated roof system; injuries "arose out of" contractor's work). The Policies clearly provide coverage to Carson Madrona as Ashley's lessor for both indemnity and defense with respect to the claims and loss in the Underlying Lawsuit.

> **3.      Alternatively, Because the Perez's Injury Was Caused in Whole or in Part by the Acts of Ashley or Those Acting on Its Behalf, Carson Madrona Is Also Covered Under the "Catch All" Additional Insured Provisions of the Hartford Policy**

In a futile effort to avoid coverage, Hartford and Ace appear to take the position that Section II.6.c does not provide additional insurance to Carson Madrona, even though Carson Madrona plainly is a lessor who is required to be an additional insured pursuant to the terms of the Lease. Instead, the insurers appear to claim that the only additional insured provision that might conceivably apply to Carson Madrona is contained in an additional insured endorsement located at page 9 of Exhibit 3. *See* ECF 8 ¶ 31; ECF 41(Ace Answer), 9th, 10th and 13th Affirmative Defenses.

The relevant language in that endorsement is:

> "**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury', "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:
>
> 1.      In the performance of your ongoing operations; or
>
> 2.      In connection with your premises owned or rented to you."

Although several copies of this endorsement are attached to the Hartford Policy, none of them names Carson Madrona. *See* Ex. 3 at 104, 105, 106, 107.[11]  Moreover, the coverage language of the endorsement is nearly identical to the coverage provided under Section II.6.f of the main body of the Policy, quoted above.

Carson Madrona submits that because it was Ashley's lessor and because the Lease required that it be named on Ashley's insurance Policies, it is an additional insured under Section II.6.c.  Because it is an additional insured under II.6.c, it cannot be an additional insured under the catch all provision of II.6.f, which only applies if a party is not an additional insured under another provision of the Hartford Policy.  Because it is an additional insured under II.6.c and because none of the additional insured endorsements name Carson Madrona, none of the endorsements apply either.

However, even if Carson Madrona for some reason does not qualify as a lessor additional insured under Section II.6.c. of the Hartford Policy, it would qualify as an additional insured under the catch-all additional insured provision found in Section II.6.f and the endorsements, also quoted above.[12]  Under that provision, Carson Madrona would be entitled to coverage for the Perez claims and judgment because the Perezes' injuries were "caused, in whole or in part, by [Ashley's] acts or omissions or the acts or omissions of those acting on [Ashley's] behalf . . .[i]n the performance of [Ashley's] ongoing operations [or] [i]n connection with [Ashley's] premises owned by or rented to [Ashley]."

As noted above, there is no dispute that Perez was asked by Ashley to fix the flickering lights in the premises leased to Ashley.  He was clearly acting on Ashley's behalf in doing so.  It is also indisputable that Perez's repair activities were performed "in connection with" Ashley's premise.  Moreover, Perez claimed that Ashley's conduct was a cause of his injury, Ex. 8 (cross-

---

[11] Similarly, multiple copies of an endorsement that essentially repeats the language of § II.6.c are also attached.  Hazzard Decl. Ex. 3 at 155, 161. None names Carson Madrona.

[12] The Hartford Policy provides that Section II.6.f, the "catch-all" additional insured provision, only applies if one of the specific additional insured provisions, including the provision covering lessors of real property, does not apply.  Hazzard Decl. Ex. 3.  The follow form language of the Ace Policy makes Carson Madrona an additional insured thereunder to the same extent it is an additional insured under the Hartford Policy.  Hazzard Decl. Ex. 4 § II at 174-75.

complaint), and the jury found that Ashley was negligent in connection with the accident that injured Perez.  Hazzard Decl. Ex. 9.  However, it did not award damages against it because it concluded that Ashley's negligence was not a "substantial factor" in causing Perez's injuries.[13]  *Id.*

Ashley's undisputed actions and negligence were, at least in part, a cause of the accident. Ashley called Perez to fix their flickering light problem, directed him to fix it, and led him to both the internal Ashley panel and the MDP, where the accident occurred.  Similarly, the actions of Perez, who was acting at Ashley's request and on Ashley's behalf, was also at least in part a cause of the accident and his own injuries.  He was, after all, the person who removed the switch, replaced the fuse and reinserted the switch resulting in the arc flash.  Thus, if for some reason, the lessor additional insured provision of the Hartford Policy does not apply, Carson Madrona is still an additional insured as to the Perez claims under the catch-all additional insured provision, Section II.6.f, of the Hartford Policy and the Additional Insured provision, Section II, of the Ace Policy.

