**MUSICK, PEELER & GARRETT LLP**

333 South Hope Street, Suite 2900
Los Angeles, California 90071-3048
Telephone (213) 629-7600
Facsimile (213) 624-1376

Lawrence A. Tabb (State Bar No. 141471)
  *l.tabb@musickpeeler.com*
Danica Lam (State Bar No. 266710)
  *d.lam@musickpeeler.com*

Attorneys for Defendants and Counterclaimants OHIO SECURITY INSURANCE COMPANY and AMERICAN FIRE AND CASUALTY COMPANY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    vs.<br><br>CARSON MADRONA COMPANY, LLC; OHIO SECURITY INSURANCE COMPANY; AMERICAN FIRE AND CASUALTY COMPANY; and DOES 1 through 10, inclusive,<br><br>        Defendant.<br><br>_____<br><br>AND RELATED COUNTERCLAIMS | Case No. 3:23-cv-06259-VC<br><br>Judge:    Vince Chhabria<br><br>**OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*(Filed Concurrently with Joint Index and Compendium of Evidence; Declaration of Danica Lam; Declaration of Marianne Cossalter; Request for Judicial Notice)*<br><br>Date:    February 20, 2025<br>Time:    10:00 a.m.<br>Place:    San Francisco Courthouse<br>        Courtroom 4 – 17th Floor<br>        450 Golden Gate Avenue<br>        San Francisco, CA 94102<br><br>Trial Date: TBD |

MUSICK, PEELER & GARRETT LLP

3507698.1                                1                        Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT

## NOTICE OF MOTION PURSUANT TO LOCAL RULE 7.2)

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 20, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Vince Chhabria, United States District Court Judge for the Northern District of California, San Francisco Division, in Courtroom 4 located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants and Counterclaimants Ohio Security Insurance Company ("Ohio Security") and American Fire and Casualty Company ("American Fire") will and hereby do move this Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment in their favor and against plaintiff and cross defendant ("Hartford") and counterclaim defendant and third party defendant Ace Property and Casualty Insurance Company ("Ace") as follows:

Issue No. 1:  Partial Summary Judgment as to its first cause of action for Declaratory Relief regarding Hartford's duty to defend Carson Madrona under the insurance policy no. 41 CSE S30502, effective from January 1, 2016 to January 1, 2017 which Hartford issued to Ashley Furniture (the "Hartford Policy"). Specifically, Hartford owed a duty to defend defendant, cross claimant and third party plaintiff Carson Madrona Company, LLC ("Carson Madrona") in the action styled *Gary Mountain, et al. v. David Perez, et al.*, Alameda County Superior Court Case No. RG17857926 ("Underlying Lawsuit") up to and including the conclusion of the appeal process or until settlement was reached, and that Hartford breached this duty to defend. Ohio Security is entitled to recover from Hartford amounts it expended in defending Carson Madrona in the Underlying Lawsuit, including appellate counsel fees of $352,686.77, costs awarded against Carson Madrona of $238,582.00 and post-judgment interest which Ohio Security paid on behalf of Carson Madrona.

Issue No. 2:  Partial Summary Judgment ruling that Carson Madrona qualifies as an additional insured under the Ace Commercial Umbrella Liability Policy with Policy number G2793742500 001 effective from January 1, 2016 to January 1, 2017 to Ashley Furniture (the "Ace Policy"). This legal determination is an element of Ohio Security and American Fire's Third and Fourth Causes of Action for Declaratory Relief regarding Ace's duty to indemnify Carson Madrona, as well as Ace's ninth affirmative defense [Docket 36] that no party in this dispute qualifies as an

insured under its policy.

Issue No. 3:  Partial Summary Judgment in connection with the priority of coverage available to Carson Madrona in connection with the Underlying Lawsuit. Ohio Security and American Fire specifically seek partial summary judgment establishing the following priority of coverage with respect to Carson Madrona: first, the Hartford Policy applies as respects the duty to defend and indemnify; second, Ohio Security policy with policy no. BLS (16) 56862638 effective from August 31, 2015 to August 31, 2016 issued to Carson Madrona (the "Ohio Security Policy"); third, the Ace Policy; and last, American Fire policy with policy no. ESA 56862638 effective from August 31, 2015 to August 31, 2016 issued to Carson Madrona (the "American Fire Policy"). The requested legal determination is part of Ohio Security and American Fire's First through Seventh Claims for Relief as well as Ace's eleventh affirmative defense wherein Ace claims that its policy is excess over the relevant policies.

This Motion based upon this Notice; the concurrently filed Memorandum of Points and Authorities, the Joint Index and Compendium of Evidence, Declarations of Danica Lam and Marianne Coassalter, and Request for Judicial Notice, all pleadings and records on file with the Court in this action, such other matters of which this Court may take judicial notice, and other argument or evidence as may be presented at the time of the hearing.

DATED:  January 2, 2025                    MUSICK, PEELER & GARRETT LLP


By: _____
     Lawrence A. Tabb
     Danica Lam
     Attorneys for Defendants and Counterclaimants
     OHIO SECURITY INSURANCE COMPANY
     and AMERICAN FIRE AND CASUALTY
     COMPANY

MUSICK, PEELER
& GARRETT LLP

3507698.1                    3                    Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE
OF MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION PURSUANT TO LOCAL RULE 7.2) ........................................................2

I.    INTRODUCTION/STATEMENT OF ISSUES ..................................................................4

II.   STATEMENT OF PERTINENT FACTS .........................................................................5

    A.    THE LEASE AGREEMENT .................................................................................5

    B.    THE POLICIES OF INSURANCE ........................................................................6

        1.    The Hartford Policy Issued to Indemnitor Ashley Furniture .......................6

        2.    The Ace Policy Issued to Indemnitor Ashley Furniture................................7

        3.    The Ohio Security Policy Issued to Indemnitee Carson Madrona ................8

        4.    The American Fire Policy Issued to Indemnitee Carson Madrona ................9

    C.    THE UNDERLYING LAWSUIT .........................................................................10

        1.    Liability Alleged in the Underlying Lawsuit ............................................10

        2.    Defense of the Underlying Lawsuit ...........................................................12

        3.    Verdict and Judgment  in the Underlying Lawsuit .....................................13

        4.    Hartford's Withdrawal of Defense; Ace's Inaction ...................................14

        5.    The Appeal ................................................................................................14

        6.    Settlement of the Underlying Lawsuit ........................................................14

III.  Legal Standards for Summary Judgment/Partial Summary JudgmenT ...........................14

    A.    THE PARTIES' RESPECTIVE BURDENS OF PROOF .......................................14

    B.    INSURANCE POLICY INTERPRETATION IN CALIFORNIA .........................15

IV.   LEGAL ARGUMENTS ................................................................................................16

    A.    HARTFORD OWED CARSON MADRONA A DUTY TO DEFEND, AND HARTFORD BREACHED THIS DUTY .......................................................16

        1.    The Duty to Defend in California ..............................................................16

        2.    Hartford's Continued Duty to Defend After the Verdict ............................16

        3.    Ohio Security is Entitled to Recover Amounts Paid in Defense Fees and Costs ..................................................................................................20

            (a)    Defense Fees ..................................................................................20

(b)     Costs Awarded to The Perezes ........................................................20

(c)     Ohio Security is Entitled to Post Judgment Interest It Paid
On Behalf of Carson Madrona ........................................................21

B.     CARSON MADRONA IS AN ADDITIONAL INSURED UNDER THE
ACE POLICY ................................................................................................21

C.     PRIORITY OF COVERAGE.........................................................................22

1.     Hartford provides Primary Coverage to Carson............................22

2.     Ohio Security Provides the Second Level of Coverage ................23

3.     The Ace Policy Provides the Third Layer of Coverage ................24

V.     CONCLUSION ........................................................................................................25

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Acceptance Ins. Co. v. Syufy Enterprises,*
5
    69 Cal.App.4th 321 (1999) (*Syufy*) ....................................................................... 19

6

*Aerojet-Gen Corp. v. Superior Court,*
    17 Cal.4th 38 (1997)...................................................................................................... 16
7

*American Casualty Co. v. General Star Indem. Co.,*
8
    125 Cal.App.4th 1510 (2005)....................................................................................... 17

9

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...................................................................................................... 15
10

11

*Bank of the West v. Superior Court,*
    2 Cal.4th 1254 (1992) .................................................................................................... 15
12

*Celotex Corp. v. Catrett,*
13
    477 U.S. 317 (1986) ...................................................................................................... 15

14

*Community Redevelopment Agency v. Aetna Casualty & Surety Co.*
15
    (1996) 50 Cal.App.4th 329 ........................................................................................... 23

16

*Congleton v. National Union Fire Ins. Co.,*
    189 Cal.App.3d 51 (1987) ............................................................................................ 15
17

*Gunderson v. Fire Ins. Exchange, Inc.,*
18
    37 Cal.App.4th 1006 (1995)......................................................................................... 16

19

*Hansen v. United States,*
    7 F.3d 137 (9th Cir. 1993) ............................................................................................ 15
20

21

*Hartford Casualty Ins. Co. v. Travelers Indemn. Co.,*
    110 Cal.App.4th 710 (1002)................................................................................... 18, 19
22

*Horace Mann Ins. Co. v. Barbara B.,*
23
    4 Cal.4th 1076 (1993) .................................................................................................... 16

24

*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.,*
    9 Cal.4th 27 (1994) ....................................................................................................... 16
25

26

*Montrose Chemical Corp. v. Superior Court,*
    6 Cal.4th 287 (1993) ...................................................................................................... 16
27

*Padilla Construction Co., Inc. v. Transportation Ins. Co.*
28
    (2007) 150 Cal.App.4th 984 ......................................................................................... 23

*Prichard v. Liberty Mutual Ins. Co.*,
   84 Cal.App.4th 890 (2000) (*Prichard* ) .................................................................. 21

*Reliance National Indem. Co. v. General Star Indem. Co.*,
   72 Cal.App.4th 1063 (1999) ................................................................................ 22, 24

*Rossmoor Sanitation v. Pylon, Inc.*,
   13 Cal.3d 622 – 626 (1975) ...................................................................... 22, 23, 24, 25

*SDR Capital Management, Inc. v American Int'l Specialty Lines Ins. Co.*,
   320 F.Supp.2d 1043 (S.D. Cal. 2004) ........................................................................ 15

*State Farm General Ins. Co. v. Mintarsih*,
   175 Cal.App.4th 274 (2009) ....................................................................................... 21

*Truck Ins. Exch. v. AMCO Ins. Co.*,
   56 Cal.App.5th 619 (2020) .................................................................................... 17, 18

*Vitton Constr. Co. v. Pac. Ins. Co.*,
   110 Cal.App.4th 762 (2003) ........................................................................................ 17

*Waller v. Truck Ins. Exchange, Inc.*,
   11 Cal.4th 1 (1995) ............................................................................................... 15, 18

**Statutes**

California Code of Civil Procedure §§ 685.010, 685.020(a) ......................................... 21

**Other Authorities**

Cal. Const., art. XV, §1 ...................................................................................................... 21

FRCP Rule 56 ...................................................................................................................... 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION/STATEMENT OF ISSUES

This is an insurance coverage dispute whereby Hartford and Ace breached their duty to defend and indemnify their additional insured Carson Madrona in connection with David and Donna Perez's claims of negligence and premises liability asserted in the Underlying Lawsuit.

The Underlying Lawsuit arises from injuries suffered by David Perez when he was electrocuted at a warehouse leased and controlled by Ashley Furniture, Hartford and Ace's named insured. Ashley Furniture leased the subject warehouse from Carson Madrona and agreed to defend and indemnify Carson Madrona for liability arising from its use of the warehouse. When Perez filed the Underlying Lawsuit, Hartford agreed to and did defend Carson Madrona; however, after the jury returned a $25,500,000 judgment against Carson Madrona, Hartford disclaimed coverage and withdrew its defense.

After Hartford abandoned Carson Madrona, Ohio Security and American Fire, which issued policies of insurance to Carson Madrona, stepped in to protect Carson Madrona' interests by funding the appeal and contributing to resolve the Underlying Lawsuit.  Ohio Security and American Fire now respectfully request this court to grant the instant motion for partial summary judgment and establish the following:

*First*, Hartford had a continuing duty to defend Carson Madrona in the Underlying Lawsuit even after the jury returned its verdict, that Hartford breached this duty, and that Ohio Security is entitled to recover amounts from Hartford which it paid on Carson Madrona's behalf in connection with the defense of the Underlying Lawsuit;

*Second*, Carson Madrona is an additional insured under the Ace Policy;

*Third*, the proper priority of coverage with regard to the coverage afforded to Carson Madrona for the Underlying Lawsuit is as follows: (1) Hartford Policy, (2) Ohio Security Policy, (3) Ace Policy and (4) American Fire Policy.

California law and the relevant policies support granting Ohio Security and American Fire's motion, and fairness and equity demand it.

## II.    STATEMENT OF PERTINENT FACTS

### A.    THE LEASE AGREEMENT

On January 17, 2012, Carson Madrona entered into a lease ("Lease") of its warehouse located at 6195 Coliseum Way, Oakland, California ("Warehouse"), with Warehouse and Delivery Solutions, Inc. dba Ashley Furniture ("WDS").  (Declaration of Marianne Cossalter ("Cossalter Decl."), ¶ 5; Declaration of Danica Lam ("Lam Decl."), ¶ 4; Joint Index and Compendium of Evidence ("Joint Index"), Exh. 4, p. Hartford_006274 - 75 [Joint Index 00124-125].[1]) WDS's rights under the Lease were then subsequently assigned to Stoneledge Furniture, LLC dba Ashley Furniture Homestore ("Stoneledge") through an Asset Purchase Agreement. (*Id*.; Exh. 5, p. Hartford_006157 [Joint Index 00162].)  (WDS, Stoneledge, and Ashley Furniture Industries, Inc. are collectively referred to as "Ashley Furniture".)

Under the Lease, Ashley Furniture was required to:

• Maintain "electrical systems to the extent located within the [Warehouse]" (Article 6 – Repairs and Maintenance); (*Id*., Exh. 4, p. Hartford_006285 [Joint Index 00135].)

• Defend and indemnify Carson Madrona for any claim "***arising out of or in any way connected with***, and Landlord shall not be liable to Tenant on account of (a) ***Tenant's use*** of the Premises; (b) the conduct of Tenant's business or anything else done or permitted by Tenant to be done in or about the Premises…" (Article 18 – Indemnification and Liability) (*Id*., Exh. 4, p. Hartford_006293 [Joint Index 00143]) (emphasis added); and

• Obtain liability insurance for "any and all liability for personal injury … arising out of the operations, maintenance, ***use or occupancy*** of the [Warehouse]," which insurance must be ***"primary and noncontributing*** (meaning that Landlord may look solely to the insurance provided hereunder with respect to a covered claim and shall not be required to make a claim under any other insurance

---

[1] All exhibits referenced in these points and authorities are attached to the concurrently filed Joint Index, and authenticated through the Declarations of Marianne Cossalter and Danica Lam. The documents with the Bates Stamp prefixes "Hartford", "Ace" or "Ohio Security – American Fire" (found in the right bottom corner of each document) were produced by Hartford, Ace, Ohio Security/American Fire respectively during this litigation.  For ease of the court's review, moving parties added the Bates stamped with the prefix "Joint Index" on the right top corner of each document.  Parenthetical reference included in these Points and Authorities refer to this Bates Numbering.

1    Landlord may have)" (Article 23 – Liability Insurance).  (*Id.*, Exh. 4, p. Hartford_006295 - 96 [Joint

2    Index 00145 - 146].) (emphasis added).

B.    **THE POLICIES OF INSURANCE**

1.    ***The Hartford Policy Issued to Indemnitor Ashley Furniture***

5    Hartford issued general liability policy no. 41 CSE S30502 effective from January 1, 2016

6    to January 1, 2017 to Ashley Furniture (the "Hartford Policy"). (Coassalter Decl., ¶6; Lam Decl.,

7    ¶6, Joint Index, Exh. 7, p. Hartford_006171 [Joint Index 00180].)  The Hartford Policy is subject to

8    a $2 million per occurrence limit and a $4 million general aggregate limit.  (*Id.*, Exh. 7, p.

9    Hartford_006172 [Joint Index 00181].) Carson Madrona is an additional insured under the Hartford

10   Policy.  (Coassalter Decl., ¶6; Joint Index, Exh. 18, p. Ohio Security-American 00185 [Joint Index

11   00465].)  The Hartford Policy's Insuring Agreement provides in pertinent parts:

12   SECTION I – COVERAGES

13   COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

14   1. Insuring Agreement

15   a. We will pay those sums that the insured becomes legally obligated to pay as
     damages because of "bodily injury" or "property damage" to which this insurance
16   applies. We will have the right and duty to defend the insured against any "suit"
     seeking those damages.

18   (Coassalter Decl., ¶6; Lam Decl., ¶6, Joint Index, Exh. 7, p. Hartford_006178,  [Joint Index
     00187].)

20   The Hartford Policy states, in part, under Section II – WHO IS AN INSURED,

21   (6) Additional Insureds When Required By Written Contract, Written Agreement
     or Permit

22   The following person(s) or organization(s) are an additional insured when you have
23   agreed, in a written contract, written agreement or because of a permit issued by a
     state or political subdivision, that such person or organization be added as an
24   additional insured on your policy, provided the injury or damage occurs subsequent
     to the execution of the contract or agreement.

25                                              ***

26   (c) Lessors of Land or Premises ("Lessors of Land provision"): Any person or
27   organization from whom [Ashely Furniture] lease[s] land or premises, but only with
     respect to liability arising out of the ownership, maintenance or use of that part of
28   the land or premises leased to [Ashley Furniture].

MUSICK, PEELER
& GARRETT LLP

3507698.1                                        6                         Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE
OF MOTION FOR PARTIAL SUMMARY JUDGMENT

(Coassalter Decl., ¶6; Lam Decl., ¶6, Joint Index, Exh. 7, p. Hartford_006186 -88, [Joint Index 00195 - 197].)

Additionally, the Hartford Policy's Supplementary Payment Provisions provides:

SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

\*\*\*

c. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

\*\*\*

e. All costs taxed against the insured in the "suit"

\*\*\*

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

(Coassalter Decl., ¶6; Lam Decl., ¶6, Joint Index, Exh. 7, p. Hartford_006185 [Joint Index 00194].)

### 2. _The Ace Policy Issued to Indemnitor Ashley Furniture_

Ace issued a Commercial Umbrella Liability Policy with Policy number G2793742500 001 effective from January 1, 2016 to January 1, 2017 to Ashley Furniture (the "Ace Policy"). (Coassalter Decl., ¶11; Lam Decl., ¶9, Joint Index, Exh. 12, p. ACE004949 [Joint Index 00313].) The Ace Policy identifies the Hartford Policy as an underlying insurance to the Ace Policy. (_Id._, p. ACE004952 [Joint Index 00316].) The Ace Policy is subject to $25,000,000 per occurrence limit and a $25,000,000 million general aggregate limit. (_Id._, p. ACE004949 [Joint Index 00313].)

The Ace Policy provides:

We the Company named in the Declarations, relying upon statements shown on the Declarations page and in the schedule of the "underlying insurance" attached to this policy, and in return for the payment of premium and subject to its terms, conditions and limits of insurance of this policy, agree with you as follows:

I.  Insuring Agreement.

A.  We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal injury" to which this insurance applies.
(Coassalter Decl., ¶11; Lam Decl., ¶9, Joint Index, Exh. 12, p. ACE004957 [Joint Index 00321])

The Ace Policy provides, that each of the following is an "insured": "Any person or organization, if insured under "underlying insurance", provided that coverage provided by this policy for any such insured will be no broader than coverage provided by "underlying insurance". (*Id.*, Joint Index, Exh. 12, pp. ACE004958 - 59 [Joint Index 00322 - 323].)

The Ace Policy's Section III, Defense and Supplementary Payments provision:

A.  We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies.

1.  When damages sought would be covered by "underlying insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy;

(*Id.*, Joint Index, Exh. 12, p. ACE004959 [Joint Index 00323].)

The Ace Policy states, in part, under Section VI, Conditions provision:

***

J.  Other Insurance

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance". This provision will not apply if the "other insurance" is written to be excess of this policy.

(*Id.*, Joint Index, Exh. 12, p. ACE004970 [Joint Index 00334].)

### 3.    *The Ohio Security Policy Issued to Indemnitee Carson Madrona*

Ohio Security issued policy no. BLS (16) 56862638 to Carson Madrona effective from August 31, 2015 to August 31, 2016 (the "Ohio Security Policy"). (Coassalter Decl., ¶4; Joint Index, Exh. 2, p. Ohio Security-American Fire 00010 [Joint Index 00035.]) The Ohio Security Policy is subject to a $1 million per occurrence limit and a $2 million general aggregate limit. (*Id.*, p. Ohio Security-American Fire 00012 [Joint Index 00037.])

MUSICK, PEELER & GARRETT LLP

3507698.1                                    8                    Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT

The Ohio Security Policy's Insuring Agreement provides in pertinent parts:

SECTION I - COVERAGES

COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Coassalter Decl., ¶4; Joint Index, Exh. 2, p. Ohio Security-American Fire 00016 [Joint Index 00041].)

The Ohio Security Policy provides in Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance, b. Excess Insurance, the Ohio Security Policy states, in part, that the Ohio Security Policy is excess over:

Any other primary insurance available to [Carson Madrona] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(*Id*.; Joint Index, Exh. 2, pp. Ohio Security-American Fire 00027 - 28 [Joint Index 00052 - 53].)

The Ohio Security Policy's provision for SUPPLEMENTARY PAYMENTS - COVERAGES A AND B provides:

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
                                  ***
c. The cost of bonds to release attachments but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
                                  ***
e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.
                                  ***
g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

(*Id*.; Joint Index, Exh. 2, p. Ohio Security-American Fire 00024 [Joint Index 00049.])

### 4.    *The American Fire Policy Issued to Indemnitee Carson Madrona*

American Fire issued policy no. ESA 56862638 to Carson Madrona effective from August

31, 2015 to August 31, 2016 (the "American Fire Policy"). (Coassalter Decl., ¶4; Joint Index, Exh. 3, p. Ohio Security-American Fire 00073 [Joint Index 00099].)  The American Fire Policy is subject to a $10,000,000 per occurrence limit and a $10,000,000 general aggregate limit.  (*Ibid.*)

The American Fire Policy provides in pertinent parts:

I.  COVERAGE

We will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item 5. of the Declarations, subject to INSURING AGREEMENT Section II., Limits of Insurance. Except for the terms, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the "first underlying insurance."

***

II.    LIMITS OF INSURANCE

4.  Subject to Paragraphs B.2. and B.3. above, if the "Underlying Limits of Insurance" described in Item 5. of the Declarations are either reduced or exhausted solely by payment of "loss," such insurance provided by this policy will apply in excess of the reduced underlying limit or, if all underlying limits are exhausted, will apply as "underlying insurance" subject to the same terms, conditions, definitions and exclusions of the "first underlying insurance," except for the terms, conditions, definitions and exclusions of this policy.

(Coassalter Decl., ¶4; Joint Index, Exh. 3, p. Ohio Security-American Fire 00078 [Joint Index 00104].)

The American Fire Policy provides in pertinent parts:

VI. CONDITIONS

I. Other Insurance

If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

Other insurance includes any type of self- insurance or other mechanism by which an Insured arranges for funding of legal liabilities.
(*Id.*, ¶4; Joint Index, Exh. 3, p. Ohio Security-American Fire 00082 [Joint Index 00108].)

C.    **THE UNDERLYING LAWSUIT**

1.    ***Liability Alleged in the Underlying Lawsuit***

On April 24, 2017, Gary Mountain filed the Underlying Lawsuit.  (Coassalter Decl., ¶2.)  On May 9, 2018, David Perez and Donna Perez ("Perezes") filed a Cross-Complaint against Carson

MUSICK, PEELER & GARRETT LLP

3507698.1                                                10                          Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Madrona as well as James L. Krasne as Trustee of The Guilford Glazer Trust of 1984 and The Diane Pregerson Glazer Survivor's Trust dba SanOak Management ("SanOak") in the Underlying Lawsuit. (Lam Decl., ¶3; Coassalter Decl., ¶4; Joint Index, Exh. 1, p. ACE000816 [Joint Index 00003]; See also Request for Judicial Notice ("RJN").)

The Underlying lawsuit arose out of the incident at the Warehouse on May 17, 2016 whereby power went out in the section of the Warehouse rented by Ashley Furniture ("Incident"). (*Id*., Exh. 1, p. ACE000822 [Joint Index 00008].) On that day, Mr., Mountain, an employee of Ashley Furniture called David Perez for service call at the Warehouse. (*Id*., Exh. 1 p. ACE000823 [Joint Index 00009].) Perez arrived on the same day to perform the requested repairs. (*Ibid.*) During the repair, Perez suffered burn injuries as a result of an arc flash incident which occurred at the distribution panel. (*Id*., Exh. 1, p. ACE000824 [Joint Index 00010].)

Perez alleged that Ashley Furniture and Carson Madrona failed to maintain the "electrical power distribution system and equipment at the Warehouse and that they "knew or should have known of the electrical distribution system in the Premises to be prone to unexpected arcing "… and the hidden dangers it presented for causing electrical injury." (*Id*., Joint Index, Exh. 1, pp. ACE000825, 826, 830, [Joint Index 00012, 16]) Perez alleged that he suffered physical injuries due to this incident and Donna Perez alleged that she suffered loss of consortium. (*Id*., p. ACE000832 [Joint Index 00018].)

In the Perezes' trial brief in the Underlying Lawsuit, the Perezes claimed that Mr. Mountain worked for Ashley Furniture. (Lam Decl., ¶11; Joint Index, Exh. 14, pp. ACE000893 [Joint Index 00397]) In the afternoon of May 17, 2016, Mr. Mountain noticed flickering lights in the Ashley Furniture warehouse and store area. (*Ibid*.) Mr. Mountain on behalf of his employer telephoned Mr. Perez. (*Ibid*.)

When Mr. Perez arrived, Mr. Mountain showed him the electrical room within Ashley Furniture's premises. (Lam Decl., ¶10; Joint Index, Exh. 14, pp. ACE000893 [Joint Index00397].) Perez checked the panels and electrical equipment there, and found issues with the power supply. (*Ibid*.) He turned off all the equipment so that there would be no loads on the main electrical supply. (*Ibid*.) He then asked to see the building's Main Distribution Panel ("MDP"). (*Ibid*.) This MDP

1  supplied power to Ashley Furniture's premises.  (*Id.,* Exh. 14, pp. ACE000905 [Joint Index00409]

2  )  Mr. Mountain escorted Mr. Perez to the MDP.  (*Id.,* Joint Index, Exh. 14, pp. ACE000893 [Joint

3  Index00397].)   At the MDP, Mr. Perez checked the source of the supply to Ashley Furniture

4  premises. (*Ibid.*)  There, PEREZ discovered a blown fuse in the pullout safety switch that supplied

5  the Ashley Furniture units, which explained the loss of power that he'd been called to address.

6  (*Ibid.*)  When PEREZ changed the fuse, the explosion occurred.  (*Ibid.*)

7          The MDP was the property's centralized source of electrical power to all tenant spaces.

8  (Lam Decl., ¶11; Joint Index, Exh. 14, pp. ACE000894 [Joint Index 00398].)  It housed a dedicated

9  pullout safety switch and corresponding meter for each tenant's leased space.  (*Ibid.*)  There were

10  five such switches in the MDP, all manufactured by Boltswitch.  (*Ibid.*)  Although identical in

11  appearance to the others, the Boltswitch pullout safety switch supplying power to the Ashley

12  Furniture's occupied units was the wrong voltage rating for the MDP.  (*Ibid.*)

13          The Perezes contended in their trial brief that the responsibility for common area

14  maintenance was sometimes shared jointly by Ashley Furniture and the landlord.  (Lam Decl., ¶11;

15  Joint Index, Exh. 14, pp. ACE000908 [Joint Index 00411.])  Ashley Furniture's shared use and

16  control over its electrical supply source in the MDP was required by law. Pursuant to the National

17  Electrical Code, tenants must have "continuous access" to "overcurrent devices" *at all times*,

18  meaning Ashley Furniture had to have 24/7 access to the MDP's Boltswitch that supplied power to

19  its units.  (*Ibid.*)  Thus, throughout the course of the Underlying Lawsuit, the Perezes maintained

20  that Ashley Furniture is both directly liable and vicariously liable for the alleged failures to inspect,

21  maintain, and correct the MDP.  (*Ibid.*)

22              **2.       *Defense of the Underlying Lawsuit***

23          On August 29, 2016, May 12, 2017, and September 21, 2017, Ohio Security tendered

24  Carson Madrona's defense and indemnity to Ashley Furniture/Hartford pursuant to the Lease and

25  on the basis that Carson Madrona qualified as an additional insured pursuant to the broad defense,

26  indemnity, and insurance obligations in the Hartford Policy's Lessors of Land provision and that

27  the Hartford policy was primary.  (Coassalter Decl., ¶ 5; Joint Index, Exh. 6, pp. Ohio Security –

28  American Fire 00167 – 168  [Joint Index 00168 – 169]; Exh. 17, pp. Ohio Security – American

1 Fire 00171 – 00173 [Joint Index 00461 - 00463].)  On March 20, 2020, Hartford issued its

2 reservation of rights agreeing to defend Carson Madrona, specifically acknowledging Carson

3 Madrona was an additional insured under the Hartford Policy's Lessors of Land provision. . (*Id*. ¶

4 7, Joint Index, Exh. 8, pp. Ohio Security-American Fire 00106 – 00112 [Joint Index 00284 – 290].)

5 Once again on September 20, 2022, Hartford confirmed that Carson Madrona is an additional

6 insured under the Hartford Policy with regard to liability "out of the ownership, maintenance or

7 use of that part of the land or premises leased to" Ashley Furniture.  (*Id*. ¶ 8, Joint Index, Exh. 9,

8 p. Hartford 005046 [Joint Index 00294].)

9 ### 3.    *Verdict and Judgment  in the Underlying Lawsuit*

10 On July 10, 2023, a verdict was returned in the Underlying Lawsuit.  (Coassalter Decl., ¶ 9;

11 Joint Index, Exh. 10, p. ACE004925 [Joint Index 00303].) The jury verdict found that Carson

12 Madrona was negligent and a substantial factor in causing harm to David Perez.  (*Id*., pp.

13 ACE004925 – 4926 [Joint Index 00303 - 304].)  The jury also found that Ashley Furniture was

14 negligent but did not find that it was a substantial factor in causing harm to David Perez.  (*Id*., p.

15 ACE004926 – 4927 [Joint Index 00305.])

16 The jury allocated 50% of responsibility to Carson Madrona, and 50% to SanOak.[2]

17 (Coassalter Decl., ¶ 9; Joint Index, Exh. 10, p. ACE004927 [Joint Index 00305].) The jury awarded

18 David Perez $20,500,000.00 in damages comprised of past economic damages of $7,000,000 and

19 future non-economic damages of $13,500,000.  (*Id*., p. ACE004928 [Joint Index 00306].)  The jury

20 awarded Donna Perez $5,000,000.00 for her loss of consortium claim.  (*Ibid*.)

21 A judgment was entered on August 7, 2023.  (Coassalter Decl., ¶ 9; Joint Index, Exh. 10, p.

22 ACE004920 [Joint Index 00298.]) Subsequently, the Perezes filed a memorandum of costs in the

23 Underlying Lawsuit and sought $238,582.00 in costs excluding prejudgment interests.  (Lam Decl.,

24 ¶ 12; Joint Index, Exh. 15, please see RJN [Joint Index 00417].)  On November 9, 2023, the Court

25 denied Carson Madrona's motion to tax these costs and awarded the Perezes the full $238,582 in

26 costs.  (*Id*., ¶ 13; Joint Index, Exh. 16, [Joint Index 00454].)

28 [2] Moving parties acknowledge that SanOak is not an insured under either the Hartford or Ace policies and the subject of this motion relates exclusively to Hartford and Ace's duty to defend and indemnify Carson Madrona.

#### 4. *Hartford's Withdrawal of Defense; Ace's Inaction*

On September 11, 2023, following the verdict and judgment in the Underlying Lawsuit, Hartford, through its counsel informed Ohio Security that it was l withdrawing its defense of Carson Madrona and denied it owed any indemnity obligations. (Coassalter Decl., ¶ 10; Joint Index, Exh. 11, pp. Ohio Security-American Fire 00221 [Joint Index 00310].) Hartford stated "it has no continuing defense obligation and no indemnity obligation to Carson in this matter and that it is incumbent upon Ohio Security to step in to protect its named insured." (*Ibid*.)

The Underlying Lawsuit was also tendered to Ace. (Coassalter Decl., ¶ 11.) After judgment was entered against Carson Madrona in the Underlying Lawsuit, both Ohio Security and Carson Madrona requested that Ace contribute to fund Carson Madrona's appeal bond. (*Id*., ¶ 12.) Ace did not respond to the request, nor did it contribute to the funding of the appeal bond. (*Ibid*.) .

#### 5. *The Appeal*

Carson Madrona timely filed an appeal in connection with the judgment in the Action with the 1st Appellate District of California bearing Court of Appeal Case Number A169103 ("Appeal"). (Coassalter Decl., ¶ 13; Joint Index, Exh. 13, See RJN [Joint Index 00391].) In light of Hartford and Ace's positions and/or inactions, Ohio Security stepped in and funded the prosecution of the Appeal on behalf of Carson Madrona under the Ohio Security Policy, and incurred $352,686.77 in attorney's fees in connection with the Appeal. (Coassalter Decl., ¶ 14.) Additionally, Ohio Security and American Fire, along with Carson Madrona bonded the Appeal. (Coassalter Decl., ¶ 15.)

#### 6. *Settlement of the Underlying Lawsuit*

On August 13, 2024, Ohio Security and American Fire offered to pay their combined policy limits. (Coassalter Decl., ¶16; Lam Decl., ¶14, Joint Index, Exh. 19 [Joint Index 00467].)   On September 30, 2024, Carson Madrona reached a settlement with the Perezes in the Underlying Lawsuit (the "Settlement"). (Coassalter Decl., ¶ 16.)  Carson Madrona together with Ohio Security and American Fire funded the Settlement without any contribution from Hartford or Ace. (*Ibid*.)

### III.   LEGAL STANDARDS FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

#### A.    THE PARTIES' RESPECTIVE BURDENS OF PROOF

MUSICK, PEELER & GARRETT LLP

3507698.1                                          14                        Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Rule 56(a) of the <u>FRCP</u> provides that "A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Under Rules 56(b) and (c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A genuine issue is one in which the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. *Id*. Where the moving party does not have the burden of proof at trial on a dispositive issue, the moving party may meet its burden for summary judgment by showing an "absence of evidence" to support the non-moving party's case. *Celotex*, *supra*, 477 U.S. 317 at 325.

The non-moving party, on the other hand, is required by Rule 56(e) to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id*. at 324. It cannot rely on conclusory allegations unsupported by factual data to create a triable issue of fact so as to preclude summary judgment. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993), citing *Marks v. Department of Justice*, 578 F.2d 261, 263 (9th Cir. 1978). A non-moving party who has the burden of proof at trial must present enough evidence that a "fair-minded jury could return a verdict for the [opposing party] on the evidence presented." *Anderson*, *supra*, 477 U.S. 242 at 255.

### B.    <u>INSURANCE POLICY INTERPRETATION IN CALIFORNIA</u>

In a diversity action, the Court is required to apply state law in interpreting a policy. *SDR Capital Management, Inc. v American Int'l Specialty Lines Ins. Co*., 320 F.Supp.2d 1043, 1046 (S.D. Cal. 2004). The interpretation of an insurance policy "is a legal rather than a factual determination." *Congleton v. National Union Fire Ins. Co*., 189 Cal.App.3d 51, 59 (1987); see also, *Waller v. Truck Ins. Exchange, Inc*., 11 Cal.4th 1, 18 (1995). Although insurance policies have specific features, "they are still contracts to which the ordinary rules of contractual interpretation apply. . . . If contractual language is clear and explicit, it governs." *Bank of the West v. Superior*

MUSICK, PEELER
& GARRETT LLP

3507698.1                                    15                          Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE
OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    *Court*, 2 Cal.4th 1254, 1264 (1992).   In interpreting insurance contracts, a court must not

2    manufacture strained constructions of policy language to impose upon an insurer a liability it has

3    not agreed to assume.  *Gunderson v. Fire Ins. Exchange, Inc*., 37 Cal.App.4th 1006, 1118 (1995).

4    **IV.    LEGAL ARGUMENTS**

5        **A.  HARTFORD OWED CARSON MADRONA A DUTY TO DEFEND, AND
             HARTFORD BREACHED THIS DUTY**

6        **1.    *The Duty to Defend in California***

7

8        "It is by now a familiar principle that a liability insurer owes a broad duty to defend its

9    insured against claims that create a potential for indemnity. [Citation.]" *Horace Mann Ins. Co. v.*

10   *Barbara B.*, 4 Cal.4th 1076, 1081, (1993). "[T]he test is whether the *underlying action for which*

11   *defense and indemnity is sought* potentially seeks relief within the coverage of the policy." *La Jolla*

12   *Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal.4th 27, 44 (1994) "In other words, the

13   insured need only show that the underlying claim *may* fall within policy coverage; the insurer must

14   prove it *cannot*." *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 300 (1993).

15       The duty to defend is "discharged when the action is concluded" or the policy is exhausted."

16   *Aerojet-Gen Corp. v. Superior Court*, 17 Cal.4th 38, 58 (1997).  "Once the defense duty attaches,

17   the insurer is obligated to defend against all of the claims involved in the action, both covered and

18   noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific

19   portion of the defense costs to a noncovered claim. [Citations.] ... Any doubt as to whether the facts

20   give rise to a duty to defend is resolved in the insured's favor. [Citation.]" *Horace Mann*, *supra*, 4

21   Cal.4th at p. 1081.

22       **2.    *Hartford's Continued Duty to Defend After the Verdict***

23       Hartford withdrew its defense of Carson Madrona after the verdict was entered in the

24   Underlying Lawsuit, claiming, among other things, that because the jury did not award damages

25   against Hartford's named insured Ashley Furniture, it no longer had a duty to defend Carson

26   Madrona.  (Coassalter Decl., ¶ 10; Joint Index, Exh. 11, pp. Ohio Security-American Fire 00221

27   [Joint Index 00310.])  This was a breach of its defense duty.

28       Coverage under the Hartford policy for Carson Madrona does not require proof of liability

MUSICK, PEELER
& GARRETT LLP

3507698.1                              16              Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE
OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    on the part of Ashley Furniture[3] to trigger indemnity coverage for Carson Madrona, which is well

2    established under controlling California law.  *Vitton Constr. Co. v. Pac. Ins. Co*., 110 Cal.App.4th

3    762, 767-68 (2003) ("the fact that an accident is not attributable to the named insured's negligence

4    is irrelevant when the additional insured endorsement does not purport to allocate or restrict

5    coverage according to fault"); *Truck Ins. Exch. v. AMCO Ins. Co*., 56 Cal.App.5th 619, 634 (2020)

6    (where tenant's policy named landlord as additional insured "with respect to [the landlords'] liability

7    arising out of [the tenant's] use of the property," coverage applied regardless of tenant's fault);

8    *American Casualty Co. v. General Star Indem. Co*., 125 Cal.App.4th 1510, 1525 (2005) (additional

9    insured was entitled to the "full indemnity and defense benefits promised under the policy" where

10    Additional Insured endorsement covered "liability arising out of [named insured's] operations" even

11    where the additional insured was solely liable).

12          Here, the Lease required Ashley to maintain "electrical systems to the extent located within

13    the [Warehouse]"; and "indemnify, hold harmless and defend" Carson for any claim "arising out of

14    or in any way connected with, and Landlord shall not be liable to Tenant on account of (a) Tenant's

15    use of the Premises.  (Coassalter Decl., ¶ 5; Joint Index, Exh. 4, p. Hartford_006285, 006293, 295

16    – 296 [Joint Index 00135, 143, 145 - 146].) Ashley Furniture's employee called Perez to come to

17    the Premises to do electrical work.  (Coassalter Decl., ¶4; Joint Index, Exh. 1, pp. ACE000817 –

18    830; Exh. 14, pp. ACE000893 - 907 [Joint Index 00003 – 16; 397 - 411].)  Ashley Furniture's use

19    of the Warehouse is the reason as to why Perez was at the Premises where he was injured. (*Ibid*.)

20    The MDP that exploded was supplying power to the Premises for Ashley Furniture's business.

21    (*Ibid*.) There can be no dispute that this conferred additional insured status on  Carson Madrona

22    under the Hartford Policy.   (*Ibid*.)  Indeed, Hartford cannot seriously dispute this issue after

23    acknowledging Carson Madrona was an additional insured and providing a defense up until it

24    wrongfully withdrew the defense.

25          "California courts consistently give a broad interpretation to the terms 'arising out of or

26    'arising from' in various kinds of insurance provisions. It is settled that this language does not import

27

28    _____
[3] We note that the jury did find Ashley negligent in the Underlying Lawsuit but did not award
damages against Ashley.

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE
OF MOTION FOR PARTIAL SUMMARY JUDGMENT

any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event of creating liability, and connotes only a minimal causal connection or incidental relationship." *Truck Ins. Exch. v. AMCO Ins. Co*., 56 Cal.App.5th 619, 630 (2020).   *Truck Ins. Exch. v. AMCO Ins. Co*., *supra*, 56 Cal.App.5th at 630 arises from a dispute between a landlord's insurer and a restaurant tenant's insurer, in connection with a suit brought by two restaurant patrons who were injured when a vehicle crashed through the restaurant.  While the tenant was able to obtain summary judgment in the underlying lawsuit, the landlords could not, with the landlords' insurer thereafter funding a settlement of the underlying lawsuit with the patrons.  *Id*. at 622.  There the tenant's insurance covered the landlord's liability tied to the tenant's "use of that part of the premises leased to [tenant].'"  *Id*. at p. 625. The court held that the tenant's coverage applied because the tenant's "'use' of the premises was the reason the customers were present when the car accident occurred."  *Id*. at p. 632, citation omitted.  Thus, the Landlord's insurer is entitled to equitable contribution for the settlement funds it paid on behalf of the landlord.

Likewise, here, the jury's decision not to award damages against Ashley Furniture does negate coverage for Carson Madrona under the Hartford Policy just as summary judgment (a finding of no liability) for the tenant in *Truck* did not preclude coverage under the tenant's policy.  It is also worth noting that the jury did find Ashley Furniture negligent.  The defense duty under the Hartford Policy continued despite the verdict.

In *Hartford Casualty Ins. Co. v. Travelers Indemn. Co.,* 110 Cal.App.4th 710 (1002) ("*Hartford Casualty* "), an employee was working after hours in an office building. The employee fell to his death from an exterior deck that was not technically part of his employer's leased premises, but to which tenants had access.  *Id.* at 713.  The landlord qualified as a generic additional insured under the tenant's insurance policy, "but only with respect to" the tenant's work or operations or facilities.  *Id.* at 714.  Despite the fact that this language was *narrower* than the more common "arising out of" phrase which we in this case, *Hartford Casualty* held that the landlord was entitled to coverage as an additional insured.  *Id.* at 720.  The court explained, "the plain commonsense meaning of [the policy] terms, extended coverage to liabilities potentially imposed on [the landlord] that are related to [the tenant's] business presence in [the landlord's] facilities, as well as specific

MUSICK, PEELER
& GARRETT LLP

3507698.1                                              18                          Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE
OF MOTION FOR PARTIAL SUMMARY JUDGMENT

events occurring during the actual performance of [the tenant's] own work or operations." *Id.* To establish coverage as an additional insured in circumstances like these, only "a minimal causal connection or incidental relationship" between the liability and the tenant's presence in the landlords building need be shown. (*Id.* quoting *Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal.App.4th 321 (1999) (*Syufy*).

In *Syufy, supra,* 69 Cal.App.4th 321, a contractor's employee doing work on one of *Syufy's* theaters was injured while using a defective hatch to leave the job site on a personal errand. The employee sued the building owner. The owner, included as an additional insured on the contractor's insurance policy, knew of the defect and had negligently maintained the hatch. The language including the owner as an additional insured stated that coverage was " 'only with respect to liability arising out of'" work performed by the contractor, or on its behalf. Acceptance Insurance Company (AIC), the contractor's insurer, funded a settlement on the owner's behalf for $400,000 after advising that there was potentially no coverage under the additional insured endorsement. AIC then filed an action against the owner and its excess insurer seeking reimbursement. *Id.* at pp. 324–325.

AIC argued that because the employee was not working when he was injured and the defect in the hatch was solely due to Syufy's negligence, there was no coverage under the additional insured endorsement. *Syufy, supra,* 69 Cal.App.4th at p. 326.  In rejecting that claim, the *Syufy* court interpreted the "arising out of" language as establishing a broad "but for" causation test and stated that any connection between the liability and the contractor's operations would trigger the insurer's obligations. *Id.* at pp. 328–329. The court noted that "California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into a policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." *Id.* at p. 328.

Applying a commonsense approach to the facts of the case, the *Syufy* court determined that the relationship between the injury and the work on Syufy's building was more than incidental because the worker had to pass through the hatch to get to the work site. Syufy's own negligence in maintaining the hatch was irrelevant because the policy did not address fault.  *Syufy, supra,* 69

Cal.App.4th at p. 328–329.

Here, Hartford provided a defense to Carson Madrona and acknowledged it as an additional under the Hartford Policy's Lessors of Land Provision, which provides that Carson Madrona is an additional insured "with respect to liability arising out of the ownership, maintenance or use of that part of the land or premises leased to you." (Coassalter Decl., ¶ 5; Joint Index, Exh. 8, pp. Ohio Security-American Fire 00106 – 00112; Exh. 9, p. Hartford 005046 [Joint Index 00284 – 290; 294].) This is consistent with the Lease between Carson Madrona and Ashley Furniture, which requires Ashley Furniture to indemnify the Carson Madrona with regard to "liability ***arising out of or in any way*** connection with, (a) Tenant's use of the Premises; (b) the conduct of Tenant's business or anything else done or permitted by Tenant to be done *in or about the Premises*." (Emphasis provided.) (*Id*., ¶5; Joint Index, Exh. 4, pp. Hartford 006293 [Joint Index 00143].) Applying the above cited authorities to the indemnity provisions of the Lease and the Hartford Policy, Hartford's duty to defend Carson Madrona continued despite the jury verdict as to Ashley.

### 3. *Ohio Security is Entitled to Recover Amounts Paid in Defense Fees and Costs*

#### (a) Defense Fees

As noted, following the verdict, Hartford abandoned its additional insured and breached its ongoing duty to defend. As a result of Hartford's wrongful conduct, Ohio Security was forced to step in and assume Carson Madron's defense, including prosecution of its appeal. (Coassalter Decl., ¶ 14.) From the time of Hartford's September 11, 2023, abandonment to the September 30, 2024, settlement, Ohio Security incurred and paid defense fees in the amount of $352,686.77. (*Ibid*.) Ohio Security is entitled to reimbursement of this amount from Hartford.

#### (b) Costs Awarded to The Perezes

As indicated above, the Hartford Policy's Supplementary Payment Provision requires Hartford to pay all costs taxed against the insured. (Coassalter Decl., ¶6; Lam Decl., ¶6, Joint Index, Exh. 7, p. Hartford_006185 [Joint Index 00194.]) Under California law, the duties provided under a policy's Supplementary Payment Provisions are part of an insurer's defense duty. (This makes sense because otherwise costs would be part of the duty to indemnify which would effectively re-write the policy limit.)

In *Prichard v. Liberty Mutual Ins. Co.*, 84 Cal.App.4th 890, (2000) (*Prichard*), the court addressed a supplemental payments provision for payment of an insured's defense costs that had the same language as the subject policies in the case before us. The *Prichard* court stated the supplementary payments provision "is a function of the defense obligation, not its indemnity obligation." *Id.,* at pp. 911–912. In that case, the insurer *owed* a duty to defend at least one of the claims asserted against its insured. See also *State Farm General Ins. Co. v. Mintarsih*, 175 Cal.App.4th 274, 285–286 (2009).

Ohio Security defended Carson Madrona when Hartford abandoned Carson Madrona's defense. (Coassalter Decl., ¶¶ 14 - 16.) As delineated above, Hartford still had defense obligations to Carson Madrona when it withdrew its defense. Thus, Ohio Security is entitled to recover its payment of costs in the amount of $238,582.00. (Coassalter Decl., ¶¶ 14, 17.)

### (c)  Ohio Security is Entitled to Post Judgment Interest It Paid On Behalf of Carson Madrona

The Supplementary Payments Provision of the Hartford Policy also requires Hartford to pay "all interest on the full amount of any judgment that accrues after entry of the judgment and before [it has] paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance." Pursuant to California Code of Civil Procedure §§ 685.010, 685.020(a) and Cal. Const., art. XV, §1, post-judgment interest accrues on an unpaid judgment at the rate of 10% per year.

As noted, judgment was entered against Carson Madrona on August 7, 2023. Approximately a year later, on August 13, 2024, Ohio Security and American Fire offered to pay their combined policy limits thereby terminating any further responsibility for post-judgment interest. (Coassalter Decl., ¶16; Lam Decl., ¶14, Joint Index, Exh. 19 [Joint Index 00467].) Accordingly, Ohio Security and American Fire are entitled to $1,100,000 in post-judgment interest in connection with Hartford's breach of its duty to defend Carson Madrona. (Coassalter Decl., ¶6, Joint Index, Exh. 7, p. Hartford_006185 [Joint Index 00194].)

### B.  CARSON MADRONA IS AN ADDITIONAL INSURED UNDER THE ACE POLICY

The Ace Policy provides that any person or organization insured under the underlying policy

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT

– Hartford in this instance – is an insured under the Ace Policy.  (Coassalter Decl., ¶¶ 6, 11; Lam Decl., ¶9, Joint Index, Exh. 12, pp. ACE004958 - 59 [Joint Index 00322 - 323], Exh. 18, p. Ohio Security-American 00185 [Joint Index 00465].)  Where there are no express "contrary" provisions with respect to additional insured status, courts have held that an additional insured under the primary policy is also an additional insured under the follow form excess policy.  See e.g., *Reliance National Indem. Co. v. General Star Indem. Co.*, 72 Cal.App.4th 1063 (1999)("*Reliance National*"). It is undisputed that Carson Madrona is an additional insured under the Hartford Policy.  Thus, Carson Madrona is an additional insured under the Ace Policy.

## C.    PRIORITY OF COVERAGE

In connection with the respective carriers' duties to defend and indemnify, Ohio Security and American Fire seek a ruling from this court establishing the following priority of coverage:  the Hartford Policy, the Ohio Security Policy, the Ace Policy, and the American Fire Policy.

### 1. *Hartford provides Primary Coverage to Carson*

In *Rossmoor Sanitation v. Pylon, Inc.*, 13 Cal.3d 622, 625 – 626 (1975), the California Supreme Court addressed the rights and obligations of parties in circumstances similar to the one we have here. A sewage facility contractor had entered into an agreement with the owner of real property, wherein the contractor [indemnitor] agreed to indemnify and hold the owner [indemnitee] harmless for all claims for property damage or personal injury. *Id.* at pp. 625–626. The owner was held liable for the personal injuries and death of employees from a cave-in of an unshored trench. The owner and its insurer sought indemnity from the contractor and its liability insurer. *Id.* at p. 627. The contractor's insurer cross-complained against the owner's insurer seeking apportionment of sums paid under the "other insurance" clauses of the policies. *Ibid.*

The Supreme Court also held that the owner's insurance coverage, provided by a direct insurer, was excess over coverage provided by an additional-insured provision in the contractor's policy. *Rossmoor, supra*, 13 Cal.3d at pp. 633–635.  The Supreme Court viewed "one factor as compelling": "[T]o apportion the loss in this case pursuant to the other insurance clauses would effectively negate the indemnity agreement and impose liability on [the owner's insurer] when [the owner] bargained with [the contractor] to avoid that very result as part of the consideration for the

MUSICK, PEELER
& GARRETT LLP

3507698.1                              22                        Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE
OF MOTION FOR PARTIAL SUMMARY JUDGMENT

construction agreement. We therefore conclude that the rights of indemnity and subrogation must control, and are persuaded the trial court was correct in finding that because the [contractor's insurance policy naming the owner as an additional insured] was part of the consideration for the [contract], it must be viewed as primary insurance under the facts of this case and that [the owner's direct insurer] was subrogated to the rights of [the owner]." *Id.* at pp. 634–635.

The Lease in this case specifically requires that Ashley Furniture indemnify Carson Madrona with regard to liability arising from use of the Warehouse.  (Coassalter Decl., ¶ 5; Joint Index, Exh. 4, p. Hartford_006285, 006293, 6295 - 96  [Joint Index 00135, 143, 145 - 146].)  The Lease also provides that the policy obtained by Ashley Furniture – the Hartford Policy - will be primary and non-contributory meaning that Carson Madrona may look solely to the insurance provided under the lease with respect to a covered claim and shall not be required to make a claim under any other insurance Landlord may have.  (*Ibid.*)  This is consistent with the Hartford's Certificate of Insurance issued to Carson Madrona as well as Ohio Security's Other Insurance Provision – issued to Carson Madrona - providing that it is excess over that of any policy in which its named insured is an additional insured.  (*Id.*, ¶4; Joint Index, Exh. 2, pp. Ohio Security-American Fire 00027 - 28 [Joint Index 00052 - 53]; Exh. 18, p. Ohio Security-American 00185 [Joint Index 00465].)  Thus, pursuant to the Lease's indemnity provision, the Hartford policy and *Rossmoor*, coverage for Carson Madrona afforded under the Hartford Policy is primary over that of the other policies at issue here.

## 2. <u>Ohio Security Provides the Second Level of Coverage</u>

Ohio Security acknowledges that with regard to the duty to indemnify Carson Madrona, its policy attaches before the excess policies issued by Ace and American Fire. With respect to policies on different levels of coverage, California courts require all primary policies to exhaust before any excess policy is triggered. *Padilla Construction Co., Inc. v. Transportation Ins. Co.* (2007) 150 Cal.App.4th 984, 986-87 ("California's rule of 'horizontal exhaustion' in liability insurance law requires all primary insurance to be exhausted before an excess insurer must 'drop down' to defend an insured..."); *Community Redevelopment Agency v. Aetna Casualty & Surety Co*. (1996) 50 Cal.App.4th 329, 339 ("It is settled under California law that an excess or secondary policy does not cover a loss, nor does any duty to defend the insured arise, until *all* of the primary insurance has

MUSICK, PEELER
& GARRETT LLP

3507698.1                                        23                          Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE
OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    been exhausted.") (Emphasis in original).

2    Well-established California authorities apply the horizontal exhaustion rule. *Reliance*

3    *National, supra,* 72 Cal.App.4th at p. 1081. That is, a primary insurer cannot rely on the subrogation

4    rights of its insured to modify the order of exhaustion prescribed by policy language. *Id.* *JPI*

5    *Westcoast Construction, L.P. v. R.IS R & Associates, Inc*. 156 CaI.App.4th 1448, 1463-64 (2007)

6    ("*JPI*") (it is inequitable to reverse the priority of coverage and alter the basic rules of primary and

7    excess coverage based on an insured's agreement with a third party).   Accordingly, the Ohio

8    Security Policy provides the next layer of coverage, after the Hartford Policy.

9                        **3.    *The Ace Policy Provides the Third Layer of Coverage***

10    The *Rossmoor* holding applies to disputes between carriers on the same level of risk i.e.

11    primary versus primary or excess versus excess. *Reliance National, sura,* 72 Cal. App.4th at p.

12    1079; *JPI*, *supra*, 156 Cal.App.4th at pp. 1459 - 1460.   Here, Ace issued an excess policy to the

13    indemnitor Ashley Furniture.   American Fire, on the other hand, issued an excess policy to the

14    indemnitee Carson Madrona.   In *Rossmoor*, because of reasoning detailed above, an indemnitee's

15    insurance coverage, provided by a direct insurer, was held to be excess over coverage provided by

16    an additional-insured provision in the indemnitor's policy. *Rossmoor, supra,* 13 Cal.3d at pp. 633–

17    635.   As applied here, the Ace Policy should provide the next level of coverage to Carson Madrona

18    before the American Fire Policy is implicated.

19    Moreover, application of *JPI* also yields the same result.   In *JPI*, the subcontract between

20    JPI Construction and RJS & Associates included an indemnity provision in favor of JPI, and

21    required RJS to name JPI as an additional insured with respect to its liability policies. *JPI*, *supra*,

22    156 Cal.App.4th at p. 1452.   JPI and RJS each carried a primary general liability policy with $1

23    million in applicable per-occurrence limits, with JPI's policy issued by Transcontinental Insurance

24    Company and RJS's policy issued by Underwriters at Lloyds. *Id*. At p. 1453.   As required by the

25    subcontract, JPI was named as an additional insured on the Lloyds policy.   In addition, RJS carried

26    a $9 million umbrella policy through Agricultural Excess and Surplus, which subsequently became

27    Great American Insurance Company. *Ibid*.

28    Thus, Ohio Security and American Fire are entitled to a declaration that the appropriate

MUSICK, PEELER
& GARRETT LLP

3507698.1                                    24                    Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE
OF MOTION FOR PARTIAL SUMMARY JUDGMENT

priority of coverage is 1) Hartford, 2) Ohio Security; 3) Ace, and 4) American Fire.  During RJS' work, a worker was killed in an accident, and a wrongful death action was filed against JPI, RJS, and others.  *JPI*, *supra*, 156 Cal.App.4th at p. 1453.  Following the verdict, RJS and its insurers entered into negotiations with the claimants, and requested Transcontinental's participation.  Transcontinental refused.  *Id.* at p. 1454.  Accordingly, RJS, Lloyds, and Great American entered into a $4.9 million settlement with the plaintiffs on behalf of RJS and JPI.  *Ibid.*  A coverage action followed, and the trial court granted summary judgment in favor of Great American which the appellate court affirmed providing that after the primary carrier of the indemnitee pays out, then the excess carrier of the indemnitor was obliged to contribute.  *Id.* p. 1457.

Under *JPI*, Ashley Furniture is required to indemnify and procure coverage for Carson Madrona as an additional insured pursuant to the Lease.  Thus, Ashley Furniture's primary policy – the Hartford Policy - provides the first level of coverage.  Subsequently, Carson Madrona's primary policy - Ohio Security Policy - provides the next level.  Ashley Furniture's excess policy – the Ace Policy – would then attach.  Only after the exhaustion of the Hartford Policy, the Ohio Security Policy and the Ace Policy would coverage under Carson Madrona's excess policy – the American Fire Policy – be triggered.

## V.    **CONCLUSION**

Thus, Ohio Security and American Fire respectfully request that the court grant their motion for partial summary judgment.


DATED:  January 2, 2025                MUSICK, PEELER & GARRETT LLP


By: _____
Lawrence A. Tabb
Danica Lam
Attorneys for Defendants and Counterclaimants OHIO SECURITY INSURANCE COMPANY and AMERICAN FIRE AND CASUALTY COMPANY

MUSICK, PEELER & GARRETT LLP

3507698.1                                25                    Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE AND CASUALTY COMPANY'S NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT