JOINT INDEX 00312

# EXHIBIT 12



# Declarations
## ACE Umbrella Plus℠
## Commercial Umbrella Liability Policy

| Policy Symbol:  XOO | Previous Policy Symbol:  XOO |
|---|---|
| Policy Number:  G27937500 001 | Previous Policy Number:  G27637425 |

COVERAGE IS PROVIDED IN THE COMPANY SHOWN BELOW
**ACE Property and Casualty Insurance Company**
436 Walnut Street
Philadelphia, Pennsylvania 19106

| Named Insured and Address | Producer Name and Address |
|---|---|
| Ashley Furniture Industries, Inc.<br>1 Ashley Way<br>Arcadia, Wisconsin 54612 | AON RISK SERVICES CENTRAL INC.<br>200 EAST RANDOLPH STREET, 13TH FLOOR<br>CHICAGO, Illinois 60601<br><br>PRODUCER CODE  174200 |

| Policy Period:   From  01/01/2016  to  01/01/2017 | 12:01 A.M Standard Time at the Address of the Named Insured as stated herein |
|---|---|

### Limits of Insurance

$ 25,000,000  Each Occurrence

$ 25,000,000  General Aggregate

$ 25,000,000  Products Completed-Operations Aggregate     $ 10,000  Self-Insured Retention

### Annual Premium

| REDACTED   Premium | REDACTED   Terrorism Premium included in Annual Premium |
|---|---|

$ 0  [State Surcharge]

REDACTED   Premium, including all Surcharges and Assessments

### Policy Period Premium

| REDACTED   Premium | REDACTED   Terrorism Premium included in Annual Premium |
|---|---|

$ 0  [State Surcharge]

REDACTED   Premium, including all Surcharges and Assessments

### Schedule of Underlying Insurance

Refer to the attached Schedule of Underlying Insurance, which forms a part of this Policy's Declarations.

### Endorsements and Forms

Refer to the attached Schedule of Endorsements for the forms and endorsements forming this policy at inception.

# Schedule of Forms and Endorsements

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| Ashley Furniture Industries, Inc. | XOO G27937500 001 | 01/01/2016 to 01/01/2017 |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
|  | CC-2978b (01/95) | An Important Message to Our Wisconsin Policyholders |
|  | ALL-5X51a (02/06) | Wisconsin Notice to Policyholders |
|  | XS-22695b (01/15) | Declarations ACE Umbrella Plus Commercial Umbrella Liability Policy |
|  | XS-9U57c (01/15) | Schedule of Underlying Insurance |
|  | XS-20835 (08/06) | Commercial Umbrella Liability Policy |
|  | ALL-20887 (10/06) | ACE Producer Compensation Practices and Policies |
|  | XS-28500a (08/13) | ACE Group Specialty Claims Loss Notification Form |
|  | IL P 001 (01/04) | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
|  | XS-22552 (06/07) | Catastrophe Management Notice |
| 001 | CC-1K11h (03/14) | Signatures |
| 002 | XS-41457 (05/14) | Access to or Disclosure of Confidential or Personal Information and Data Related Liability Exclusion – Limited Bodily Injury Exception |
| 003 | XS-20745 (08/06) | Aircraft Products and Grounding Exclusion |
| 004 | XS-20782 (08/06) | Cancellation Amendatory Endorsement |
| 005 | XS-23669b (01/15) | Cap on Losses From Certified Acts of Terrorism |
| 006 | XS-22088 (04/07) | Catastrophe Management Coverage Endorsement |
| 007 | XS-20796 (08/06) | Cross Suits Exclusion |
| 008 | TRIA 11c (01/15) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| 009 | XS-20846 (08/06) | Discrimination Exclusion |
| 010 | XS-26426 (02/09) | Employee Benefit Plan Limitation [Claims Made] |
| 011 | XS-23634 (01/08) | Fellow Employee Exclusion Deleted |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| 012 | XS-23637 (01/08) | Foreign Liability Limitation |
| 013 | XS-28727a (01/11) | Foreign Loss Indemnity Endorsement |
| 014 | XS-20779 (08/06) | Fungi or Bacteria Exclusion |
| 015 | XS-26428 (02/09) | Incidental Medical Malpractice Endorsement |
| 016 | XS-26429b (02/11) | Industrial Aid Aircraft Endorsement |
| 017 | XS-27982 (08/09) | Joint Venture Limitation Endorsement Scaled Limits Over Scaled Retention |
| 018 | XS-20753 (08/06) | Knowledge of Occurrence |
| 019 | XS-20854 (08/06) | Lead Exclusion |
| 020 | XS-20761 (08/06) | Lot or Batch Clause Endorsement (Customary Production Run) |
| 021 | XS-20756 (08/06) | Notice of Occurrence |
| 022 | XS-20780a (08/09) | Pollution Exclusion - Combination Exception Time Element and Named Peril (with Insureds Retained Limit) |
| 023 | XS-21580 (01/07) | Professional Services Liability Exclusion – Exception for Resulting Bodily Injury and Property Damage |
| 024 | XS-27989a (01/12) | Punitive Damages - Most Favorable Jurisdiction Limitation Endorsement |
| 025 | XS-27990a (02/11) | Retained Limit Amendatory Endorsement - No Underlying Insurance |
| 026 | XS-26431 (02/09) | Silica or Silica-Related Dust Exclusion |
| 027 | XS-32667 (01/11) | Trade or Economic Sanctions Amendatory Endorsement |
| 028 | XS-23501 (04/08) | Unintentional Failure to Disclose |
| 029 | XS-34018 (01/12) | Unsolicited Communications Exclusion Amendment to Include FACTA |
| 030 | XS-1V46b (11/14) | Wisconsin Changes-Cancellation, Nonrenewal And State Required Conditions |
| 031 | MS-35225 (12/14) | State of Emergency Business Continuity Endorsement |



# Schedule of Underlying Insurance

| Named Insured | Policy Number | Policy Period |
|---|---|---|
| Ashley Furniture Industries, Inc. | XOO G27937500 001 | 01/01/2016 to 01/01/2017 |

**UNDERLYING POLICY TYPE:** General Liability

Policy Number: 41 CSE S30502    Policy Defense Treatment:    Outside the Limit

Policy Period: 01/01/2016 to 01/01/2017

Carrier:    Hartford Fire Insurance Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $2,000,000 | Each Occurrence |
| $4,000,000 | Per Location Aggregate |
| $4,000,000 | Products/Completed Ops Aggregate |
| $10,000,000 | General Aggregate Cap Limit |

**UNDERLYING POLICY TYPE:** Auto Liability

Policy Number: 41 CSE S30503    Policy Defense Treatment:    Outside the Limit

Policy Period: 01/01/2016 to 01/01/2017

Carrier:    Hartford Fire Insurance Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $3,000,000 | Combined Single Limit |

## UNDERLYING POLICY TYPE: Employers Liability

Policy Number: On file with the company          Policy Defense Treatment:          Outside the Limit

Policy Period:   01/01/2016  to  01/01/2017

Carrier:          Hartford Insurance Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $1,000,000 | BI by Accident - Per Accident Limit |
| $1,000,000 | BI by Disease - Policy Limit |
| $1,000,000 | BI by Disease - Each Employee Limit |

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

## UNDERLYING POLICY TYPE: Employee Benefits Liability

Policy Number: 41 CSE S30502          Policy Defense Treatment:          Outside the Limit

Policy Period:   01/01/2016  to  01/01/2017

Carrier:          Hartford Fire Insurance Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $2,000,000 | Each Claim |
| $4,000,000 | General Aggregate |

## UNDERLYING POLICY TYPE: Foreign DIC General Liability

Policy Number: PHFD37225514 002          Policy Defense Treatment:          Outside the Limit

Policy Period:   01/01/2016  to  01/01/2017

Carrier:          ACE American Insurance Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $1,000,000 | Each Occurrence |
| $2,000,000 | General Aggregate |
| $2,000,000 | Products/Completed Ops Aggregate |

## UNDERLYING POLICY TYPE:  Foreign DIC Auto Liability

Policy Number: PHFD37225514 002          Policy Defense Treatment:          Outside the Limit

Policy Period:  01/01/2016  to  01/01/2017

Carrier:          ACE American Insurance
                  Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $1,000,000 | Combined Single Limit |

## UNDERLYING POLICY TYPE:  Foreign DIC Employers Liability

Policy Number: PHFD37225514 002

Policy Period:  01/01/2016  to  01/01/2017

Carrier:          ACE American Insurance
                  Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $1,000,000 | BI by Accident - Per Accident Limit |
| $1,000,000 | BI by Disease - Policy Limit |
| $1,000,000 | BI by Disease - Each Employee Limit |

## UNDERLYING POLICY TYPE:  Foreign DIC Employee Benefits Liability

Policy Number: PHFD37225514 002          Policy Defense Treatment:          Outside the Limit

Policy Period:  01/01/2016  to  01/01/2017

Carrier:          ACE American Insurance
                  Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $1,000,000 | Each Claim |
| $1,000,000 | EBL Aggregate |

**ACE004954**

**UNDERLYING POLICY TYPE:**  General Liability- Ashley Home Stores

Policy Number: 41 CSE S30702                    Policy Defense Treatment:        Outside the Limit

Policy Period:  01/01/2016  to  01/01/2017

Carrier:        Hartford Fire Insurance
                Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $2,000,000 | Each Occurrence |
| $4,000,000 | Per Location Aggregate |
| $4,000,000 | Products/Completed Ops Aggregate |
| $10,000,000 | General Aggregate Cap Limit |

---

**UNDERLYING POLICY TYPE:**  General Liability- Ashley Distribution Services

Policy Number: 41 CSE S30802                    Policy Defense Treatment:        Outside the Limit

Policy Period:  01/01/2016  to  01/01/2017

Carrier:        Hartford Fire Insurance
                Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $2,000,000 | Each Occurrence |
| $4,000,000 | Per Location Aggregate |
| $4,000,000 | Products/Completed Ops Aggregate |
| $10,000,000 | General Aggregate Cap Limit |

---

**UNDERLYING POLICY TYPE:**  Auto Liability- Ashley Home Stores

Policy Number: 41 CSE S30703                    Policy Defense Treatment:        Outside the Limit

Policy Period:  01/01/2016  to  01/01/2017

Carrier:        Hartford Fire Insurance
                Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $3,000,000 | Combined Single Limit |

---

**UNDERLYING POLICY TYPE:** Auto Liability- Ashley Distribution Services

Policy Number: 41 CSE S30803                    Policy Defense Treatment:        Outside the Limit

Policy Period:  01/01/2016  to  01/01/2017

Carrier:        Hartford Fire Insurance
                Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $3,000,000 | Combined Single Limit |



**ACE Umbrella Plus℠**
**Commercial Umbrella Liability Policy**

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI - Definitions.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the schedule of "underlying insurance" attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

**I.   INSURING AGREEMENT**

A.   We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

1.   This insurance applies to "bodily injury" and "property damage" that takes place in the "coverage territory", but only if:

a.   The "bodily injury" or "property damage" is caused by an "occurrence";

b.   The "bodily injury" or "property damage" occurs during the "policy period"; and

c.   Prior to the "policy period", no "insured" and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

2.   This insurance applies to "personal and advertising injury" that arises out of your business, but only if the offense causing the "personal and advertising injury" takes place in the "coverage territory" and during the "policy period".

B.   "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

C.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

1.   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

2.   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

3.   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**ACE004957**

D.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The amount we will pay for damages is limited as described in Section IV - Limits of Insurance.

## II.  WHO IS AN INSURED

A.  The following are "insured's":

1.  The Named Insured named in Item 1 of the Declarations of this policy is an "insured".

2.  Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management at the inception date of this policy is an "insured", providing such subsidiary or organization is included as an insured in the "underlying insurance", and was made known to us prior to or at the inception date of this policy;

3.  If you are designated in the Declarations as:

a.  An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

b.  A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

c.  A limited liability company, you are an "insured". Your members are also "insureds", but only with respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders.

e.  A trust, you are an "insured". Your trustees are also "insureds", but only with respect to their duties as trustees.

B.  Each of the following is also an "insured":

1.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are "insureds" for:

a.  "Bodily injury" or "personal and advertising injury":

(1)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(2)  To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph a.(1) above;

(3)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs a.(1) or (2) above; or

(4)  Arising out of his or her providing or failing to provide professional health care services.

b.  "Property damage" to property:

(1)  Owned, occupied or used by you,

(2)  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

ACE004958

2.  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

3.  Any person or organization having proper temporary custody of your property if you die, but only:

    a.  With respect to liability arising out of the maintenance or use of that property; and

    b.  Until your legal representative has been appointed.

4.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

5.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an "insured" if it also qualifies as an insured in "underlying insurance" and there is no other similar insurance available to that organization. However:

    a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

    b.  This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

    c.  This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

    d.  We reserve the right to charge an additional premium if such organization qualifies as an "insured."

6.  Any person or organization, if insured under "underlying insurance", provided that coverage provided by this policy for any such insured will be no broader than coverage provided by "underlying insurance".

Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## III.   DEFENSE AND SUPPLEMENTARY PAYMENTS

A.  We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

    1.  When damages sought would be covered by "underlying insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; or

    2.  When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance"; or

    3.  When damages sought for "bodily injury", "property damage" or "personal and advertising injury" are not covered by "underlying insurance" or any "other insurance", or any applicable self-insured retention has been exhausted by the payment of "loss" covered by this policy.

B.  We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

C.  We will have the right but not the duty to associate in the investigation of any claim and the defense of any "suit" which may, in our opinion, result in damages to which this insurance applies.

D.  If we assume the defense of any "suit" against the "insured", we will pay in addition to the applicable Limit of Insurance:

    1.  All expenses we incur.

    2.  Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy. We do not have to furnish these bonds.

ACE004959

3. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4. The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6. All costs taxed against the "insured" in the "suit".

7. Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8. Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

E. Our right and duty to defend ends when the applicable Limit of Insurance of this policy has been exhausted by the payment of "loss".

## IV. LIMITS OF INSURANCE

A. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made or "suits" brought; or

3. Persons or organizations making claims or bringing "suits".

B. The General Aggregate Limit shown in the Declarations is the most we will pay for all damages, except:

1. Damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

2. Damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a covered "auto".

C. The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

D. Subject to Paragraphs B and C above, the Each Occurrence Limit shown in the Declarations is the most we will pay for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

E. If the applicable limits of "underlying insurance" have been:

1. Reduced by the payment of "loss" covered by this policy, then this policy will be excess of the reduced limit of "underlying insurance".

2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as "underlying insurance".

F. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## V.    EXCLUSIONS

This insurance does not apply to:

### A.    Aircraft or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any "insured". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to:

1.    A watercraft while ashore on premises you own or rent; or

2.    A watercraft you do not own that is:

   a.    Less than 26 feet long; and

   b.    Not being used to carry persons or property for a charge.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

### B.    Asbestos

Any "loss", demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

### C.    Contractual Liability

"Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1.    That the "insured" would have in the absence of the contract or agreement; or

2.    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "bodily injury" or "property damage", provided:

   a.    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   b.    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### D.    Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1.    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2.    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

ACE004961

E. **Damage to Property**

"Property damage" to:

1. Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2. Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3. Property loaned to you;

4. Personal property in the care, custody or control of the "insured";

5. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6. That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs 1, 3 and 4 of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven (7) or fewer consecutive days.

Paragraph 2 of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

F. **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

G. **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H. **Electronic Chat Rooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

I. **Employer's Liability**

"Bodily injury" to:

1. An "employee" of the "insured" arising out of and in the course of:

    a. Employment by the "insured"; or

    b. Performing duties related to the conduct of the "insured's" business; or

2. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1 above.

This exclusion applies:

1. Whether the "insured" may be liable as an employer or in any other capacity; and

ACE004962

2.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply:

1.  To liability assumed by the "insured" under an "insured contract".

2.  To the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance".

J.  **Employment Practices**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

1.  Refusal to employ;

2.  Termination of employment;

3.  Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, failure to promote, retaliation, violation of civil rights, invasion of privacy, discrimination or other acts or omissions arising out of employment related practices, or other employment related practices, policies, acts or omissions; or

4.  Any consequential liability, damages, "loss", cost or expense as a result of 1, 2 or 3 above.

This exclusion applies whether or not the "insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of such injury or damages.

K.  **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

L.  **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

M.  **"Insureds" in Media and Internet-Type Businesses**

"Personal and advertising injury" committed by an "insured" whose business is:

1.  Advertising, broadcasting, publishing or telecasting;

2.  Designing or determining content of web-sites for others; or

3.  An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VII - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

N.  **Liquor Liability**

"Bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

1.  Causing or contributing to the intoxication of any person;

2.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

ACE004963

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

O. **Miscellaneous Laws**

Any "loss", demand, claim, or "suit" under:

1. The Employee Retirement Income Security Act of 1974 including any amendment thereto or any similar law.

2. Any workers' compensation, disability benefits or unemployment compensation laws or any similar laws.

3. Any "auto" no-fault law, any uninsured or underinsured motorist law, any personal injury protection law or similar law.

P. **Nuclear**

1. To any injury or damage:

   a. With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of insurance; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To any injury or damage resulting from the "hazardous properties" of "nuclear material", if:

   a. The "nuclear material" (1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   c. The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility".

As used in this exclusion:

   a. "Hazardous properties" include radioactive, toxic or explosive properties;

   b. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

   c. "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof;

   d. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

ACE004964

e. "Waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

f. "Nuclear facility" means:

(1) Any "nuclear reactor";

(2) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. Injury or damage includes all forms of radioactive contamination of property.

Q. **Other "Personal and Advertising Injury"**

1. "Personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

2. "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

3. "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period".

4. "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the "insured".

5. "Personal and advertising injury" for which the "insured" has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages:

   a. That the "insured" would have in the absence of the contract or agreement; or

   b. Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" offense takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of ""personal and advertising injury", provided:

      i. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

      ii. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

6. "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

ACE004965

7. "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

8. "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

R. **Pollution**

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

    b. At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

    c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

        (1) Any "insured"; or

        (2) Any person or organization for whom you may be legally responsible;

    d. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

    e. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

    f. That are, or that are contained in any property that is:

        (1) Being transported or towed by, handled, or handled for movement into, onto or from, a covered "auto";

        (2) Otherwise in the course of transit by or on behalf of the "insured"; or

        (3) Being stored, disposed of, treated or processed in or upon a covered "auto";

    g. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

    h. After the "pollutants" or any property in which the "pollutants" are contained are moved from a covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

However, the following exceptions to this exclusion apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance":

1. Paragraph 1.a. of this exclusion does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

2. Paragraph 1.a. of this exclusion does not apply to "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional insured.

ACE004966

3. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

4. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

6. Paragraph 1.f. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a covered "auto" or its parts, if:

   a. The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   b. The "bodily injury", "property damage" or any covered pollution cost or expense does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

7. Paragraphs 1.g. and 1.h. of this exclusion do not apply to "occurrences" that take place away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a "covered auto" if:

   a. The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   b. The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2. Any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph 2. does not apply to liability for damages because of "property damage" that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

S. **Recall of Products, Work or Impaired Property**

"Bodily injury", "property damage" or "personal and advertising injury" or any other "loss", cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "Your product";

2. "Your work"; or

3. "Impaired property";

ACE004967

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

T. **Trade or Economic Sanctions**

To the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

U. **Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or meta-tag, or any other similar tactics to mislead another's potential customers.

V. **Unsolicited Communications**

"Bodily injury", "property damage" or "personal and advertising injury" arising out any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication. This exclusion also applies to communications which are made or allegedly made in violation of the:

1.  Telephone Consumer Protection Act (TCPA) including any

    Amendment of or addition to such law; or

2.  The CAN-SPAM Act of 2003, including any amendment of

    Or addition to such law; or

3.  Any statute, ordinance or regulation, other than the TCPA

    Or CAN-SPAM Act of 2003, which prohibits or limits the sending, transmitting, communicating or distribution of material or information.

W. **War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, civil commotion, rebellion or revolution.

## VI.   CONDITIONS

A. **Appeals**

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "underlying insurance" or "other insurance", we may elect to appeal. If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in Section III - Defense And Supplementary Payments.

B. **Assignment of Your Rights and Duties**

Your rights and duties under this policy may not be transferred, except by an endorsement to this policy issued by us. If you die or are legally declared bankrupt, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties, but only with respect to that property.

ACE004968

C. **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. In the event of bankruptcy, insolvency, refusal or inability to pay of any underlying insurer, the insurance afforded by this policy will not drop down or replace "underlying insurance", but will apply as if the limits of such "underlying insurance" are fully available and collectible and we will not assume any obligation under "underlying insurance".

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver to us advance written notice stating when cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in the Declarations will be sufficient to prove notice.

3. The "policy period" will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured shown in the Declarations will act on behalf of all other "insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

E. **Changes**

This policy may be changed only by a written endorsement to this policy issued by us.

F. **Duties in the Event of "Occurrence", Claim or "Suit"**

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim for damages under this policy. To the extent possible, notice should include:

   a. How, when and where the "occurrence" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence".

2. If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us in writing as soon as practicable.

3. You and any other involved "insured" must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

ACE004969

    d.  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

4.  No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our written consent.

G.  **Inspection and Audit**

1.  We will be permitted, but not obligated to inspect the "insured's" property and operations. Neither our right to make inspections nor the making thereof nor any report thereon will constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe.

2.  We may examine and audit the "insured's" books and records during the "policy period" and any extensions thereof within three (3) years after the termination date of this policy.

H.  **Legal Action Against Us**

1.  No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an "insured".

2.  You will have no right of action against us under this policy unless all of its terms have been fully complied with; and the amount that you seek to recover has been determined by settlement with our consent or by final judgment against an "insured".

I.  **Maintenance of "Underlying Insurance"**

During the "policy period", you agree:

1.  To keep "underlying insurance" and renewals or replacements thereof in full force and effect.

2.  That the limits of "underlying insurance" will be maintained except for any reduction or exhaustion of such limits by the payment of "loss" that would be covered by this policy.

3.  That the terms and conditions of "underlying insurance" will not materially change during the "policy period".

4.  That any renewal or replacement of "underlying insurance" will not be more restrictive in coverage.

5.  That "underlying insurance" may not be canceled or non-renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any "underlying insurance".

Failure to maintain the "underlying insurance" as provided by this condition will not invalidate this policy. This policy will apply as if the "underlying insurance" were maintained as required by this policy.

J.  **Other Insurance**

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance". This provision will not apply if the "other insurance" is written to be excess of this policy.

K.  **Premium**

The first Named Insured shown in the Declarations will be responsible for payment of all premiums when due.

The premium stated in the Declarations is a flat premium. It is not subject to adjustment except as provided herein or as changed by an endorsement to this policy issued by us.

L.  **Separation of "Insureds"**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

1.  As if each Named Insured were the only Named Insured; and

ACE004970

2.   Separately to each "insured" against whom claim is made or "suit" is brought.

M.  **Titles**

The titles to the various parts, sections, subsections and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections and endorsements.

N.  **Transfer of Rights of Recovery Against Others to Us**

1.   If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "insured" must do nothing after "loss" to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

2.   Any amount recovered will be apportioned in the inverse order of payment of "loss" to the extent of actual payment. The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

3.   If you and the insurer of "underlying insurance" waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

O.  **When "Loss" is Payable**

Coverage under this policy will not apply until the "insured," or the "insured's" underlying insurer has paid or is obligated to pay the full amount of the "retained limit."

When the amount of damages is determined by an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, we will promptly pay on behalf of the "insured" the amount of damages covered under the terms of this policy. The first Named Insured will promptly reimburse us for any amount within the "retained limit" paid by us.

**VII.  DEFINITIONS**

A.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1.   Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2.   Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

B.  "Auto" means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

C.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or mental injury resulting from bodily injury.

D.  "Coverage territory" means anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including but not limited to the payment of claims.

E.  "Employee" means an individual working for you in return for remuneration. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker" or independent contractor.

F.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

G.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

H.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

ACE004971

1.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2.  You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

2.  Your fulfilling the terms of the contract or agreement.

I.  "Insured" means a person or organization meeting the qualifications set forth in Section II - Who Is An Insured.

J.  "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1.  that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel underpass or crossing;

2.  that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a.  preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b.  giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3.  under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

K.  "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

L.  "Loading or unloading" means the handling of property:

1.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2.  While it is in or on an aircraft, watercraft or "auto"; or

3.  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

M.  "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.

N.  "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1.  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.  Vehicles maintained for use solely on or next to premises you own or rent;

3.  Vehicles that travel on crawler treads;

4.  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

ACE004972

a. Power cranes, shovels, loaders, diggers or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

b. Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

a. Equipment designed primarily for:

i. Snow removal;

ii. Road maintenance, but not construction or resurfacing; or

iii. Street cleaning;

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O. "Occurrence" means:

1. With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence", regardless of the frequency or repetition thereof, or the number of claimants.

2. With respect to "personal and advertising injury", a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence", regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

P. "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include "underlying insurance", the amount shown in the Declarations as the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

Q. "Policy period" means the time between the inception date of this policy shown in the Declaration and the expiration date shown or earlier termination date of this policy.

R. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

ACE004973

6.   The use of another's advertising idea in your "advertisement"; or

7.   Infringing upon another's copyright, trade dress or slogan in your "advertisement".

S.   "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. As used in this definition, waste includes materials to be recycled, reconditioned or reclaimed.

T.   "Products-completed operations hazard":

1.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

a.   Products that are still in your physical possession; or

b.   Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

i.   When all of the work called for in your contract has been completed.

ii.  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

iii. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2.   Does not include "bodily injury" or "property damage" arising out of:

a.   The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured";

b.   The existence of tools, uninstalled equipment or abandoned or unused materials.

U.   "Property damage" means:

1.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.   Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

V.   "Retained limit" means either of the following:

1.   The total applicable limits of "underlying insurance" and any applicable limit of "other insurance" providing coverage to the "insured"; or

2.   The amount shown in the Declarations as the Self-Insured Retention applicable to each "occurrence" that results in damages not covered by "underlying insurance" or "other insurance".

W.   "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

1.   An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

2.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

ACE004974

JOINT INDEX 00339

X. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Y. "Underlying insurance" means the policy or policies of insurance listed in the Schedule of "Underlying Insurance" attached to and forming a part of this policy.

Z. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

AA. "Your product":

   1. Means:

      a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (1) You;

         (2) Others trading under your name; or

         (3) A person or organization whose business or assets you have acquired; and

      b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   2. Includes:

      a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      b. The providing of or failure to provide warnings or instructions.

   3. Does not include vending machines or other property rented to or located for the use of others but not sold.

BB. "Your work":

   1. Means:

      a. Work or operations performed by you or on your behalf; and

      b. Materials, parts or equipment furnished in connection with such work or operations.

   2. Includes:

      a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      b. The providing of or failure to provide warnings or instructions.

ACE004975

JOINT INDEX 00340



**ACE Producer Compensation
Practices & Policies**

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

**ACE004976**



**ACE GROUP SPECIALTY
CLAIMS LOSS NOTIFICATION
FORM**

<table>
<tr><td>

**FORWARD BY FAX, MAIL OR E-MAILTO:**

ACE Excess
P.O. Box 5103
Scranton, PA 18505-0510
Fax No.:  (866)635-5687

ACEClaimsFirstNotice@acegroup.com
</td></tr>
</table>

**Today's Date:**

## Notice of:  (check all that apply)

☐ **First-Party Claim**          ☐ **Potential Claim**

☐ **Third-Party Claim**          ☐ **Litigation Initiated**

☐ **Other** _____

## Insured's Name & Contact Information

**Company Name:** Ashley Furniture Industries, Inc.          **Point of Contact:** _____

**Address:**          1 Ashley Way
                      Arcadia, Wisconsin 54612

**Phone Number:** _____

## Broker/Agent's Name & Contact Information

**Company Name:** AON RISK SERVICES CENTRAL INC.          **Point of Contact:** _____

**Address:**          200 EAST RANDOLPH STREET, 13TH FLOOR
                      CHICAGO, Illinois 60601

**Phone Number:** _____

## Policy Information

**Policy Number:** XOO G27937500 001          **Policy Period:** 01/01/2016  -  01/01/2017

**Limits of Liability:** $ 25,000,000   per $ 25,000,000   agg  **Self-Insured Retention/Deductible:** $ 10,000

## Loss Information

**Date of Incident/Claim:** _____   **Location:** _____

**Claimant Name/Address:** _____

**Description of Loss:** _____
_____
_____
_____

Please list all attached or enclosed documentation:   ☐ (check if none provided)

_____
_____
_____

Name of Person Completing This Form: _____   Signature: _____

XS-28500a (08/13)                    © 2013                    Page 1 of 1

JOINT INDEX 00342

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

ACE004978

**COMMERCIAL UMBRELLA LIABILITY**

**INFORMATION FOR POLICYHOLDERS TO HELP YOU IN THE EVENT OF A CLAIM FOR CATASTROPHE MANAGEMENT COVERAGE**

A CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT is attached to your commercial umbrella liability policy from ACE Excess Casualty.

This informational notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the Catastrophe Management Coverage endorsement.*

Please read your policy, and the endorsements attached to your policy, carefully.

When this endorsement is attached to your policy:

- Insurance is provided for covered catastrophe management costs arising out of a "catastrophe management event" as defined in the endorsement.

- In order to activate your catastrophe management coverage (make a claim), you must call the following toll free number:

# 1-877-366-3747

- If you attempt to report directly to a firm that provides catastrophe management services on our behalf, you will be re-directed to the toll free number shown above.

- Please be prepared to provide the following information:
  - Caller's name, title and contact telephone number
  - Name of Insured
  - Policy Number
  - A description of the incident
  - Any witnesses
  - Property, Product or Vehicle Information
  - Incident Location
  - Contact Person
  - Number and nature of bodily injuries (including any fatalities and the number of people injured)
  - Current status of the situation

*The coverage description in this notice is a summary only. It is not part of the policy and does not amend or alter your policy. Please see your policy for actual terms and conditions. ACE Excess Casualty is one of the U.S.-based business groups of ACE USA. Insurance policies are issued by ACE Property and Casualty insurance Company or one of its insurance company affiliates.*

ACE004979

# SIGNATURES

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 001 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016  to  01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

_____
Authorized Representative

**ACE004980**

**ACCESS TO OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA RELATED LIABILITY EXCLUSION – LIMITED BODILY INJURY EXCEPTION**

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 002 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016  to  01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

The following exclusion is added to the policy:

This insurance does not apply to any injury, damage, expense, cost, "loss", liability or legal obligation arising out of:

A. Any access to or disclosure of any person's or organization's confidential or personal information,  including: patents, trade secrets, processing methods, customer lists, financial information, credit card information; health information or any other type of non-public information; or

B. The loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate "electronic data".

This exclusion applies to all coverages under the policy and applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other cost or expense incurred by you or others arising out of that which is described in Paragraphs A. or B. above.

However, paragraph B. of this exclusion does not apply to damages because of "bodily injury" if coverage is provided by a policy listed in the schedule of "underlying insurance", subject to the "policy period", limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy. "Bodily injury" coverage provided by virtue of this limited exception to paragraph B. will under no circumstances be broader than the coverage provided by "underlying insurance".

The following definition is added to the policy:

"Electronic data" means information, facts or programs stored as or on, created, used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Representative

XS-41457 (05/14)    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    Page 1 of 1

ACE004981

## AIRCRAFT PRODUCTS AND GROUNDING EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 003 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016 to 01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" included in the "products-completed operations hazard", and relating to, resulting from or arising out of "aircraft products" upon which you have performed "your work", or which were designed, manufactured, sold, handled, distributed, or disposed of by you, or by another trading under your name, in whole or in part, when such "aircraft products" are used in or on, or attached to any aircraft or missile or any component part or sub-assembly thereof, or in connection with the use of aircraft.

"Aircraft products" means:

1.  Aircraft (including missiles, spacecrafts, or satellites and any ground support, maintenance or control equipment used therewith or any component part or sub-assembly thereof);

2.  Any article furnished by an insured and installed in aircraft or used in connection with aircraft or for spare parts for aircraft;

3.  Ground handling tools and equipment;

4.  Training aids, instruction manuals, blueprints, maps and guides, engineering or other data, engineering or other advice and services and labor relating to such aircraft or articles described above.

This insurance does not apply to any damage of any kind whatsoever which arises out of "grounding liability."

"Grounding liability" means liability for the withdrawal or grounding of aircraft from flight operations, whether or not owned or operated by you, in the interests of safety, or for any other reason, whether or not such withdrawal or grounding was ordered by a governmental agency.

All other terms and conditions of the Policy remain unchanged.

_____
Authorized Agent

**ACE004982**

## CANCELLATION AMENDATORY ENDORSEMENT

| Named Insured<br>Ashley Furniture Industries, Inc. | | | Endorsement Number<br>004 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27937500 001 | Policy Period<br>01/01/2016 to 01/01/2017 | Effective Date of Endorsement<br>01/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

Parts 1., 2., 5 and 6. of Condition D of Section VI CONDITIONS are deleted and replaced by the following:

1. This policy may be cancelled by you by mailing to us written notice stating when such cancellation shall be effective.

2. This policy may be cancelled by us by mailing to you at your last known address, written notice stating when, not less than **ninety** (90 ) days thereafter, **ten** (10 ) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective.  The mailing of notice shall be sufficient proof of notice.  The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".  Under no circumstance will our notice of cancellation to you be less than the minimum required by State law or regulation.

5. If you cancel, earned premiums shall be computed in accordance with the applicable short rate table or procedure. If we cancel, earned premium shall be computed pro-rata.

6. Premium adjustment may be made at the time cancellation becomes effective. our check or the check of our representative mailed to you shall be sufficient proof of any refund or premium due you.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

**ACE004983**

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Named Insured<br>Ashley Furniture Industries, Inc. | | | Endorsement Number<br>005 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27937500 001 | Policy Period<br>01/01/2016  to  01/01/2017 | Effective Date of Endorsement<br>01/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY
### COMMERCIAL EXCESS AND UMBRELLA LIABILITY POLICY

A. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

B. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this policy.

C. In the event that any "certified act of terrorism" is not covered by "underlying insurance" or any "other insurance" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limits of insurance, the following applies:

1. The Limits of Insurance of the Declarations is amended to include:

"Certified act of terrorism retained limit" $ _____

2. "Certified act of terrorism retained limit" means the amount stated above, which is the amount of losses that you will pay in the settlement of any claim or "suit" arising directly or indirectly out a "certified act of terrorism", which is covered by this policy but not covered by the "underlying insurance" or any "other insurance" providing coverage to the "insured" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance.  "Certified act of terrorism" does not include any costs of investigation, settlement or defense and such costs shall not erode the "certified act of terrorism retained limit".

3. Solely with respect to this endorsement, Section III., Defense and Supplement Payments is amended as follows:

a. With respect to any "certified act of terrorism" to which this policy applies and no "underlying insurance" or "other insurance" applies due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance, we shall not be called upon to assume

JOINT INDEX 00349

charge of the investigation, settlement or defense of such "suit" against the "insured" seeking damages on account of "bodily injury", "property damage", "personal or advertising injury", or injury or damage to the environment arising directly or indirectly out of a "certified act of terrorism". However, we shall have the right and be given the opportunity to be associated in the defense and trial of any such "suit" relative to any "certified act of terrorism" which in our opinion may create liability on our part under the terms of this policy.

b.  We shall have no obligation to defend the "insured" in such "suit" until the "insured's" losses, which exclude any costs of investigation, settlement or defense have exceeded the "certified act of terrorism retained limit".  Once such losses have exceeded the "certified act of terrorism retained limit", we will assume charge of the settlement or defense of any such "suit".  We may make such investigation as we require and effect settlement of any "suit" so defended.

c.  We shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

All other terms and conditions of this policy remain unchanged.

 

_____
                      Authorized Representative

ACE004985

## CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 006 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016  to  01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
### This endorsement modifies all insurance provided under the following:
### COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION I., INSURING AGREEMENT**, is amended to include the following:

Catastrophe Management Cost Limit of Insurance

$250,000 Annual Limit

Catastrophe Management Coverage

**A.** Subject to the terms and conditions of this endorsement, we will pay "catastrophe management costs" to third parties at the request of and on behalf of the "insured," arising from a "catastrophe management event" first commencing during the "policy period," up to the amount of the "catastrophe management costs" Limit of Insurance shown in the Declarations.

**B.** A "catastrophe management event" will be deemed to first commence at the time during the "policy period" when a "key executive" first becomes aware of an "occurrence" that gives rise to the "catastrophe management event" and will end when we determine that any one of the necessary elements listed in the definition of a "catastrophe management event" no longer exists or when the "catastrophe management cost" Limit of Insurance shown in the Declarations has been exhausted, whichever occurs first.

**C.** There will be no "retained limit" applicable to "catastrophe management costs", except as it applies to a determination of whether the definition of "catastrophe management event" applies.

**D.** Payment of "catastrophe management costs" will not be applied to or erode the aggregate limits of the policy.

**E.** Any payment of "catastrophe management costs" that we make under the coverage provided by this endorsement will not (1) be a determination of any other rights or obligations under this policy, (2) create any duty to defend any "suit" under any other part of this policy, or (3) operate as a waiver of any right or defense we have with respect to the coverage under the policy, including Condition F. (Duties in the event of "occurrence", claim or "suit.")

**F.** For purposes of this endorsement, the following definitions are added to the policy:

"Adverse media coverage" means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

"Catastrophe management event" means an "occurrence" that, in the good faith opinion of a "key executive" of the Named Insured, has resulted in or is reasonably likely to result in: (1) "bodily injury", "property damage" or "personal and advertising injury" covered by this policy; (2) damages that are in excess of the "retained limit"; and (3) a need for "catastrophe management services" due to "adverse media coverage". "Catastrophe management

ACE004986

JOINTAPPX 00351

event" will include "occurrences" resulting from: explosions and other man-made disasters; serious accidents resulting in multiple deaths, burns, dismemberment injuries; traumatic brain injuries; permanent paralysis injuries; or injuries from contamination of food, drink or pharmaceuticals.

"Catastrophe management firm" means any firm that is approved by us and hired by you or us to perform "catastrophe management services" in connection with a "catastrophe management event."

"Catastrophe management services" means those services performed by a "catastrophe management firm" in advising the "insured" on minimizing potential harm to the "insured" from a covered "catastrophe management event" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured."

"Catastrophe management costs" means the following reasonable and necessary expenses incurred during a "catastrophe management event" and directly caused by the "catastrophe management event," but only to the extent that the insured or a third party arranges for such services resulting in these expenses and the expenses are pre-approved by us:

1. expenses incurred by a "catastrophe management firm" in the performance of "catastrophe management services" for the "insured";

2. expenses for printing, advertising, mailing of materials or travel by directors, officers, employees or agents of the "insured" or the "catastrophe management firm" incurred at the direction of a "catastrophe management firm"; expenses to secure the scene of a "catastrophe management event;"

3. medical expenses; funeral expenses; expenses for psychological counseling; travel expenses; temporary living expenses or other necessary response costs and approved by us, incurred by or advanced to third parties directly harmed by the "catastrophe management event."

"Catastrophe management costs" do not include any defense costs.

"Key executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the "insured" is a partnership) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured". A "key executive" also means any other person holding a title designated by you, approved by us, and shown by endorsement to this policy.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

ACE004987

# CROSS SUITS EXCLUSION

| Named Insured<br>Ashley Furniture Industries, Inc. | | | Endorsement Number<br>007 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27937500 001 | Policy Period<br>01/01/2016  to  01/01/2017 | Effective Date of Endorsement<br>01/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of any claim or "suit" by one Named Insured against another Named Insured.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

**ACE004988**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named nsured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 008 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016  to  01/01/2017 | 01/01/2016 |

| ssued By (Name of nsurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% for year 2015, 84% beginning on January 2016; 83% beginning on January 1 2017, 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium:  REDACTED _____ .

_____
Authorized Representative

# DISCRIMINATION EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 009 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016 to 01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This Endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

This insurance does not apply to any claim or "suit" based upon or alleging discrimination against any person.

Discrimination includes but is not limited to discrimination on the basis of age, disability, ethnic origin, marital status, physical or mental hardship, race, religious affiliation, sex or sexual orientation.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

ACE004990

# EMPLOYEE BENEFIT PLAN LIMITATION
## [CLAIMS MADE]

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 010 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016  to  01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

### SCHEDULE

1.  Underlying Insurance

   Company:          Hartford Fire Insurance Company

   Policy Number:     On File with the Company

   Expiration Date:    01/01/2017

   Retroactive Date:   08/01/2005

   Limits of Insurance:

   Each Employee     $ 2,000,000

   Aggregate:         $ 4,000,000

2.  Our Retroactive Date:      08/01/2013

3.  Coverage

   Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of insurance shown above, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "Administration" of any "Employee benefit programs".

   "Administration" included but is not limited to performing any of the following functions for an "employee benefit program":

   a.  Counseling "employees" on your "employee benefit programs";

   b.  Interpreting your "employee benefit programs";

   c.  Handling records for your "employee benefit programs";

XS-26426 (02/09)

Page 1 of 3

**ACE004991**

d. Effecting enrollment, termination or cancellation of "employees" under your "employee benefit programs";

e. Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs".

f. Collection of contributions and application of contributions as provided in your "employee benefit programs";

g. Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee" benefit programs"; or

h. Processing of claims for your "employee benefit programs".

"Employee benefit programs" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

4. Claims Made Provision

To the extent that coverage is available to you in the "underlying insurance", it is agreed as follows:

a. Retroactive Date

If the "underlying insurance" above applies on the basis of claims first made against you during the period of that policy, then this policy shall apply to those claims on the same basis and in like manner, provided:

i. The date such claim is first made against you is during OUR policy period, and

ii. The injury, loss, or damage occurs on or after OUR Retroactive Date shown in the Schedule, and prior to the termination of this policy.

b. Extended Reporting Period

If the "underlying insurance" provides coverage under an Extended Reporting Period for a claim, then our policy will apply to that claim on the same basis and in like manner, subject to all of the following:

i. Coverage we afford will only be excess of coverage afforded under an Extended Reporting Period provided by the "underlying insurance", and

ii. The injury or damage must occur on or after our Retroactive Date and prior to the termination of this policy, and

iii. The Extended Reporting Period will not reinstate or increase the Limits of Insurance of this policy or extend our "policy period".

c. Aggregate Limits

If the applicable Limits of Insurance shown in the "underlying insurance" above apply on an aggregate limit basis, and if the aggregate limit has been reduced or exhausted by payment for claims expense, then our policy shall apply in excess of such reduced or exhausted aggregate limit provided that:

i. The claim must first be made against you during our "policy period" or during an Extended Reporting Period provided by this policy, and

ii. Claims or claims expense must be for injury or damage which occurs on or after our Retroactive Date and prior to the termination of this policy, and

iii. If such applicable Limits of Insurance have been reduced or exhausted by payments for claims or claims expense other than those specified in c.1) and c.2) above, then our policy shall apply as if such payments had not been made.

d.  Item F. Duties in the Event of "Occurrence", Claim or "Suit" of Section **VI. CONDITIONS** of this policy is amended to add paragraph 5. as follows:

Notice of an "occurrence" is not notice of a claim for coverage as provided by this endorsement.

All other terms and conditions of this policy remain unchanged.

_____
Author zed Agent

**FELLOW EMPLOYEE EXCLUSION DELETED**

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 011 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016 to 01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section II, WHO IS AN INSURED, Section B.1.a.1 is deleted and amended as follows;  B.1.a.2. is deleted in its entirety:

(1)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) while in the course of his or her employment or performing duties related to the conduct of your business

All other terms and conditions of this policy remain unchanged.

_____
                                                                Authorized Agent

XS-23634 (01/2008)

**ACE004994**

## FOREIGN LIABILITY LIMITATION

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 012 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016  to  01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**Section V. EXCLUSIONS** is amended to include the following:

Foreign Liability

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the "scheduled underlying insurance:"

1) This exclusion shall not apply; and

2) Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of "scheduled underlying insurance," subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Coverage provided by this policy will be no broader than the coverage provided by "scheduled underlying insurance."

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-23637 (01/2008)

**ACE004995**

## FOREIGN LOSS INDEMNITY ENDORSEMENT

| Named Insured<br>Ashley Furniture Industries, Inc. | | | Endorsement Number<br>013 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27937500 001 | Policy Period<br>01/01/2016  to  01/01/2017 | Effective Date of Endorsement<br>01/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

#### COMMERCIAL UMBRELLA LIABILITY POLICY

**THIS ENDORSEMENT APPLIES ONLY WHEN A "FOREIGN OCCURRENCE", ARISING OUT OF A "FOREIGN BUSINESS OPERATION" AND CAUSING "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY", TAKES PLACE IN A COUNTRY WHERE WE ARE NOT "LICENSED".**

The policy is amended to add the following:

### FIRST NAMED INSURED INDEMNITY COVERAGE

#### I.   INSURING AGREEMENT

This endorsement applies only when a "foreign occurrence", arising out of a "foreign business operation" and causing "bodily injury", "property damage" or "personal and advertising injury", takes place in a country where we are not "licensed".

In that case, rather than directly pay on behalf of and defend your "foreign business operation", we will indemnify the "First Named Insured", in excess of the "retained limit", for "loss" and defense and supplementary payments in accordance with this endorsement. This endorsement provides the only coverage under the policy for "bodily injury", "property damage" or "personal and advertising injury" arising out of a "foreign occurrence".

The terms, conditions and limitations in sub-section A.1., A.2., B., C. and D. of Section **I. INSURING AGREEMENT** in the policy will apply to our duty to indemnify the "First Named Insured".

#### II.   WHO IS AN INSURED

Section **II. WHO IS AN INSURED**, is amended to provide that a "foreign business operation" is not an "insured" on whose behalf we have a direct duty to pay settlements or judgments or a direct duty to defend under this policy.

#### III.   DEFENSE AND SUPPLEMENTARY PAYMENTS - ASSIGNMENT OF RIGHTS

When this endorsement applies, rather than directly defend your "foreign business operation", we will indemnify the "First Named Insured" for defense costs incurred in defending a "suit" brought against a "foreign business operation", provided that (a) the "foreign business operation" gives the "First Named Insured" the right to control the investigation, defense and settlement of the "suit" and (b) the "First Named Insured" assigns this right to us.  We will associate with the "First Named Insured" to conduct such investigation, defense and settlement as provided in Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, except that we will indemnify the "First Named Insured" rather than directly defend and pay supplementary payments.

© 2011

**ACE004996**

## IV.  LIMITS OF INSURANCE

A.  The insurance provided by this endorsement is subject to the applicable aggregate and each occurrence limits of liability stated in the Declarations, and any "losses" for which we pay indemnity will erode and be counted against such limits.

B.  Subject to the applicable aggregate and each occurrence limits of liability stated in the declarations, our limit of liability for "loss" will be the amount which the "First Named Insured":

1.  Has indemnified a "foreign business operation", or

2.  Represents to us that it is obligated to indemnify the "foreign business operation".

However, if this policy provides for a percentage allocation of liability with respect to the insured's or the "foreign business operation's" interest in a joint venture, limited liability company or partnership, the allocation set forth in such provision will apply.

The terms, conditions and limitations set forth in Section **IV.  LIMITS OF INSURANCE** in the policy will apply to our duty to indemnify the "First Named Insured".

## V.  CONDITIONS

When this endorsement applies, the following conditions apply in addition to the conditions and limitations provided elsewhere in the policy.

### A.  Claims Made/Reported Coverage (if applicable)

Any requirements in the policy that a claim be first made during the policy period or any discovery or extended reporting period will also apply to all claims made against a "foreign business operation" for which the "First Named Insured" seeks indemnification.

### B.  Additional Notice Duties of the "First Named Insured"

With respect to a "foreign occurrence" which may result in a claim for damages under this endorsement, the "First Named Insured" assumes the duty to notify us, and must notify us in accordance with the standards described in Condition **F. Duties in the Event of "Occurrence", Claim or "Suit"** in the policy.

### C.  Proof of Insurance

This policy may not be offered as proof of insurance unless permitted by local applicable law.

### D.  Truthfulness and Accuracy of Material Information

When this endorsement applies, the "First Named Insured":

1.  Is responsible for the truthfulness and accuracy of any material information provided to us with respect to a "foreign business operation", "foreign occurrence", claim, "suit" or "loss"; and

2.  Will not, at any time, intentionally conceal or misrepresent a material fact concerning this policy, including the risk to be insured, a "foreign business operation", a "loss", claim or "suit" or a "foreign occurrence".

ACE004997

## VI. DEFINITIONS

When this endorsement applies, Definition M. "Loss" in the policy is deleted and replaced with the following:

M. "Loss" means those sums paid in the settlement of a claim or "suit" or satisfaction of a judgment which the "foreign business operation" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", for which the "foreign business operation" makes a claim for reimbursement from the "First Named Insured", after making proper deduction for all recoveries and salvages.

The following definitions are added to the policy and apply to the coverage provided by this endorsement:

"First Named Insured" means the first Named Insured shown in the Declarations.

"Foreign business operation" means a subsidiary of the "First Named Insured" and any other organization under its control or active management at the inception date of the policy or added by endorsement, and having its principal place of business, statutory domicile, residence, or business operation subject to liability for otherwise covered "bodily injury", "property damage" or "personal and advertising injury" located in a country where we are not "licensed".

"Foreign occurrence" means an "occurrence" arising from the premises, operations or products of a "foreign business operation" taking place in or causing "bodily injury", "property damage" or "personal and advertising injury" in a country where we are not "licensed". Country includes any political jurisdiction that independently regulates the licensing of insurance companies.

"Licensed" means expressly approved in accordance with law by the applicable regulatory body to conduct the business of insurance in a country as a regulated, authorized insurer. "Licensed" is synonymous with admitted and authorized. It does not include being recorded as an eligible foreign or alien non-admitted insurer.


All other terms and conditions of this policy remain unchanged.


_____
Authorized Representative

# FUNGI OR BACTERIA EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 014 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016  to  01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
### This endorsement modifies insurance provided under the following:
### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or in any way related to the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to "bodily injury", "property damage" or "personal and advertising injury".

"Fungi" means any type or form of fungus, mold, mildew, mycotoxins, spores, or scents or by-products produced or released by "fungi", but does not include any "fungi" intended by the "insured" for human consumption.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

XS-20779 (08/06)

Page 1 of 1

**ACE004999**

## INCIDENTAL MEDICAL MALPRACTICE ENDORSEMENT

| Named Insured<br>Ashley Furniture Industries, Inc. | | Endorsement Number<br>015 |
|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27937500 001 | Policy Period<br>01/01/2016 to 01/01/2017 | Effective Date of Endorsement<br>01/01/2016 |

| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section **II. WHO IS AN INSURED,** Section B.1.a.(4) is deleted and replaced by the following:

(4)  arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any licensed physician, dentist, nurse or other licensed medical practitioner employed by "you" and acting within the scope of his or her license. The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside the scope of their duties as your "employees" Any series of continuous, repeated or related acts or omissions by such "employees" will be treated as a single "occurrence".

The following definition is added:

"Incidental Medical Malpractice Injury" means "bodily injury" arising out of the rendering of or failure to render the following services:

a.  medical, surgical dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or
b.  the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

The coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury."

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# INDUSTRIAL AID AIRCRAFT ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 016 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016 to 01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

I.  LIMITS OF INSURANCE of the DECLARATIONS is amended to include the following additional Self-Insured Retention:

$ 200,000,000 Industrial Aid Aircraft Self-Insured Retention/Each Occurrence. (As respects claims and "suits" seeking damages for "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned by or rented or loaned to any "insured". Use includes operation and "loading and unloading").

II.  For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph A. is deleted in its entirety, and replaced by the following:

We will have no duty to defend any "suit" against the "insured". We will, however, have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

III.  For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph D. is deleted in its entirety.

IV.  Section **IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The Industrial Aid Aircraft Self-Insured Retention applies whether or not there is any available Scheduled "underlying insurance" or "other insurance".

The Industrial Aid Aircraft Self-Insured Retention will not be reduced by "defense expenses".

V.  For the purpose of this endorsement only and solely with respect to any and all references to aircraft, Section **V. EXCLUSIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

A.  Aircraft
This insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft owned or operated by or rented or loaned to any "insured". Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any "insured".

XS-26429b (02/11)       Includes copyrighted material of Insurance Services Office, Inc., with its permission.       Page 1 of 2

**ACE005001**

JOINT INDEX 00366

This exclusion does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned or operated by or rented or loaned to any "insured". Use includes operation and "loading and unloading".

It is understood that any and all references to watercraft in Section **V. EXCLUSIONS**, Paragraph A. remains unchanged, unless amended by separate endorsement.

VI. For the purpose of this endorsement only, Section **VII. DEFINITIONS** is amended to include the following addition definitions:

"Defense expenses" means any payment allocated to a specific "loss", claim or "suit" for its investigation, settlement or defense, including but not limited to:

1. attorney's fees and all other investigation, loss adjustment and litigation expenses;
2. premiums on bonds to release attachments;
3. premiums on appeal bonds required by law to appeal any claim or "suit";
4. costs taxed against the "insured" in any claim or "suit";
5. pre-judgment interest awarded against the "insured"; and
6. interest that accrues after entry of judgment

"Industrial aid aircraft" means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used predominantly for business travel of "employees" and their non fee paying passenger guests.

All other terms and conditions of this policy remain unchanged.

_____
                    Author zed Representat ve

ACE005002

## JOINT VENTURE LIMITATION ENDORSEMENT
## SCALED LIMITS OVER SCALED RETENTION

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 017 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016  to  01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to covered damages arising out of the liability of any "joint venture" in which you have an ownership interest, but which is not a Named Insured, the policy is amended as follows:

I. INSURED'S JOINT VENTURE RETAINED LIMIT

We will be liable only for that portion of covered damages in excess of the "insured's joint venture retained limit".

II. INSURED'S JOINT VENTURE LIMITS OF INSURANCE

A. Our limits of insurance under this policy shall be limited to your percentage ownership interest in the "joint venture" multiplied by the total applicable limits of insurance set forth in the Declarations of this policy.

B. If such ownership interest is not set forth in a written contract between or among all owner/members of the "joint venture" that pre-dates the "occurrence", the percentage to be applied in determining the scaling of both the "joint venture retained limit" and the limits of insurance shall be the percentage which would be imposed by law at the inception of the "joint venture" to determine respective ownership interests.

C. The percentage assigned to you under A. or B. shall not be increased by the insolvency of any other owner/members of the "joint venture" and shall not be subject to any rules of joint and/or several liability.

III. DEFINITIONS

The following definitions are added to the policy:

"Joint venture" means an association by contract in which you join together with one or more other entities (member/owners) with ownership interest in the venture to accomplish mutually a specific project or group of projects. A "joint venture" may take the form of a limited liability corporation or limited liability partnership.

"Joint venture retained limit" means your percentage ownership interest in the "joint venture", as determined under A. or B. above, multiplied by the applicable "retained limit".

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

ACE005003

# KNOWLEDGE OF OCCURRENCE

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 018 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016  to  01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

With respect to any loss reporting requirements under this policy, it is understood and agreed that knowledge of an "occurrence" or claim by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless a corporate officer of yours shall have received notice from said agent, servant, employee or any other person.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

XS-20753 (08/06)

**ACE005004**

# LEAD EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 019 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016 to 01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This Endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to the toxic properties of lead or lead-containing products, materials or substances.  This exclusion applies to all forms of lead, including but not limited to solid, liquid, vapor and fumes.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

**ACE005005**

## LOT OR BATCH CLAUSE ENDORSEMENT
### (Customary Production Run)

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 020 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016 to 01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Any "bodily injury", "property damage" or "personal and advertising injury" that:

A.  Is included in the "products-completed operations hazard";

B.  Arises from the substantially same general harmful condition, cause, defect, error, or suspected deficiency; and

C.  Arises out of any one "lot" or "batch" of "your product" that is prepared or acquired by you;

shall be considered as a single "occurrence". Such "occurrence" shall be deemed to occur when the "bodily injury" or "property damage" occurs for the first claim arising from such "lot" or "batch".

For the purpose of this endorsement, a "lot" or "batch" means all goods or products prepared or acquired:

A.  During the time frame that is the normal amount of time for a single "lot" or "batch" in accordance with the insured's customary procedures; and

B.  At a single production facility; and

C.  Prepared in accordance with the insured's customary production and quality control "lot" or "batch" identification procedures.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-20761 (08/06)                                                                 Page 1 of 1

**ACE005006**

## NOTICE OF OCCURRENCE

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 021 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016 to 01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Your failure to provide notice of an "occurrence" or claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you shall report any such "occurrence" or claim to us within a reasonable time once you become aware of such error.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-20756 (08/06)

Page 1 of 1

**ACE005007**

## POLLUTION EXCLUSION - COMBINATION EXCEPTION TIME ELEMENT AND NAMED PERIL (With Insured's Retained Limit)

| Named Insured<br>Ashley Furniture Industries, Inc. | | | Endorsement Number<br>022 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27937500 001 | Policy Period<br>01/01/2016  to  01/01/2017 | Effective Date of Endorsement<br>01/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion R. of Section V., **EXCLUSIONS**, is deleted and replaced by the following:

This insurance does not apply:

1. To any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to pollution, however caused.

2. To any "loss", cost or expense arising out of any:

   a. Directive, request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

Pollution includes the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" caused by pollution if the discharge, dispersal, seepage, migration, release or escape of "pollutants":

1. Is both unexpected and unintended from the standpoint of the "insured";

2. Commenced abruptly and can be clearly identified as having commenced entirely at a specific time on a specific date during the "policy period"; and

3. Is caused:

   a. Solely by fire, lightning, explosion, windstorm, vandalism, malicious mischief, riot or civil commotion, flood, earthquake, sprinkler leakage, or discharge from a heating, ventilating or air conditioning system or collision or upset of a motor vehicle, mobile equipment or an aircraft;

   b. Or arises out of "your product" included in the "products-completed operations hazard"; or

   c. By any peril other than those listed in subparagraph 3.a. above, provided that the discharge, dispersal, seepage, migration, release or escape of "pollutants":

      (1) Is at or from any:

ACE005008

(a) Premises, site or location which is owned by or occupied by, or rented or loaned to, any "insured"; or

(b) Premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

And

(2) Is known by any "insured" within <u>20</u> days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants"; and

(3) Is reported to us within <u>80</u> days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants".

Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of the cause of the pollution, this policy shall not apply to:

1. Loss of, damage to or loss of use of property directly or indirectly resulting from subsurface operations of the "insured", and/or removal of, loss or damage to subsurface oil, gas or other substance;

2. Any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to actual or alleged pollution or contamination at or from a waste site, meaning the part of any premises, site or location which is or was at the time used by any "insured" or by others for the storage, disposal, processing or treatment of waste of any kind. Waste site includes but is not limited to any landfill, pit or dumping ground, treatment, storage and disposal facility, lagoon or pond, drum storage or disposal area, disposal pipe outfall, injection well or any other repository of waste of any kind, whether permitted or not. Waste means any substance that:

a. Is left over, or no longer in use, or discarded;

b. Is to be reclaimed or recycled, or reconditioned; or

c. Has been removed, treated, stored or disposed of as part of any environmental remediation effort.

It is further agreed that solely with respect to any "occurrence" resulting in "bodily injury" or "property damage" caused by pollution which is covered by this policy but not covered by the "underlying insurance" due to any exclusion or exclusions contained therein, the "insured's" "retained limit" in the Limits of Insurance section of the Declarations is amended to $ <u>2,000,000</u> .

All other terms and conditions of the policy remain unchanged.

---

Authorized Representative

## PROFESSIONAL SERVICES LIABILITY EXCLUSION -  EXCEPTION FOR RESULTING BODILY INJURY AND PROPERTY DAMAGE

| Named  nsured<br>Ashley Furniture Industries, Inc. | | | Endorsement Number<br>023 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27937500 001 | Policy Period<br>01/01/2016  to  01/01/2017 | Effective Date of Endorsement<br>01/01/2016 |
| ssued By (Name of  nsurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any liability arising out of the providing or failing to provide any services of a professional nature. However, this exclusion does not apply to "bodily injury" or "property damage" which occurs as a result of such services of a professional nature.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-21580 (0107)

**ACE005010**

# PUNITIVE DAMAGES – MOST FAVORABLE JURISDICTION LIMITATION ENDORSEMENT

| Named Insured Ashley Furniture Industries, Inc. | | | Endorsement Number 024 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27937500 001 | Policy Period 01/01/2016 to 01/01/2017 | Effective Date of Endorsement 01/01/2016 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The following **CONDITION** is added to the policy:

**Punitive Damages**

1.  "Punitive damages" because of "bodily injury", "property damage" or "personal and advertising injury" will be considered damages to which this insurance applies, but only if:

    a.  The "punitive damages" are awarded by a court of law in a judgment against the "insured"; and

    b.  The same judgment also awards compensatory damages against the "insured" that (1) arise out of the same "occurrence" and (2) are otherwise covered by this insurance; and

    c.  Such award of "punitive damages" is permitted to be covered by insurance under the law of a U.S. jurisdiction that has a "substantial relationship" to the "insured", us, or this policy.

    If all three of conditions a., b., and c. above are satisfied, we will follow the law of such jurisdiction that is most favorable to the "insured" in determining whether such "punitive damages" are insurable, and if they are insurable under the law of such jurisdiction, we will pay on behalf of the "insured" those sums in excess of the "retained limit" that "insured" is liable to pay as a result of the award, subject to the limitations in sections (2), through (5) below, the limits of insurance and all other terms and conditions of the policy. No choice of law issue which may arise out of a claim or "suit", other than the insurability of "punitive damages", shall be affected by this endorsement.

2.  "Punitive damages" will not be considered damages to which this insurance applies, and we will have no obligation with respect to such damages, if:

    a.  The "insured" seeking coverage for an award of "punitive damages", brings a "suit" against us seeking a declaration of coverage under the policy in a jurisdiction that does not recognize or permit the insurability of the "punitive damages" award; or

    b.  The court that enters the judgment awarding "punitive damages" against the "insured" also orders that the "insured" may not seek insurance coverage for "punitive damages".

XS-27989a (01/12)                             © 2012                             Page 1 of 2

**ACE005011**

3. This endorsement is subject to all exclusions in the policy, including but not limited to Exclusion K. **Expected or Intended Injury.**

4. Any award of "punitive damages" and compensatory damages arising out of the same judgment will be added together and the sum shall be used to determine whether or not the "retained limit" has been exhausted.

The following **DEFINITIONS** are added to the policy:

"Punitive damages", which may also be called exemplary damages, means damages awarded by a court above and beyond the requirements for compensating a plaintiff for "bodily injury", "property damage" or "personal and advertising injury" and intended to reform or deter the defendant and similar persons from pursuing a course of action such as that which damaged the plaintiff.   "Punitive damages" does not include civil or criminal fines or penalties imposed by any government authority.

"Substantial relationship" means a relationship with one or more of the following indicia:  the insured's state of incorporation or principal place of business; the place where the claim is made or the court action seeking damages is brought, or where the "bodily injury", "property damage", or "personal and advertising injury" occurred; the insurance company's state of domicile, incorporation, or principal place of business; or the state where the policy was issued.

All other terms and conditions of the policy remain unchanged.

_____
                         Authorized Representative

## RETAINED LIMIT AMENDATORY ENDORSEMENT - NO UNDERLYING INSURANCE

| Named Insured | | Endorsement Number |
|---|---|---|
| Ashley Furniture Industries, Inc. | | 025 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016  to  01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to those coverages listed in the Schedule of Retained Limits in this endorsement only, the following will apply:

1.  The preamble in the policy is deleted and replaced with the following:

    Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

    Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

    Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VII. DEFINITIONS**.

    We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of Retained Limits below, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

2.  Paragraphs A. 2., B. 5., and B. 6. of Section **II. WHO IS AN INSURED** are deleted and replaced by the following:

    A. 2.   Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management, at the inception date of this policy is an "insured", providing such subsidiary or organization was made known to us prior to or at the inception date of this policy;

    B. 5.   Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company and over which you maintain ownership or majority interest, will qualify as an "insured" if there is no other similar insurance available to that organization. However:

    a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

    b.  This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

    c.  This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

**ACE005013**

d. We reserve the right to charge an additional premium if such organization qualifies as an "insured."

B. 6. Any person or organization to which the Named Insured is obligated by virtue of a written contract to name such person or organization as an additional "insured", but only with respect to operations performed by or obligations required of the Named Insured to or for the additional "insured" under the terms of such written contract. A person or organization qualifying as an additional "insured" under this endorsement is an additional "insured" only for "occurrences" that first take place after the execution of the written contract.

Furthermore, to the extent required by contract, this policy will respond excess to and without contribution from any valid and collectable liability insurance covering such additional "insured" for the "occurrence".

3. Paragraph A. of Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS,** is deleted and replaced with the following:

A. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

1. When the applicable limits listed on the Schedule of Retained Limits below, have been exhausted by payment of "loss"; or

2. When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance".

4. Paragraph D. of Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS** is amended to provide that, when defense expenses are indicated in the Schedule of Retained Limits below as included within the "retained limit", payment of Defense and Supplementary Payments is within and not in addition to the applicable limits of insurance of this policy.

5. Paragraph E. of Section **IV. LIMITS OF INSURANCE**. is deleted and replaced with the following:

E. If the applicable "retained limits" listed on the Schedule of Retained Limits below have been:

1. Reduced by the payments of "loss" covered by this policy then this policy will be excess of the remaining underlying "retained limits"; or

2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as primary insurance, subject to the terms, conditions and limitations of the policy.

6. The following paragraph is added to Section **IV. LIMITS OF INSURANCE**:

If defense expenses are indicated in the Schedule of Retained Limits below as included within the "retained limit" or within any "other insurance", then references to damages in this Section are amended to include Defense and Supplementary Payments for the sole purpose of determining erosion of limits of insurance.

7. Exclusions A., I. and N. of Section **V. EXCLUSIONS** are deleted, unless replaced or amended by separate endorsement excluding or limiting coverage for Aircraft or Watercraft (Exclusion A.), Employer's Liability (Exclusion I.), or Liquor Liability (Exclusion N.).

8. Conditions A., C., and I. and Paragraph 3. only of Condition N. of Section **VI. CONDITIONS** are deleted and replaced with the following:

**ACE005014**

A. **Appeals**

In the event you elect not to appeal a judgment in excess of the "retained limits" or "other insurance", we may elect to appeal.  If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**.

C. **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy.  This policy will not drop down or replace the "retained limits", but will apply as if the "retained limits" are fully available and collectible and we will not assume any obligation under "retained limits".

I. **Maintenance of "Underlying Insurance"** is deleted.

N. **Transfer of Rights of Recovery Against Others to Us**

    3. If you waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

9. Definition M. "Loss" of Section **VII. DEFINITIONS** is deleted and replaced with the following:

M. "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay because of damages as a result of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.  If the "retained limit" is indicated in the Schedule of Retained Limits below as including defense expenses, then "loss" also includes defense expenses, which will erode the "retained limit", and Defense and Supplementary Payments, which will erode the limits of this insurance.

10. Definitions P. ""Other Insurance", and V. "Retained Limit" of Section **VII. DEFINITIONS** are deleted and replaced with the following:

P. "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

V. "Retained limit" means the total applicable self-insured limits listed in the Schedule of Retained Limits below.

11. Definition Y. "Underlying insurance" of Section **VII. DEFINITIONS** is deleted.

ACE005015

## Schedule of Retained Limits

| Coverage(s) | Retained Limit | Limit Type | Defense and Supplementary Payments Treatment: (Included Within the Limit / Outside the Limit) |
| --- | --- | --- | --- |
| Personal Umbrella - Charles Vogel & Nita Vogel | $ 5,000,000 | Each Occurrence | Outside the Limit |
| Personal Umbrella - Charles H.E. Vogel & Juanita K. Vogel | $ 5,000,000 | Each Occurrence | Outside the Limit |
| Personal Umbrella - Ronald & Joyce Wanek | $ 5,000,000 | Each Occurrence | Outside the Limit |
| Personal Umbrella- Benjamin C. Vogel | $ 5,000,000 | Each Occurrence | Outside the Limit |
| Personal Umbrella- Todd Wanek/ Karen Wanek | $ 10,000,000 | Each Occurrence | Outisde the Limit |

All other terms and conditions of the policy remain unchanged.

_____
Author zed Representat ve

ACE005016

JOINT INDEX 00381

## SILICA OR SILICA-RELATED DUST EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 026 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016 to 01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION V. EXCLUSIONS** is amended to include the following additional exclusion.

This insurance does not apply to;

1.  "Bodily injury" arising in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of "silica" or "silica-related dust."

2.  "Property damage" arising in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust."

3.  "Personal and advertising injury" arising in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust."

4.  Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust," by any insured" or by any other person or entity.

**SECTION VII. DEFINITIONS** is amended to include the following additional definitions:

"Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), "silica" particles, "silica" dust or "silica" compounds.

"Silica-related dust" means a mixture or combination of "silica" and other dust or particles.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

**ACE005017**

JOINT INDEX 00382

# TRADE OR ECONOMIC SANCTIONS AMENDATORY ENDORSEMENT

| Named Insured<br>Ashley Furniture Industries, Inc. | | | Endorsement Number<br>027 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27937500 001 | Policy Period<br>01/01/2016  to  01/01/2017 | Effective Date of Endorsement<br>01/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Item T. of Section **V. Exclusions** is hereby deleted and replaced by the following:

**T.   Trade or Economic Sanctions**

To the extent that United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), prohibit us from providing insurance, including, but not limited to, the payment of claims.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

XS-32667 (01/11)                                        © 2011                                        Page 1 of 1

ACE005018

JOINT INDEX 00383

# UNINTENTIONAL FAILURE TO DISCLOSE

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 028 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016 to 01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

## COMMERCIAL UMBRELLA LIABILITY POLICY

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

ACE005019

# UNSOLICITED COMMUNICATIONS EXCLUSION AMENDMENT TO INCLUDE FACTA

| Named Insured Ashley Furniture Industries, Inc. | | | Endorsement Number 029 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27937500 001 | Policy Period 01/01/2016  to  01/01/2017 | Effective Date of Endorsement 01/01/2016 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section **V. EXCLUSIONS**, Item **V. Unsolicited Communications** is deleted and replaced with the following:

**V.  Recording and Distribution of Material or Information in Violation of Law**

"Bodily injury," "property damage" or "personal and advertising injury" arising out of any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone that violates or is alleged to violate:

1.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2.  The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3.  The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

4.  Any federal, state, or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003, FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

ACE005020

## WISCONSIN CHANGES-CANCELLATION, NONRENEWAL AND STATE REQUIRED CONDITIONS

| Named Insured | Endorsement Number |
|---|---|
| Ashley Furniture Industries, Inc. | 030 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27937500 001 | 01/01/2016 to 01/01/2017 | 01/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL EXCESS AND UMBRELLA LIABILITY POLICY
### COMMERCIAL UMBRELLA LIABILITY POLICY
### EXCESS LIABILITY CATASTROPHE POLICY
### EXCESS LIABILITY POLICY

**A.** The **Cancellation** Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

If this policy has been in effect for less than 60 days and is not a renewal policy, we may cancel for any reason.

If this policy has been in effect for 60 days or more or is a renewal of a policy we issued, except as provided in Paragraph **7.** below, we may cancel this policy only for one or more of the following reasons:

  **a.** The policy was obtained by material misrepresentation;

  **b.** There has been a substantial change in the risk we originally assumed, except to the extent that we should have foreseen the change or considered the risk in writing the policy;

  **c.** There have been substantial breaches of contractual duties, conditions or warranties; or

  **d.** Nonpayment of premium.

If this policy has been in effect for 60 days or more or is a renewal of a policy we issued, the notice of cancellation will state the reason for cancellation.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**7. Anniversary Cancellation**

If this policy is written for a term of more than one year or has no fixed expiration date, we may cancel this policy for any reason by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the anniversary date of the policy. Such cancellation will be effective on the policy's anniversary date.

**ACE005021**

We may cancel this policy because of the termination of an insurance marketing intermediary's contract with us only if the notice of cancellation contains an offer to continue the policy with us if we receive a written request from the first Named Insured prior to the date of cancellation.

**B.** The following are added and supersede any other provisions to the contrary:

    **1. Nonrenewal**

        **a.** If we elect not to renew this policy we will mail or deliver written notice of nonrenewal to the first Named Insured's last mailing address known to us. We may elect not to renew for any reason; the notice will state the reason for nonrenewal. We will mail or deliver the notice at least 60 days before the expiration date of this policy.

        We need not mail or deliver the notice if:

        **(1)** You have insured elsewhere;

        **(2)** You have accepted replacement coverage;

        **(3)** You have requested or agreed to nonrenewal of this policy; or

        **(4)** This policy is expressly designated as nonrenewable.

        **b.** We may refuse to renew this policy because of the termination of an insurance marketing intermediary's contract with us only if the notice of nonrenewal contains an offer to renew the policy with us if we receive a written request from the first Named Insured prior to the renewal date.

        **c.** If you fail to pay the renewal or continuation premium by the premium due date, this policy will terminate on the policy expiration or anniversary date, if we have:

        **(1)** Given you written notice of the renewal or continuation premium not more than 75 days nor less than 10 days prior to the due date of the premium; and

        **(2)** Stated clearly in the notice the effect of nonpayment of premium by the due date.

    **2. Anniversary Alteration**

    If this policy is written for a term of more than one year or has no fixed expiration date, we may alter the terms or premiums of this policy by mailing or delivering written notice of less favorable terms or premiums to the first Named Insured's last mailing address known to us. We will mail, by first class mail, or deliver this notice at least 60 days prior to the anniversary date.

    If we notify the first Named Insured within 60 days prior to the anniversary date, the new terms or premiums will not take effect until 60 days after the notice was mailed or delivered. The notice will include a statement of the first Named Insured's right to cancel. The first Named Insured may elect to cancel the policy at any time during the 60-day period, in accordance with Paragraph **1.** of the Cancellation Common Policy Condition. If the first Named Insured elects to cancel the policy during the 60-day period, return premiums or additional premium charges will be calculated proportionately on the basis of the old premiums.

    **3. Renewal With Altered Terms**

    If we elect to renew this policy but on less favorable terms or at higher premiums, we will mail or deliver written notice of the new terms or premiums to the first Named Insured's last mailing address known to us. We will mail, by first class mail, or deliver this notice at least 60 days prior to the renewal date.

    If we notify the first Named Insured within 60 days prior to the renewal date, the new terms or premiums will not take effect until 60 days after the notice was mailed or delivered. The notice will include a statement of the first Named Insured's right to cancel. The first Named Insured may elect to cancel the renewal policy at any time during the 60-day period, in accordance with Paragraph **1.** of the Cancellation Common Policy Condition. If the first Named Insured elects to cancel the renewal policy during the 60-day period, return premiums or additional premium charges will be calculated proportionately on the basis of the old premiums.

    We need not mail or deliver this notice if the only change adverse to you is a premium increase that:

        **a.** Is less than 25% and is generally applicable to the class of business to which this policy belongs; or

ACE005022

**b.** Results from a change based on your action that alters the nature or extent of the risk insured against, including but not limited to a change in the classification or the units of exposure, or increased policy coverage.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

ACE005023

# STATE OF EMERGENCY BUSINESS CONTINUITY ENDORSEMENT

| Named Insured<br>Ashley Furniture Industries, Inc. | | Endorsement Number<br>031 |
|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27937500 001 | Policy Period<br>01/01/2016  to  01/01/2017 | Effective Date of Endorsement<br>01/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | |

<small>Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.</small>

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

#### ACE COMMERCIAL UMBRELLA LIABILITY POLICY

The policy is amended as follows:

I. If, on the expiration date of the policy as stated in the Declarations, (a) a State of Emergency has been declared by a local, state or federal authority with authority to make such a declaration; (b) the State of Emergency is in effect on the expiration date of the policy; and (c) as the result of the emergency, there has occurred a disruption of mail, electronic mail, telephone and travel service which has prevented communication between the Named Insured and its insurance broker or between the insurance broker and us, the following conditions will apply:

1. At the request of the Named Insured or its insurance broker, we will extend the policy period for a maximum of 30 calendar days from the date of expiration on the same terms and conditions and at the same premium, adjusted on a *pro rata* basis.

2. The Named Insured must pay such additional premium within 30 calendar days of the original date of expiration. If such premium is not paid promptly when due, the policy extension will be deemed to be rescinded from its inception, the original expiration date will be deemed to be the date on which the policy was terminated, and we will have no liability to pay any claim or defend or settle any suit for which we would not have been liable had the policy terminated on the original expiration date.

3. The Named Insured may cancel the policy during the extended policy period in the same manner as set forth in Condition D. The Named Insured may elect to cancel the policy retroactive to the original expiration date, in which case the cancellation will operate as a rescission from inception and we will have no liability to pay any claim or defend or settle any suit for which we would not have been liable had the policy terminated on the original expiration date.

II. This endorsement will not apply if, prior to the Declaration of a State of Emergency:

   a. We have issued a timely non-renewal notice stating that the policy will expire under its own terms, the notice has not been rescinded and no renewal binder has been issued by us; or
   b. You have cancelled or non-renewed the policy.

ACE005024

III. The additional period by which the policy is extended will be deemed part of the original policy period for purposes of determining Limits of Insurance.  Nothing in this endorsement will operate to increase or reinstate the Limits of Insurance as stated in the Declarations.

IV. Condition I. **Maintenance of "Underlying Insurance"** will apply to the additional period by which the policy is extended pursuant to this endorsement, and whether or not "underlying insurance" is available, a "retained limit" in the amount of the limits of "underlying insurance" as stated in the Declarations will apply. The insurance afforded by this policy will not drop down or replace "underlying insurance", but will apply as if limits of "underlying insurance" are fully available and collectible. We will not assume any obligation under "underlying insurance".

V. This endorsement will be deemed amended to the extent necessary to comply with any applicable emergency order issued by an insurance department having jurisdiction to regulate this policy.

All other terms and conditions of the policy remain unchanged.

JOHN J. LUPICA, President

_____
Authorized Representative

MS-35225 (12/14)                      © 2014                      Page 2 of 2

**ACE005025**