Gary R. Selvin
 Cal. Bar No. 112030
SELVIN WRAITH LLP
6250 Claremont Avenue, Suite 200
Oakland, CA 94618
Telephone No.: 510.874.1814
Facsimile No.:  510.465.8976
gselvin@selvinwraith.com

Ezra S. Gollogly
 admitted pro hac vice
Joseph Dudek,
 admitted pro hac vice
KRAMON & GRAHAM, P.A.
7500 East Pratt St., Suite 1100
Baltimore, MD 21202
Telephone No.: 410.752.6030
Facsimile No.:  410.361.8233
egollogly@kg-law.com
jdudek@kg-law.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br> Plaintiff,<br><br>v.<br><br>CARSON MADRONA COMPANY, LLC *et alia*,<br><br> Defendants. | No. 3:23-cv-06259<br><br>**Hartford Fire Insurance Company's Cross-Motion for Full or Partial Summary Judgment and Opposition to Pending Motions for Summary Judgment**<br><br>Date:  February 20, 2025<br><br>Time:  10:00 a.m.<br><br>Place:  Courtroom 4 on the 17th Floor<br> 450 Golden Gate Avenue<br> San Francisco, California 94102<br><br>Judge:  Vince Chhabria<br><br>Filed:  December 4, 2023<br><br>Trial:  not scheduled |

### Notice of Motion

On February 20, 2025 at 10:00 a.m., Hartford Fire Insurance Company ("Hartford") will move under Federal Rule of Civil Procedure 56 for an order granting full or partial summary judgment to Hartford at the following location:

> Courtroom 4 on the 17th Floor
> 450 Golden Gate Avenue
> San Francisco, California 94102

The motion will seek entry of summary judgment on the following issues:

**1**. This Court should enter summary judgment on Hartford's third cause of action, declaring that Hartford had no duty to indemnify Defendant Carson Madrona Company, LLC ("Carson Madrona") under a policy of insurance that Hartford issued to Ashley Furniture Industries Inc. with policy number 41 CSE S30502 and a policy term January 1, 2016 to January 1, 2017 (the "Hartford Policy") against the settlement that ultimately resolved the case captioned *Mountain v. DP Elec.*, No. RG 17857916 (Cal. Sup. Ct. Alameda County) (the "Underlying Lawsuit").

**2**. This Court should enter partial summary judgment on Hartford's first, fourth, fifth, and sixth causes of action, holding and declaring that (**a**) Defendant Ohio Security Insurance Company ("Ohio Security") was the true primary insurance issued to Carson Madrona, such that (**b**) Ohio Security had the primary duty to defend and indemnify Carson Madrona against the Underlying Lawsuit; and that (**c**) Ohio Security breached its duty to defend Carson Madrona, such that (**d**) Ohio Security owes Hartford the cost of defending Carson Madrona against the Underlying Lawsuit. If Hartford prevails on this issue, it may seek further relief under 28 U.S.C. § 2202 to establish the amount that Ohio Security owes Hartford.

**3**. This Court should enter summary judgment on Hartford's second cause of action, declaring that after the jury verdict in the Underlying Lawsuit, Hartford had no duty to defend Carson Madrona any further or, in the alternative, that Hartford satisfied any duty it had to Carson Madrona after the jury verdict was entered.

**4**. This Court should enter summary judgment in Hartford's favor on Carson Madrona's and Ohio Security's requests for declaratory relief, declaring that Hartford owes no money to Ohio Security or Defendant American Fire and Casualty Company ("American Fire") under the "supplementary payments" provisions in the Hartford Policy.

Hartford's motion will be based on this Notice; the below memorandum of points and authorities; the exhibits to Ohio Security's motion for summary judgment; the declarations of Joseph Dudek and Timothy Bailey; all pleadings and other papers on file with this Court; and such other argument or evidence as may be presented at the hearing.

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................... 7

BACKGROUND ...................................................................................... 8

    The Lease ............................................................................................ 8

    The Incident ....................................................................................... 8

    Carson Madrona's Defense ................................................................ 9

    The Trial and the Appeal ................................................................. 10

    This Coverage Action ....................................................................... 11

LEGAL STANDARD ............................................................................ 12

ARGUMENT ........................................................................................ 12

    I.    An endorsement to the Hartford policy, not the coverage form, controls Carson Madrona's status as an additional insured. ................................................ 12

    II.    Hartford has no duty to indemnify Carson Madrona, because Ashley did not cause Perez's injuries. ................................................ 15

    III.    Ohio Security breached its duty to defend Carson Madrona for years, and it owes Hartford some or all of the cost of defending Carson Madrona. ........................ 20

        A.    Ohio Security had a duty to defend Carson Madrona. ......................................... 21

        B.    Ohio Security wrongly refused to participate in Carson Madrona's defense. ......................... 22

    IV.    Hartford never breached a duty to defend Carson Madrona. ..................................... 23

        A.    After the jury determined that Ashley did not cause Perez's injuries, Hartford had no duty to defend Carson Madrona. ......................... 23

        B.    Hartford never withdrew its defense, so Hartford satisfied any post-verdict duty to defend Carson Madrona. ......................... 24

    V.    Hartford does not owe Ohio Security for defense fees, costs, or interest. ................................ 25

    VI.    Carson Madrona would be entitled to no coverage under the Hartford Policy even under the coverage-form provisions. ........................... 28

    VII.    Conclusion ........................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*Burlington Ins. v. N.Y.C. Transit Auth.* (2017) 29 N.Y.3d 313 .......................................................18

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317 ..................................................................................12

*Century Sur. Co. v. United Pac. Ins.* (2003) 109 Cal. App. 4th 1246 ...............................................21

*Certain Underwriters at Lloyd's of London v. Am. Safety Ins. Svcs., Inc.* (C.D. Cal. 2010)
    702 F. Supp. 2d 1169 ....................................................................................................................14

*Cont'l Cas. Co. v. Phoenix Const. Co.* (1956) 46 Cal. 2d 423 ...........................................................12

*Espinosa v. Little Co. of Mary Hosp.* (1995) 31 Cal. App. 4th 1304 .................................................16

*Fageol Truck & Coach v. Pac. Indem.* (1941) 18 Cal. 2d 731 ...........................................................13

*Hartford Cas. Ins. v. Travelers Indem.* (2003) 110 Cal. App. 4th 710 ..............................................21

*Haskel, Inc. v. Superior Court* (1995) 33 Cal. App. 4th 963 ............................................................ 24

*Haynes v. Farmers Ins. Exch.* (2004) 32 Cal. 4th 1198 .....................................................................13

*Montrose Chem. Corp. v. Superior Ct.* (1993) 6 Cal. 4th 287 .......................................................... 24

*People v. ConAgra Grocery Prods. Co.* (2017) 17 Cal. App. 5th 51 ..................................................16

*Reliance Nat. Indem. v. Gen. Star Indem.* (1999) 72 Cal. App. 4th 1063 ..........................................19

*Rossmoor Sanitation v. Pylon, Inc.* (1975) 13 Cal. 3d 622 .............................................................. 22

*Saarman Constr., Ltd. v. Ironshore Specialty Ins.* (N.D. Cal. 2017)
    230 F. Supp. 3d 1068 .................................................................................................................... 24

*Secci v. United Indep. Taxi Drivers, Inc.* (2017) 8 Cal. App. 5th 846 ...............................................17

*State Farm Gen. Ins. v. Mintarsih* (2009) 175 Cal. App. 4th 274 ......................................... 20, 25, 26

*Travelers Cas. & Sur. v. Century Sur.* (Ct. App. 2004) 13 Cal. Rptr. 3d 526 ................................. 22

*United States ex rel. Welch v. My Left Foot Child. Therapy, LLC* (9th Cir. 2017)
    871 F.3d 791 ..................................................................................................................................13

*Vitton Constr. Co. v. Pac. Ins.* (2003) 110 Cal. App. 4th 762 ......................................................... 24

*Voyager Indem. Ins. v. Zalman N., Inc.* (C.D. Cal. 2023) 668 F. Supp. 3d 990 ...............................14

HARTFORD'S CROSS-MOTION FOR SUMMARY JUDGMENT

*Yanez v. Plummer* (2013) 221 Cal. App. 4th 180...............................................................16

**Other Authorities**

Liberty Mutual Group, *Statement as of June 30, 2024: Schedule Y - Part 1 - Organizational Chart*, https://tinyurl.com/LiMuOrg (accessed December 30, 2024) ....................................11

## Introduction

The Perez family sought millions in damages because Mr. Perez was injured by a dangerously defective electrical system, one that Carson Madrona was legally obligated to maintain. Yet for five years, Carson Madrona's insurer, Ohio Security, refused to defend its insured. Carson Madrona instead turned to its tenant and eventually its tenant's insurer (Hartford) for a defense. There were good reasons to believe that Mr. Perez was not injured by the tenant, yet Hartford defended Carson Madrona under the tenant's policy. Sure enough, a jury apportioned 0% fault to the tenant for Mr. Perez's injuries and awarded tens of millions of dollars against Carson Madrona and its property manager. Only then did Ohio Security (and its excess insurer) acknowledge its duty to defend and indemnify Carson Madrona. Ohio Security, Carson Madrona, and Carson Madrona's property manager took an appeal and then settled.

Ohio Security and Carson Madrona now want to make Hartford pay for the settlement. They lack even a colorable claim that Hartford should pay any portion of the settlement attributable to the underlying judgment. A jury rendered its verdict that the tenant was a 0% substantial factor in Perez's injuries, *i.e.*, that Perez's injuries were not caused, whole or in part, by Hartford's insured. Carson Madrona's coverage under the Hartford Policy requires this causal connection. Carson Madrona and Ohio Security brush that aside, hiding the part of the Hartford Policy that depends on causation with ellipses. ECF No. 63 at 11; ECF No. 64 at 6. Their other arguments about appellate fees or supplementary payments fail for the same reason.

Instead, Ohio Security owes Hartford for the defense that Ohio Security refused *for years* to provide its insured. This Court should say so, declaring that Ohio Security's primary insurance policy issued to Carson Madrona had a primary duty to defend Carson Madrona.

**Background**

**The Lease**

Carson Madrona owned real estate on San Leandro Bay, and nonparty SanOak

Management Company ("SanOak")[1] was Carson Madrona's property manager. In 2012, Carson

Madrona leased commercial space within that real estate to Warehouse and Delivery Solutions,

Inc. ("WDS").[2] In April 2016, WDS assigned its lease to Defendant Stoneledge Furniture, LLC

("Stoneledge") with Carson Madrona's blessing.[3] The lease would later be terminated, and the

parties to the lease would fully release one another.[4]

**The Incident**

A month into its tenancy, a Stoneledge assistant manager (Gary Mountain)[5] and an

electrician (David Luis Perez) were injured while Perez was attempting electrical repairs in a

common area outside Stoneledge's leased space. Mountain and his wife sued Perez, Perez's

business, SanOak, and others, seeking damages for his injuries. Perez, who was also injured,[6]

crossclaimed with his wife against Carson Madrona (the owner), SanOak (the property manager),

WDS (the original lessee), Stoneledge (the current lessee), Ashley Furniture Industries, Inc.

---

[1] SanOak's full legal name is "Diane Pregerson Glazer as Trustee of the Diane Pregerson Glazer Survivor's Trust d/b/a SanOak Management Company."

[2] Lease Agreement (ECF No. 64-7). Any citation in this motion to a filed document by "ECF" number refers to the court-applied pagination (the blue page numbers at the top), not to the party-applied pagination (the black page numbers at the bottom).

[3] Lease Assignment (ECF No. 64-8).

[4] Lease Termination (ECF No. 63-16).

[5] **Ex. 1,** Tr. 9619:25 (June 7, 2023).

[6] **Ex. 1,** Tr. 11425:1 (June 15, 2023).

8

("AFI") (a Stoneledge affiliate), and others. This motion refers to Stoneledge and AFI together as "Ashley."

**Carson Madrona's Defense**

Mountain's claim and Perez's crossclaim presented a question at the core of this declaratory judgment action: Who should defend Carson Madrona? Under the assigned lease, Ashley had promised to defend Carson Madrona under certain circumstances: "against any and all … suits … arising out of or in any way connected with" Ashley's "use of the" leased premises.[7] At first, Ashley funded Carson Madrona's defense itself (alongside its own defense) to satisfy its obligations under the lease.[8] Ashley withdrew its defense of Carson Madrona in December 2019, because "[t]he incident … did not arise from [Ashley's] use of the Premises, the conduct of [Ashley's] business in the Premises, or any breach or default of [Ashley] under the Lease." **Ex. 2**.

Carson Madrona then sought a defense directly from Hartford under the Hartford Policy. In March 2020, Hartford agreed to defend Carson Madrona against the *Mountain* and *Perez* claims "subject to a full reservation of [Hartford's] rights to deny or limit coverage," including if Hartford "determine[s] that there is no coverage for the claims."[9] Hartford explained that Carson Madrona might be an additional insured under Ashley's insurance policy, depending on the relationship between Mountain's and Perez's injuries, on one hand, and Ashley's leased premises, on the other hand.

---

[7] Lease Agreement (ECF No. 64-7) at 20, art. 18.

[8] The Hartford Policy has a $1 million deductible. ECF No. 64-10 at 113.

[9] Letter from Antanik Thompson to Bill Neiman (Mar. 30, 2020) (ECF No. 64-11).

Hartford supplemented its reservation of rights letter on September 30, 2022. The supplemental letter addressed evidence that Carson Madrona and SanOak, but not Ashley, had caused Perez's injuries. "[T]he incident occurred as a result of improper maintenance and repair of the Main Electric Panel"—electrical equipment in a common area, not in the leased premises—which Mountain and Perez "assert[ed] was Carson [Madrona's] responsibility to maintain under the Lease Agreement."[10] Hartford explained that if "it is established that the Plaintiffs' injuries occurred as the result of the electrical system that was Carson [Madrona's] duty to maintain and in a common area under the control of Carson [Madrona] and/or its property manager, … Hartford has no duty to indemnify Carson [Madrona]."

### The Trial and the Appeal

Mountain's claim was settled, but Perez's claim went to trial. In July 2023, the jury returned its verdict. The jury was asked, "what percentage of responsibility for … Perez's harm do you assign to" each defendant? The jury assigned 50% to Carson Madrona, 50% to SanOak, and 0% to Ashley.[11]

Upon learning that Ashley was 0% responsible for Perez's injuries, Hartford explained to Carson Madrona that although Hartford had been trying for years to get Ohio Security to acknowledge its duty to defend Carson Madrona, Hartford would nonetheless "continue to fund Carson's reasonable and necessary defense fees and costs in the [Underlying] Lawsuit." **Ex. 3**; **Bailey Dec.** ¶ 7. Hartford also continued pressing Ohio Security to acknowledge its primary insurance obligations, explaining that Hartford "has no continuing defense obligation and no

---

[10] Letter from Tim Bailey to Bill Neiman (Sept. 30, 2022) (ECF No. 64-12).

[11] **Ex. 1**, Tr. 14430 (July 10, 2023); Verdict Form (ECF No. 63-11) at 4.

indemnity obligation to Carson in this matter" and that Ohio Security should be defending Carson Madrona.[12] After all, Ohio Security was Carson Madrona's direct insurer, and it had been defending SanOak. Even after Hartford's letter to Ohio Security, Ohio Security knew that Hartford was continuing to defend Carson Madrona. **Ex. 4** ("It is our understanding that Hartford will also continue to defend Carson Madrona"). A month later, Hartford filed this lawsuit, seeking a declaration of the parties' rights and obligations, while continuing to defend Carson Madrona and posting its share of an appellate bond. **Bailey Dec.** ¶ 8.

After the verdict, Ohio Security (which was already defending SanOak) commenced defending Carson Madrona under the policy it issued directly to Carson Madrona and engaged appellate counsel. Carson Madrona and Ohio Security then appealed from the jury verdict. But before anyone filed a principal brief, the Underlying Lawsuit settled. Carson Madrona, Ohio Security, and American Fire (excess insurance above the Ohio Security policy) contributed to that settlement. This motion refers to Ohio Security and American Fire together as "Liberty."[13]

### This Coverage Action

In its original complaint here, Hartford sought, among other relief, a judicial declaration that it could withdraw its defense of Carson Madrona and deny indemnity coverage.[14] Because Liberty has since picked up Carson Madrona's defense and contributed toward settlement, this action is now about two kinds of recoupment: first, whether Hartford can recoup from Ohio

---

[12] Letter from Sonia S. Waisman, Esq. to Patricia A. Daza-Luu, Esq. (Sept. 11, 2023) (ECF No. 64-14) at 4.

[13] *See* Liberty Mutual Group, *Statement as of June 30, 2024: Schedule Y - Part 1 - Organizational Chart* at 2, https://tinyurl.com/LiMuOrg (accessed December 30, 2024).

[14] Complaint for Declaratory Relief (ECF No. 1).

Security some or all of the costs Hartford incurred to defend Ohio Security's direct insured; and second, whether Carson Madrona and Liberty can recoup their post-verdict defense and settlement costs from Ashley's primary and excess insurers—Hartford and ACE Property and Casualty Insurance Company ("ACE").

## Legal Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 only when, based on undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 322. Here, every material fact is undisputed—the parties agree about what the underlying pleadings say, what their insurance policies say, what they wrote to one another in letters, who paid for what costs, and what the jury verdict says. The only remaining question is the legal effect of these undisputed facts and authentic documents.

## Argument

I. **An endorsement to the Hartford policy, not the coverage form, controls Carson Madrona's status as an additional insured.**

The Hartford Policy, like very many other insurance policies, comprises several "forms" of four basic types: (i) "declarations" pages setting out the parties to the insurance contract, the cost of insurance premiums, and the limits of insurance; (ii) a "coverage form" that sets out the basic terms of the insurance policy; (iii) "endorsements" that modify the basic terms in the coverage form to *this* insurance of *this* insured; and (iv) "schedules" setting out factual details that help clarify the meaning of the other forms. *See* ECF No. 64-10 at 13 (listing forms).

When interpreting insurance policies, California courts have held for decades that "if there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls." *Cont'l Cas. Co. v. Phoenix Const. Co.* (1956) 46 Cal. 2d 423, 431; *see*

*Fageol Truck & Coach v. Pac. Indem.* (1941) 18 Cal. 2d 731, 738 ("Such special endorsement prevails over any contrary provision of the body of the policy"). This matches the "standard rule of contract interpretation" that "specific terms control over general ones."[15] *United States ex rel. Welch v. My Left Foot Child. Therapy, LLC* (9th Cir. 2017) 871 F.3d 791, 797.

Consistent with this standard rule, the Hartford Policy's coverage form has a list of people who qualify as an "additional insured," but explains that the list does not apply if there is an applicable endorsement:

> However, no such person or organization is an insured under this provision if such person or organization is included as an insured by an endorsement issued by us and made a part of this Coverage Part.

ECF No. 64-10 at 27 (just below the highlighted portion). In other words, if there is an endorsement that governs Carson Madrona's status as an additional insured, then the coverage-form provisions do not apply. Carson Madrona and Liberty omitted this language from their motions, using ellipses. ECF No. 63 at 11; ECF No. 64 at 6.

The Hartford Policy does include an endorsement that governs Carson Madrona's status as an additional insured. The policy contains an "Additional Insured - Designated Person or Organization" endorsement, which applies to "blanket where required by written contract or agreement" (the "Blanket Endorsement"):

> A. Section II — Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule ["BLANKET WHERE REQUIRED BY WRITTEN CONTRACT OR AGREEMENT"], but only with respect to liability for "bodily injury", "property damage" or "personal and

---

[15] California law uses ordinary canons of contract construction for insurance policies. "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Haynes v. Farmers Ins. Exch.* (2004) 32 Cal. 4th 1198, 1204. To that end, courts "seek to discern the mutual intention of the parties and, where possible, to infer this intent from the terms of the policy." *Id.* (citing Cal. Civ. Code §§ 1636, 1639).

advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

ECF No. 64-10 at 59. "Blanket" additional insured provisions usually apply when a contract between the insured and a third party require additional insured coverage. *See Voyager Indem. Ins. v. Zalman N., Inc.* (C.D. Cal. 2023) 668 F. Supp. 3d 990, 994, 997; *Certain Underwriters at Lloyd's of London v. Am. Safety Ins. Services, Inc.* (C.D. Cal. 2010) 702 F. Supp. 2d 1169, 1171 (defining "Blanket Endorsement" to mean an endorsement that "provides coverage to 'those parties required to be named as an Additional Insured in a written contract with the Named Insured entered into prior to the loss or occurrence"). Here, the Blanket Endorsement specifically applies to liability from "premises … rented to you," *i.e.*, the space that Ashley leased.[16]

The Blanket Endorsement, by its terms, governs Carson Madrona's coverage as an additional insured, because Ashley was "required by written contract" to make Carson Madrona

---

[16] Carson Madrona argues that because no endorsement to the Hartford Policy specifically "names Carson Madrona," no endorsement matters. ECF No. 63 at 22. But nothing in the coverage form requires the endorsement to *name* Carson Madrona; it is enough under the plain text of the policy that Carson Madrona "is included as an insured by an endorsement." Carson Madrona is included as an insured by the Blanket Endorsement, so the coverage-form additional-insured provisions do not apply.

an insured under the Hartford Policy. The lease agreement between Carson Madrona and Ashley

obligated Ashley to make Carson Madrona an insured under its insurance:

> Tenant … agrees [to] carry and maintain … a policy of *commercial general liability insurance* (known as broad form comprehensive general liability insurance) *insuring Tenant and Landlord* against any and all liability for personal injury and property damage (including loss of use of property) arising out of the operation, maintenance, use or occupancy of the Premises, as well as all private and public sidewalks, driveways, parking areas and other grounds serving the Premises or otherwise related thereto. Landlord shall also be a named insured on such policy.

ECF No. 64-7 at 23 (emphasis added). The lease then sets out the required limits of insurance,

the priority of Ashley's insurance, and several other insurance specifics. *Id.* at 24. It follows that

the Blanket Endorsement, not the coverage-form provisions, governs Carson Madrona's status as

an additional insured.

Because they omitted key language from their motions, neither Carson Madrona nor

Liberty explained why the coverage form, rather than the Blanket Endorsement, should govern

Carson Madrona's additional-insured rights. Nor can they. The plain text of the coverage form

says that the Blanket Endorsement controls.

## II.    Hartford has no duty to indemnify Carson Madrona, because Ashley did not cause Perez's injuries.

The Blanket Endorsement's terms match a commonsense notion: liability insurance

issued to Ashley should insure only against injuries that Ashley caused. The Blanket

Endorsement specifically limits Carson Madrona's insurance coverage to injuries "caused, in

whole or in part, by [Ashley's] acts or omissions or the acts or omissions of those acting on

[Ashley's] behalf." ECF No. 64-10 at 59.

Perez's injuries were not "caused, in whole or in part" by Ashley. If the jury had found

Ashley to be a 100% substantial cause, then Perez's injuries would have been "caused, in whole"

by Ashley. If the jury had found Ashley to be a partial substantial cause, then Perez's injuries would have been "caused, … in part" by Ashley. But because the jury found Ashley to be a 0% substantial cause, Ashley did not cause Perez's injuries.

Decades of California cases confirm that because Ashley was not a substantial factor in Perez's injuries, Ashley did not "cause" his injuries. Ashley's conduct was not a "legal cause of the injury" unless Ashley's conduct was to some extent a substantial factor. *See Espinosa v. Little Co. of Mary Hosp.* (1995) 31 Cal. App. 4th 1304, 1317–1318 ("where a defendant's negligence is a concurring cause of an injury, the law regards it as a legal cause of the injury, regardless of the extent to which it contributes to the injury"). That is because "conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." *Yanez v. Plummer* (2013) 221 Cal. App. 4th 180, 187 (citing 6 Witkin, Summary of California Law, Torts § 1185 (11th ed. 2024)). And it makes sense to tie "cause" to "substantial factor," because "[t]he substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." *People v. ConAgra Grocery Prods. Co.* (2017) 17 Cal. App. 5th 51, 102. When the jury decided that Ashley was not a substantial factor, it also decided that Ashley was not a cause.

The jury instructions in Perez's case also confirm that Carson Madrona and SanOak were the only causes of Perez's injuries. "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. … Conduct is not a substantial factor in causing harm if the same harm would have occurred without the conduct." **Ex. 1**, Tr. 14147 (July 6, 2023). Because the jury was instructed to find Ashley a substantial factor if a "*reasonable* person would consider" Ashley to

have contributed to Perez's injuries, the jury verdict necessarily means that only an *unreasonable* person would say Ashley caused Perez's injuries. That is, the jury decided that Carson Madrona's and Liberty's arguments are unreasonable.

Carson Madrona and Liberty appear to have four arguments in response. *First*, they point to the jury's finding that Ashley was "negligent" as proof that Ashley was a cause of Perez's injuries. ECF No. 63 at 9, 21–23; ECF No. 64 at 13, 17 n.3. But the jury was instructed that "a person who … leases … property is negligent if [they] fail[] to use reasonable care to keep the property in a reasonably safe condition … and to repair or replace or give adequate warning of anything that could reasonably be expected to harm others." **Ex. 1**, Tr. 14148–49 (July 6, 2023). This instruction did not require the jury to find that Ashley's lack of reasonable care *caused* any of Perez's injuries. **Ex. 1**, Tr. 14150–51 (July 6, 2023). The jury was instructed to find "negligence" if Ashley failed to inspect its own rented space, regardless of the consequences.

*Second*, Carson Madrona argues without evidence that Perez's injuries were "caused, in whole or in party, by … the acts or omissions of those acting on [Ashley's] behalf," because Perez was "clearly" acting on Ashley's behalf.[17] ECF No. 63 at 22. But even if Perez were acting on Ashley's behalf,[18] Carson Madrona's premise—that Perez's own negligence was a substantial

---

[17] Carson Madrona was discussing a different part of the Hartford Policy. Carson Madrona argues that if it is not an additional insured under § II.6.c. of the coverage form, then it is an additional insured under § II.6.f. of the coverage form. ECF No. 63 at 22. Carson Madrona's status as an additional insured is not governed by *any* subsection of the coverage form provisions. *See* § 1 *supra*. But because § II.6.f. uses the phrase "caused, in whole or in part," which appears in the Blanket Endorsement, we consider Carson Madrona's arguments here.

[18] Carson Madrona's continuing effort to generate legal theories under which it would have won the Underlying Lawsuit blinks reality. Perez was not acting "on Ashley's behalf," because he was not acting as Ashley's agent; he was acting on behalf of an electrical repair company. *See Secci v. United Indep. Taxi Drivers, Inc.* (2017) 8 Cal. App. 5th 846, 855 (an agent acts on its principal's behalf).

factor in causing his injuries—was *made to* and *rejected by* the jury. **Ex. 1**, Tr. 13864 (July 5, 2023) (Carson Madrona's closing argument: "the sole cause of the arc flash was Mr. Perez, and Mr. Perez's injury were due to Mr. Perez himself and some of the actions he took or failed to take, period."). The jury rejected Carson Madrona's argument, instead finding that Perez was not negligent. **Ex. 1**, Tr. 14430 (July 10, 2023). Based on that finding, it allocated 0% substantial cause to Perez. *Id.* ("To David Perez, '0' percent."). Neither Ashley nor Perez "cause[d], in whole or in part" Perez's injuries.

Carson Madrona wants to relitigate these issues in one paragraph, again citing no evidence. ECF No. 63 at 23. It argues that Perez "was also at least in part a cause of the accident," without explaining its theory, and it argues that because Ashley called Perez to fix the flickering lights, Ashley "at least in part" caused Perez's injuries. But the jury held otherwise. After a full trial on the merits, the jury imposed liability on Carson Madrona based on its finding that Ashley and Perez *did not cause* Perez's injuries. The Hartford Policy, by contrast, covers only liability imposed on Carson Madrona that Ashley or its agents caused.

Perhaps Carson Madrona means to argue that any but-for cause—any event in a long causal chain—qualifies as "caused" under the Hartford Policy. But as one court has persuasively explained, but-for causation is inconsistent with the phrase "caused, in whole or in part." "These words require proximate causation since 'but for' causation cannot be partial. An event may not be wholly or partially connected [in the but-for sense] to a result, it either is or it is not connected." *Burlington Ins. v. N.Y.C. Transit Auth.* (2017) 29 N.Y.3d 313, 322 (Rivera, J.). Because a but-for cause cannot be "in part" but a proximate cause can, the only way to make

sense of the whole phrase is to require a proximate cause. *Id.* (citing Dan B. Dobbs *et al.*, Torts §

189 (2d ed. 2011 & June 2017 Update) and *Black's Law Dictionary* (10th ed. 2014)).[19]

    *Third*, in one paragraph, Liberty appears to argue that because the lease agreement

between Carson Madrona and Ashley obligated Ashley to "indemnify, hold harmless, and

defend" Carson Madrona, "[t]here can be no dispute" that "Carson Madrona" had "additional

insured status" "under the Hartford Policy." ECF No. 64 at 21. But the lease does not govern

Hartford's coverage obligations; the Hartford Policy does. *Reliance Nat. Indem. v. Gen. Star

Indem.* (1999) 72 Cal. App. 4th 1063, 1072–73 ("There is nothing that can make any of the

policies at issue subject to the contractual obligations to which these carriers were not parties");

*see* ACE's Cross-Motion at 22–23. As Liberty itself explained just a paragraph earlier, additional

insureds are "entitled to the 'full indemnity and defense promised *under the policy*.'" *Id.*

(emphasis added). In any event, the lease has been terminated and the parties have released one

another, so no claim can depend on anyone's rights under the lease. Lease Termination (ECF

No. 63-16).

    *Fourth*, without any associated argument, Liberty contends that Hartford "specifically

acknowledg[ed] that Carson Madrona was an additional insured under the Lessors of Land

provision [in the coverage form]." ECF No. 64. Not so. Hartford's letter to Carson Madrona

included the language that Carson Madrona and Liberty have consistently omitted, under which

Carson Madrona is *not* "an insured under" the coverage-form provisions if it "is included as an

insured by an endorsement." ECF No. 64-11 at 6. Hartford acknowledged that Carson Madrona

was "defined in the lease" as Ashley's landlord, *id.* at 8, but never concluded that this made

---

[19] For a fuller treatment of this issue, see ACE's cross-motion for summary judgment.

Carson Madrona an additional insured under the coverage-form provisions. To the contrary, Hartford's defense was "subject to a full reservation of … Hartford's rights to deny or limit coverage … for any other reason, based on the terms of the policies and applicable law. *Id.* Similarly, Hartford's supplemental letter notified Carson Madrona that it might not satisfy even the looser "arises out of" test, because discovery revealed facts showing that only Carson Madrona and SanOak were responsible for Perez's injuries. ECF No. 64-12 at 3–4.[20]

*Finally*, in a passing swipe, Liberty appears to argue that because Hartford defended Carson Madrona through trial, Hartford "cannot seriously dispute" that it owed Carson Madrona a defense through appeal and full indemnity. ECF No. 64 at 21. But California courts do not punish insurers for defending when coverage is in doubt. *State Farm Gen. Ins. v. Mintarsih* (2009) 175 Cal. App. 4th 274, 285. Hartford can rationally provide a defense during the trial litigation while seriously disputing any duty to do so.

Hartford had no duty to indemnify Carson Madrona against the *Perez* settlement. It therefore has no obligation to reimburse Carson Madrona or any of its insurers for their contributions toward that settlement.

## III.    Ohio Security breached its duty to defend Carson Madrona for years, and it owes Hartford some or all of the cost of defending Carson Madrona.

Ohio Security had a primary duty to defend its named insured, Carson Madrona—a duty that Ohio Security breached for years while Hartford defended Carson Madrona. After abandoning its insured through trial, Ohio Security now demands payment from Hartford for certain appellate costs. But it is Ohio Security that owes money for a wrongly denied defense.

---

[20] Liberty's motion does not invoke the doctrine of waiver, and any waiver argument is belied by the text of Harford's letters: "Hartford … does not waive its rights." ECF No. 64-12 at 5.

### A. Ohio Security had a duty to defend Carson Madrona.

When, as here, two insurers provide coverage at the same level for the same insured, courts will enforce the policies' other-insurance clauses as written if the provisions do not conflict and there is no prejudice to the insured. *Hartford Cas. Ins. v. Travelers Indem.* (2003) 110 Cal. App. 4th 710, 727.

In this case, the two policies can be reconciled. The Hartford Policy explicitly states that it is excess of the Ohio Security Policy: the Hartford Policy is "excess over any other insurance, whether primary, excess, contingent or on any other basis, except when purchased specifically to apply in excess of this insurance." ECF No. 64-10 at 97. But the Ohio Security Policy says that it is, by default, primary: "This insurance is primary except when Paragraph b. below applies." ECF No. 64-5 at 29. Ohio Security tries to rely on an exception to its default rule, under which the Ohio Security Policy is excess over "[a]ny other primary insurance available to Carson Madrona covering liability for damages arising out of the premises or operations … for which you have been added as an additional insured." ECF No. 64-5 at 29. For this exception to apply, Ohio Security must point to other primary insurance available to Carson Madrona. But the Hartford Policy is not "primary insurance"; it is "excess over" all other insurance. Hartford Policy (ECF No. 64-10) at 97. Ohio Security's arguments to the contrary fail to confront this policy language.

At the very least, Hartford's and Ohio Security's other-insurance clauses are repugnant, because they cannot both be true at the same time. When the other-insurance clauses conflict in this way, California law deletes both clauses, requiring all insurance issued as primary insurance to share equally. *Century Sur. Co. v. United Pac. Ins.* (2003) 109 Cal. App. 4th 1246, 1260 ("The Century 'other insurance' clause and the pro rata clauses of the other three insurers are mutually repugnant. If we enforce Century's clause, then we cannot enforce the clauses of the other

primary insurers."); *Travelers Cas. & Sur. v. Century Sur.* (Ct. App. 2004) 13 Cal. Rptr. 3d 526, 529. If this Court rejects Hartford's lead argument—that the Hartford Policy is excess over the Ohio Security Policy—then it should hold that the other-insurance clauses are repugnant: Hartford's other-insurance clause purports to make the Hartford Policy excess over the Ohio Security Policy, and (according to Ohio Security) Ohio Security's other-insurance clause purports to do the opposite.

Ohio Security cites only one case on this issue: *Rossmoor Sanitation v. Pylon, Inc.* (1975) 13 Cal. 3d 622. But that case had nothing to do with additional-insured coverage. In *Rossmoor*, Rossmoor Sanitation had an indemnity agreement with Pylon, Inc. *Id.* at 625. Insurance Company of North America had paid money on behalf of Rossmoor and sought subrogation—it sought to step into Rossmoor's shoes and press a contractual indemnity claim against Pylon. *Id.* at 633–34. Here, by contrast, Ohio Security has no subrogated indemnity claim to press against Ashley. Indeed, Carson Madrona filed such a claim in the Perez action, but that claim died when Carson Madrona released Ashley from any lease-related liability. Lease Termination at 4 ("Landlord … hereby fully and unconditionally … releases … Tenant … from any and all … claims … which the Landlord … ever had … related in any way to the Premises or the Lease"). Applying *Rossmoor*, because Ohio Security lacks any subrogated claim against Ashley, it must argue about priority of coverage based on the text of the insurance policies.

No matter which way this Court resolves this issue, Ohio Security was a primary insurer and obligated to defend Carson Madrona against Perez's claims.

### B. Ohio Security wrongly refused to participate in Carson Madrona's defense.

Apart from its priority-of-coverage arguments, Ohio Security concedes that its policy covers the Underlying Lawsuit. ECF No. 64 at 23 ("Ohio Security acknowledges that with regard

to the duty to indemnify Carson Madrona, its policy attaches before the excess policies issued by Ace and American Fire."). Yet Ohio Security spent years insisting that others should defend its insured. In 2018 and 2019, Ohio Security insisted that Ashley defend Carson Madrona. **Ex. 5**; **Ex. 6**. In 2022, Ohio Security again insisted that Hartford—and only Hartford—owed Carson Madrona a defense. **Ex. 7**. Because Ohio Security had a primary duty to defend Carson Madrona that entire time, it owes Hartford reimbursement for Hartford's overpayment toward Carson Madrona's defense.

For these reasons, this Court should hold that the Ohio Security Policy is the true primary policy, which means Ohio Security owes Hartford all of Hartford's Carson Madrona-related defense costs. In the alternative, if this Court determines that the Ohio Security Policy and the Hartford Policy are co-primary, this Court should hold that Ohio Security owes half as much.

## IV.    Hartford never breached a duty to defend Carson Madrona.

Unlike Ohio Security, Hartford never breached a duty to defend Carson Madrona. No one disputes that Hartford defended Carson Madrona through trial. And although Hartford lacked a duty to defend Carson Madrona after the jury verdict, Hartford never withdrew its defense. Instead, even though Ohio Security knew Hartford was continuing to pay defense counsel to defend Carson Madrona, Ohio Security paid for new appellate counsel to defend Carson Madrona and SanOak.

### A.    After the jury determined that Ashley did not cause Perez's injuries, Hartford had no duty to defend Carson Madrona.

Ohio Security, which paid to appeal the judgment and then settled before briefing, seeks to shift appellate counsel's fees to Hartford. Its premise for "Hartford's Continued Duty to Defend After the Verdict" is that the "arising out of" language in the coverage form "does not

require proof of liability on the part of Ashley Furniture to trigger indemnity coverage for Carson Madrona." ECF No. 64 at 20–21 (citing *Vitton Constr. Co. v. Pac. Ins.* (2003) 110 Cal. App. 4th 762, 767–68). For that reason, and that reason alone, Ohio Security contends that Hartford's defense obligation was the same before and after the jury's verdict.

But the Blanket Endorsement *does* restrict coverage for Carson Madrona to injury "caused, in whole or in part, by [Ashley's] acts or omissions." Again, Ohio Security never confronts this language.

Under the Blanket Endorsement, the jury's verdict changed everything. Even when the underlying pleadings or extrinsic evidence show a potential for coverage, giving rise to a defense obligation, the obligation terminates when "undisputed" facts "conclusively demonstrate … no potential for coverage." *Haskel, Inc. v. Superior Court* (1995) 33 Cal. App. 4th 963 (citing *Montrose Chem. Corp. v. Superior Ct.* (1993) 6 Cal. 4th 287, 298–99); *see Saarman Constr., Ltd. v. Ironshore Specialty Ins.* (N.D. Cal. 2017) 230 F. Supp. 3d 1068, 1076 (Tigar, J. applying the legal test). When the jury found that Ashley's negligence was not a substantial cause of Perez's injury, any potential for coverage under the Hartford Policy disappeared. Indeed, the Perezes did not cross-appeal seeking to hold Ashley liable. At that point, there was no potential for coverage under the Hartford Policy, and Hartford had no duty to defend Carson Madrona.

### B.    Hartford never withdrew its defense, so Hartford satisfied any post-verdict duty to defend Carson Madrona.

Even if Ohio Security convinces this Court that Hartford *had* a duty to defend Carson Madrona after the verdict, Ohio Security cannot win summary judgment that Hartford *breached* that duty. Ohio Security cannot show that Hartford ceased defending Carson Madrona. After the verdict, Hartford told Carson Madrona that it would continue to provide a defense. Hartford

could not have been clearer on this point, explaining to Carson Madrona that although Ohio Security should either take over the defense or contribute toward it, Hartford would continue to defend Carson Madrona. **Ex. 3**. Hartford protected Carson Madrona even after the judgment by contributing toward the premium for Carson Madrona's appeal bond, **Bailey Dec.** ¶ 8, a fact omitted by Liberty in its papers. And Ohio Security wrote a letter reflecting its understanding that Hartford was defending.[21] **Ex. 4**. Neither Carson Madrona nor Ohio Security have offered any contrary evidence that would create a genuine issue about this basic fact. Instead, the summary judgment record shows that Ohio Security finally recognized its duties, retained appellate counsel, noted the appeal, and partially bonded the judgment all with full knowledge that Hartford was continuing to pay to defend Carson Madrona.

## V.    Hartford does not owe Ohio Security for defense fees, costs, or interest.

In addition to "defense costs," Ohio Security seeks reimbursement from Hartford for "all costs taxed against" Carson Madrona and $1.1 million in post-judgment interest.[22] Ohio Security premises this argument on the section of the Hartford policy governing "supplementary payments," which include defense counsel's fees, certain bond costs, and post-judgment interest Hartford Policy (ECF No. 64-10) at 74. Hartford could owe these costs only if Hartford had a duty to defend Carson Madrona. *Mintarsih*, 175 Cal. App. 4th at 285. And even if Hartford had a duty to defend, such a duty is shared with Ohio Security, and the supplementary payments apply

---

[21] Ohio Security's brief says that based on a September 2023 letter, Ohio Security understood that Hartford *was not* defending, calling Hartford's letter an "abandonment." ECF No. 64 at 24. But its letter from November 2023 says the opposite. **Ex. 4**.

[22] Liberty appears confused about what it paid. Its affidavit says it paid $1.1 million in interest, but it has since responded in discovery that it paid $1.2 million in interest. **Ex. 8**.

according to their terms. Here, that means Hartford owes nothing in costs, no attorneys' fees, and no post-judgment interest.

**A. Post-judgment Interest**. Whether or not Hartford had a duty to defend Carson Madrona, Hartford owes none of the post-judgment interest. The relevant provision of the Hartford Policy says that Hartford "will pay … [a]ll interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance." ECF No. 64-10 at 25. Put another way, Hartford promised to pay any interest that accrues because of Hartford's delay in paying its share of the underlying judgment.

Here, because Hartford had no duty to indemnify Carson Madrona, Hartford owed none of the jury award against Carson Madrona. *Mintarsih*, 175 Cal. App. 4th at 285. For that reason, none of the post-judgment interest is attributable to Hartford's delay in paying Perez. Instead, post-judgment interest accrued only because Liberty and Carson Madrona elected to take an appeal and delay payment. Under the plain text of the Hartford Policy, Liberty and Carson Madrona cannot make Hartford pay for their decision to delay satisfying the judgment.[23]

**B. Costs**. For two reasons, Ohio Security is not entitled to reimbursement of costs awarded against Carson Madrona and SanOak.

*First*, Ohio Security is wrong about priority of coverage. *See* § III.A. The Ohio Security Policy is either the true primary policy and responsible for all costs, or Ohio Security is co-

---

[23] Similarly, Hartford owes no prejudgment interest. The Hartford Policy promises to pay "[p]rejudgment interest awarded against the insured" but only "on that part of the judgment we pay." As with post-judgment interest, because Hartford had to pay none of the underlying judgment, it can owe no prejudgment interest to any party.

primary with the Hartford Policy and, in that circumstance, Hartford's share of the costs would more than offset Ohio Security's failure to defend Carson Madrona.[24] Either way, Hartford owes Ohio Security nothing.

*Second*, Ohio Security is trying to force Hartford to pay for costs attributable to SanOak, who (all parties agree) Hartford had no duty to defend or indemnify. The $238,582 costs award was rendered against Carson Madrona and SanOak, jointly and severally, based on a jury verdict that each was 50% liable for Perez's injuries. Ohio Security offers no authority under which it should be allowed to reconstrue those costs as 100% attributable to Carson Madrona (who Hartford arguably insured), rather than equally attributable to SanOak (who Ohio Security alone insured). Instead, it appears that Ohio Security has accounted for its payment to Perez to maximize its litigation advantage against Hartford, rather than to fairly account for its payments on behalf of its insureds. This Court should not countenance that maneuver.

**C. Appellate Counsel Fees**. Hartford owes none of the appellate counsel fees Ohio Security incurred, because it had no duty to defend Carson Madrona on appeal because its duty to defend ceased at the verdict. *See* § II. But even if Ohio Security could establish that Hartford had a duty to defend on appeal, Hartford fulfilled that duty through continued funding of trial counsel who contributed to the appellate efforts. At most it would owe at most a quarter of reasonable and necessary fees and this would be more than offset by all the back defense costs owed by Ohio Security. Again, here the apportionment of fees should match the apportionment

---

[24] Ohio Security's over-attribution to Carson Madrona cuts Hartford's share of the costs award in half. If Ohio Security and Hartford are co-primary, that would cut Hartford's share of the costs award in half again. And if Ohio Security is the true primary policy, then Hartford owes none of these costs. So of the $238,582 in costs awarded at trial, Hartford owes $0 or, at most, $59,645.50.

HARTFORD'S CROSS-MOTION FOR SUMMARY JUDGMENT

of costs—fees must be split among Carson Madrona and SanOak, and then whichever insurers

have a duty to defend Carson Madrona would pay the fees.

## VI.    Carson Madrona would be entitled to no coverage under the Hartford Policy even under the coverage-form provisions.

Finally, even if Carson Madrona and Liberty were to convince this Court that the

Hartford Policy's coverage form additional-insured provisions apply, Hartford's defense and

indemnity obligations would be the same: Hartford's duty to defend would have ended at the jury

verdict, and Hartford would have no duty to indemnify Carson Madrona. ACE addresses this

issue in greater detail in its motion, and Hartford adopts ACE's arguments by reference.

## VII.    Conclusion

For these reasons, this Court should grant summary judgment in its favor as described in

the above notice of motion and deny Liberty's and Carson Madrona's motions for summary

judgment.

*/s/ Gary R. Selvin*
Gary R. Selvin (112030)
Selvin Wraith LLP
6250 Claremont Avenue, Suite 200
Oakland, CA 94618
Telephone No.: 510.874.1814
Facsimile No.:  510.465.8976
gselvin@selvinwraith.com

Ezra S. Gollogly
    admitted pro hac vice
Joseph Dudek,
    admitted pro hac vice
Kramon & Graham, P.A.
7500 East Pratt St., Suite 1100
Baltimore, MD 21202
Telephone No.: 410.752.6030
Facsimile No.:  410.361.8233
egollogly@kg-law.com
jdudek@kg-law.com
