William C. Reeves - 183878
Christine Fierro - 191660
MORALES FIERRO & REEVES
1440 Maria Lane, Suite 200
Walnut Creek, CA 94596
Telephone:  (925) 288-1776
Facsimile:  (925) 288-1856
Email: lawoffice@mfrlegal.com

Attorneys for Counter-Defendant
ACE PROPERTY & CASUALTY
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HARTFORD FIRE INSURANCE COMPANY, )    CASE NO.: 3:31-CV-06259-VC

              Plaintiff, )

       vs. )

CARSON MADRONA CO., LLC; et al. )

              Defendants. )

NOTICE OF MOTION, MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT AND OPPOSITION TO THE MOTIONS OF CARSON
MADRONA CO., LLC, OHIO SECURITY INSURANCE COMPANY AND AMERICAN
FIRE AND CASUALTY COMPANY

Date: February 20, 2025
Time: 10:00 a.m.
Judge: Honorable Vince Chhabria

Accompanying Document: Request for Judicial Notice

# TABLE OF CONTENTS

Notice Of Motion And Opposition ........................................................................... 1

Points And Authorities .......................................................................................... 1

I.    Introduction ................................................................................................. 1

II.   Facts ............................................................................................................ 3

    A.    The Incident Giving Rise to the Underlying Action ....................... 3

    B.    The Underlying Action and the Jury Verdict .................................. 5

    C.    The Policies ................................................................................... 6

        1.    The Hartford Policy ........................................................... 6

        2.    The ACE Excess Policy ...................................................... 7

        3.    The Ohio and American Policies ........................................ 8

III.  Argument .................................................................................................... 8

    A.    The Duty to Indemnify Carson as An Additional Insured Is Controlled By the Terms of the Additional Insured Endorsement in the Hartford Policy .......................................... 8

    B.    No Indemnity Is Owed Carson Under the Hartford and ACE Policies Because the Jury Held That Stoneledge Was Not A Cause of the Damages For Which Carson Was Held Liable .... 11

        1.    The additional insured endorsement requires proximate causation ..................................................... 11

        2.    The jury in the Underlying Action held that Stoneledge's acts or omissions were not a legal cause of the injury to Perez .......................................................... 16

    C.    The Injuries For Which Carson Was Held Liable Did Not "Arise Out Of" The Use "Of That Part Of The Land Or Premises Leased To You .................................................. 18

    D.    ACE Did Not Owe A Defense to Carson Under Its Excess Policy .... 20

    E.    Priority of Coverage ..................................................................... 21

IV.   Conclusion ................................................................................................ 25

TABLE OF AUTHORITIES

<u>State Cases</u>

*Acceptance Ins. Co. v. Syufy Enterprises,*
69 Cal.App.4th 321 (1999) .......... 12

*Aerojet-General Corp. v. Transport Indemnity Co.,*
17 Cal.4th 38 (1997) .......... 9

*Bacon Constr. Co. v. Arbella Prot. Ins. Co., Inc.,*
208 A.3d 595 (R.I. 2019) .......... 15

*Bockrath v. Aldrich Chem. Co.,*
21 Cal. 4th 71 (1999) .......... 16

*Burlington Ins. Co. v. NYC Transit Auth.,*
29 N.Y.3d 313 (2017) .......... 14

*City of Bell v. Sup. Court,*
220 Cal.App.4th 236 (2013) .......... 24

*Continental Cas. Co. v. Phoenix Constr. Co.,*
46 Cal.2d 423 (1956) .......... 9

*Edmondson Prop. Mgmt. v. Kwock,*
156 Cal.App.4th 197 (2007) .......... 24

*Fireman's Fund Ins. Cos. v. Atlantic Richfield Co.,*
94 Cal.App.4th 842 (2001) .......... 12

*Gemini Ins. Co. v. Delos Ins. Co.,*
211 Cal. App. 4th 719 (2012) .......... 12

*Hanover Ins. Co. v. Philadelphia Indem. Ins. Co.,*
159 A.D.3d 587 (N.Y. App. Div. 2018) .......... 15

*Hartford v. State of California,*
41 Cal.App.4th 1564 (1996) .......... 19

*Herman Christensen & Sons, Inc. v. Paris Plastering Co.,*
61 Cal.App.3d 237 (1976) .......... 24

*JPI Westcoast Const., L.P. v. RJS & Associates, Inc.,*
156 Cal.App. 4th 1448 (2007) .......... 22

*Maryland Casualty Co. v. Bailey & Sons, Inc.,*
35 Cal.App.4th 856 (1995) .......... 24

*Maryland Casualty Co. v. Nationwide Ins. Co.,*
65 Cal.App.4th 21 (1998) .......... 12

*McCrary Constr. Co. v. Metal Deck Specialists, Inc.,*
133 Cal. App. 4th 1528 (2005) .......... 24

*Mission Nat'l Ins. Co. v. Coachella Valley Water Dist.,*
210 Cal.App.3d 484 (1989) .................................................................................... 9

*Montrose Chemical Corp. of Calif. v. Sup.Ct.* (Canadian Universal Ins. Co., Inc.)
(Montrose III), 9 Cal.5th 215 (2020) .................................................................... 20

*N. American Capacity Ins. Co. v. Claremont Liab. Ins. Co.,*
177 Cal.App.4th 272 (2009) .................................................................................. 20

*Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.,*
126 Cal.App.3d 593 (1981) .................................................................................... 20

*Powerine Oil Co., Inc. v. Sup.Ct.* (Central Nat'l Ins. Co. of Omaha) (Powerine II),
37 Cal.4th 377 (2005) ............................................................................................ 20

*Prince v. Pacific Gas & Electric Co.,*
45 Cal.4th 1151 (2009) .......................................................................................... 24

*Reliance Nat. Indem. Co. v. Gen. Star Indem. Co.,*
72 Cal. App. 4th 1063 (1999) .......................................................................... 22, 23

*Rossmoor Sanitation, Inc. v. Pylon, Inc.,*
13 Cal.3d 622 (1975) ...................................................................... 21, 22, 23, 24

*Rutherford v. Owens-Illinois, Inc.,*
16 Cal.4th 953 (1997) ............................................................................................ 16

*Signal Companies, Inc. v. Harbor Ins. Co.,*
27 Cal. 3d 359 (1980) ............................................................................................ 20

*Skanska USA Bldg. Inc. v. M.A.P. Mech. Contractors, Inc.,*
505 Mich. 368 (2020) ............................................................................................ 10

*St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.,*
101 Cal. App. 4th 1038 (2002) ................................................................. 11, 12, 17

*Transport Indemnity Co. v. Schnack,*
131 Cal.App.3d 149 (1982) .................................................................................... 12

*Yahoo Inc. v. Nat'l Union Fire Ins. Co. etc.,*
14 Cal. 5th 58 (2022) ............................................................................................ 15

Federal Cases

*Capital City Real Estate, LLC v. Certain Underwriters at Lloyd's London,*
788 F.3d 375 (4th Cir. 2015) ................................................................................. 14

*Columbia Cas. Co. v. Fed. Ins. Co.,*
2015 WL 4734704 (N.D. Cal. 2015) ..................................................................... 22

*Continental Casualty Co. v. City of Richmond,*
763 F.2d 1076 (9th Cir. 1985) ............................................................................... 13

*Crane v. Royal Ins. Co. of Am.,*
17 F.3d 1186 (9th Cir. 1994) ................................................................................... 9

*Dale Corp. v. Cumberland Mut. Fire Ins. Co.,*
2010 WL 4909600 (E.D. Pa. 2010)                                    10, 13, 14

*Fireman's Fund Ins. Co. v. Discover Property & Cas. Co.,*
2009 WL 2591394 (N.D.Cal. 2009)                                           19

*First Mercury Ins. Co. v. Shawmut Woodworking & Supply Inc.,*
48 F. Supp.3d 158 (D. Conn. 2014)
aff'd, 660 F. App'x 30 (2d Cir. 2016)                                     15

*Gilbane Bldg. Co. v. Admiral Ins. Co.,*
664 F.3d 589 (5th Cir. 2011)                                             14

*Hartford Fire Ins. Co. v. California,*
509 U.S. 764 (1993)                                                       9

*Lincoln Gen. Ins. Co. v. Fed. Constr., Inc.,*
2010 WL 4978852 (N.D. Ill. 2010)                                         15

*Louisville Galleria, LLC v. Philadelphia Indem. Ins. Co.,*
593 F. Supp. 3d 637 (W.D. Ky. 2022)                                      15

*MacArthur v. O'Connor Corp.,*
635 F. Supp. 2d 112 (D. R.I. 2009)                                       15

*Place v. P.F. Chang's China Bistro, Inc.,*
2015 WL 11145058 (W.D. Tenn. 2015)                                       15

*Underwriters at Lloyd's of London v. Cordova Airlines, Inc.,*
283 F.2d 659 (9th Cir.1960)                                              13

Other

Philip L. Bruner & Patrick J. O'Connor, Jr., Braner and O'Connor on Construction
Law § 11:167 (2010)                                                      13

Hon. H. Walter Croskey (Ret.), Hon. Rex Heeseman (Ret.), Jeffrey I. Ehrlich, and
Peter H. Klee, Anatomy of Insurance Policy, California Practice Guide: Insurance
Litigation, Ch. 3-C, August 2024 Update                                  10

Merriam Webster dictionary
(https://www.merriamwebster.com/dictionary/on%20 behalf%20of %20someone)  17

Notice of Motion and Opposition

On February 20, 2025 at 10:00 a.m., ACE Property & Casualty Insurance Company ("ACE") will move under Federal Rule of Civil Procedure 56 for an order granting summary judgment or, in the alternative, partial summary judgment to ACE at the following location: Courtroom 4 on the 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102.  The motion will seek entry of summary judgment and an order that (1) ACE had no duty to indemnify Defendant Carson Madrona Company, LLC ("Carson") against the settlement that ultimately resolved the case captioned *Mountain v. DP Elec*., Alameda County Sup. Ct. Case No. RG 17857916 (the "Underlying Action"); and (2) ACE had no duty to defend Carson with respect to the Underlying Action. In the alternative, ACE seeks a declaration that: (1) even if it owed indemnity, it did not owe a defense to Carson in the Underlying Action; (2) the ACE policy applies only as excess to the policies issued by Hartford, Ohio Security, and American Fire.

This motion is based on this Notice and Motion, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice and Appendix, and all other matters of which this Court may take judicial notice, all pleadings, records and files in this action, and upon all other matters that may be presented at the hearing on this motion

Points and Authorities

I.    <u>Introduction</u>

Through a jury trial, David Perez and his wife Donna (collectively "Perezes") secured a judgment against a commercial property owner and landlord, Carson Madrona Company, LLC ("Carson"), and Carson's property manager, two trusts known as SanOak Management Company ("SanOak"),[1] for injuries Mr. Perez sustained while working on the Carson property's Main Distribution Panel ("MDP").  At trial, Perez alleged that the MDP had been expanded without permits and a "pullout switch" and fuses had been installed which were underrated for the voltage loads those parts were to handle. The result was a dangerous condition that led to an arc flash when

---

[1] James L. Krasne, Trustee of the Guilford Glazer Trust of 1984 dba SanOak Management Company and James L Krasne as Surviving Trustee of The Diane Pregerson Glazer Survivor's Trust dba SanOak Management Company, collectively, hereinafter "SanOak."  Request for Judicial Notice, ¶C, ex. V.

1   Mr. Perez tried to replace a blown fuse. The Perezes were awarded a total of $25.5 million, with

2   fault allocated 50/50 between Carson and SanOak (which were each severally liable).

3       The Perezes also sued a property tenant, Stoneledge Furniture, LLC,[2] alleging Stoneledge

4   was liable for the conditions creating the arc flash.  However, the jury concluded that Stoneledge

5   bore no fault for Perez's injuries and allocated Stoneledge 0% liability.

6       In this action Carson and its direct insurers, Ohio Security Insurance Company ("Ohio") and

7   American Fire and Casualty Company ("American") are seeking reimbursement from Hartford Fire

8   Ins. Co. ("Hartford") and ACE Property and Casualty Ins. Co. ("ACE"), the primary and excess

9   insurers for Stoneledge, for amounts paid to satisfy the judgement. While the Hartford and ACE

10  policies add Carson as an "additional insured" via endorsement, they do not provide indemnity for

11  the judgment.  These policies extend coverage to additional insureds only for liability "caused, in

12  whole or in part by the acts or omissions" of Stoneledge – coverage which applies only if

13  Stoneledge's conduct was a proximate cause of the injury for which damages were awarded.

14  Because Stoneledge did not cause the injury to Perez, neither Hartford nor ACE owes the indemnity

15  sought by Carson and its direct insurers.

16      Carson and Ohio/American argue the contrary by asserting the wrong standard, focused on

17  the wrong policy provision.  Ignoring policy language which dictates which of two possible

18  additional insured provisions controls, Carson and its direct insurers assert that coverage is extended

19  under an additional insured provision in the body of the policy which uses the phrase "arising out

20  of" instead of the phrase "caused by . . . your acts or omissions," used in the additional insured

21  endorsement, in describing the relationship between the injury and the named insured (Stoneledge).

22  The provision upon which Carson and the direct insurers rely states that it does not apply when the

23  entity seeking coverage is added as an insured via endorsement.  As Carson is an insured under an

24  endorsement, that endorsement controls the issue of coverage here.

25      Carson further incorrectly argues that it is entitled to coverage because Perez was working

26

27  [2] The initial lease agreement was between Carson and Warehouse and Delivery Solutions, Inc.  In April, 2016, the lease
28  was assigned to Stoneledge Furniture, LLC, with the permission of Carson, as part of an Asset Purchase Agreement.
    Carson's Motion for Summary Judgment, Declaration of Hazzard, Exs. 1 and 2, Docs. 63-2 and 63-3.

MOTION                                                    Case No: 3:31-CV-06259-VC

"on behalf of" Stoneledge (and, therefore, his acts can be considered in satisfying the requirement of the endorsement). But Perez did not represent Stoneledge or work for its benefit; Perez, worked for his own benefit. Moreover, the jury held Perez was not to be a proximate cause of his injuries.

With no citation to policy language or case law, Carson also asserts ACE owed it a duty to defend. The ACE policy is excess. Coverage does not attach until underlying insurance is exhausted. Here, two primary policies were not exhausted and both defended Carson; no obligation to defend arose under the ACE excess policy. Further, because ACE did not have a duty to defend, its policy does not cover the costs of an appeal bond, interest, or costs taxed against the insured.

Finally, American wrongly relies on the indemnity provision in the lease between Carson and Stoneledge to argue that the ACE policy applies before the American policy. (American concedes that the primary policies issued by Hartford and Ohio apply before the ACE policy.) The indemnity provision has no bearing on the issue of priority between policies. Neither Carson nor Ohio/American (in subrogation) have sued Stoneledge for contractual indemnity. Moreover, even if the terms of the lease were relevant, the lease was terminated before the conclusion of the Underlying Action, ending any duty Stoneledge might have had to indemnify Carson. The ACE policy, by its terms, applies, if at all, as excess over the Hartford, Ohio, and American policies.

In this case, Carson and its property manager were found liable for a large judgment that had to be resolved by those entities and their direct insurers, Ohio and American. And a the jury held that Stoneledge was not a cause of the accident. Therefore, neither Hartford nor ACE had a duty of indemnity and, as an excess insurer, ACE never had a duty to defend. Carson and Ohio/American's motions should be denied and ACE's motion granted.

II.    Facts

A.    The Incident Giving Rise to the Underlying Action

David Perez was injured by an arc flash which occurred as Mr. Perez reinserted a "pullout switch" into the Main Distribution Panel ("MDP"), a panel through which incoming electricity is routed to multiple structures at a large commercial property. Request for Judicial Notice ("RJN"), ¶A.1., Exs. A and B. On the day of the incident Stoneledge, a tenant at the property, known as the Coliseum Way Industrial Complex ("Coliseum Way"), experienced a power outage in its leased

space. Gary Mountain, a Stoneledge employee, looked for property manager, Jeremy Blanchard, an employee of SanOak, to report the problem.  Not finding Mr. Blanchard (and unable to reach him by phone), Mr. Mountain called DP Electric, a business owned by Mr. Perez, having found the number for the electrician on a list entitled "Emergency Numbers," posted on the property manager's door. RJN ¶A.2., Exs. C and D.

According to his testimony, when Mr. Perez arrived at the property, he inspected an electrical panel and "disconnects" in the Stoneledge warehouse. RJN ¶A.3., Ex. E. He turned off power to the disconnects and discovered that power was not coming in, indicating that there was a blown fuse "upstream."  RJN ¶A.4., Ex. F.   Mr. Perez asked Mr. Mountain to direct him to the MDP where he found five "pullout switches," each of which housed fuses. RJN ¶A.5., Ex. G.  He pulled out one of the switches and, finding a blown fuse, replaced it with a new fuse he found in a bag in the MDP cabinet. RJN ¶A.6., Ex. H. When he reinserted the pullout box, an arc flash occurred. RJN ¶A.7., Ex. I.

The Perezes' theory at trial was that the MDP, which had been originally installed with two pullout switches, had been expanded, without permits, to serve five pullout switches.  RJN ¶A.8., Ex. J.  Mike Jones, one of the Perezes' experts, opined that the pullout switch involved in the incident was a switch that had been added without permitting and was not adequate for the use, as it was rated for 240 volts instead of 600 volts. RJN ¶A.9., Ex. K.  At trial, he testified that the under-rated pullout switch posed a hidden danger for any person working on it, calling the equipment "illegal and poorly maintained." RJN ¶A.10., Ex. L.  Perez expert John Loud similarly testified that "the cause of this arc flash was the code-violating pullout switch that was only rated to operate at 240 volts, but it was being used in a circuit at 480 volts.  And, in addition, the use of 300-volt fuses, again, in a 480 volt circuit." RJN ¶A.11., Ex. M.  Moreover, he testified, "there was nothing to alert [Mr. Perez] to this code-violating condition."  RJN ¶A.12., Ex. N. Perez sought to prove at trial "that had the pullout switch in the MDP been properly rated at 600 volts, there would have been no arc flash explosion.  The arc would have been contained in the box." RJN ¶A.13., Ex. O.

Carson did not dispute that the MDP was part of the common area of the property, and its maintenance was the responsibility of Carson, not Stoneledge.  William Neiman, the Vice President

MOTION                                                                          Case No: 3:31-CV-06259-VC

of Carson and "point person" for management of the property (RJN ¶A.14., Ex. P.), testified:

> It wasn't that we didn't want DP Electric to be contacted.  The – reason we put it [the emergency contact list] up there was that if there was an emergency inside the tenants' premises and they needed to – they needed to reach an electrician, they had an electrician that we had experience with.  But that did not mean that David Perez nor – it didn't state anywhere there that David Perez had authorization to enter into the MDP or anything.  And the lease clearly distinguishes whose responsibility is the electrical for the common area and whose electrical is inside the premises.  And the landlord's responsible for the common area, which the MDP is part of.
>
> * * *
>
> . . . I think it's common knowledge, that the MDP was in the common area and it was not specific to a tenant.  And the lease is also very specific that the only responsibility for maintenance the tenant had was within the tenant's premises.  (RJN ¶A.14., Ex. Q.)

### B.   The Underlying Action and the Jury Verdict

In April, 2017, Gary Mountain and his wife initiated the action, *Mountain v. DP Electric, et al.*, Alameda County Sup. Court Case No. RG 17857926 (the "Underlying Action").  In that action, the Perezes filed a cross-complaint against Carson, SanOak, and Stoneledge, alleging negligence/ premises liability, negligence per se, negligent hiring and retention, general negligence, and loss of consortium (by Donna Perez only).  RJN ¶B, Ex. U. The Mountain claims were settled prior to trial; the claims of Mr. Perez and his wife were tried before a jury.

At the close of trial, the jury awarded David Perez $7 million in past non-economic damages and $13.5 million in future non-economic damages, as against Carson and SanOak.  The jury awarded Donna Perez an additional $5 million against the same two entities for loss of consortium. The jury was provided a Special Verdict Form, on which they responded "yes" to the following questions: "Was Carson Madrona Company, LLC negligent?"; "Was Carson Madrona Company, LLC's negligence a substantial factor in causing harm to David Perez?"; "Was [SanOak] negligent?"; "Was [SanOak's] negligence a substantial factor in causing harm to David Perez?". The jury responded to "yes" to the question "Was Stoneledge Furniture, LLC, dba Ashley Furniture Homestore negligent?"; however, the jury responded "no" to the question "was [Stoneledge's] negligence a substantial factor in causing harm to David Perez?"  RJN ¶C, Ex. V.

Asked, "what percentage of responsibility for David Perez's harm to assign" to each party,

the jury responded that Carson was 50% responsible and SanOak was 50% responsible. Stoneledge and Mr. Perez were 0% responsible. By reason of these special verdicts, judgment was entered: in favor of Mr. Perez against Carson, "severally, in the amount of $10,250,000"; in favor of Mr. Perez against SanOak, "severally in the amount of $10,250,000"; in favor of Donna Perez against Carson "severally, in the amount of $2,500,000"; in favor of Donna Perez against SanOak "severally, in the amount of $2,500,000"; and in favor of Stoneledge against the Perezes. RJN ¶C, Ex. V.

    C.    <u>The Policies</u>

        1.    <u>The Hartford Policy</u>

Hartford issued a primary policy to Stoneledge, for the policy period January 1, 2016, to January 1, 2017, with a $2 million per occurrence limit. (Carson MSJ, Dec. of Hazzard, Ex. 3, Doc 63-4, p. 11-12.) The policy includes the form HG 00 01 06/05, which states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. . . ." (*Id*. at Doc 63-4, p. 18.) In "Section II -- Who is an Insured," the Hartford form HG 0001 06/05 states:

> 6.    Additional Insureds When Required By Written Contract, Written Agreement or Permit
>
> The following persons or organizations are an additional insured when you have agreed in a written contract, written agreement or because of a permit issued by a state or political subdivision, that such person or organization be added as an additional insured on your policy, provided the injury or damage occurs subsequent to the execution of the contract or agreement.
>
> . . .
>
> However, **no such person or organization is an insured under this provision if such person or organization is included as an insured by an endorsement issued by us and made a part of this Coverage Part**.
>
> . . .
>
> c.    Lessors of Land or Premises
>
> Any person or organization from whom you lease land or premises, but only with respect to liability arising out of the ownership, maintenance or use of that part of the land or premises leased to you. . . . (*Id*. at Doc 63-4, p. 27-28. Emphasis added.)

The Hartford policy includes an endorsement, "Additional Insured – Designated Person or

Organization," form CG 2026 04 13, which states in the Schedule, "Blanket Where Required By Written Contract or Agreement."  *Id*. at Doc 63-4, p. 59. The endorsement states:

> A.    Section II – Who Is An Insured is amended to include as an additional insured **the person or organization shown in the Schedule**, but only with respect to liability for "bodily injury" . . . caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:
>
>    1.  in the performance of your ongoing operations; or
>    2.  in connection with your premises owned or rented to you.
>
> However:
>
> . . .
>
>    2.  if coverage provided to the additional insured is required by contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured. (*Id*. at Doc 63-4, p. 59.)

Hartford agreed to and did defend both its named insured, Stoneledge, and Carson as an additional insured, under a reservation of rights, through to judgement in the trial.  Ohio/American MSJ, Dec. of Cossalter, ¶¶ 6, 7, 10, Doc 64-2.

> 2.    The ACE Excess Policy

ACE Property & Casualty Insurance Company issued an umbrella policy to Stoneledge, with the policy period January 1, 2016, to January 1, 2017, and a limit of $25 million per occurrence.  Carson MSJ, Dec. of Hazzard, Ex. 4, Doc 63-5, p. 2. The policy includes the form XS-20835 (8/06).  The insuring agreement states: "We will pay on behalf of the insured those sums in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage', or 'personal and advertising injury' to which this insurance applies." *Id*. at Doc. 63-5, p. 10.  "Retained Limit" is defined as "The total applicable limits of 'underlying insurance' and any applicable limit of 'other insurance' providing coverage to the 'insured.'" *Id*. at Doc. 63-5, p. 27.  "Underlying insurance" is defined as the policy issued by Hartford, and all "other insurance," defined as all other applicable policies.  *Id*. at Doc. 63-5, pp. 28, 5. In Section II, Who Is An Insured, the policy states that insureds include:

> 6.    Any person or organization, if insured under "underlying insurance" [defined as the Hartford policy], provided that coverage provided by this policy for any such insured will be no broader than coverage provided by

"underlying insurance." (*Id*. at Doc 63-5, p. 12.)

The policy has a separate section, Section III, entitled Defense and Supplementary Payments, in which the ACE policy states the Company has a duty to defend "when damages sought would be covered by 'underlying insurance' but are not covered by that insurance because of the exhaustion of the applicable limits of 'underlying insurance' by the payment of 'loss' covered by this policy" or when "other insurance" would cover the damages but the "other insurance" is exhausted. Under paragraph III. C., when underlying or other insurance is not exhausted, ACE has the right, but not the duty to defend. *Id*. at Doc. 63-5, p. 12. Section III, paragraph D states, "***If we assume the defense of any 'suit' against the 'insured'*** we will pay in addition to the applicable Limit of Insurance: . . ."  In eight subparts, paragraph D lists "expenses we incur," the costs of an appeal bond, "all costs taxed against the 'insured,'" and pre- and post-judgment interest. *Id*. at Doc. 63-5, p. 12-13.

### 3.    The Ohio and American Policies

Ohio Security Insurance Company ("Ohio") issued a primary general liability policy to Carson which also insured SanOak.   American Fire and Casualty Company ("American") issued an excess general liability policy to Carson, which also insured SanOak. Ohio/American MSJ, Dec. of Cossalter, ¶4, Exs. 2, 3, Docs. 64-2, 64-5, 64-6.

## III.    ARGUMENT

### A.    The Duty to Indemnify Carson as An Additional Insured Is Controlled By the Terms of the Additional Insured Endorsement in the Hartford Policy.

Because of the insurance requirement in the lease between Carson and Stoneledge, Carson would qualify as an additional insured under the Hartford policy under two separate provisions of the policy – namely, under paragraph 6, subpart c., in Section II of the general liability form HG 0001 06/05 ("Paragraph 6") (Doc 63-4, p. 27-8) and under endorsement, Additional Insured – Designated Person or Organization, form CG 2026 04/13 (Doc 63-4, p. 59).  However, because Carson qualifies as an insured pursuant to the endorsement, Paragraph 6 does not apply, and the scope of the coverage provided to Carson is determined under the terms of the endorsement.

Specifically, both Paragraph 6 and the additional insured endorsement add entities as

insureds to the policy pursuant to a "blanket" provision – a provision which adds as insureds entities the named insured (here, Stoneledge) agrees to add via a contract with that entity.[3]  However, Paragraph 6 addresses which provision controls where two could apply, stating "***no such person or organization is an insured under this provision if such person or organization is included as an insured by an endorsement issued by us and made a part of this Coverage Part.***"  Doc 63-4, p. 27. Under its plain language, Paragraph 6 does not apply where an entity is added as an insured via endorsement. Here, Stoneledge agreed under the lease to add Carson as an insured to its policies. Therefore, Carson qualified as an insured under both Paragraph 6 and the additional insured endorsement.  However, because Paragraph 6 does not apply where an endorsement does, coverage for Carson must be analyzed under the terms of the endorsement.

Paragraph 6's statement prioritizing the endorsement reflects a general rule of policy interpretation -- namely, that endorsements control over the body of a standard form policy. "If there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls." *Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 431 (1956); *Aerojet-General Corp. v. Transport Indemnity Co*., 17 Cal.4th 38, 50, n. 4 (1997).  The reasoning behind the rule is clear.  Endorsements better reflect the intentions of the contracting parties, who pick and choose provisions to modify a standard form, using combinations of endorsements to create a contract with terms to suit the parties.  See, *Mission Nat'l Ins. Co. v. Coachella Valley Water Dist.*, 210 Cal.App.3d 484, 497 (1989).

In this case, the use of the additional insured endorsement form CG 2026 04 13 in the Hartford policy also reflects a change in the insurance industry regarding additional insured provisions.  As discussed below, in 2004, the Insurance Services Office[4] ("ISO") altered many

---

[3] Paragraph 6 begins with the statement: "the following persons or organizations are an additional insured when you have agreed in a written contract . . . that such person or organization be added as an additional insured. . . ." Dec. of Hazzard, Ex.3, Doc 63-4, p. 27. The additional insured endorsement states:  "Section II – Who Is an Insured is amended to include as an additional insured the person or organization shown in the Schedule," and the schedule states: "Blanket Where Required by Written Contract or Agreement." Dec. of Hazzard, Ex. 3, Doc 63-4, p. 59.

[4] The ISO is an association funded by a number of insurance companies, whose functions include writing standard insurance policy forms which comply with the legal and administrative requirements of the various states. "[M]ost CGL insurance written in the United States is written on these forms." *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 772 (1993); *Crane v. Royal Ins. Co. of Am.*, 17 F.3d 1186, 1188 (9th Cir. 1994)

additional insured endorsements, creating new editions of forms which used the phrase "caused in whole or in part" instead of the phrase "arising out of" in describing the required causal connection between alleged damages and the role of the named insured in defining the scope of coverage provided an additional insured.  See, *Dale Corp. v. Cumberland Mut. Fire Ins. Co*., 2010 WL 4909600 (E.D. Pa.  2010).  The Hartford form HG0001 used as the body of the policy, was an "06 05" edition – reflecting that the form was promulgated in June, 2005.  The policy was then amended to add endorsement form CG 2026 04 13, an edition copyrighted in April, 2013,[5] and reflecting the more modern language.

Carson argues simply that it is a lessor and therefore Paragraph 6. subpart c. applies.  Carson makes no effort to explain why Paragraph 6 applies if Carson is added as an insured by endorsement.  Carson suggests that only if it were added as an insured via a provision that was more specific than Paragraph 6.c., which expressly applies to "lessors," would the limitation applicable to all of the subparagraphs of 6, apply.  But that is not what the provision states.  Paragraph 6 states simply that "no . . . organization is an insured under this provision if such person or organization is included as an insured by an endorsement . . . ." The provision does not state that Paragraph 6 does not apply if an insured is specifically named as additional insured elsewhere or added via a descriptive paragraph that is narrower than the subparts listed below.  The mere fact that the endorsement subsumes all of the subparagraphs under paragraph 6 does not mean that subparagraph 6.c. applies, as Carson suggests.  Moreover, the additional insured endorsement also explicitly applies to lessors.  It extends coverage "in connection with your premises owned or rented to you" – a phrase reflecting an intent to insure risks related to the leasing of property. Doc 63-4, p. 59.

In this case, Hartford added an additional insured endorsement to the Stoneledge policy that broadly defined the entities to whom coverage was extended.  But the endorsement changed the

---

[5] "Each form and endorsement published by the Insurance Services Office (ISO) can be identified by a form number and an edition date. For example, the current ISO Commercial General Liability Coverage Form is identified as 'CG 00 01 12 07.' The letters (CG) indicate it is a Commercial General Liability form. The first four digits (00 01) indicate it is an occurrence-based version of the form. The last four digits (12 07) indicate the edition date." Hon. H. Walter Croskey (Ret.), Hon. Rex Heeseman (Ret.), Jeffrey I. Ehrlich, and Peter H. Klee, Anatomy of Insurance Policy, California Practice Guide: Insurance Litigation, Ch. 3-C, August 2024 Update; *Skanska USA Bldg. Inc. v. M.A.P. Mech. Contractors, Inc.*, 505 Mich. 368, 390 (2020) ["The last four digits of the 10-digit ISO policy form provide the edition date in month and year format."]

MOTION                                                                    Case No: 3:31-CV-06259-VC

scope of the coverage provided, stating that additional insureds would be covered only for bodily injury "caused, in whole or in part, by the acts or omissions" of Stoneledge "in connection with premises owned or rented to Stoneledge." Given the endorsement, which added Carson as an insured, under its unambiguous terms, Paragraph 6 does not apply and coverage for Carson must be evaluated under the additional insured endorsement.

      B.     No Indemnity Is Owed Carson Under the Hartford and ACE Policies Because the Jury Held That Stoneledge Was Not A Cause of the Damages For Which Carson Was Held Liable.

          1.     The additional insured endorsement requires proximate causation.

The Additional Insured endorsement, form 2026 04 13, adds Carson as an insured to the Hartford policy:

> but only with respect to liability for "bodily injury" . . . **caused, in whole or in part, by your acts or omissions** or the acts or omissions of those acting on your behalf:
>
>     1.    in the performance of your ongoing operations; or
>     2.    **in connection with your premises owned or rented to you**.

Carson MSJ, Dec. of Hazzard, Ex. 3, Doc 63-4, p. 59, emphasis added. "Caused in whole or in part, by your acts or omissions" as used in the endorsement connotes a legal cause or substantial factor. It does not obligate the insurer to indemnify the additional insured where, as here, a jury held that the named insured did not act in a manner a reasonable person would find contributed to the harm.

While there is no controlling California case law directly interpreting the language of the additional insured endorsement at issue here, California courts focus on the particular language at issue in an endorsement or indemnity provision in determining how it applies. *St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*, 101 Cal. App. 4th 1038 (2002). *American Dynasty* recognized a difference between the phrases "arising out of" the operations of the named insured and "arising out of *your acts and omissions*," holding that the additional phrase required more than that the putative indemnitor directed the injured man to the job site. *Id*. at 1052. In that case, the court concluded that the phrase arising out of your "act or omission" required the indemnitor-subcontractor to have committed an injury-causing act connected to its performance of work under the subcontract – something more than was required by the phrase "arising out of the work": "[W]here an indemnification promise is limited to 'acts or omissions' of the promisor, there

must be some evidence of such an act or omission, and there can be no indemnification obligation if the liability arose solely from the *negligence of the promisee or its agents.*" *Id*. at 1054 (emphasis in original). The court distinguished *Fireman's Fund Ins. Cos. v. Atlantic Richfield Co.*, 94 Cal.App.4th 842 (2001) and *Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal.App.4th 321 (1999), as both of those cases interpreted the "broad" phrases "arising out of" or "arising from" and neither dealt with the limiting phrase, "acts or omissions." *Id* at 1052.

In *American Dynasty*, an employee of a subcontractor, Sasco, was injured while working on a job site, near a pipe that was being pressure-tested by general contractor, ARB. The employee heard a hissing noise and ran but was nonetheless injured when the pipe exploded. "On the record before us, not only is there no basis for finding Sasco at *fault* for Casados's injury, but also Sasco did *not* do *any* act that was in any way connected to such injury. There was no act or omission by Sasco: the injury to Casados resulted from an explosion in a pipe being pressure-tested *by ARB* and *its* employees or agents. Whatever negligence or legal responsibility there was for that explosion, it rests *solely* with ARB." *Id*. at 1054.

Similarly, in *Gemini Ins. Co. v. Delos Ins. Co.,* 211 Cal. App. 4th 719, 723 (2012)*,* the court interpreted an additional insured provision that limited coverage to the additional insured's liability that "results from and by reason of [the named insured's] act or omission or an act or omission of [the named insured's] agent or employee in the course of [the named insured's] operations at that part of the premises leased to you and shown in the Schedule." The court concluded that this provision afforded coverage "only when and where" the additional insured faced liability arising from the named insured's acts undertaken in the course of the named insured's operations, because the provision was designed "to protect parties who are not named insureds from exposure to *vicarious liability for acts of the named insured*." *Gemini, supra,* 211 Cal.App.4th at 723 (quoting *Maryland Casualty Co. v. Nationwide Ins. Co.*, 65 Cal.App.4th 21,31(1998) (emphasis added).

Significantly, the courts have also consistently held that "caused by" must be more narrowly construed than "arising out of." In *Transport Indemnity Co. v. Schnack,* 131 Cal.App.3d 149 (1982), the court held that a fire which occurred during the fueling of an airplane "arose out of" the maintenance or use of the aircraft, even though it was not directly caused by the aircraft itself.

However, the court recognized that "arising out of" had a different meaning than "caused by":

> "Arising out of" serves to identify the events ("occurrence") for which liability is covered by broadly linking them to the use, ownership or maintenance of the aircraft. "Cause," on the other hand, links the events ("occurrence") and the damage suffered. [Citations] The insurance policy does not purport to regulate the theory of liability or the standard of causation, but only to specify the events upon which a covered liability is predicated and to broadly link them (i.e., the 'occurrence') to the damage complained of by the word "cause"'

*Id*. at 151-52.  Similarly, in *Continental Casualty Co. v. City of Richmond,* 763 F.2d 1076, 1080-81 (9th Cir. 1985), the Ninth Circuit applying California law, "concluded that 'arising from' implies something broader than causation."  The court cited to and agreed with *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.,* 283 F.2d 659, 664–65 (9th Cir.1960), where the court held: "The word 'arising' connotes, in ordinary usage, something broader than causation."

Nationwide, courts which have directly considered the policy language at issue here have held that a named insured must be a legal or proximate cause of the alleged damage for coverage to apply.  In *Dale Corp. v. Cumberland Mut. Fire Ins. Co.*, 2010 WL 4909600 (E.D. Pa.  2010), the Pennsylvania court held that the phrase "caused in whole or in part," which replaced "arising out of" in multiple endorsements beginning in 2004, meant proximate cause. The court explained:

> The ISO introduced this revised version of its widely-used additional insured endorsements as a response to courts' interpretations of its prior version.  Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner and O'Connor on Construction Law § 11:167 (2010).

> The 2004 revisions (1) eliminated the 'arising out of language' from several standard endorsements; (2) substituted, in its stead, that coverage applied only to injury or damage 'caused in whole or in part' by the acts [or] omissions of the named insured; and (3) specifically excluded injury or damage arising out of the sole negligence of the additional insured.

> The 2004 revisions are a belated acknowledgement [sic] that the 'arising out of language simply did not accomplish the scope of coverage intended by the industry. Many courts interpreted 'arising out of to be a simple causation test and, therefore, afforded direct primary coverage to the additional insured. The ISO hopes that, by substituting 'caused by' for 'arising out of,' a narrower coverage interpretation will be afforded. Moreover, the revised language specifies that coverage is afforded the additional insured for liability arising out of the named insured's 'acts or omissions,' not simply the named insured's operations. Arguably, the absence of fault on behalf of the named insured results in a finding of no coverage for the additional insured.

> *Id*. (footnotes omitted); see also id. at § 11:151 (noting that the industry sought to limit coverage of additional insureds by introduction of the

"caused, in whole or in part, by" language which it hoped would require "some causation on the part of the named insured to trigger coverage under the additional insured endorsement."). This history significantly undercuts Dale's argument that a simple "but for" test is what was intended when the parties chose to use the words "caused by" rather than "arising out of."

As noted in *Dale* multiple jurisdictions have held that the modern policy language required a showing of proximate causation in order to trigger the duty to defend. In *Gilbane Bldg. Co. v. Admiral Ins. Co*., 664 F.3d 589, 598 (5th Cir. 2011), the Fifth Circuit contrasted two additional insured provisions – one which used the phrase "with respect to," and the second which used the phrase "caused in whole or in part." *Gilbane* held that the insurer using the latter phrase owed coverage to the additional insured only if the named insured proximately caused the injuries.

The Fourth Circuit expressly agreed with *Gilbane* in *Capital City Real Estate, LLC v. Certain Underwriters at Lloyd's London*, 788 F.3d 375 (4th Cir. 2015), holding:

the language is quite clear that coverage is provided for Capital City, as the additional insured, for "property damage ... caused in whole or in part by" Marquez. The Fifth Circuit has construed the exact Endorsement language at issue here to mean that an insurer has a duty to defend an additional insured "only if the underlying pleadings allege that" the named insured, "or someone acting on its behalf, proximately caused" the injury or damage. . . .Insurance law commentators have also examined the language at issue and concluded that an additional insured is covered where a named insured is at least partially negligent. *See, e.g.,* Scott C. Turner, *Insurance Coverage of Construction Disputes* § 42:4 (2015) (stating that when the "ISO issued revised versions of its additional insured endorsements" in 2004, it "attempt[ed] to narrow coverage for additional insureds" such that "for there to be insurance for the additional insured ... the named insured must be negligent at least in part").

*Id.* at 380. "We thus conclude that the plain language of the Endorsement provides for exactly what is says: coverage to [the additional insured] for property damage caused by [the named insured], either in whole or in part." *Ibid*.

In *Burlington Ins. Co. v. NYC Transit Auth.,* 29 N.Y.3d 313 (2017), the New York court similarly noted that the change in language in the common additional insured endorsements was intended to provide coverage for an additional insured's vicarious or contributory negligence and to prevent coverage for the additional insured's sole negligence. *Id.* at 326. The court held:

The defendants argue that the endorsement does not limit liability to cases in which an insured's acts or omissions are negligent or otherwise legally actionable. Essentially, they advocate that "caused, in whole or in part" means "but for" causation. . . . This is an incorrect interpretation of the policy language, which, by its terms, describes proximate causation and legal liability based on the insured's

14

1

negligence or other actionable deed.

2

*Id.* at 321.  The court expressly rejected the argument that the phrase "caused by" was not materially

3

different from "arising out of." *Id*. at 323–24; see also, *Hanover Ins. Co. v. Philadelphia Indem. Ins.*

4

*Co*., 159 A.D.3d 587, 588 (N.Y. App. Div. 2018).

5

The Fourth and Fifth Circuits and New York state courts are not alone: *First Mercury Ins.*

6

*Co. v. Shawmut Woodworking & Supply Inc*., 48 F. Supp.3d 158, 174 (D. Conn. 2014) ["[T]he

7

progression from 'arising out of' to 'caused, in whole or in part, by' shows that that 'liability' refers

8

in both instances to causation and the amendment was intended to require proximate causation by

9

the insured rather than simply but-for causation"]; *Bacon Constr. Co. v. Arbella Prot. Ins. Co., Inc*.,

10

208 A.3d 595, 600 (R.I. 2019) ["Based on our review of the Arbella policy, we are satisfied that the

11

clear and unambiguous additional insured endorsement provision contains limiting, fault-based

12

language; thereby restricting Bacon's entitlement to coverage to those situations where liability is

13

attributable, at least in part, to the negligence of U.S. Drywall, the named insured"]; *Place v. P.F.*

14

*Chang's China Bistro, Inc.*, 2015 WL 11145058, at *8 (W.D. Tenn. 2015) ["the Court adopts

15

Zurich's interpretation of the additional insured endorsement, which invokes coverage for BPP as

16

the additional insured only in circumstances where PFC's actions are the proximate cause of the

17

injury to Jane Doe, or where BPP is vicariously liable for those harms"]; *Louisville Galleria, LLC v.*

18

*Philadelphia Indem. Ins. Co*., 593 F. Supp. 3d 637, 648 (W.D. Ky. 2022) ["Kentucky courts have

19

not specifically addressed the interpretation of 'caused, in whole or in part, by.' . . . the Court will

20

assume the language requires the higher showing of proximate cause"]; *Lincoln Gen. Ins. Co. v.*

21

*Fed. Constr., Inc*., 2010 WL 4978852, at *2 (N.D. Ill. 2010) [finding endorsement provided

22

coverage to the additional insured only for vicarious liability imputed to the additional insured by

23

the acts or omissions of the named insured, and not for the negligence by the additional insured];

24

*MacArthur v. O'Connor Corp*., 635 F. Supp. 2d 112 (D. R.I. 2009) [coverage for the additional

25

insured only in instances where the additional insured was deemed to be vicariously liable].

26

As the California Supreme Court recently restated, insurance policies are contracts to which

27

the ordinary rules of contractual interpretation apply. "If the policy language is clear and explicit it

28

governs." *Yahoo Inc. v. Nat'l Union Fire Ins. Co. etc.*, 14 Cal. 5th 58, 67 (2022).  In this case, the

endorsement is clear in using the phrase "caused by, in whole or in part, your acts or omissions." The phrasing connotes legal cause or substantial factor – a cause that a reasonable person would find to have contributed to the harm, a cause that is more than negligible, remote or trivial.

2.    The jury in the Underlying Action held that Stoneledge's
acts or omissions were not a legal cause of the injury to Perez.

In the Underlying Action, a jury held that Stoneledge did not cause the injuries for which the Perezes sought damages.  The questions put to the jury in the Special Verdict form are found in the Judicial Council of California Civil Jury Instructions (CACI).  The jury was read CACI 430, entitled "Causation:  Substantial Factor," which states: "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of harm.  Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." RJN ¶A. 16., Ex. R. "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical. Thus, 'a force which plays only an "infinitesimal" or "theoretical" part in bringing about injury, damage, or loss is not a substantial factor,' but a very minor force that does cause harm is a substantial factor. This rule honors the principle of comparative fault.'"  *Bockrath v. Aldrich Chem. Co.*, 21 Cal. 4th 71, 79 (1999), quoting *Rutherford v. Owens-Illinois, Inc.*, 16 Cal.4th 953 (1997).  Because the jury held that Stoneledge was not a "substantial factor" leading to Mr. Perez's injury, it necessarily found that Stoneledge's conduct did not contribute to the harm more than an infinitesimal, negligible, or theoretical way and that the damages would have occurred, with or without the conduct of Stoneledge.  The jury holding establishes that the judgment against Carson was not for bodily injury caused, in whole or in part, by an act or omission by Stoneledge.

Even if this Court were to hold that "caused by, in whole or in part," does not refer to "proximate cause," Carson would still not have coverage for this judgment because the facts at trial and jury holding do not support an argument that Mr. Perez's injury resulted from "an act or omission" of Stoneledge.  Mr. Perez asserted at trial that the MDP, an area of the property which was entirely the responsibility of Carson, was expanded without a permit and a pullout switch with

under-rated voltage was installed.  Perez argued that it was this "illegal" (unpermitted) configuration in the MDP which caused a dangerous hazard and ultimately caused the arc flash which was not contained in the pullout switch.  Stoneledge employee, Mr. Mountain, did little more than call DP Electric from the "emergency numbers" list on the property manager's door.  Asked about his interaction with Mr. Perez, at trial Mr. Mountain testified, "I stayed with him for maybe four or five minutes . . . And I had other stuff to do, so I left him alone."  Sometime later, Perez searched out Mountain and asked him where the main electrical panel was.  Mr. Mountain showed him two panels, not knowing which Perez needed to see: "I'm not that familiar with the electricity, so I did show him the two biggest panels that I knew."  After pointing out the panels:  "I left and he started working on them I guess."  Sometime later, Mr. Mountain went to check with Mr. Perez when power would be restored to the warehouse.  Mountain arrived at the MDP in time to hold open a panel door for Mr. Perez while he inserted the pullout switch.  RJN ¶ A.17., Ex. S.  No act or omission by Stoneledge caused the arc flash.  As in *American Dynasty*, Stoneledge did nothing more than put Mr. Perez in the zone of danger.

Carson and Ohio/American cite only to case law interpreting the phrase "arising out of," not "caused by" and without the added phrase "acted or omission."  They do not explain how the difference in the policy language used in the additional insured endorsement which is actually at issue here, impacts the coverage extended to an additional insured.

Carson argues that acts of Perez should be attributed to Stoneledge because Perez "was acting on Ashley's behalf" at the time of the accident.  The argument misconstrues "on behalf of."  The online Merriam Webster dictionary (https://www.merriamwebster.com/dictionary/on%20 behalf%20of%20someone), defines the idiom "on behalf of" as: "1: as a representative of someone . . . 2: *or US* in behalf of someone *or* in someone's behalf: for the benefit of someone; 3: in support of someone. She spoke *in behalf of* the other candidate. They're willing to do anything *on* their child's *behalf*.; : because of someone. Don't get up *on my behalf*."  Mr. Perez was not working as a representative of Stoneledge.  He was not making products or performing a service which Stoneledge offered to a third party.  He was not working to benefit Stoneledge; Stoneledge was not profiting from his work.  At most, Mr. Perez was performing a service ***for*** Stoneledge, on his own

behalf. He was a licensed electrician and an independent contractor, operating his own corporate business, DP Electric.  RJN ¶ A.18., Ex. T.  He worked to earn profits for his own business. Nor was Perez an agent or employee of Stoneledge, working under the control of Stoneledge.

In fact, Perez was not even working *for* Stoneledge at the time of the accident.  Mr. Perez found and tried to correct a problem in the MDP – a common area and the sole responsibility of Carson. On the day of the accident, Mr. Mountain called Mr. Perez because the DP Electric number was listed on a page of "Emergency numbers" posted on the property manager's office door.  Mr. Mountain believed he was following the direction of the property manager in making the call and Mountain  made the call only because je could not find the property manager.  The fact that Stoneledge made a telephone call is irrelevant; Mr. Perez's work was for Carson.

Finally, the jury found that Mr. Perez was not a proximate cause of his own injuries; he was allocated 0 fault for his damages.  Therefore, Carson's liability was not for damage caused by Perez.

Ohio/American obtusely moves for a judicial determination that Carson "qualifies as an insured," a request that seems to miss the point.  ACE does not contend that Carson does not qualify as an insured.  It qualifies as an insured under the endorsement, but it is not owed indemnity because its liability was not for damages caused by Stoneledge.  Additional Insured Endorsement, Form 2026 states: "Section II – Who Is an Insured is amended to include as an additional insured the person or organization shown in the Schedule . . ."  The form states in the schedule, "Blanket - Where Required by Written Contract or Agreement."  The written contract between Carson and Stoneledge required that Stoneledge add Carson as an insured to the policy; therefore, Carson is an insured.  ACE does not contend otherwise.  However, the added insured has coverage "but only with respect to liability for" injury caused by Stoneledge.  The second phrase does not determine if Carson is an insured; it determines the scope of the coverage provided to the additional insured.  Carson's liability here is not within the scope of coverage.

C.    The Injuries For Which Carson Was Held Liable Did Not "Arise Out Of"
      The Use "Of That Part Of The Land Or Premises Leased To You."

Should this court hold that Paragraph 6 of the form HG 0001 applies, indemnity is not owed because the injuries to Perez did not arise out of "that part of the premises" leased to Stoneledge.  In

this case, at trial, Carson admitted that the Main Distribution Panel, where the incident occurred, was part of the common area of the property. Carson also acknowledged that it and its property manager, San Oak, maintained and controlled that part of the property.

In *Fireman's Fund Ins. Co. v. Discover Property & Cas. Co.*, 2009 WL 2591394 (N.D. Cal. 2009), the court construed a provision similar to the provision at issue here and concluded that when a person on her way to attend a signing at a bookstore in a mall tripped and fell over construction materials more than 800 feet away from the store, the liability did not arise out of the bookstore's use of the premises it leased. *Fireman's Fund* reasoned that even though the injured person would not have been on mall property "but for" the bookstore event, the connection between the fact that she was walking to the bookstore and the store's use of its leased premises was "too thin" to support coverage under the policy provision. 2009 WL 2591394 at *4. The court noted that there was a geographical distance between the bookstore and the site of the injury. *Id*.

Similarly, in *Hartford v. State of California*, 41 Cal.App.4th 1564 (1996), the court found the distance between where a claimant was injured and the space being used by the named insured, was a factor weighing against coverage for an additional insured. In that case, a child was injured while playing on bleachers some distance away from where his grandparents were setting up an exhibition booth at the state fairgrounds. *Id*. at 1567. The court held there was no coverage for the state as an Additional Insured under an endorsement to a policy issued to the grandparents' business. The endorsement named the State as an additional insured for the term of the fair "... but only insofar as the operations under this contract are concerned." The fact that the child was on the fairgrounds because his grandmother was there to set up the booth, was an insufficient basis to characterize the accident as having arisen out of the operations of the booth. *Id*. at 1569.

Here, Carson's liability did not "arise out of" Stonedge's "maintenance or use of that part of the land or premises leased to" it. Mr. Perez's injuries occurred while he was replacing a fuse on the MDP, in a common area. At the time of the arcing event, according to Perez, he had turned off all of the loads on the electrical supply source located within the Stonedge leased area. At trial, Carson did not dispute that the MDP was part of the common areas of the property and was the responsibility of Carson, not Stonedge. Further, Perez argued that the cause of the accident was

an unpermitted expansion of the MDP, with an under-rated pullout switch and fuse.  Even the phone call to DP Electric does not tie the injury to Stoneledge's use of its warehouse.  Stoneledge called DP Electric only because Mr. Mountain could not find the property manager and so he dialed a number from the emergency contacts list on the property manager's door.

The accident occurred in a common area, outside the leased space, while the Mr. Perez worked on a piece of equipment for which the landlord was entirely responsible, while the load within the leased space was all turned off.  Given the facts which were asserted at trial and the jury's finding of fault entirely on Carson and SanOak, the liability of Carson did not arise out of Stoneledge's use of its leased premises.  Therefore, neither Hartford nor ACE owes indemnity, even if Paragraph 6.c. applies in this case.

D.   ACE Did Not Owe A Defense to Carson Under Its Excess Policy

The ACE policy was issued as excess, written to apply only after primary insurance, including the Hartford policy, which is specifically identified in the policy schedule as "underlying insurance," exhausted.  As an excess policy, the ACE policy provides "indemnity coverage that attaches upon the exhaustion of underlying insurance coverage for a claim."  *Montrose Chemical Corp. of Calif. v. Sup.Ct.,* 9 Cal.5th 215, 222 (2020); *Powerine Oil Co., Inc. v. Sup.Ct.*, 37 Cal.4th 377 (2005).  In other words, excess insurance "provides coverage after other identified insurance is no longer on the risk." *N. American Capacity Ins. Co. v. Claremont Liab. Ins. Co*., 177 Cal.App.4th 272, 291 (2009).  It is well-established that as between a primary insurer and an excess insurer, the former is solely responsible for defense costs even though the claim against the insured may be for a sum in excess of the primary coverage. *Signal Companies, Inc. v. Harbor Ins. Co.*, 27 Cal. 3d 359, 368 (1980). "Primary insurers generally have the primary duty of defense." *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co*., 126 Cal.App.3d 593, 597 (1981).

The ACE policy states in the insuring agreement that the insurer "will pay on behalf of the insured those sums ***in excess of the 'retained limit***' . . . ."  Doc. 63-5, p. 10. The policy defines the "retained limit" as the combined limits of the Hartford policy and any other applicable insurance. Doc. 63-5, p. 27. Consistent with the insuring agreement, in Section III of the policy, entitled Defense and Supplementary Payments, the ACE policy states (in paragraph A) the Company has a

duty to defend "when damages sought would be covered by 'underlying insurance' [or 'other insurance'] but are not covered by that insurance because of the exhaustion of the applicable limits of 'underlying insurance' [or 'other insurance'] by the payment of 'loss' covered by this policy." Further, Section III, paragraph C., states that when underlying or other insurance is not exhausted, ACE has the right, but not the duty to defend.  Doc. 63-5, p. 12-13. Here, during the pendency of the Underlying Action, neither the Hartford policy nor the Ohio policy had exhausted limits through the payment of loss.  Both insurers extended a defense to Carson. Ohio contends that it assumed Carson's defense after Hartford "withdrew" (Ohio/ American MSJ, Dec. of M. Cossalter, ¶¶10, 14, Doc 64-2), a contention Hartford disputes, but no party asserts the primary carriers did not defend. Both Hartford and Ohio admit that their primary policies applied before the ACE policy.  Carson asserts that ACE had a duty to defend but points to no policy language supporting the argument. Nor does Carson allege that Hartford and Ohio exhausted the limits of their policies by the payment of "loss" during the pendency of the Underlying Action.  Carson's assertion that ACE owed a defense should be rejected.

Because it had no duty to defend, ACE does not owe pre- or post-judgment interest, even assuming, arguendo, a duty to indemnify Carson for the judgment arose.  Under Section III, paragraph D begins, "***If we assume the defense of any 'suit' against the 'insured'*** we will pay in addition to the applicable Limit of Insurance," followed by eight subparts, which include "expenses we incur," the costs of an appeal bond, "all costs taxed against the 'insured,'" and pre- and post-judgment interest. Doc. 63-5, p. 12-13.  By its terms, the policy covers the costs of appeal bond, costs taxed against the insured and interest arise only in those cases where ACE had an obligation to defend.  Where, as here, that duty did not arise, ACE had no obligation to pay costs and interest.

E.    Priority of Coverage

ACE agrees with Ohio and American that the Hartford and Ohio primary policies apply before any excess policy.  However, American misstates the law in arguing that the ACE excess policy applies before the American excess policy and does not address the language of the policies, which dictates that the American policy applies before the ACE policy.  Relying on *Rossmoor Sanitation, Inc. v. Pylon, Inc.,* 13 Cal.3d 622 (1975), American argues that the priority of coverage

between the two excess policies is determined by the indemnity provision in the contract between Stoneledge and Carson.  The argument is wrong for multiple reasons.  First, the issue before this court is how the various policies apply vis a vis Carson, not the issue of indemnity as between Stoneledge and Carson.  In *Reliance Nat. Indem. Co. v. Gen. Star Indem. Co*., 72 Cal. App. 4th 1063 (1999), the court held that a contractual indemnity provision did not dictate the priority of coverage between policies insuring the same entity.  In *Reliance*, a primary insurer, Reliance, which issued a policy to a named insured, Lollapalooza, sought to recover amounts paid to settle claims against Lollapalooza, asserting equitable contribution or indemnity against an excess insurer, General Star, which insured Lollapalooza as an additional insured.  Reliance argued the General Star policy should have applied before the Reliance policy by virtue of the contractual indemnity clause in the contract between Lollapalooza and General Star's named insured, Don Law.   The court held that the contractual indemnity clause in the contract between Lollapalooza and Don Law did not dictate how the policies applied.  Don Law, the putative indemnitor, was not named in the coverage action, its liability for contractual indemnity had not been decided in the underlying action, and the indemnity provision was not an operative contract between the two insurers:

> The contract contains an indemnity agreement between Lollapalooza and Don Law. No determination was ever made in the *Underlying Action* with regard to the respective liability of either Lollapalooza or Don Law or whether the indemnity agreement was applicable. Neither Reliance nor General Star were parties to the Lollapalooza–Don Law Contract and, therefore, are not bound by that contract.

*Id.* at 1072–73.  *Reliance* distinguished *Rossmoor*, noting *Rossmoor* involved the parties to the indemnity contract and the plaintiff-insurer had asserted subrogation:

> even though the case of *Rossmoor* is cited repeatedly and extensively by Reliance, that case simply does not apply to this dispute between two carriers for Lollapalooza. There is nothing that can make any of the policies at issue subject to the contractual obligations to which these carriers were not parties. . . . Furthermore, this is not a subrogation case. Reliance has not sued Don Law, and concedes that Don Law's liability to Lollapalooza has never been established. Accordingly, this is not a case of a carrier, as a subrogee, seeking recovery from a third-party tortfeasor pursuant to an express indemnity agreement or by way of equitable indemnity. That just was not the question at issue in this case.

*Ibid*.  The priority of coverage for Lollapalooza, as between policies insuring that entity (one as a named insured, the other as an additional insured) was to be decided by the terms of the policies themselves. *See also, JPI Westcoast Const., L.P. v. RJS & Associates, Inc.,* 156 Cal.App. 4th 1448,

1458–1466 and n.3 (2007); *Columbia Cas. Co. v. Fed. Ins. Co.*, 2015 WL 4734704 (N.D. Cal. 2015). As explained in *Reliance*, *Rossmoor* was an action **between the insureds** on a contract for indemnity and a subrogation claim by the insurer. *Reliance*, 72 Cal.App.4th at 1079; *Rossmoor*, 13 Cal.3d at 627-8. "*Rossmoor* did not purport to establish a general rule that a contractual indemnification agreement between an insured and a third party takes precedence over well-established general rules of primary and excess coverage in an action between insurers repeatedly articulated by California appellate courts." *Reliance,* 72 Cal.App.4th at 1081.

In this case, American seeks reimbursement from ACE as a co-insurer for Carson. Neither Carson nor Ohio/ American have a cause of action against Stoneledge, either for direct contractual indemnity or in subrogation. Accordingly, the issue of priority of coverage must be determined by the terms of the policies, not by the terms of a contract between Carson and Stoneledge.

Moreover, even if the application of the indemnity clause in the lease was before this court, Stoneledge would not be liable to Carson. Carson and Stoneledge entered into a lease termination agreement, dated December 21, 2017 (prior to the judgment in the Underlying Action) in which Carson fully released Stoneledge from any indemnity obligation:

> Upon receipt of the early termination fee, Landlord, . . . hereby fully and unconditionally waives, releases, remises and forever discharges Tenant . . . from any and all obligations, claims, demands, losses, damages, liabilities, debts, dues, accounts, controversies, actions or causes of action, whether known or unknown, direct or indirect, foreseen or unforeseen, contingent or actual, liquidated or unliquidated, suspected or claimed, which the Landlord Releasing Parties ever had, now has or may hereafter claim to have had against the Tenant Released Parties arising directly or indirectly out of, based upon, or related in any way to the Premises or the Lease (collectively, the "Landlord Released Claims") . . .

Carson MSJ, Dec. of Hazzard, Ex. 15, Doc. 63-16, p. 5. While Carson argues that the lease termination does not impact the application of the policies, it does impact the right of Carson or its direct insurers to recover from Stoneledge and defeats any argument based on that right. Stated differently, neither Carson nor its direct insurers (in subrogation) could recover from Stoneledge under the lease. It is also therefore true that neither Carson nor its direct insurers can recover from the insurers of Stoneledge, in their capacity as insurers of Stoneledge.

Assuming arguendo that Carson did not release Stoneledge, the indemnity provision still would not apply because the provision did not address Carson's active negligence. In *Rossmoor*,

the court stated the well-established rule: "If an indemnity clause does not address itself to the issue of an indemnitee's negligence, it is referred to as a 'general' indemnity clause. While such clauses may be construed to provide indemnity for a loss resulting in part from an indemnitee's passive negligence, they will not be interpreted to provide indemnity if an indemnitee has been actively negligent. Provisions purporting to hold an owner harmless without expressly mentioning an indemnitee's negligence, have been deemed to be 'general' clauses." *Rossmoor*, 13 Cal.3d at 628–629; *McCrary Constr. Co. v. Metal Deck Specialists, Inc*., 133 Cal. App. 4th 1528, 1537–38 (2005); *Maryland Casualty Co. v. Bailey & Sons, Inc*., 35 Cal.App.4th 856, 869 (1995).   Courts have repeatedly held that the right to indemnity is strictly construed against the indemnitee, and indemnification for the affirmative or active negligence of the indemnitee must be "clear, positive and specific to that effect." *Herman Christensen & Sons, Inc. v. Paris Plastering Co*., 61 Cal.App.3d 237, 245-46 (1976); *Edmondson Prop. Mgmt. v. Kwock,* 156 Cal.App.4th 197 (2007); *Prince v. Pacific Gas & Electric Co*., 45 Cal.4th 1151, 1158 (2009); *City of Bell v. Sup. Court*, 220 Cal.App.4th 236, 250 (2013).  Here, the lease indemnity provision stated that Stonledge was to indemnify Carson from any loss, damage or suit, "on account of (a) Tenant's use of the Premises; (b) the conduct of Tenant's business . . . (c) any breach or default in the performance of Tenant's obligations under this lease; (d) any misrepresentations or breach of warranty by Tenant . . .; or (c) other acts, failures to act or occurrences on the Premises, except to the extent caused by Landlord's gross negligence or willful misconduct . . . ." Dec. of Hazzard, Ex. 1, Doc. 63-2 p. 21.   In this case, Carson would be seeking indemnity for its sole, active negligence. The indemnity provision does not expressly address the active negligence of Carson, and, therefore, it does not apply.

Finally, if the lease had any bearing on determining the priority of coverage, the lease would be of no assistance to American vis a vis ACE.  In Article 23 of the lease, Carson obligated Stoneledge to maintain general liability insurance with limits "not less than $2,000,000 for each occurrence." *Id*. at Doc. 63-2, p. 23-24. The Hartford policy has a limit of $2 million per occurrence, satisfying the lease obligation.  Carson did not require excess insurance, and the parties made no statement in the lease that would dictate which excess policy had priority to the other.

Under the terms of the policies, the ACE policy is excess to the Hartford and Ohio primary

policies and the American excess policy.  The American policy states "We will pay on behalf of the Insured the amount of 'loss' covered by this insurance in excess of the 'Underlying Limits of Insurance' shown in Item 5 of the Declarations. . . ."  Ohio/American Joint Index, Ex. 3. Doc. 64-6, p. 14.  The policy defines "Underlying Limits of Insurance" as "the total sum of the limits of all applicable 'underlying insurance' stated in Item 5 of the Declarations, including self-insurance or means other than insurance." *Id.* at Doc 64-6 p. 16.  Item 5 of the Schedule of Underlying Insurance lists the primary policy issued by Ohio and limits of $1 million per occurrence. *Id.* at Doc 64-6, p. 10.  Accordingly, the attachment point of the American policy is at exhaustion of the $1 million Ohio policy.  The ACE policy, in contrast, states in its insuring agreement that it will pay a loss "in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages because of 'bodily injury.'"  Doc. 63-5, p. 10. It defined "retained limit" as "the total applicable limits of 'underlying insurance' *and any applicable limit of 'other insurance' providing coverage to the 'insured.'*"  Doc 63-5, p 27.  The "underlying insurance" is the $2 million Hartford primary policy and "other insurance" is defined to include both the Ohio and American policies and the attachment point for the ACE policy is exhaustion of the Hartford, Ohio and American policies.  Therefore, the ACE policy applies as excess to the American policy, which, in turn, is excess to the primary policies.

IV.    <u>CONCLUSION</u>

For all the foregoing reasons, the motions of Carson and Ohio/ American should be denied.  Summary judgment should be granted to ACE because the ACE policy does not owe indemnity or defense to Carson in relation to the Underlying Action because Stoneledge did not cause the injuries for which Carson was held liable. In the alternative, ACE respectfully requests that this court declare that ACE did not owe a duty to defend Carson and that its policy is excess to the policies issued to Hartford, Ohio and American.

Dated: January 16, 2025                            MORALES FIERRO & REEVES

                                                   By:___*/s/Christine Fierro*_____
                                                   CHRISTINE FIERRO
                                                   Attorneys for Defendant ACE PROPERTY &
                                                   CASUALTY INSURANCE COMPANY