1

**MUSICK, PEELER & GARRETT LLP**

2

333 South Hope Street, Suite 2900
Los Angeles, California 90071-3048
Telephone (213) 629-7600
Facsimile (213) 624-1376

3

4

Lawrence A. Tabb (State Bar No. 141471)
 *l.tabb@musickpeeler.com*

5

Danica Lam (State Bar No. 266710)
 *d.lam@musickpeeler.com*

6

7

Attorneys for Defendants and Counterclaimants OHIO SECURITY INSURANCE COMPANY
and AMERICAN FIRE AND CASUALTY COMPANY

8

**UNITED STATES DISTRICT COURT**

9

**NORTHERN DISTRICT OF CALIFORNIA**

10

11

HARTFORD FIRE INSURANCE
COMPANY,

Case No. 3:23-cv-06259-VC

12

                    Plaintiff,

Judge:    Vince Chhabria

13

        vs.

14

CARSON MADRONA COMPANY, LLC;
OHIO SECURITY INSURANCE
COMPANY; AMERICAN FIRE AND
CASUALTY COMPANY; and DOES 1
through 10, inclusive,

**OHIO SECURITY INSURANCE
COMPANY AND AMERICAN FIRE
CASUALTY COMPANY 'S COMBINED
OPPOSITION TO HARTFORD FIRE
INSURANCE COMPANY AND ACE
CASUALTY AND PROPERTY
INSURANCE COMPANY'S CROSS
MOTIONS FOR SUMMARY
JUDGMENT; AND REPLY IN SUPPORT
OF OHIO SECURITY AND AMERICAN
FIRE'S MOTION FOR PARTIAL
SUMMARY JUDGMENT**

15

16

17

                    Defendant.

18

19

20

Trial Date: TBD

21

AND RELATED COUNTERCLAIMS

22

23

        Defendants and Counterclaimants Ohio Security Insurance Company ("Ohio Security") and

24

American Fire Casualty Company ("American Fire") hereby respectfully submit their combined

25

opposition to Hartford Fire Insurance Company ("Hartford") and Ace Casualty and Property

26

Insurance Company ("Ace")'s respective cross motions for summary judgment (Doc. 67; Doc. 68.)

27

They also submit this combined reply to the oppositions to their Motion for Partial Summary

28

Judgment (Doc. 64.)

<u>**TABLE OF CONTENTS**</u>

**Page**

I.    INTRODUCTION ..................................................................................................2

II.   UNDISPUTED FACTS ........................................................................................3

III.  LEGAL ARGUMENTS .........................................................................................4

    A.    Hartford Breached its Continuing Defense Duty to Carson Madrona ....................4

    B.    The Hartford Policy's Lessors of Land Provision Confers Additional
        Insured Status on Carson Madrona ............................................................6

    C.    Even if the Blanket Endorsement Controls, there is still Additional Insured
        Coverage for Carson Madrona ...................................................................9

        1.    A finding of "Substantial Factor in Causing Harm" is not necessary
            to satisfy the "caused in part" requirement of the Blanket
            Endorsement ................................................................................9

        2.    Only Minimal Causal Connection is Required ...........................11

        3.    Cases Cited by Ace Do Not Support its Position ........................14

    D.    Hartford provided Primary Coverage, and is not Entitled to Recover from
        Ohio ...........................................................................................16

    E.    The Correct Determination of Priority of Coverage for Carson Madrona ...............17

IV.   CONCLUSION ..................................................................................................20

MUSICK, PEELER
& GARRETT LLP

3533035.1                                   i                          Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Acceptance Ins. Co. v. Syufy Enterprises*,
5
    69 Cal.App.4th 321 (1999) (*Syufy*) ........................................................................... 13

6

*Aerojet-Gen Corp. v. Superior Court*,
    17 Cal.4th 38 (1997).................................................................................................... 5
7

*American Casualty Co. v. General Star Indem. Co.*,
8
    125 Cal.App.4th 1510 (2005)..................................................................................... 9

9

*Canadian Ins. Co. v. Rusty's Island Chip Co.*
    36 Cal.App.4th 491 (1995).......................................................................................... 9
10

11

*City of Ontario v. Allied World Assurance Co.*,
    No. EDCV202279JGBSPX, 2021 WL 6104180 (C.D. Cal. Sept. 30, 2021)................... 19, 20
12

*Crane v. State Farm Fire & Cas. Co.*,
13
    5 Cal. 3d 112 (1971)................................................................................................... 8

14

*Delgado v. Heritage Life Ins. Co.*,
    157 Cal.App.3d 262 (1984)........................................................................................ 8
15

16

*Espinosa v. Little Co. of Mary Hosp.*,
    31 Cal. App.4th 1304 (1995)....................................................................................... 10
17

*Foster Poultry Farms v. Contractors Bonding and Insurance Company*,
18
    562 F.Supp.3d 1152 (E.D. Cal. 2022) ....................................................................... 10, 11

19

*Gary Mountain, et al. v. David Perez, et al.*,
    Alameda County Superior Court Case No. RG17857926................................. 2, 3, 4, 6, 15, 18
20

21

*Gemini Ins. Co. v. Delos Ins. Co.*,
    211 Cal.App.4th 719 (2012)....................................................................................... 14, 15
22

*Hartford Accident & Indem. Co. v. Sup.Ct.*,
23
    23 Cal.App.4th 1774 (1994)....................................................................................... 4

24

*Hartford Casualty Ins. Co. v Travelers Indent. Co.*,
    110 Cal.App.4th 710 (2003)....................................................................................... 11, 12, 13
25

26

*Hyundai Motor Am. v. Nat'l Union Fire Ins. Co.*,
    No. SACV 08-00020-JVS, 2011 WL 13133820 (C.D. Cal. Mar. 21, 2011) ............................ 5
27

*Jane D. v. Ordinary Mutual*
28
    32 Cal. App. 4th 643 (1995).......................................................................................... 7

**MUSICK, PEELER**
**& GARRETT LLP**

3533035.1                    ii                 Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

*Jenkins v. Ins. Co. of N. Am.,*
220 Cal.App. 3d 1481 (1990) ............................................................................. 5

*Montrose Chem. Corp. v. Sup.Ct.,.*
6 Cal.4th 287 (1993) ................................................................................... 4, 5

*Montrose Chem. Corp. v. Superior Ct. of Los Angeles Cty.,*
9 Cal. 5th 215 (2020) .......................................................................................... 9

*National Fire Ins. Co. of Hartford v Federal Insurance Co.,*
843 F.Supp.2d 1011 (N.D, Cal. 2012) ............................................................. 13

*Palmer v. Truck Ins. Exch.,*
21 Cal. 4th 1109 (1999) ...................................................................................... 8

*Reliance Nat. Indem. Co. v. Gen. Star Indem. Co.,*
72 Cal. App. 4th 1063 (1999) .......................................................................... 18

*Rossmoor Sanitation v. Pylon, Inc.,*
13 Cal.3d 622 – 626 (1975) ....................................................................... 16, 18

*S. Cal. Counseling Ctr. v. Great Am. Ins. Co.,*
162 F. Supp. 3d 1045 (C.D. Cal. 2014) ............................................................. 8

*Scottsdale Ins. Co. v. MV Transp.,*
36 Cal.4th 643 (2005) ......................................................................................... 4

*St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.,*
101 Cal.App.4th 1038 (2002) ........................................................................... 14

*St. Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co.,*
111 Cal.App.4th 1234 (2003) ............................................................................. 8

*to JPI Westcoast Const., L.P. v. RJS & Associates, Inc.,*
156 Cal.App.4th 1448 (2007), Doc. 68 ............................................................ 20

*Truck Ins. Exch. v. AMCO Ins. Co.,*
56 Cal.App.5th 619 (2020) ................................................................................. 9

*Vitton Constr. Co. v. Pac. Ins. Co.,*
110 Cal.App.4th 762 (2003) ............................................................................... 9

*Zurich Specialties London Ltd. v. Gemini Ins. Co.,*
No. G033979, 2005 WL 1102650 (Cal. Ct. App. 2005) ................................. 7, 15

**Statutes**

Civil Code § 3534 .............................................................................................. 7

MUSICK, PEELER
& GARRETT LLP

3533035.1                                   iii                    Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

1

**Other Authorities**

2

Cambridge Advanced Learner's Dictionary..........................................................................10

3

Thesaurus Cambridge University Press

4        https://dictionary.cambridge.org/us/dictionary/english/in-part................................10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MUSICK, PEELER
& GARRETT LLP**

3533035.1                                      iv                        Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff and cross defendant Hartford and counterclaim defendant and third party defendant Ace assert various grounds upon which they seek to avoid their coverage obligations; all of which are unsupported by evidence and the law.

*First,* for years, Hartford acknowledged a duty to defend Carson Madrona Company, LLC ("Carson Madrona") in *Gary Mountain, et al. v. David Perez, et al.*, Alameda County Superior Court Case No. RG17857926 ("Underlying Lawsuit") under the insurance policy no. 41 CSE S30502, effective from January 1, 2016 to January 1, 2017 which Hartford issued to Ashley Furniture (the "Hartford Policy").  Hartford, however, withdrew its defense after the jury rendered its verdict because although the jury found Hartford's named insured, Ashley Furniture, was negligent, the jury did not find that Ashley Furniture was a "substantial factor" in causing harm to Mr. Perez.  This contravenes well settled California law that the duty to defend continues until the conclusion of the action including, through appeal.  The reason for this is self-evident, there is the possibility that a reversal results in a new trial with a different outcome.  Hartford breached its duty to defend Carson Madrona and owes Ohio Security amounts it expended in assuming Carson Madron's defense.

*Second,* Hartford and Ace claim that a narrower Blanket Endorsement in the Hartford Policy applies to Carson Madrona, instead of the broader Lessors of Land Provision found in the Hartford Policy's coverage form.  This argument is unavailing.  ***Critically, Hartford specifically defended Carson Madrona under the Lessors of Land Provision, not the Blanket Endorsement.***  The Lessors of Land Provision applies here since there was no Blanket Endorsement specifically issued to Carson Madrona. Further, at the very least, it is ambiguous as to whether the coverage form's Lessor of Land Provision or the Blanket Endorsement applies.  Consequently, the Lessors of Land Provision, the provision giving rise to coverage, controls – as Hartford previously acknowledged.

*Third,* Hartford and Ace contend that in order to for additional insured coverage to attach, the Blanket Endorsement requires a near exclusive causal connection between Ashley Furniture's liability and that of Carson Madrona's.  This is simply untrue.  For additional coverage to attach, a jury finding that the named insured Ashley Furniture was a "substantial factor in causing harm" is

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

1    not necessary.  The Blanket Endorsement merely requires that Ashley Furniture's act caused the

2    harm "in whole *or in part*", which is more than satisfied here.  Thus, even if Ashley was not a

3    substantial factor in causing Mr. Perez' injury, the Blanket Endorsement applies and additional

4    insured coverage under the Hartford Policy and Ace Policy is triggered.

5            **Fourth,** contrary to well established rules regarding priority of coverage, Ace contends, its

6    Policy issued to Ashley Furniture - the contractual indemnitor - is not triggered until the excess

7    American Fire Policy issued to Carson Madrona – the contractual indemnitee - is exhausted.  This

8    is in direct contravention of California law.

9            The plain language of the policies, the Lease, and California law do not support Hartford

10   and Ace's avoidance of their coverage obligations to their additional insured, Carson Madrona.

11   Accordingly, Ohio Security and American Fire request that the court rule as follows: (1) Hartford

12   had a continuing duty to defend Carson Madrona in the Underlying Lawsuit, that Hartford breached

13   this duty, and that Ohio Security is entitled to recover amounts from Hartford which it paid on

14   Carson Madrona's behalf in connection with the defense of the Underlying Lawsuit;  (2) Carson

15   Madrona is an additional insured under the Hartford  and Ace Policies and  the Lessors of Land

16   Provision in the Hartford Policy confers  additional insured status on Carson Madrona; and (3) the

17   proper priority of coverage with regard to the coverage afforded to Carson Madrona for the

18   Underlying Lawsuit is as follows: (i) Hartford Policy, (ii) Ohio Security Policy, (iii) Ace Policy and

19   (iv) American Fire Policy.

20           In light of the above, and as delineated in further detail below, Hartford and Ace's cross

21   motions for summary judgment should be denied.[1]  Further, Ohio Security and American Fire's

22   motion for partial summary judgment should be granted.[2]

23   **II.    UNDISPUTED FACTS**

24           The following facts are undisputed: Ashley Furniture and Carson Madrona entered into a

25

---

26   [1] Doc. 67; Doc. 68 (Reference to "Doc" refers to the court-applied pagination (the blue page
     numbers at the top), and when available to Ohio Security and American Fire's Joint Index and
27   Compendium of Evidence and Bates Stamped, "Joint Index" filed concurrently with Ohio Security
     and American Fire's Motion for Partial Summary Judgment
28   [2] Doc. 64.

MUSICK, PEELER
& GARRETT LLP

3533035.1                                        3                    Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

lease agreement ("Lease") for 6195 Coliseum Way, Oakland, California ("Warehouse").[3]  The Lease agreement required Ashley Furniture to indemnify Carson Madrona for any claim "*arising out of or in any way connected with*, and Landlord shall not be liable to Tenant on account of (a) *Tenant's use* of the Premises; (b) the conduct of Tenant's business or anything else done or permitted by Tenant to be done in or about the Premises…" [4] (emphasis added)  The Lease also required Ashley Furniture to procure primary and non-contributory insurance for Carson Madrona..[5]

Hartford issued insurance policy no. 41 CSE S30502, effective from January 1, 2016 to January 1, 2017 to Ashley Furniture (the "Hartford Policy") with a per occurrence limit of $2,000,000.[6]  Ace issued excess policy with number G2793742500 001 effective from January 1, 2016 to January 1, 2017 to Ashley Furniture (the "Ace Policy") with a limit of $25,000,000.[7]  Both Hartford and Ace acknowledge that Carson Madrona is an additional insured under the Hartford Policy and Ace Policy.[8]

## III.    LEGAL ARGUMENTS

### A.  Hartford Breached its Continuing Defense Duty to Carson Madrona

Hartford acknowledged that it owed Carson Madrona a defense in the Underlying Lawsuit, and defended Carson Madrona through verdict but withdrew its defense and abandoned Carson Madron after the jury's verdict..[9]  However, an insurer's duty to defend continues until the action ends "unless the insurer sooner proves, by facts subsequently developed, that the potential for coverage which previously appeared *cannot possibly materialize,* or no longer exists."  *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 657 (2005) (emphasis added); *Montrose Chem. Corp. v. Sup.Ct.*,.6 Cal.4th 287, 295 (1993).  Stated more succinctly, "the duty to defend begins when a potential for coverage arises, and the duty continues *until the insurer proves otherwise*."  *Hartford*

---

[3] Doc. 67, p. 8; Doc. 64-7; Doc. 68, pp. 8 – 9.
[4] Doc. 64-7, p. 21 [Joint Index 00143].
[5] Doc. 64-7, pp. 23 - 24 [Joint Index 00145, 146].
[6] Doc. 67, p. 9; Doc. 64-10 [Joint Index 00180]
[7] Doc. 68, p. 12; Doc. 64-15, p. 2 [Joint Index 313]
[8] Doc. 67, p. 9 "Hartford agreed to defend Carson Madrona"; Doc. 68, p. 23 "Carson is an insured. ACE does not contend otherwise."
[9] Doc. 67, p. 9.

*Accident & Indem. Co. v. Sup.Ct.*, 23 Cal.App.4th 1774, 1781, (1994)(emphasis added).  In other words, "[o]nce the duty to defend an action arises, it continues until either the underlying action concludes, *or the insurer seeks, and obtains, an adjudication* that the has been extinguished." *Hyundai Motor Am. v. Nat'l Union Fire Ins. Co.*, No. SACV 08-00020-JVS, 2011 WL 13133820 at *2 (C.D. Cal. Mar. 21, 2011) (emphasis added); *Aerojet-Gen Corp. v. Superior Court*, 17 Cal.4th 38, 58 (1997).  The duty to defend includes the duty to appeal.  *Jenkins v. Ins. Co. of N. Am.*, 220 Cal.App. 3d 1481, 1489 (1990).  Hartford ignored these well settled legal principles when it failed to defend Carson Madrona through the appeal process.

Here, even if Hartford contends that additional insured coverage for Carson Madrona depended on a finding of liability on the part of Ashley Furniture, Hartford had a continuing duty to defend Carson Madrona through the appeal process.  The appeal could have reversed the verdict, and a new trial could have resulted in a different allocation of liability among the underlying parties.  Notably, a reversal on appeal and a new trial would go against Hartford's current coverage position since it could present an allocation of damages against Ashley Furniture.  As long as there is potential coverage, Hartford had a duty to defend Carson Madrona. *Montrose Chem. Corp. of Calif. v. Sup.Ct. (Canadian Universal Ins. Co., Inc.)*, 6 Cal.4th 287, 300 (1993) ("[T]he insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot.")

Instead of defending Carson Madrona as it was obligated to do, Hartford withdrew its defense of Carson Madrona and denied any indemnity obligations.[10] Hartford clearly stated, "it has no continuing defense obligation and no indemnity obligation to Carson in this matter and that it is incumbent upon Ohio Security to step in to protect its named insured."[11]

While Hartford claims it did not withdraw from Carson Madrona's defense, and cites to several correspondence claiming the same, Hartford's actions tell a different story.  Hartford did not pay for any of Carson Madron's appellate counsel's fees.[12]  It did not appoint its own appellate counsel or join with the prosecution of appeal provided by Ohio Security.  It did not participate in

---

[10] Doc. 64-14, p. 4; Joint Index 00310.

[11] *Id*.

[12] Doc. 64-2, p. 6, ¶ 14.

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

mediation for the Underlying Lawsuit.  It did not contribute any funds towards the settlement.[13]  It does not dispute that costs and interest are part of the defense duty but refuses to pay costs and interest awarded against Carson Madrona.[14]  In other words, Hartford plays lip service to continuing to defend Carson Madrona but in reality, deserted Carson Madrona.  Accordingly, Ohio Security had to step in to fund the appeal, and ultimately indemnify Carson Madrona for millions of dollars.[15]

**B.  The Hartford Policy's Lessors of Land Provision Confers Additional Insured Status on Carson Madrona**

The Hartford Policy's Section II – WHO IS AN INSURED:

(6) Additional Insureds When Required By Written Contract, Written Agreement or Permit

The following person(s) or organization(s) are an additional insured when you have agreed, in a written contract, written agreement or because of a permit issued by a state or political subdivision, that such person or organization be added as an additional insured on your policy, provided the injury or damage occurs subsequent to the execution of the contract or agreement.

A person or organization is an additional insured under this provision only for that period of time required by the contract or agreement.

However, no such person is an additional insured under this provision if such person or organization is included as an insured by an endorsement issued by us and made a part of this coverage part.

***

(c) Lessors of Land or Premises ("Lessors of Land Provision"): Any person or organization from whom [Ashely Furniture] lease[s] land or premises, but only with respect to liability arising out of the ownership, maintenance ***or use of that part of the land or premises leased to [Ashley Furniture]***.[16] (emphasis added)

The above provisions controls Carson Madrona's status as an additional insured.

First, there is no dispute that there is no Blanket Endorsement naming Carson Madrona as an additional insured.  Hartford's Certificate of Insurance issued to Carson Madrona provides that it is "included as Additional Insured in accordance with the general liability policy.  General liability policy evidenced herein is primary and non-contributory to other insurance available to Additional

---

[13] Doc. 64-2, p. 6, ¶¶ 14 - 17.
[14] Doc. 67, p. 25.
[15] Doc. 64-2, p. 6, ¶ 14.
[16] Doc. 64-10, p. 27 [Joint Index 00195 – 197].

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

MUSICK, PEELER
& GARRETT LLP

Insured, but only in accordance with the policy's provision."[17] The Lease required that Carson Madrona be named on Ashley Furniture's insurance policies, thus, it is an additional insured under the Lessors of Land Provision of the Hartford Policy.[18] While there is a Blanket Endorsement which pertains to "Blanket Where Required by Written Contract or Agreement", it does not name Carson Madrona specifically. Significantly, there are three additional insured endorsements in the Hartford Policy which name specific entities, none of which is Carson Madrona.[19]

Second, where the Lessors of Land Provision specifically addresses lessors like Carson Madrona, it should apply over the Blanket Endorsement, which provides more general coverage to additional contractual indemnitees. Civil Code § 3534 ("Particular expressions qualify those which are general"); see *Jane D. v. Ordinary Mutual* 32 Cal. App. 4th 643, 651 (1995) (specific endorsement in church's general liability policy covering sexual misconduct by priests prevailed over more general language of policy that excluded it). *Zurich Specialties London Ltd. v. Gemini Ins. Co.*, No. G033979, 2005 WL 1102650 (Cal. Ct. App. 2005) illustrates the specific over general principle set forth by Civil Code Section 3534. In *Zurich Specialties*, the appellate court analyzed competing AI endorsements, one which covered liability "arising out of" the named insured's activities, and another that limited coverage to the subcontractor's "sole negligence." The appellate court found that "arising out of" endorsement to control over a narrower endorsement.

Applied here, the Lessors of Land Provision applies to entities like Carson Madrona in particular as the lessor of the Warehouse as opposed to general contractual indemnitees. Further, the Lessors of Land Provision provides coverage consistent with the requirements of the Lease, which required that the tenant Ashley Furniture obtain insurance for Carson Madrona for liability "arising out of the operation, maintenance, use, or occupancy" of the subject premises.[20] "When additional insured endorsements, by their own terms, depend on the existence of a written contract between the named insured and the additional insured, the contract is a significant circumstance in

---

[17] Doc. 64-21, p. 2 [Joint Index 00465].
[18] Doc. 64-7, p. 23 [Joint Index 00145 – 146].
[19] Doc, 64-10, pp. 56 – 59; See also, Doc., 63-4, Declaration of Yakub Hazzard, Exh. 3 at pp. 104, 105, 106, 107.
[20] Doc. 64-7, p. 23 [Joint Index 00145 – 146]

MUSICK, PEELER
& GARRETT LLP

determining the objectively reasonable expectations of the additional insured." *St. Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co.*, 111 Cal.App.4th 1234, 1245 (2003).

Third, if Hartford and Ace's position is given weight, then the Hartford Policy's coverage form's "Section II Who is an Insured, Subsection 6" ("Subsection 6") will be disregarded whenever there is an endorsement. In this scenario, the Blanket Endorsement (which does not name any contractual indemnitee) applies in every situation where Ashley Furniture is contractually obligated to indemnify another party. This will render Subsection 6 – which provides for specific terms regarding additional insured coverage for vendors (6a), Lessors of Equipment (6b), Lessors of Land (6c), Architects, Engineers or Surveyors (6d), and Permits issued (6e)[21] – mere surplusage as they will never ever be given effect. This is contrary to insurance interpretation dictated by California law. When interpreting an insurance policy, the Court "must interpret [the policy] to give effect to all of its terms and avoid an interpretation that renders a term mere surplusage." *S. Cal. Counseling Ctr. v. Great Am. Ins. Co.*, 162 F. Supp. 3d 1045, 1050, 1053 (C.D. Cal. 2014). Courts must "interpret [insurance contract] terms in context and give effect to every part of the policy with each clause helping to interpret the other." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999). Accordingly, Hartford and Ace's contention should be rejected on this ground.

Fourth, the Blanket Endorsement does not name Carson Madrona like the other additional endorsements found in the Hartford Policy which specifically name the additional insured.[22] On the other hand, the Hartford Policy provides that Subsection 6 does not apply when there are endorsements issued to a contractual indemnitee. There are no endorsements issued to Carson Madrona specifically. In light of this, at the very least, there is ambiguity as to whether the Blanket Endorsement or Subsection 6 (which includes the Lessors of Land Provision) controls with regard to Carson Madrona's status as additional insured. An ambiguity results "when 'there is contradictory or necessarily inconsistent language in different portions of the instrument; ...'" *Delgado v. Heritage Life Ins. Co.*, 157 Cal.App.3d 262, 271 (1984). When there is an ambiguity in a policy, the policy must be liberally construed in favor of coverage for the insured. *Crane v. State*

---

[21] Doc. 64-10, pp. 27 – 28 [Joint Index 00196 – 197]

[22] Doc. 64-10, pp. 56 – 59.

MUSICK, PEELER
& GARRETT LLP

3533035.1                                    8                    Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

*Farm Fire & Cas. Co.*, 5 Cal. 3d 112, 115 (1971); *Montrose Chem. Corp. v. Superior Ct. of Los Angeles Cty.*, 9 Cal. 5th 215, 230 (2020). Accordingly, the Lessors of Land Provision provides coverage and should be given effect.

Last, Hartford does not dispute that Hartford's coverage position letters and communications prior to the jury verdict have relied exclusively on the Lessors of Land Provision, and never on the Blanket Endorsement.[23] It follows that Hartford has waived any purported right to rely on the Blanket Endorsement as a defense to coverage. *Canadian Ins. Co. v. Rusty's Island Chip Co*. 36 Cal.App.4th 491, 497–498 (1995).

Thus, for all the reasons stated above, the Lessors of Land Provisions with its broad "arising out of" language applies. The broad language of the Lessors of Land Provisions confers additional insured status on Carson Madrona under the Hartford Policy and Ace Policy without having to prove that its liability was related to Ashley Furniture's actions. *Vitton Constr. Co. v. Pac. Ins. Co*., 110 Cal.App.4th 762, 767-68 (2003) ("the fact that an accident is not attributable to the named insured's negligence is irrelevant when the additional insured endorsement does not purport to allocate or restrict coverage according to fault"); *Truck Ins. Exch. v. AMCO Ins. Co*., 56 Cal.App.5th 619, 634 (2020) (where tenant's policy named landlord as additional insured "with respect to [the landlords'] liability arising out of [the tenant's] use of the property," coverage applied regardless of tenant's fault); *American Casualty Co. v. General Star Indem. Co*., 125 Cal.App.4th 1510, 1525 (2005) (additional insured was entitled to the "full indemnity and defense benefits promised under the policy" where Additional Insured endorsement covered "liability arising out of [named insured's] operations" even where the additional insured was solely liable). Significantly, Hartford or Ace does not dispute any of these cited legal authorities but instead claims that the Lessors of Land Provision's "arising out of" language simply does not apply.

### C. Even if the Blanket Endorsement Controls, there is still Additional Insured Coverage for Carson Madrona

#### 1. *A finding of "Substantial Factor in Causing Harm" is not necessary to satisfy the "caused in part" requirement of the Blanket Endorsement*

---

[23] Doc. 64-11, p. 6; Doc. 64-12, pp. 3, 4 [Joint Index 00288, 00293 – 294].

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

To avoid coverage, both Hartford and Ace relies on the Blanket Endorsement, which provides:

> A. Section II — Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule ["BLANKET WHERE REQUIRED BY WRITTEN CONTRACT OR AGREEMENT"], but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole ***or in part***, by your acts or omissions or the acts or omissions of those acting on your behalf: (emphasis added)

> 1. In the performance of your ongoing operations; or

> 2. In connection with your premises owned by or rented to you.
> However:

> 1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

Both Hartford and Ace claim that because Ashley Furniture was not found to be a "substantial factor" in causing Mr. Perez's harm, there is no additional insured coverage under the Blanket Endorsement.  Hartford and Ace appear to argue that "substantial factor" equates to exclusive causation of harm.  It is simply not so as "there is no judicially approved definition of what is a substantial factor for causation purposes, it seems to be something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result." Com. to BAJI No. 3.76 (8th ed. 1994 bound vol.) p. 99.)  *Espinosa v. Little Co. of Mary Hosp.*, 31 Cal. App.4th 1304, 1314 (1995).  Thus, it follows that Ashley Furniture's act can slightly, or in part, cause the harm, but still not be considered a substantial factor.

Slightly causing harm or causing in part satisfies the Blanket Endorsement's "cause in part" requirement.  Indeed, "in part" is defined as "partly, or to some degree" (Cambridge Advanced Learner's Dictionary & Thesaurus Cambridge University Press https://dictionary.cambridge.org/us/dictionary/english/in-part). "Cause in part" required by the Blanket Endorsement does not necessarily require a finding of "substantial factor" in causing the harm.

Indeed, in *Foster Poultry Farms v. Contractors Bonding and Insurance Company*, 562 F.Supp.3d 1152, 1162 (E.D. Cal. 2022), the Eastern District applying California law held that a property owner sufficiently claimed that it was an "additional insured" under commercial general

MUSICK, PEELER
& GARRETT LLP

3533035.1                                    10                        Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

liability (CGL) policy issued by CBIC to the property owner's independent contractor indemnitor which provided additional insured coverage to the property owner for bodily injury caused *in whole or in part* by the indemnitor.  In *Foster Poultry Farms*, plaintiff was injured while at work at a premises owned by Foster Poultry Farm.  The independent contractor indemnitor was not named as a defendant in the underlying case as the plaintiff's claims against it was barred by workers compensation exclusivity laws. *Id*. at 1159.  In finding additional insured status for property owner, despite no liability on the named insured's party - the court noted that the policy did not provide, "caused *solely* by" or "caused *exclusively* by" the indemnitor's negligence, or caused by the named insured's *sole* negligence—yet that is how the indemnitor's carrier - as Hartford and Ace do here - implicitly urged the court to interpret and apply the policy's terms.  The *Foster Poultry Farms* court declined to adopt such a narrow and unsupported interpretation of the policy's phrase "caused by" and instead interpreted the provision to include coverage for bodily injury caused *in whole or in part* by the indemnitor's actions. *Id*. at 1162.  The court noted that "to conclude otherwise would require either reading additional limiting language into the Policy or construing ambiguities in the Policy against the insured, which would run afoul of the "principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *Id*. at 1161.

Hartford's, and Ace's contentions similar to that of the indemnitor's carrier's in *Foster Poultry Farms* should likewise be rejected as it creates a higher standard of causation for coverage, which is not required under the Hartford Policy.

## 2. <u>*Only Minimal Causal Connection is Required*</u>

California applies the "minimal causal connection" standard with regard to coverage disputes in the landlord tenant context In *Hartford Casualty Ins. Co. v Travelers Indent. Co.*, 110 Cal.App.4th 710 (2003), the court held that the additional insured coverage for the landlord broadly extends to injuries occurring outside the tenant's literal leased premises and in the common areas, where they are related to the tenant's presence on the property. *Id.* at 720. The tenant, leased offices on the second floor and a portion of the third floor, not including an exterior deck area on the third floor which was common space for which the landlord was responsible. *Id.* at 713-714. The tenant's

MUSICK, PEELER & GARRETT LLP

3533035.1                    11                    Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

employee fell from the third floor exterior deck area and died. Travelers defended the landlord and tendered the landlord's defense and indemnity to Hartford in accordance with the additional insured endorsement. In holding that the landlord was entitled to additional insured coverage, the Court of appeal explained: "The Hartford policy, read according to the plain commonsense meaning of its terms, extended coverage to liability potentially imposed on [the landlord] that are related to [the tenant's] presence in the [landlord's] premises .".*Id.* at 720.

*Hartford Casualty Ins. Co* considered an additional insured endorsement similar to the Blanket Endorsement in that it provided coverage for the landlord "but only with respect" to the named insured's to your operations or use of facilities. *Id.* at 714, 723. There, as here, Hartford argued that there was no additional insured coverage for the landlord. The court rejected Hartford's argument when Hartford contended that the phrase "but only with respect to" as restrictively referring only to liability that is directly caused by [its named insured]." *Ibid*. The court noted that the law and Hartford's policy do not "support that narrow semantic interpretation." *Ibid*. The court noted that "nothing in the meaning of "only with respect to" hints at a requirement of direct causation. It merely indicates some relationship. For example, Webster's Dictionary includes among the definitions of "with respect to" and "in respect of" such concepts as "as regards," "with reference to," "in relation to" and "with regard to." (citations omitted.) *Id.* at 719.

Accordingly, to establish coverage as an additional insured in the landlord-tenant context, *only* a minimal causal connection or incidental relationship between the liability and the tenant's presence in the landlord's property need to be shown. *Id* at 723. "[T]o the extent [the landlord] had a duty to prevent employees of a tenant from falling off the roof, that duty is related to the tenant's operations, work, use of the facilities. *Id.* at 724. The court found that "[t]his kind of accident is the precise reason why a landlord obtains coverage as a tenant's additional insured-to protect against liability imposed on the landlord because of the occupation and use of the landlord's property by the business tenant." *Id.* Lastly, the court, held:  [W]hen the landlord is held liable for an injury related to the tenant's use of the property, the plain language in this case covers the landlord. There is no limitation to the tenant's 'operations' and no requirement that the tenant be at fault." *Id.* at 723. Thus, despite the fact that this language was *narrower* than the more common "arising out of"

MUSICK, PEELER
& GARRETT LLP

3533035.1                                   12                    Case No. 3:23-cv-06259-VC
OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

phrase, the landlord was entitled to coverage as an additional insured. *Id.* at 720.

In so holding, the *Harford Casualty* court echoed the sentiments of the *Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal.App.4th 321 (1999) (*Syufy*) which held that the additional insured clause grants coverage without regard to whether the injury was caused by the named insured or the additional insured. The building owner's negligence was irrelevant because the policy language did not address fault. *Acceptance*, 69 Cal.App.4th at 330. In other words, "minimal causal connection" does not require that the injury be connected to the negligence of the named insured (i.e. the tenant).

This District extended and applied the standard established *Halford Casualty* to injuries involving the tenant's guest or invitees. In *National Fire Ins. Co. of Hartford v Federal Insurance Co.*, 843 F.Supp.2d 1011 (N.D, Cal. 2012), another case involving a Hartford company, the landlord was a hotel that leased a ballroom to a restaurant that was catering a graduation party. During the party, a three-year old guest of the party wandered from the first floor to a common area, took an elevator to the second floor of the hotel, fell off a balcony, and died. *Id.* at 1012. A wrongful death action followed. A coverage action was initiated to determine whether the tenant's insurer, was obligated to defend and indemnify the landlord hotel as an additional insured. The additional insured endorsement to the tenant's policy stated that the landlord was an additional insured "with respect to liability arising out of the ownership, maintenance, or use of that specific part of the premises leased to [the restaurant]." *Id.* at 1014-15. Applying California law, the district court determined that the landlord was an additional insured under the tenant's policy stating:

> Furthermore, while the hotel may have had an independent duty to its own guests and invitees to ensure that the balcony railing was designed and maintained in a safe condition, its duty to [the claimant] arose from the fact that it was reasonably foreseeable that guests at restaurant events would be on portions of the premises outside the confines of the restaurant itself and the ballrooms it was entitled to use. Thus, the hotel's risk was in an important sense "derivative" in any event. Accordingly, the hotel was entitled to coverage … as an additional insured.

*Id.* at 1014-1015. By so holding, the court recognized that the minimal causal connection or incidental relationship requirement is satisfied by virtue of the fact that it is foreseeable that invitees of the tenant will venture into areas not specifically within the control of the tenant.

Here, it is undisputed that an employee of Ashley Furniture, Gary Mountain acting on behalf

MUSICK, PEELER & GARRETT LLP

3533035.1    13    Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

1  of Ashley Furniture, invited David Perez to come to the Warehouse.[24]  Mr. Perez was injured by an

2  arc flash which occurred as Mr. Perez reinserted a "pullout switch" into the Main Distribution Panel

3  ("MDP"), a panel through which incoming electricity is routed to multiple structures at a large

4  commercial property.[25]  Hartford and Ace conveniently omit that this MDP supplies electricity to

5  Ashley Furniture's leased space meaning it was needed for Ashley Furniture's use of the

6  Warehouse.[26]  There were several switches in the MDP, the pullout safety switch supplying power

7  to the Ashley Furniture's occupied units was the wrong voltage rating for the MDP.[27]  This caused

8  the arcing and ultimately, Mr. Perez's injuries.[28]  This sufficiently meets the Blanket Endorsement's

9  requirement for bodily injury caused, in part, by Ashley Furniture's acts or acts of those acting on

10  its behalf (Mountain) in connection with [its] rented premises.

11      Thus, even if the Blanket Endorsement applies, Carson Madrona should be afforded

12  additional insured coverage under the Hartford Policy and the Ace Policy.

13          **3.    _Cases Cited by Ace Do Not Support its Position_**

14      Hartford does not offer any cases interpreting its Blanket Endorsement.  On the other hand,

15  the California cases[29] proffered by Ace, _St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus_

16  _Lines Ins. Co._, 101 Cal.App.4th 1038, 1055 (2002) and _Gemini Ins. Co. v. Delos Ins. Co_., 211

17  Cal.App.4th 719, 723 (2012) do not support Ace's position.

18      In _Am. Dynasty Surplus Lines Ins. Co._, supra, 101 Cal. App. 4th at p. 1039, the subcontractor

19  agreed to indemnify the general contractor for liability arising from the subcontractor's operations.

20  _Id_. at pp. 1045 – 1046.  The subcontractor's employee had been injured when a pipe exploded during

21  the general contractor's pressure-testing of that pipe, and the parties **_stipulated_** that the explosion

22  had nothing to do with performance of the subcontract, but rather resulted entirely from activities in

23  which the general contractor was separately and independently engaged.  _Id_. This is entirely

24  different from the instant case where there is no stipulation that Carson Madrona's acts are not

25

[24] Doc. 64-4, p. 9; Doc. 64-17, p. 3 [Joint Index 00009, 00397].

26  [25] Doc. 68, at pg. 8:24 - 26

27  [26] Doc. 64-17, pp. 4, 7, 10,  [Joint Index00398, 00401 - 404].

[27] _Id_.

28  [28] _Id_.

[29] The out of state cases cited by Ace do not control here.

MUSICK, PEELER
& GARRETT LLP

3533035.1                                    14                          Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

1    related to that of Ashley Furniture's.  Instead, Carson Madrona and the underlying plaintiffs both

2    contend that Ashley Furniture's use of the Warehouse is at the forefront of the Underlying Lawsuit.[30]

3           In *Gemini Ins. Co. v. Delos Ins. Co.*, 211 Cal.App.4th 719, 721 (2012), a restaurant's

4    insurance policy included an additional insured endorsement which made the restaurant's landlord

5    an additional insured with respect to the landlord's liability arising from the restaurant's acts,

6    undertaken in the course of the restaurant's operations on the leased premises.  *Ibid*.  The insurance

7    policy also had an exclusion for claims or suits between insureds.  *Ibid*.  The tenant negligently

8    started a fire on the leased premises. *Ibid*.  The fire damaged the landlord's property, and the landlord

9    sought to recover from the restaurant for the damages.  *Ibid*.  The case posed a single question: "Was

10   the tenant covered for the landlord's claim, or was coverage barred by the interinsured exclusion?

11   In this opinion, we hold that the inter-insured exclusion did not bar coverage for the landlord's claim

12   against the tenant."  *Ibid*.

13          Here, there are no claims between Carson Madron and Ashley Furniture and there is no

14   dispute regarding whether an exclusion bars coverage for suits between two insureds.  In any event,

15   the court in *Gemini* found additional insured coverage for the landlord, the tenant's insurer argued

16   that the additional insured endorsement merely changes the scope of the coverage afforded to the

17   additional insured.  *Gemini Ins. Co., supra,* 211 Cal.App.4th at p. 724.  There, as here,[31] the tenant's

18   insurer urged the court to rule that the additional insured endorsement merely changes the scope of

19   the coverage afforded to the additional insured.  The court rejected this contention and noted that

20   "doing so would lead to an absurd result, the kind of result we seek to avoid."  *Ibid*.  There, as here,[32]

21   it is undisputed that the landlord insisted as a condition of the lease that the tenant carry liability

22   insurance, and insisted that it be named as additional insured on the tenant's policy.  *Ibid*.  "This is

23   a common practice among commercial landlords, and indeed the policy endorsement is designated

24   as one for landlords."  *Ibid*.  Thus, the *Gemini* court found additional insured coverage for the

25   landlord; the evidence here compels the same result.

---

[30] Doc. 64-4, p. 9; Doc. 64-17, p. 3; Doc. 64-17, pp. 4, 7, 10 [Joint Index 00009, 00397 – 398, 00401 - 404].

[31] Doc. 68, p. 23, lines 21 – 24.

[32] Doc. 64-7, pp. 23 - 24 [Joint Index 00145, 146].

MUSICK, PEELER
& GARRETT LLP

3533035.1                                                15                          Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

**D.  Hartford provided Primary Coverage, and is not Entitled to Recover from Ohio**

In claiming that Hartford and Ohio Security share the same level of risk, Hartford urges this court to ignore *Rossmoor Sanitation v. Pylon, Inc.*, 13 Cal.3d 622, 625 – 626 (1975), and claims that *Rossmoor* has nothing to do with additional insured coverage.[33]  Hartford claims that *Rossmoor* only involved an insurer seeking subrogated claims against its insured's purported indemnitor.  While *Rossmoor* did involve subrogated claims between an indemnitee's insurer and a contractual indemnitor, there were also direct claims between the carriers.  Specifically, "Rossmoor (owner) then brought this declaratory action against both Pylon (contractor) and U.S. Fire (contractor's insurer), seeking indemnity for the sums [it]s paid. U.S. Fire cross-complained against INA (owner's insurer), seeking an apportionment of the sums between the carriers pursuant to the "other insurance" clauses." *Id.*

The Supreme Court in *Rossmoor* clearly held that the owner's insurance coverage, provided by a direct insurer, was excess over coverage provided by the indemnitor contractor's policy. *Rossmoor, supra,* 13 Cal.3d at pp. 633–635.  The California Supreme Court denied apportionment between the insurers, noting as a compelling factor: "[T]o apportion the loss in this case pursuant to the other insurance clauses would effectively negate the indemnity agreement and impose liability on [the owner's insurer] when [the owner] bargained with [the contractor] to avoid that very result as part of the consideration for the construction agreement. We therefore conclude that… because the [contractor's insurance policy naming the owner as an additional insured] was part of the consideration for the construction job, it must be viewed as primary insurance." *Id.* at pp. 634–635.

Similarly*,* Hartford's named insured Ashley Furniture was contractually obligated to indemnity Carson Madrona, and to procure insurance covering Carson Madrona on a primary and noncontributing (meaning that Carson Madrona may look solely to the insurance provided by Ashley Furniture with respect to a covered claim and shall not be required to make a claim under any other insurance Landlord may have).[34]  Pursuant to the Lease's indemnity requirement, the provisions of the Hartford Policy, and *Rossmoor*, the Hartford Policy provides primary coverage to

---

[33] Doc. 67, p. 22.
[34] Doc. 64-7, pp. 13, 21, 23, 24 [Joint Index 00135, 143, 145 - 146].

MUSICK, PEELER
& GARRETT LLP

1    Carson Madrona.

2    　　　　Contrary to Hartford's claim, Ohio Security never wrongfully refused to defend Carson

3    Madrona as the primary defense obligation belonged to Hartford.[35]   Hartford's Certificate of

4    Insurance issued to Carson Madrona provides that Harford affords primary and non-contributory

5    coverage.[36]  The Certificate is consistent with the Other Insurance provision of the Hartford Policy

6    provides in pertinent parts:

7    　　　　4. Other Insurance

    　　　　　　　　　　　　　　　　***

8    　　　　b. Excess Insurance

9    　　　　　　(7) When you Add Others as An Additional Insured To This Insurance Any
    　　　　　　　　other insurance available to an additional insured.

10
    　　　　However, the following provisions apply to other insurance available to any

11    　　　　person or organization who is an additional insured under this coverage part.
    　　　　　　　　　　　　　　　　***

12    　　　　　　(b) Primary and Non-Contributory To Other Insurance When Required by
    　　　　　　　　Contract

13

14    　　　　　　If you have agreed in a written contract, written agreement, or permit
    　　　　　　that this insurance is primary and non-contributory with the additional

15    　　　　　　insured's own insurance, this insurance is primary, and we will not seek
    　　　　　　contribution from that other insurance.[37]

16

17    　　　　When Hartford abandoned Carson Madrona, Ohio Security unequivocally stepped in to

18    defend.[38] Ohio Security does not owe Hartford any past defense fees and costs.  Instead, Hartford

19    must reimburse Ohio Security amounts it expended in prosecuting Carson Madrona's appeal as well

20    as all costs and post judgment amounts awarded against Carson Madrona as delineated in Ohio

21    Security's Motion.[39]

22    　　　　**E.  The Correct Determination of Priority of Coverage for Carson Madrona**

23    　　　　Ace does not dispute that Carson is an insured under the Ace Policy.[40]  Instead, Ace contends

24

25    _____

    [35] Doc. 64-7, p. 24 [Joint Index 00146]

26    [36] Doc. 64-21, p. 2 [Joint Index 00465]

27    [37] Doc. 64-10, p. 31 [Joint Index 00200].

    [38] Doc. 64-2, p. 6, ¶ 14.

28    [39] Doc. 64, pp. 24:15 – 25:26.

    [40] Doc. 68, p. 23 "Carson is an insured. ACE does not contend otherwise."

MUSICK, PEELER
& GARRETT LLP

3533035.1                    17                    Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

1  that coverage under the American Fire Policy is triggered before the Ace Policy.[41]    The reasons

2  provided by Ace are unavailing.

3       First, Ace claims that *Rossmoor* does not apply, and instead, urges this court to disregard the

4  indemnity agreement between the parties pursuant to *Reliance Nat. Indem. Co. v. Gen. Star Indem.*

5  *Co.*, 72 Cal. App. 4th 1063 (1999).    As explained above, *Rossmoor* applies with regard to

6  determination of priority between an indemnitor's policy and an indemnitee's policy.    Further

7  *Reliance* cannot apply as between Ace and American Fire because that case involved determination

8  of coverage between the primary carrier of an indemnitor and the excess carrier of an indemnitee.[42]

9  There is no dispute here, and the law is well settled that primary and excess policies provide different

10  levels of coverage.    Here, Ace issued an excess policy to the contractual indemnitor, while American

11  Fire issued an excess policy to the contractual indemnitee.    Thus, *Reliance* does not apply as between

12  Ace and American Fire, which both provide excess coverage.

13       Second, Ace claims that the purported the lease termination agreement released Ashley

14  Furniture's indemnity obligation, somehow terminates Carson Madrona and its direct insurers right

15  to recover against Ace and Hartford.[43]    The lease termination agreement does not affect the

16  insurance coverage provided under the Ace and Hartford Policy.[44]    Nothing in the language cited

17  by Ace suggest otherwise.

18       Third, relying on *Rossmoor*, which it also claims does not apply to this action, Ace urges

19  this court to rule that because the indemnity clause in the Lease does not provide for indemnity for

20  Carson Madrona's active negligence, it somehow does not apply.[45]    Ace claims that Carson seeks

21  indemnity for its sole negligence.    This is untrue.    Carson Madrona seeks indemnity, and additional

22  insured coverage, for the Underlying Lawsuit arising from and/or with respect to Ashley Furniture's

23

24

25

---

[41] Doc. 68, p. 26

26  [42] Doc. 68, p. 27:6 -11.

[43] Doc. 68, p. 28:12 – 26.

27  [44] Doc. 63, pp. 23 – 26, Ohio Security and American Fire incorporates by reference Carson Madrona's briefing on this issue.

28  [45] Doc. 68, pp. 28 – 29.

3533035.1                                          18                    Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

1   use of the Warehouse which led to underlying plaintiff's injuries.[46]

2   Fourth, without citation to any legal authority, Ace claims that the Lease does not determine

3   priority as between Ace and American Fire because it only required insurance limits of "not less

4   than $2,000,000" which was satisfied under the Hartford Policy.[47]  The sole California case on point

5   – *City of Ontario v. Allied World Assurance Co.*, No. EDCV202279JGBSPX, 2021 WL 6104180

6   (C.D. Cal. Sept. 30, 2021) – specifically rejects Ace's argument.

7   *City of Ontario* involved a construction project for which a permit was issued by the City of

8   Ontario requiring the named insured, Rasic "to maintain Commercial General Liability Insurance,

9   or equivalent form, with a combined single limit *of not less than* $1,000,000 per occurrence."

10  (emphasis added).  *City of Ontario v. Allied World Assurance Co. U.S.*, No. EDCV202279JGBSPX,

11  2021 WL 6104180, at *5 (C.D. Cal. Sept. 30, 2021)  Rasic obtained a primary CGL policy from

12  Travelers with a $2 million per occurrence limit and an excess policy from Allied World Assurance

13  ("AWAC" with a $25 million occurrence and aggregate limit. When the plaintiffs in the underlying

14  action made settlement demands exceeding $8 million, the issue arose as to the City's coverage as

15  an additional insured, *i.e.* whether the City was limited to $1 million under the Traveler's policy

16  alone or entitled to up to $27 million in coverage between the Travelers' policy ($2 million) and the

17  AWAC policy ($25 million). Travelers did not participate in the lawsuit, but AWAC and the City

18  filed cross-motions for summary judgment motions.

19  In finding that the subject excess policy provided coverage, the *City of Ontario* court

20  reasoned as follows:

21      [T]here is a difference between requiring Rasic to purchase "up to" $1,000,000 in
22      coverage and "not less than" $1,000,000 in coverage. The first has a limit of
        $1,000,000; the second does not. To read the contract otherwise fails to give
        meaning to the words "not less than." Simplifying this question into plain English
23      cuts through this thicket of confusion. The Permit required Rasic to purchase an
        insurance policy that would pay out at least $1,000,000 in the event of an accident.

24  *City of Ontario v. Allied World Assurance Co. U.S.*, No. EDCV202279JGBSPX, 2021 WL

25  6104180, at *6 (C.D. Cal. Sept. 30, 2021).  The *City of Ontario* court found that the Travelers Policy

26

27  _____

28  [46] Doc. 64-4, p. 9; Doc. 64-17, p. 3; Doc. 64-17, pp. 4, 7, 10 [Joint Index 00009, 00397 – 398, 00401 - 404];
    [47] Doc. 68, p. 29.

MUSICK, PEELER & GARRETT LLP

3533035.1                    19                    Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION

1  provides Plaintiff $2,000,000 in coverage and that the Allied World Policy operates in addition to

2  the Travelers Policy for all claims by Insureds.  *Id.*

3      Applying the reasoning in *City of Ontario*, Ace's contention should likewise be rejected as

4  the Lease did not put a cap on the coverage required.  It required "at least $2,000,000" in coverage.

5  This amount is a floor, not a ceiling. It does not preclude higher limits of coverage.  The Ace Policy

6  operates in addition to the Hartford Policy in providing additional coverage to Carson Madrona.

7      Fifth, and most notably, Ace does not dispute the applicability, and even cite *to JPI*

8  *Westcoast Const., L.P. v. RJS & Associates, Inc*., 156 Cal.App.4th 1448 (2007).[48]  The *JPI* court

9  affirmed that after the primary carrier of the indemnitee pays out, then the excess carrier of the

10  indemnitor was next in line to contribute. *Id.* p. 1457.

11      Thus, Ashley Furniture's primary policy – the Hartford Policy - provides the first level of

12  coverage for Carson Madrona. Subsequently, Carson Madrona's primary policy - Ohio Security

13  Policy - provides the next level.  Ashley Furniture's excess policy – the Ace Policy – would then

14  attach.  Only after the exhaustion of the Hartford Policy, the Ohio Security Policy and the Ace Policy

15  would coverage under Carson Madrona's excess policy – the American Fire Policy – be triggered.

16  **IV.    CONCLUSION**

17      For the foregoing reasons, Hartford and Ace's cross motions for summary judgment should

18  be denied, Ohio Security and American Fire's motion for partial summary judgment should be

19  granted.

20  DATED:  January 30, 2025          MUSICK, PEELER & GARRETT LLP

21

22      By:      */s/ Danica Lam*
                                     

23                     Lawrence A. Tabb
                   Danica Lam

24                     Attorneys for Defendants and Counterclaimants
                   OHIO SECURITY INSURANCE COMPANY

25                     and AMERICAN FIRE AND CASUALTY
                   COMPANY

26

27

28

---

[48] Doc. 68, p. 27:28.

MUSICK, PEELER
& GARRETT LLP

3533035.1                              20                    Case No. 3:23-cv-06259-VC

OHIO SECURITY INSURANCE COMPANY AND AMERICAN FIRE'S OPPOSITION TO CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION