JEAN PIERRE NOGUES (SBN 84445), jpn@msk.com
YAKUB HAZZARD (SBN 150242), yxh@msk.com
IAN T. LOGAN (SBN 328857), itl@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone:  (310) 312-2000
Facsimile:  (310) 312-3100

Attorneys for Defendant
Carson Madrona Company, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CARSON MADRONA COMPANY, LLC; OHIO SECURITY INSURANCE COMPANY; AMERICAN FIRE AND CASUALTY COMPANY; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 3:23-CV-06259-SK <br><br> **DEFENDANT, CARSON MADRONA COMPANY, LLC'S OPPOSITION TO HARTFORD FIRE INSURANCE COMPANY AND ACE PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTIONS FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS PENDING MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> [Second Declaration of Yakub Hazzard filed concurrently herewith] <br><br> Date:     February 20, 2025 <br> Time:    10:00 AM <br> Place    San Francisco Courthouse <br> Courtroom 4 – 17th Floor <br> 450 Golden Gate Avenue <br> San Francisco, Ca 94102 |
| AND ALL RELATED COUNTERCLAIMS AND THIRD PARTY CLAIMS | Filed Date: December 4, 2023 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................7

II.   ARGUMENT ......................................................................................................7

      A.    Carson Madrona Is an Additional Insured Under Section. II.6. of the Policy
            and Not Under Any Endorsement ............................................................7

      B.    Even If the Court Determines that the Blanket Additional Insured
            Endorsement Applies Rather than Paragraph 6.c of the Hartford Policy, the
            Perez Claims Are Covered ....................................................................11

            1.    The Insurers' Argument that the Blanket Endorsement Only Provides
                  Coverage if Ashley's Negligence Proximately Caused Perez's Injury
                  Is Not Supported by California Law ...........................................11

            2.    Even If Proximate Causation Is the Appropriate Standard, It Exists
                  Here ...................................................................................18

      C.    Hartford and Ace Have Abandoned Their Positions Regarding the Post-
            Occurrence Lease Termination Agreement By Failing To Address Carson
            Madrona's Argument in Its Moving Papers .............................................19

III.  CONCLUSION ..................................................................................................21

CARSON MADRONA'S OPPOSITION TO HARTFORD/ACE'S MSJ; REPLY ISO CARSON MADRONA'S MSJ

20455156.6

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>**Page(s)**</u>

3

### CASES

4

*Aerojet-Gen. Corp. v. Transp. Indem. Co.*,
   17 Cal. 4th 38 (1997), *as modified on denial of reh'g* (Mar. 11, 1998) .................................. 8

5

*All Star Seed v. Nationwide Agribusiness Ins. Co.*,
   No. 12CV146 L BLM, 2014 WL 1286561, AT *5 (S.D. Cal. Mar. 31, 2014) ....................... 9

6

7

*Arch Specialty Ins. Co. v. Farm Family Cas. Ins. Co.*,
   238 F. Supp. 3d 604 (S.D.N.Y Mar. 3, 2017) ............................................................... 14

8

9

*Bacon Constr. Co., Inc. v. Arbella Protection Ins. Co.*,
   208 A.3d 595 (R.I. 2019) ....................................................................................... 15

10

*Bombard v. Fort Wayne Newspapers, Inc.*,
   92 F.3d 560 (7th Cir. 1996) ................................................................................... 21

11

12

*Burlington Ins. Co. v. NYC Transit Auth.*,
   29 N.Y.3d 313 (2017) ...................................................................................... 17, 18

13

14

*C.J. Segerstrom & Sons v. Lexington Ins. Co.*,
   724 F. Supp. 3d 1052 (C.D. Cal. Feb. 27, 2023) ..................................................... 8

15

*Capital Real Estate, LLC v. Certain Underwriters at Lloyd's London*,
   788 F.3d 375 (4th Cir, 2015) ........................................................................... 16, 17

16

17

*Certain Underwriters at Lloyd's of London v. Am. Safety Ins. Servs., Inc.*,
   702 F. Supp. 2d 1169 (C.D. Cal. June 29, 2010) ..................................................... 8

18

19

*Chan v. Soc'y Expeditions, Inc.*,
   123 F.3d 1287 (9th Cir. 1997) ............................................................................. 10

20

*Cont'l Cas. Co. v. Phoenix Const. Co.*,
   46 Cal. 2d 423 (1956) .......................................................................................... 8

21

22

*Continental Cas. Co. v. City of Richmond*,
   763 F.2d 1076 (9th Cir. 1985) ............................................................................. 12

23

24

*Dale Corp v. Cumberland Mut. Fire Ins. Co*,
   2010 WL 4909600 (E.D. Pa. Nov. 30, 2010) ..................................................... 17, 18

25

*Fageol Truck & Coach Co. v. Pac. Indem. Co.*,
   18 Cal. 2d 731 (1941) .......................................................................................... 8

26

27

*First Mercury Ins. Co. v. Shawmut Woodworking and Supply Inc.*,
   48 F. Supp. 3d 158 (D. Conn. 2014) ................................................................... 9, 16

28

3

1

**TABLE OF AUTHORITIES**
<u>(continued)</u>

2

<u>**Page(s)**</u>

3

4

*Founding Members of Newport Beach Country Club v. Newport Beach*
   *Country Club, Inc.*, 109 Cal. App. 4th 944 (2003) .................................................. 18

5

*Garvey v. State Farm Fire & Cas. Co.*,
   48 Cal. 3d 395 (1989) ............................................................................................. 12

6

7

*Gilbane Bldg. Co. v. Admiral Ins. Co.*,
   664 F.3d 589 (5th Cir. 2011) ......................................................................... 14, 15, 17

8

*Kel-Mar Designs, Inc. v. Harleysville Ins. Co.*,
   127 A.D.3d 662 (App. Div. 2015) ...................................................................... 17, 19

9

10

*Lincoln Gen. Ins. Co. v. Fed Constr., Inc.*,
   2010 WL 4978852 (N.D. Ill. Dec. 2, 2010) ............................................................ 14

11

*Lincoln Gen. Ins. Co. v. Federal Constr., Inc.*,
   2010 WL 4978851 (N.D. Ill. Dec. 2, 2010) ............................................................ 17

12

13

*Louisville Galleria, LLC v. Philadelphia Indem. Ins. Co.*,
   593 F. Supp. 3d 637 (W.D. Ky. 2022) .................................................................... 15

14

*MacKinnon v. Truck Ins. Exchange*,
   31 Cal.4th 635 (2003) ............................................................................................... 8

15

16

*Maryland Cas. Co. v. Nationwide Ins. Co.*,
   65 Cal. App. 4th 21 (1998) .............................................................................. 11, 12, 18

17

*Maryland Cas. Co. v. Regis Ins. Co.*,
   1997 WL 164268 (E.D. Pa. Apr. 9, 1997) .............................................................. 16

18

19

*McArthur v. O'Conner Corp.*,
   635 F. Supp. 2d 112 (D.R.I. 2009) .......................................................................... 15

20

21

*Mid-Continent Cas. Co. v. Royal Crane, LLC*,
   169 So. 3d 174 (Fla. App. 2015) ............................................................................. 17

22

*Nat'l Union Fire Ins. Co. v. Greenwich Ins. Co.*,
   962 N.Y.S.2d 9 (App. Div. 2013) ............................................................................ 13

23

24

*Nor-Son, Inc. v. Western Nat. Mut. Ins. Co.*,
   2012 WL 1658938 (Ct. App. Minn. May 14, 2012) ............................................... 17

25

26

*Northeast Utilities Serv. Co. v. St. Paul Fire and Marine Ins. Co.*,
   2012 WL 2872810 (D. Conn. July 12, 2012) ......................................................... 16

27

28

CARSON MADRONA'S OPPOSITION TO HARTFORD/ACE'S MSJ; REPLY ISO CARSON MADRONA'S MSJ

1

## TABLE OF AUTHORITIES

2

3

4
*Old Republic Ins., Co. v. Kenny Constr. Co.*,
   2017 WL 4921970 (N.D. Ill. Oct. 13, 2017) .................................................................. 13, 14

5
*Place v. P.F. Chang's China Bistro, Inc.*,
6
   2015 WL 11145058 (W.D. Tenn. Mar. 23, 2015) ................................................................. 15

7
*Ramara, Inc. v. Westfield Ins. Co.*,
   69 F. Supp. 3d 490 (E.D. Pa. Nov. 24, 2014) ...................................................................... 17

8
*Ramirez v. City of Buena Park*,
9
   560 F.3d 1012 (9th Cir. 2009) ............................................................................................. 20

10
*Red Ball Motor Freight, Inc. v. Employers Mut. Liability Ins. Co.*,
11
   189 F.2d 374 (5th Cir. 1951) .......................................................................................... 14, 15

12
*Resolution Trust Corp. v. Dunmar Corp.*,
   43 F.3d 587 (11th Cir. 1995) ............................................................................................... 21

13
*Ryder Truck Rental Inc. v. National Fire Ins. Co.*,
14
   246 F. Supp. 3d 1231 (E.D. Wis. 2017) ......................................................................... 17, 19

15
*S. Cal. Edison Co. v. Harbor Ins. Co.*,
16
   83 Cal. App. 3d 747 (Ct. App. 1978) .................................................................................. 10

17
*Shakur v. Schriro*,
   514 F.3d 878 (9th Cir. 2008) ............................................................................................... 21

18
*St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*,
19
   101 Cal. App. 4th 1038 (2002) ............................................................................................ 14

20
*Thunder Basin Coal Co. v. Zurich American Ins. Co.*,
21
   943 F. Supp. 2d 1010 (E.D. Mo. May 2, 2013) ................................................................... 17

22
*Utica Nat. Ins. Co. v. American Indem. Co.*,
   141 S.W.3d 198 (Texas 2004) ............................................................................................. 15

23
*Virginia Security Co. v. Northern Ins. Co of New York*,
24
   224 Ill. 2d 550 (2007) .......................................................................................................... 14

25
*Voyager Indem. Ins. Co. v. Zalman N., Inc.*,
26
   668 F. Supp. 3d 990 (C.D. Cal. Apr. 7, 2023) ...................................................................... 8

27
*W&W Glass Systems, Inc. v. Admiral Ins. Co.*,
   937 N.Y.S.2d 28 (App. Div. 2012) ...................................................................................... 14

28

1

**TABLE OF AUTHORITIES**
<u>(continued)</u>

2

3
<u>**Page(s)**</u>

*Yahoo, Inc. v. National Union Fire Ins. Co.*,
4       14 Cal. 5th 58 (2022)............................................................................................................. 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CARSON MADRONA'S OPPOSITION TO HARTFORD/ACE'S MSJ; REPLY ISO CARSON MADRONA'S MSJ

## I.    INTRODUCTION

Defendant and Counterclaimant Carson Madrona Company LLC ("Carson Madrona") submits this brief and a consolidated reply brief in support of its motion for partial summary judgment and in opposition to the motions of Hartford Fire Insurance Company ("Hartford") and Ace Property & Casualty Insurance Company ("Ace").  For the reasons set forth in Carson Madrona's initial motion papers and herein, the Court should grant partial summary judgment in favor of Carson Madrona and against Hartford and Ace (sometimes collectively referred to herein as "Insurers") as to coverage, and deny the summary judgment motions of Hartford and Ace.

## II.    ARGUMENT

### A.    Carson Madrona Is an Additional Insured Under Section. II.6. of the Policy and Not Under Any Endorsement

As discussed at length in Carson Madrona's initial moving papers, Carson Madrona was at all times relevant to this case Ashley's landlord.  ECF 63-2 (Lease Agreement).  Under the terms of its lease with Ashley, Ashley was required to name Carson Madrona as an insured under its general liability policy.  *Id*. at 23.  As explained in Carson Madrona's initial motion papers, (ECF 63 at 17-21), under Section II.6.c of Ashley's general liability policy issued by Hartford (the "Hartford Policy"), Carson Madrona was therefore an additional insured as to liability arising out of the ownership, use or maintenance of the premises leased to Ashley. ECF 63-4 at 28.

Hartford and Ace deny the clear terms of the Hartford Policy in this regard, and instead claim that Carson Madrona is covered, if at all, under a "blanket" endorsement (the "Endorsement") that does not name or mention Carson Madrona and which provides arguably more limited coverage.  *Id*. at 59.  They base their argument on the language in Section II.6 of the Hartford Policy, which states, "no such person or organization is an insured under this provision if such person or organization is included as an insured by an endorsement issued by us…." *Id*. at 27.  However, Carson Madrona is not named in the Endorsement,[1] nor any other endorsement

---

[1] The Endorsement in question states, "Section II – Who Is An Insured is amended to included…the "person(s) or organization(s) shown in the Schedule…."  ECF 63-4 at 59.  The Endorsement itself is explicit that "[i]nformation required to complete this Schedule, if not shown above [in the box designating the **Name** Of Additional Insured Person(s) or Organization(s)], will

1    under the Hartford Policy; neither Hartford nor Ace contend otherwise.[2]  Accordingly, Carson

2    Madrona is an insured under Section II.6.c of the Hartford Policy.

3         "[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause

4    that is unclear…the burden rests upon the insurer to phrase exceptions and exclusions in clear and

5    unmistakable language." *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 648 (2003) (quoting

6    *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal.3d 193, 201-202, (1973)); *accord C.J.

7    Segerstrom & Sons v. Lexington Ins. Co.*, 724 F. Supp. 3d 1052, 1065 (C.D. Cal. Feb. 27, 2023)

8    (interpreting ambiguous endorsement against insurer, and in favor of coverage).  Hartford and Ace

9    have failed to carry their burden of demonstrating that the language of II.6 they rely on for their

10   contention the "blanket" endorsement controls here clearly and unmistakably precludes coverage

11   under Section II.6.c.  Because the Endorsement conflicts with Section II.6.c and the existence of

12   multiple other additional insured endorsements specifically naming other entities, the only

13   reasonable interpretation is to exclude additional insured coverage under Section II.6.c only where

14   an endorsement specifically identifies an additional insured by name.  To the extent the Court

15   finds the Insureds' interpretation of the Endorsement to be reasonable (it is not), the vague

16   _____

     be shown in the Declarations." *Id.*  (emphasis added).  But, whereas every "Additional Insured"
17   person or entity covered by an endorsement under the Policy is specifically named by that
     endorsement (*see id.* at 56, 57, 58, 61, 63, 65, 67), Carson Madrona is not named in the
18   Endorsement Schedule; nor does it appear in any "Declaration" under the Policy.

     [2] The Insurers' cases are inapposite, as they primarily involve endorsements which unambiguously
19   identified the insured by name.  *Cont'l Cas. Co. v. Phoenix Const. Co.*, 46 Cal. 2d 423, 432 (1956)
     (The "[n]ame of the Insured ... is amended to read: Oilfields Trucking Company and P. A. Phoenix
20   and H. E. Phoenix…."); *Fageol Truck & Coach Co. v. Pac. Indem. Co.*, 18 Cal. 2d 731, 738
     (1941) ("This endorsement applies to Fageol chassis only."); *Aerojet-Gen. Corp. v. Transp.
21   Indem. Co.*, 17 Cal. 4th 38, 50 (1997), *as modified on denial of reh'g* (Mar. 11, 1998) (The
     endorsement "provided that Aerojet should pay its own defense costs—under which provision it
22   was understood by Aerojet that it should defend itself.").  Others have nothing at all do to with the
     question presented here.  Specifically, the court in *Voyager Indem. Ins. Co. v. Zalman N., Inc.*, 668
23   F. Supp. 3d 990, 994 (C.D. Cal. Apr. 7, 2023) did not substantively analyze any endorsement
     provision, because the Defendant did not disclose during discovery the subcontract that might
24   have made it an additional insured under the policy.  The court in *Certain Underwriters at Lloyd's
     of London v. Am. Safety Ins. Servs., Inc.*, 702 F. Supp. 2d 1169, 1173-74 (C.D. Cal. June 29, 2010)
25   held that the specific endorsement was invalid because it was issued by an individual without
     authority to do so, and the blanket endorsement at issue did not provide coverage to purported
26   additional insured because no writing required that the party be covered by the policy.  Here, the
     Lease requires coverage of Carson Madrona, and the parties agree that Carson Madrona falls
27   within the Policy definition of "Landlord."

28

CARSON MADRONA'S OPPOSITION TO HARTFORD/ACE'S MSJ; REPLY ISO CARSON MADRONA'S MSJ

endorsement provision contained in Section II.6 creates an ambiguity as to which provision of the Policy covers Carson Madrona as an additional insured. In light of that ambiguity, the Court should order that Section II.6 *and not the Endorsement*, provides coverage to Carson Madrona for at least two reasons:

***First***, any ambiguity in the Policy should be construed in favor of the insured, Carson Madrona. "If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect 'the objectively reasonable expectations of the insured. [Citations.] Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer.'" *Yahoo, Inc. v. National Union Fire Ins. Co.*, 14 Cal. 5th 58, 67 (2022) (quoting *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal.4th 495, 501 (2005)). An exclusionary clause, "must be conspicuous, plain and clear." *All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12CV146 L BLM, 2014 WL 1286561, at *5 (S.D. Cal. Mar. 31, 2014) (quoting *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 648, (2003)) (internal quotes omitted). "This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded." *Id*.

Here, Carson Madrona reasonably understood that the Policy covered Carson Madrona under Section II.6. Hartford repeatedly agreed with this interpretation of the Policy. In its coverage analysis, dated March 30, 2020, Hartford explicitly cited Section II.6.c., regarding its duty to defend landlords as additional insureds, and stated, "The Landlord as defined in the lease, is Carson….Carson is an additional insured only with respect to liability ***arising out of*** Ashley's ownership, maintenance or use of the land or premises leased to it." ECF 63-13 (Hazzard Decl. Ex. 12) at 6, 8 (emphasis added). Hartford reinforced this understanding in another letter dated September 30, 2022, in which it recited the language of Section II.6.c, and stated, "Carson only qualifies as an additional insured to the extent its liability in the Lawsuit arises 'out of the ownership, maintenance or use of that part of the land or premises leased to' Ashley." Second Hazzard Decl., Ex. 16 at 4. Hartford's letter reconfirmed Carson Madrona's understanding of its coverage under the Hartford Policy.

1      In the same letter, Hartford went on to "call [Carson Madrona's] attention to the policy

2 endorsement **AMENDMENT – OTHER INSURANCE CONDITION**" but ***never mentioned***

3 the Endorsement it now claims applies instead of Section II.6.c.  *Id*. at 4-5.  Thus, Hartford

4 expressly shared Carson Madrona's reasonable understanding that Carson Madrona is an

5 additional insured under Section II.6.c of the Policy.  Not until 2023, after the verdict in the

6 underlying case was rendered, did Hartford attempt to distance itself from its former position, and

7 deny coverage to Carson Madrona, giving rise to this dispute.  Hartford's self-serving change in

8 position is not only inconsistent with the language of the Policy, it demonstrates that an ambiguity

9 exists, and should be rejected by the Court.

10    ***Second***, "[i]t is a well settled rule of construction for insurance policies that 'a specific

11 provision relating to a particular subject will govern in respect to that subject, as against a general

12 provision even though the latter, standing alone, would be broad enough to include the subject to

13 which the more specific provision relates.'"  *S. Cal. Edison Co. v. Harbor Ins. Co.*, 83 Cal. App.

14 3d 747, 759 (Ct. App. 1978); *see also Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1296 (9th

15 Cir. 1997) ("Under well-settled contract principles, specific provisions control over more general

16 terms.").  Hartford does not dispute this.  ECF 67 at 13.  In this case, Section II.6 is far more

17 specific than the Endorsement in question.  Section II.6.c specifically describes Lessors of Land or

18 Premises as additional insureds under the Policy, including "any person or organization from

19 whom [Ashley] lease[s] land or premises," and Hartford repeatedly agreed that Carson Madrona

20 was a "Landlord" under the Policy.  ECF 63-13 at 6, 8; Second Hazzard Decl., Ex. 16 at 4.  The

21 Endorsement is a scant two paragraphs, and makes absolutely no mention of Carson Madrona, nor

22 Landlords as defined in the Policy.  Ace's argument that the Endorsement is more specific than

23 Section II.6 is baseless.  Section II.6 is far more specific than the Endorsement, and thus controls

24 Carson Madrona's coverage under the Policy.

25

26

27

28

**B.    Even If the Court Determines that the Blanket Additional Insured Endorsement Applies Rather than Paragraph 6.c of the Hartford Policy, the Perez Claims Are Covered**

Despite having previously relied (at least twice) on the Section II.6.c extension of additional insured coverage to lessors like Carson Madrona for liability arising out of Ashley's maintenance or use of the premises, Hartford and Ace now try to run away from that provision because they know that there is coverage under that provision. *See* ECF 63 at 17-21 and cases cited therein. However, their focus on the blanket additional insured endorsement does not advance their claim that there is no coverage, for it, too, provides coverage here, where Perez's injuries indisputably were caused in whole or in part by his acts on behalf of Ashley.

**1.    The Insurers' Argument that the Blanket Endorsement Only Provides Coverage if Ashley's Negligence Proximately Caused Perez's Injury Is Not Supported by California Law**

Hartford and Ace both take the position that Carson Madrona is covered under the blanket additional insured endorsement only if Ashley's negligence (or the negligence of one acting on its behalf) proximately caused Perez's injury—i.e., only where Carson Madrona is held vicariously liable for Ashley's negligence. ECF 68 (Ace's Brief) at 21-23; ECF 67 (Hartford's Brief) at 18-19. In other words, the Insurers seek to add fault and proximate cause conditions that are found nowhere in the policy. Neither insurer cites any California case so holding, and Ace expressly acknowledges that no such case exists. ECF 68 at 16. Instead, the Insurers rely on out-of-state authorities and other inapposite cases which do not purport to apply California principles governing the interpretation of insurance policies, and which are by no means uniform.

Carson Madrona provided a summary of some of the basic California policy construction principles in its opening brief. ECF 63 at 16-17. The Insurers' effort to essentially add language to the policies and thereby narrow coverage requires consideration of additional insurance principles as well. *Maryland Cas. Co. v. Nationwide Ins. Co*., 65 Cal. App. 4th 21 (1998), a case cited by the Insurers, provides some of those additional interpretation principles relevant to the arguments made by the Insurers in their oppositions/motions:

CARSON MADRONA'S OPPOSITION TO HARTFORD/ACE'S MSJ; REPLY ISO CARSON MADRONA'S MSJ

1   "A policy provision is ambiguous when it is capable of two or more constructions

2   both of which are reasonable.  An ambiguity is resolved by interpreting the

3   provision in the sense the promisor (i.e., the insurer) believed the promisee

4   understood it at the time of contract formation.  This rule . . . protects not the

5   subjective beliefs of the insurer but, rather, the objectively reasonable expectations

6   of the insured.  If these rules do not eliminate the uncertainty, a court must construe

7   the applicable language against the drafter who created the uncertain language.

8   Since endorsements are part of the insurance contract, the rules of interpretation

9   apply equally to these provisions.

10  . . .

11  In determining whether either of the two interpretations are reasonable, we

12  determine first whether the asserted constructions are consistent with the insured's

13  *objectively reasonable expectations*.  In order to do this, the disputed policy

14  language must be examined *in context* with regard to its intended function in the

15  policy.  This requires a consideration of the policy as a whole, the circumstances of

16  the case ... and common sense.  These rules apply in determining the existence of

17  an ambiguity and in resolving the conflict once an apparent ambiguity has been

18  identified.

19  . . .

20  An insurance policy should be read as a lay[person] would read it and not as it

21  might be analyzed by an attorney or insurance expert."

22  65 Cal. App. 4th at 28-32 (citations and internal quotation marks omitted; emphasis in original).

23  Further, "[w]hereas coverage clauses are interpreted broadly to afford the greatest possible

24  protection to the insured, exclusionary clauses are construed narrowly against the insurer."

25  *Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1079 (9th Cir. 1985); *see also Garvey v.*

26  *State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406 (1989).

27          Carson Madrona has previously explained how, under the plain language of the Hartford

28  and Ace policies, there is additional insured coverage because Perez's injuries were indisputably

CARSON MADRONA'S OPPOSITION TO HARTFORD/ACE'S MSJ; REPLY ISO CARSON MADRONA'S MSJ

caused at least in part by his own actions in repairing Ashely's electrical problems at Ashely's request and on Ashley's behalf.  In order to repair those problems, Perez removed the switch, replaced the breaker and plugged the switch back in, leading directly to the arc flash and his injuries.  ECF 63 at 13, 22-23.  The Insurers' attempt to add vicarious liability and proximate cause limitations to their coverage obligations to Carson Madrona under their policies runs afoul of California's policy construction principles.  On their face, the additional insured endorsement the Insurers claim applies nowhere purports to limit coverage to circumstances where Carson Madrona is held vicariously liable for some wrong committed by Ashley—it does not even mention vicarious liability.  Nor does it limit coverage to situations where Ashley's conduct was the proximate cause of an injury or loss—instead, coverage exists whenever an injury or loss is "caused, in whole or in part, by [the] acts or omissions" of Ashley or "those acting on [Ashley's] behalf."  ECF 63-4 at 59.  If the Insurers had intended to limit coverage to vicarious liability or injuries proximately caused by the named insured's actions, they easily could have so provided. They did not.  In the absence of such clear language, the Insurers' invitation to graft such limitations into the policy is a suggestion that the policy is ambiguous.  Even if that were the case, and Carson Madrona submits that it is not, to suggest that the only interpretation of "caused, in whole or in part," limits coverage, as the Insurers suggest, ignores the fact that it is reasonable to interpret coverage more broadly, and that the Court is required to do just that in interpreting the policies under California law.

Further, to suggest that a layperson reading the blanket additional insured endorsement would conclude that coverage thereunder was limited to vicarious liability or injuries proximately caused by Ashley, when those concepts and words are not even mentioned in the endorsement simply beggars belief.  Numerous cases have rejected that assertion.  *See, e.g., Old Republic Ins., Co. v. Kenny Constr. Co.*, 2017 WL 4921970, at *10 (N.D. Ill. Oct. 13, 2017) (holding distinction between "arising out of" and "caused by" coverages is "without a difference.  Like the 'arising out of' language, the phrase 'caused by' is 'both broad and vague'—because causation can refer to either but-for or proximate causation—and 'must be liberally construed in favor of the insured.'"); *Nat'l Union Fire Ins. Co. v. Greenwich Ins. Co.*, 962 N.Y.S.2d 9, 10-11 (App. Div. 2013) (phrase

1    "caused by" does not materially differ from phrase "arising out of"); *W&W Glass Systems, Inc. v.*

2    *Admiral Ins. Co.*, 937 N.Y.S.2d 28, 29 (App. Div. 2012) (same); *Arch Specialty Ins. Co. v. Farm*

3    *Family Cas. Ins. Co.,* 238 F. Supp. 3d 604, 614-15 (S.D.N.Y Mar. 3, 2017) (equating "caused by"

4    coverage with "arises from" coverage and holding that where employee of named insured injures

5    himself on the job, coverage triggered).

6        The Insurers have failed to cite any California case holding that vicarious liability or

7    proximate cause is required to trigger an additional insured endorsement like the one at issue here.

8    Indeed, the only California case cited by the Insurers even remotely on point only requires ***some***

9    causal connection between Ashley and Perez's injury to trigger coverage.  In *St. Paul Fire &*

10   *Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*, 101 Cal. App. 4th 1038 (2002), the court

11   held that additional insured coverage would apply when the "injury-causing act [was] somehow . .

12   . related or connected to the [named insured's] work under the subcontract *beyond its mere*

13   *presence on the jobsite. . . .* We therefore conclude that the 'additional insured' endorsement . . .

14   must be interpreted as providing coverage to ARB only for *liability* arising, at least in part from . .

15   . an act or omission of Sasco"  *Id*. at 1059-60 (emphasis in original).[3]  The court clearly did not

16   require fault or proximate cause.

17        And many of the non-California cases they cite for this proposition do not actually support

18   the Insurers' position, are devoid of any real analysis, or misconstrue the cases they in turn rely on

19   for the proposition.  For example, in *Old Republic Ins. Co.*, 2017 WL 4921970, at *10 the court

20   noted that in *Lincoln Gen. Ins. Co. v. Fed Constr., Inc.*, 2010 WL 4978852 (N.D. Ill. Dec. 2,

21   2010), the court had misread the Illinois Supreme Court's decision in *Virginia Security Co. v.*

22   *Northern Ins. Co of New York*,  224 Ill. 2d 550 (2007), to impose fault and proximate cause

23   requirements for coverage conditioned on the named insured's conduct causing in whole or in part

24   an injury.[4]  *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 598 (5th Cir. 2011), simply

---

[3] As noted above, the causal connection between Perez's actions and his injury is not limited to his presence in a zone of danger.  His acts directly triggered the arc flash and his injuries.

[4] The "plain language" of the indemnity agreement at issue in *Virginia Surety*, unlike the policy here, ***expressly  required*** the indemnitor to indemnify the indemnitee "only for [indemnitor's] own negligence." *Id*. at 158-59.

CARSON MADRONA'S OPPOSITION TO HARTFORD/ACE'S MSJ; REPLY ISO CARSON MADRONA'S MSJ

1    asserts that the Texas Supreme Court defined "caused by" to require proximate cause without

2    analysis. However, the cases cited in *Gilbane* do not construe a policy provision for injuries

3    "caused in whole or in part" by the named insured, leaving the conclusory assertion that proximate

4    cause is required entirely unsupported.[5] Similarly, *Bacon Constr. Co., Inc. v. Arbella Protection*

5    *Ins. Co.*, 208 A.3d 595 (R.I. 2019), cites no authority and contains little analysis in reaching the

6    conclusion that additional insured coverage exists only where fault can be attributed to the named

7    insured. In *Place v. P.F. Chang's China Bistro, Inc.*, 2015 WL 11145058 (W.D. Tenn. Mar. 23,

8    2015), the party seeking additional insured coverage did not dispute or even directly address the

9    insurer's contention that coverage was available only if the named insured is alleged to have

10   proximately caused the injury or the additional insured is vicariously liable; not surprisingly, the

11   court adopted the insurer's unopposed position.

12       Ace admits that the court in *Louisville Galleria, LLC v. Philadelphia Indem. Ins. Co.*, 593

13   F. Supp. 3d 637 (W.D. Ky. 2022), did not decide whether proximate cause was required to trigger

14   coverage under a "caused by in whole or in part" additional insured endorsement, but simply

15   assumed that to be the case because there was no need to decide the issue for the allegations of the

16   complaint asserted that the named insured's negligence had proximately caused the injury. The

17   court, however, did note: "the plain language of the phrase arguably denotes something less than

18   proximate cause (*i.e.*, 'caused . . . in part')." *Id*. at 648. The Insurers' citation to *McArthur v.*

19   *O'Conner Corp.*, 635 F. Supp. 2d 112 (D.R.I. 2009), must also be disregarded, because the

20   additional insured coverage in that case was not conditioned on the loss being caused in whole or

21   in part by the named insured's conduct, but was expressly limited to circumstances where the

22   additional insured was held "liable for [the named insured's] acts or omissions." *Id*. at 115, 119.

23

24   _____

25   [5] *Utica Nat. Ins. Co. v. American Indem. Co.*, 141 S.W.3d 198 (Texas 2004), dealt with a general
     liability policy that excluded bodily injury "due to" the rendition of professional service. In
26   narrowly construing the exclusion, as required under Texas law, the court concluded that it
     required a "more direct type of causation" than "but for" causation. *Id*. at 203. *Red Ball Motor*
27   *Freight, Inc. v. Employers Mut. Liability Ins. Co.*, 189 F.2d 374 (5th Cir. 1951), involved a policy
     providing coverage for damages "caused by accident and arising out of the ownership,
28   maintenance, or use of the automobile," *id*. at 375, and did not address coverage triggered caused
     in whole or in part language.

1     Numerous non-California cases have rejected efforts by insurers to add vicarious liability

2   and proximate cause requirements to similar provisions providing additional insured coverage

3   when the named insured's conduct (or that of one acting on its behalf) results in, or in whole or in

4   part causes, a loss.  For example, in *First Mercury Ins. Co. v. Shawmut Woodworking and Supply*

5   *Inc.*, 48 F. Supp. 3d 158 (D. Conn. 2014), another case cited by the Insurers, the court rejected a

6   similar argument by the insurer that additional insured coverage for "liability for . . . injury caused,

7   in whole or in part" by the named insureds acts or omissions was limited to cases where the

8   additional insured was vicariously liable for the named insureds actions.  *Id.* at 171-72.  The court

9   noted that had the parties intended coverage to be so limited, they could have said so—"'language

10  clearly embodying that intention was available,'" but not used.  *Id.* (quoting *McIntosh v.*

11  *Scottsdale Ins. Co.,* 992 F.2d 251, 255 (10th Cir. 1993)).[6]

12     If the Insurers intended to limit coverage in to vicarious liability or damages proximately

13  caused by the named insured's acts, it would be quite easy to do so.  *Maryland Cas. Co. v. Regis*

14  *Ins. Co.*, 1997 WL 164268 (E.D. Pa. Apr. 9, 1997), is instructive in this regard.  There, the court

15  rejected arguments that an additional insured endorsement providing coverage "with respect to

16  liability sought to be imposed . . . as the result of an alleged act or omission of the Named Insured

17  or its employees" was limited to vicarious liability or injuries proximately caused by the named

18  insured noting that had such limitations been intended, "the Additional Insured Endorsement could

19  have applied to 'liability vicariously imposed' instead of 'liability sought to be imposed'; 'as the

20  direct and proximate result of the negligence . . .' rather than 'as a result of an alleged act or

21  omission'; and used 'but only to the extent of' as opposed to 'but only with respect to.'"  *Id.* at *4,

22  n.3.[7]  No such language was included in the Hartford or Ace policies.

---

23  [6] *See also Capital Real Estate, LLC v. Certain Underwriters at Lloyd's London*, 788 F.3d 375,

24  380-81 (4th Cir, 2015), also cited by Ace, rejecting addition of a vicarious liability limitation, and
    finding that the additional insured endorsement "extends to property damage caused by Marquez,

25  either in whole or in part, regardless of whether the underlying complaint seeks to hold Capital
    City vicariously liable for Marquez's acts or omissions."

26  [7] The court in *First Mercury* also contrasted other policies which did use language clearly limiting

27  coverage to vicarious liability, including *Northeast Utilities Serv. Co. v. St. Paul Fire and Marine*
    *Ins. Co.,* 2012 WL 2872810, at *4 (D. Conn. July 12, 2012) (policy provided coverage only where
    "additional insured is held liable for your acts and omissions"); and *Harbor Ins. Co. v. Lewis*, 562

28  F. Supp. 800, 804-05 (E.D. Pa.1983) (parties agreed and court concluded that policy provision that

1    Similarly, *Ryder Truck Rental Inc. v. National Fire Ins. Co.*, 246 F. Supp. 3d 1231, 1237-

2    38 (E.D. Wis. 2017), rejected the argument that additional insured coverage is only available if the

3    named insured's negligence caused the injury, and held that an insured employee's non-negligent

4    act of stepping on a defective step was a "act" that triggered coverage under a provision providing

5    for coverage for loss "resulting from the acts or omissions" of the named insured or its employees.

6    *See also Kel-Mar Designs, Inc. v. Harleysville Ins. Co.,* 127 A.D.3d 662, 663 (App. Div. 2015)

7    (coverage under "caused in whole or in part" provision where accident resulted at least in part

8    from employee's loss of footing "regardless of whether…employee was negligent or otherwise at

9    fault for his mishap"); *Nor-Son, Inc. v. Western Nat. Mut. Ins. Co.*, 2012 WL 1658938, at *3 (Ct.

10    App. Minn. May 14, 2012) (additional insured coverage under "caused in whole or in part"

11    language not limited to vicarious liability; if actions of named insured at least in part caused

12    injury, policy extends coverage); *Mid-Continent Cas. Co. v. Royal Crane, LLC,* 169 So. 3d 174,

13    183 (Fla. App. 2015) (same).

14    A number of the cases relied upon by the Insurers have been rejected by other courts.  For

15    example, the vicarious liability/proximate cause holdings of *Gilbane Bldg. Co. v. Admiral Ins.*

16    *Co.*, 664 F.3d 589 (5th Cir. 2011), *Lincoln Gen. Ins. Co. v. Federal Constr., Inc.*, 2010 WL

17    4978851 (N.D. Ill. Dec. 2, 2010), and *Dale Corp v. Cumberland Mut. Fire Ins. Co,* 2010 WL

18    4909600 (E.D. Pa. Nov. 30, 2010), have been rejected by other courts.  *See, e.g.*, *Thunder Basin*

19    *Coal Co. v. Zurich American Ins. Co.*, 943 F. Supp. 2d 1010, n.5 (E.D. Mo. May 2, 2013)

20    (rejecting all three cases because applied law inconsistent with Wyoming law applicable to case

21    before court); *Ramara, Inc. v. Westfield Ins. Co.*, 69 F. Supp. 3d 490, n. 4 (E.D. Pa. Nov. 24,

22    2014) (noting that courts analyzing similar policy language, such as in *Dale*, have reached

23    "varying results" without establishing any "unifying principles").

24    Finally, cases like *Dale Corp*, 2010 WL 4909600; *Capital City Real Estate, LLC v. Certain*

25    *Underwriters at Lloyd's London,* 788 F.3d 375 (4th Cir. 2015); and *Burlington Ins. Co. v. NYC*

26    *Transit Auth.*, 29 N.Y.3d 313 (2017), rely on the drafting history of ISO forms, the "hope" of ISO

27

28    stated additional insured coverage provided "only to the extent of liability arising from
occurrences arising out of negligence of" named insured limited to vicarious liability). 48
F.Supp.3d at 172.

CARSON MADRONA'S OPPOSITION TO HARTFORD/ACE'S MSJ; REPLY ISO CARSON MADRONA'S MSJ

1    that the language would narrow coverage, and legal commentary regarding that drafting history to

2    conclude that blanket additional insured endorsements using the "caused in whole or in part"

3    trigger of coverage require proximate cause.  However, this approach violates several California

4    interpretation principles.  As noted above, under California law, "[a]n insurance policy should be

5    read as a lay[person] would read it and not as it might be analyzed by an attorney or insurance

6    expert." *Maryland Cas. Co.*, 65 Cal. App. 4th at 28-32.  Further, it is the objective intent of the

7    parties as evidence by the words of a contract, not the undisclosed intention of one of the parties,

8    that controls contract interpretation. *See*, *e.g.*, *Founding Members of Newport Beach Country

9    Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003).  By relying on a

10   drafting history, the undisclosed intent of the drafters,[8] and scholarly analysis tied to the drafting

11   history, *Dale*, *Capital City*, *Burlington* and cases like them run afoul of these well-established

12   California principles, and must be disregarded.

13        For all of the reasons discussed above, the Court should reject the Insurers' attempts to add

14   fault and proximate cause conditions to the blanket additional insured endorsement.  California

15   law simply does not support importation of those conditions when the policies nowhere mention

16   them.

17        **2.    Even If Proximate Causation Is the Appropriate Standard, It Exists

18              Here**

19        In their papers, the Insurers argue that the jury in the underlying case found that Ashley's

20   acts and omissions did not proximately cause Perez's injuries.  That was not what the jury was

21   asked to determine.  Instead, the special verdict form asked the jury whether Ashley or Perez was

22   negligent and whether Ashley's or Perez's ***negligence*** a substantial factor in causing Perez's

23   injuries. ECF 63-11 at 4.  The jury was not asked whether ***the acts or omissions*** of Ashley, Perez

24   or others acting on Ashley's behalf was a substantial factor in the accident.

25        This difference is critical.  Having concluded that Perez was not negligent, the jury never

26   addressed the issue of whether Perez's ***acts or omissions*** were a substantial factor in causing the

27   _____

28   [8] No proof has been offered that the Insurers disclosed the ISO drafting history to Ashley or
     Carson Madrona.

CARSON MADRONA'S OPPOSITION TO HARTFORD/ACE'S MSJ; REPLY ISO CARSON MADRONA'S MSJ

1  accident.  And with respect to Ashley, the jury was asked to determine only whether Ashley's

2  **negligence** was a substantial factor in the accident, not whether its **acts or omissions,** or those of

3  persons acting on its behalf, were a substantial factor in the accident. The questions in the special

4  verdict form may have been the right questions to ask the jury deciding the underlying case, but

5  they were not the questions that need to be answered here, even if the Court concludes that

6  proximate cause is required to trigger coverage.  Simply put, the verdict does not establish that the

7  acts and omissions of Ashley or those acting on its behalf did not cause Perez's injuries in whole

8  or in part.

9          However, the indisputable facts surrounding the accident do establish that that Perez's

10  actions, on behalf of Ashley, in whole or in part caused his injuries.  Perez's actions in removing

11  the switch, replacing the fuse and plugging the switch back in without a doubt triggered the arc

12  flash.  Whether or not those actions were negligent, they were a substantial factor in the accident.

13  *See, e.g., Kel-Mar Designs,* 127 A.D.3d at 663 (employee's loss of footing caused accident in

14  whole or in part, regardless of negligence); *Ryder Truck Rental Inc.*, 246 F. Supp. 3d at 1237-38

15  (employee stepping on defective stair caused accident in whole or in part).  Accordingly, even if

16  the additional insured coverage is available only if the acts or omissions of Ashley or those acting

17  on its behalf are a proximate cause of Perez's injury, the undisputed facts establish that proximate

18  link.[9]

19      **C.    Hartford and Ace Have Abandoned Their Positions Regarding the Post-**

20              **Occurrence Lease Termination Agreement By Failing To Address Carson**

21              **Madrona's Argument in Its Moving Papers**

22          In its First Amended Complaint, Hartford (and by extension Ace) alleges the existence of

23  the Lease Termination Agreement.  ECF 8 (FAC ¶16).  Hartford goes onto allege that in the Lease

24  Termination "both parties **fully and unconditionally waived, released and forever discharged**

25  **each other 'from any and all obligations, claims** demands, losses, damages, liabilities …

26  *controversies,* **actions or causes of action, whether known or unknown … arising directly or**

27  **indirectly out of , based upon, or related in any way to the Premises or Lease,'** subject to certain

28  ─────────────────────
[9] At a bare minimum, there is a triable issue of fact regarding the causation issue.

exceptions not relevant to this action." (Emphasis in original.) Hartford then incorporates the allegations of paragraph 16 into its First Claim for Relief for Declaratory Judgment that is has no duty to defend Carson Madrona, its Second Claim for Relief for Declaratory Judgment that even if it had a duty to defend Carson Madrona, any such duty has been terminated, and its Third Claim for Relief that it has no duty to defend Carson Madrona in the Underlying Lawsuit.

Anticipating that Hartford would contend that the Termination Agreement absolved Hartford of its defense and indemnity obligations at issue in the first three claims for relief in Hartford's First Amended Complaint, in its Motion, Carson Madrona argued that the Lease Termination did not relieve Hartford of its defense or indemnity obligations for the Underlying Lawsuit. ECF 63 at 23-26. Neither Hartford nor Ace addressed this argument in their respective motions and oppositions. *See, generally*, ECF 67 and 68. Consequently, Ace and Hartford have abandoned and waived any argument that no coverage exists under the Hartford or Ace Policies as a result of the Lease Termination Agreement.

The failure of a plaintiff to offer evidence or argument concerning a specific claim in opposition to a motion for summary judgment constitutes abandonment of the claim, and summary judgment is properly entered in the defendant's favor on the claim as a result. *See*, *e.g.*, *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009) ("Ramirez's complaint also alleges state law claims for false arrest/imprisonment, trespass to personal property, intentional infliction of emotional distress, negligence, and battery. In their Motion for Summary Judgment, the defendants argued that they were entitled to summary judgment on each [of] these claims. Ramirez did not address his state law claims in either his Motion for Partial Summary Judgment or in his Opposition to Defendants' Motion for Summary Judgment. Now on appeal, Ramirez argues that the district court erred when it granted the defendants summary judgment on all of his state law claims. . . .[B]ecause Ramirez abandoned his state law claims by not addressing them in either his Motion for Partial Summary Judgment or his Opposition to Defendants' Motion for Summary Judgment, he waived his challenge to the district court's order. Therefore, we affirm the district court's grant of summary judgment to the defendants on Ramirez's state law claims"); *id.* ("'It is a general rule that a party cannot revisit theories that it raises but abandons at summary judgment.'

CARSON MADRONA'S OPPOSITION TO HARTFORD/ACE'S MSJ; REPLY ISO CARSON MADRONA'S MSJ

1  [Citation] 'A party abandons an issue when it has a full and fair opportunity to ventilate its views

2  with respect to an issue and instead chooses a position that removes the issue from the case'")

3  (citing *Davis v. City of Las Vegas*, 478 F.3d 1048, 1058 (9th Cir. 2007)); *Shakur v. Schriro*, 514

4  F.3d 878, 892 (9th Cir. 2008) (holding that a plaintiff "'abandoned . . . claims by not raising them

5  in opposition to [defendant's] motion for summary judgment,'") (quoting *Jenkins v. Cty of*

6  *Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005) (alteration original)); *Bombard v. Fort Wayne*

7  *Newspapers, Inc.*, 92 F.3d 560, 562 n. 2 (7th Cir. 1996) ("Bombard's complaint also alleged that

8  FWN violated the Family and Medical Leave Act.... Bombard abandoned his FMLA claim after

9  failing to respond to the FMLA arguments in FWN's motion for summary judgment"); *Resolution*

10  *Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the

11  district court to distill every potential argument that could be made based upon the materials

12  before it on summary judgment. [Citation] Rather, the onus is on the Parties to formulate

13  arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed

14  abandoned").

15  **III.    CONCLUSION**

16       For all the reasons set forth in Carson Madrona's opening brief and herein, the Court

17  should grant Carson Madrona's Motion for Partial Summary Judgment  as to coverage as against

18  both Hartford and Ace, and should deny the Insurers' motions for summary judgment.

19

20  DATED:  January 30, 2025                RESPECTFULLY SUBMITTED,

21                                          JEAN PIERRE NOGUES
22                                          YAKUB HAZZARD
                                            IAN LOGAN
23                                          MITCHELL SILBERBERG & KNUPP LLP

24
                                   By: _____
25                                          Yakub Hazzard
                                            Attorneys for Defendant
26                                          Carson Madrona Company, LLC

27

28

CARSON MADRONA'S OPPOSITION TO HARTFORD/ACE'S MSJ; REPLY ISO CARSON MADRONA'S MSJ