**B.** **The Post-Occurrence Lease Termination Agreement Does Not Absolve Hartford or Ace from Coverage**

It is undisputed that the accident resulting in Perez's injuries occurred on May 17, 2016. Mountain Depo. at 80:2-9.  It is undisputed that the Lease was in effect as of that date. Ex. 1.  It was not terminated until December 21, 2017, 19 months after the accident occurred.  Hazzard Decl. Ex. 15 ¶ 1.  It is thus indisputable that as of the date of the accident, Ashley had an obligation to name Carson Madrona as an additional insured under its liability insurance policies. Hazzard Decl. Ex. 1 at 27-28, § 23.1.  And, as discussed at length above, it is similarly indisputable that Carson Madrona was an additional insured under the Hartford Policy and the Ace Policy as of that date.

---

[13] Carson Madrona appealed that decision, seeking a reversal and new trial.  Hazzard Decl. ¶ 18. But Hartford prematurely dropped its defense of Carson Madrona, and Hartford and Ace both denied coverage after the judgment was entered.  *Id.* ¶ 19.  At the same time, Carson Madrona's own insurers, Ohio Security Insurance Company and American Fire and Casualty Company, tendered their policy limits of $1 million and $10 million, respectively, to Carson Madrona after entry of the judgment, which left Carson Madrona on its own with respect to the remainder of the judgment and 10% per annum interest (approximately $3.56 million per year).  Cal. Code Civ. Proc. § 685.010; Hazzard Decl. ¶ 20.  Carson Madrona was forced to settle with the Perez's to avoid the possibility of having to pay millions more in interest to the Perezes.  Hazzard Decl. ¶ 20.

1    Hartford and Ace contend that, notwithstanding these undisputed and indisputable facts,

2  they were released from their coverage and defense obligations by the Lease Termination

3  Agreement entered into at the end of 2017.  That agreement terminated the Lease, and contains the

4  following release language:

5        "7.1    Landlord's Release of Tenant.  Upon receipt of the early

6        termination fee, Landlord, on behalf of itself, and its and their

7        respective members, managers, officers, principals, shareholders,

8        subsidiaries, employees, agents, representatives, predecessors,

9        successors and assigns (collectively, the "Landlord Releasing

10       Parties"), hereby fully and unconditionally waives, releases, remises

11       and forever discharges Tenant and it Tenant Affiliates, and its and

12       their respective officers, directors, members, managers, principals,

13       shareholders, parents, subsidiaries, employees, agents,

14       representatives, successors and assigns (collectively, the "Tenant

15       Released Parties") from any and all obligations, claims, demands,

16       losses, damages, liabilities, debts, dues, accounts, controversies,

17       actions or causes of action, whether known or unknown, direct or

18       indirect, foreseen or unforeseen, contingent or actual, liquidated or

19       unliquidated, suspected or claimed, which the Landlord Releasing

20       Parties ever had, now has, or may hereafter have or claim to have

21       had against the Tenant Released Parties arising directly or indirectly

22       out of, based upon, or related in any way to the Premises or the

23       Lease (collectively, the "Landlord Released Claims", but

24       specifically excepting and excluding from Landlord Released

25       Claims those Tenant obligations, if any, which result from Lease

26       Section 5.6 and Section 6.5 and any New damage as set forth in

27       Section 4.6 above."

28

Ex. 15 at 369, § 7.1. The Lease Termination Agreement also contains the following language: "Except as and to the extent expressly otherwise provided in this Agreement, the Lease shall continue in full force and effect in accordance with the terms and provisions thereof." *Id*. at 368, § 6.  The Lease Termination Agreement also contains an integration clause. *Id*. at 369-70, § 9. Nothing in the Lease Termination Agreement purports to release any insurer of any obligation it may have to Carson Madrona.  Indeed, the word "insurer" does not appear in the long list of persons and entities who were released by Carson Madrona.  Insurers do not logically fit into any of the categories of Tenant Released Parties.

The Hartford and Ace Policies are "occurrence" policies—they cover "'bodily injury' or 'property damage' [which] occurs during the policy period."  Ex. 3 at 66, § I.A.1.b(2); Ex. 4 at 172, § I.A.b.  With respect to occurrence-based policies like these, "California courts have long established that *coverage* in the context of a liability policy *is established at the time the complaining party was actually damaged*."  *A. C. Label Co. v. Transamerica Ins. Co*., 48 Cal. App. 4th 1188, 1192 (1996) (quoting *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 669 (1995)) .  The loss is the triggering event under such policies, and an insurer whose policy is in force at that time is responsible for indemnifying and defending the insured, regardless of when any claim for the loss is made. *Id.*  "Coverage questions arising under a CGL occurrence policy must be resolved based on the facts in existence *at the time that the damage occurred*." *Id*.

On May 17, 2016, the Lease requiring that Carson Madrona be named as an insured under Ashley's policies was in effect.  On that date, the Hartford and Ace Policies were in effect.  On that date, Carson Madrona was an additional named insured under the terms of the Policies.  On that date, the accident occurred and Perez was injured.  Under the longstanding California authorities discussed above, on that date, Hartford's and Ace's obligations to defend and indemnify Carson Madrona as an additional insured were triggered and fixed.

That should be the end of the story, for the release of Ashley that took place 19 months later does not purport to affect Hartford's and Ace's obligation to defend and indemnify Carson Madrona.  Despite broad release language covering the parties to the lease and their officers, directors, shareholders, agents, successors, etc., insurers were not included in the release.  Nothing

25

in the release language indicates any intent to release the insurers from obligations that had already been triggered under policies that were in force at a time when Ashley was required to provide additional insured coverage to Carson Madrona.  The Lease Termination Agreement is unambiguous in this regard—Ashley was released of various obligations, but the insurers, who were not even parties to the Agreement, were not.[14]

### C.    The Insurers Had a Duty to Defend Carson Madrona

Both the Hartford and the Ace Policies require that the insurers defend Carson Madrona from covered claims.  Hazzard Decl. Ex. 3 at 66, § I.A.1 (Hartford has "duty to defend the insured against any 'suit'" seeking covered damages); Ex. 4 at 172, § I.A. (Ace has duty to defend if underlying policy is exhausted of where coverage provided under Ace policy but not underlying policy).  Because there is coverage under both policies, there is also a duty to defend under both policies.

## IV.    CONCLUSION

For all of the reasons set forth above, the Court should grant partial summary judgment, and issue an order stating:

(a)    That insurance policy number 41 CSE S30502 issued by Plaintiff and Counter-defendant Hartford Fire Insurance Company provides coverage to Carson Madrona for the claims made and judgment entered against it in the Underlying Lawsuit;

(b)    That insurance policy number G27937500 001 issued by Third-Party Defendant Ace Property & Casualty Insurance Company , provides coverage to Carson Madrona for the claims made and judgment entered against it, in the Underlying Lawsuit;

---

[14] Despite extensive research, Carson Madrona's counsel has been unable to find any authority for the proposition that under California law, a termination of a lease and releases given in connection therewith that do not even mention an insurer can relieve that insurer from additional insured coverage and defense obligations that had previously been triggered by an occurrence.

(c)    That Hartford and Ace are required to indemnify Carson Madrona for the judgment entered against it the Underlying Lawsuit, including pre- and post-judgment interest and costs;

(d)    That because Hartford has a duty to indemnify Carson Madrona, it also had a duty to defend Carson Madrona in the Underlying Lawsuit;

(e)    In favor of Carson Madrona and against Hartford on the First, Second and Third Claims for Relief asserted in Hartford's First Amended Complaint; and

(f)    In favor of Carson Madrona on the First Claim for Relief in its Counterclaims against Hartford and First Claim for Relief in its Third-Party Complaint against Ace, each of which seeks a declaration that Hartford and Ace have duties to defend and indemnify Carson Madrona from the claims asserted against it in the Underlying Lawsuit.

DATED:  December 31, 2024          RESPECTFULLY SUBMITTED,

MITCHELL SILBERBERG & KNUPP LLP
JEAN PIERRE NOGUES
YAKUB HAZZARD
IAN T. LOGAN


By: _____
      Yakub Hazzard
      Attorneys for Defendant
      Carson Madrona Company, LLC

CARSON MADRONA COMPANY, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT