William C. Reeves - 183878
Christine Fierro - 191660
MORALES FIERRO & REEVES
1440 Maria Lane, Suite 200
Walnut Creek, CA 94596
Telephone:  (925) 288-1776
Facsimile:   (925) 288-1856
Email: lawoffice@mfrlegal.com

Attorneys for Counter-Defendant
ACE PROPERTY & CASUALTY
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CARSON MADRONA CO., LLC; et al.<br><br>　　　　Defendants. | CASE NO.: 3:23-cv-06259-VC |

REPLY IN SUPPORT OF ACE PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Date: February 20, 2025
Time: 10:00 a.m.
Judge: Honorable Vince Chhabria

TABLE OF CONTENTS

| | | |
|---|---|---:|
| Introduction | | 1 |
| Argument | | 1 |
| A. | The Additional Insured Endorsement Controls Over Paragraph 6 | 1 |
| B. | The Injury to Perez Was Not Caused By An Act of Stoneledge | 5 |
| C. | Perez's Injuries Did Not Arise Out Of Stoneledge's Use of that Part of a Premises Leased to Stoneledge | 11 |
| D. | The ACE Policy is Excess to the Primary Policies and American Policy | 12 |
| Conclusion | | 15 |

TABLE OF AUTHORITIES

State Cases

*Acceptance Ins. Co. v. Syufy Enterprises,*
69 Cal. App. 4th 321 (1999) ............................................................................................. 6

*Atlas Assur. Co., Ltd. v. McCombs Corp.,*
146 Cal.App.3d 135 (1983) ............................................................................................. 2

*Bank of the West v. Superior Court,*
2 Cal.4th 1254 (1992) ................................................................................................... 11

*Bockrath v. Aldrich Chem. Co.,*
21 Cal. 4th 71 (1999) ....................................................................................................... 8

*California Cas. Ins. Co. v. Northland Ins. Co.,*
48 Cal.App.4th 1682 (1996) .......................................................................................... 10

*City of Carlsbad v. Insurance Co. of State of Pa.,*
180 Cal.App.4th 176 (2009) .......................................................................................... 10

*Cont'l Cas. Co. v. Phoenix Const. Co.*,
46 Cal. 2d 423 (1956) ..................................................................................................... 3

*General Ins. Co. v. Truck Ins. Exch.,*
242 Cal.App.2d 419 (1966) ............................................................................................. 2

*Government Employees Ins. Co. v. Sup.Ct.,*
79 Cal.App.4th 95 (2000) .............................................................................................. 10

*Hartford Cas. Ins. Co. v. Travelers Indem. Co.,*
110 Cal. App. 4th 710 (2003) .......................................................................................... 9

*Jane D. v. Ordinary Mut.,*
32 Cal. App. 4th 643 (1995) ............................................................................................ 2

*LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.,*
156 CA4th 1259 (2007) ................................................................................................... 5

*MacKinnon v. Truck Ins. Exch.,*
31 Cal.4th 635 (2003) ........................................................................................... 3, 4, 10

*Montrose Chem. Corp. of Calif. v. Admiral Ins. Co.,*
10 Cal.4th 645 (1995) ................................................................................................... 10

*Morlin Asset Mgmt. LP v. Murachanian,*
2 Cal. App. 5th 184 (2016) ............................................................................................ 15

*Pep Boys Manny Moe & Jack of Calif. v. Old Republic Ins. Co.,*
98 Cal.App.5th 329 (2023) .............................................................................................. 1

*Reliance Nat. Indem. Co. v. Gen. Star Indem. Co.,*
72 Cal. App. 4th 1063 (1999) .................................................................................. 13, 14

| | |
|---|---|
| *Reserve Insurance Co. v. Pisciotta,* 30 Cal.3d 800 (1982) | 1 |
| *Rossmoor Sanitation, Inc. v. Pylon, Inc.,* 13 Cal. 3d 622 (1975) | 13, 14, 15 |
| *Sarchett v. Blue Shield of Calif.,* 43 Cal.3d 1 (1987) | 1 |
| *St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.,* 101 Cal. App. 4th 1038 (2002) | 6, 7, 9 |
| *Travelers Cas. & Surety Co. v. American Equity Ins. Co.,* 93 Cal.App.4th 1142 (2001) | 13 |
| *Truck Ins. Exch. v. AMCO Ins. Co.,* 56 Cal. App. 5th 619 (2020) | 12 |
| *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1 (1995) | 5 |

Federal Cases

| | |
|---|---|
| *All Star Seed v. Nationwide Agribusiness Ins. Co.,* 2014 WL 1286561 (S.D. Cal. 2014) | 4 |
| *Consolidation Coal Co., Inc. v. Liberty Mut. Ins. Co.,* 406 F.Supp. 1292 (W.D.Pa.1976) | 9 |
| *Fireman's Fund Ins. Co. v. Discover Prop. & Cas. Ins. Co.,* 2009 WL 2591394 (N.D. Cal. 2009) | 11 |
| *First Mercury Ins. Co. v. Great Divide Ins. Co.,* 241 F. Supp. 3d 1028 (N.D. Cal. 2017) | 6 |
| *Nat'l Fire Ins. Co. of Hartford v. Fed. Ins. Co.,* 843 F. Supp. 2d 1011 (N.D. Cal. 2012) | 9 |
| *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.,* 283 F.2d 659 (9th Cir. 1960) | 5 |
| *U. S. ex rel. Welch v. My Left Foot Child. Therapy, LLC,* 871 F.3d 791 (9th Cir. 2017) | 3 |

Other

| | |
|---|---|
| Donald S. Malecki, Jack P. Gibson, *The Additional Insured Book*, pp. 175-6 (7th Ed. 2013) | 11 |

INTRODUCTION

In the action giving rise to this dispute, the jury awarded a verdict in favor of David Perez against Carson for injuries Perez sustained while replacing a fuse on a pullout switch on a Main Distribution Panel. According to Perez the MDP had been modified without a permit and out of compliance with code, to include a pullout switch that was grossly under-rated for use in the high voltage panel. The jury held that Carson and its property manager were entirely at fault for the accident that resulted.

The accident was not caused by an act or omission of the tenant, Stoneledge, an entity which had nothing to do with the MDP, its maintenance or its modification. Stoneledge's only connection with the accident was that it was the unfortunate tenant whose warehouse had no power when the fuse in the MDP blew, and it was forced to call the electrician from the property manager's list of emergency numbers because the property manager was not responsive.

On these facts, Ohio and American (collectively "Liberty") and Carson assert that Carson reasonably expected coverage for the judgment against it by the insurers of its tenant. The position is not in keeping with the language of the policies at issue, which limits coverage for additional insureds to those damages actually caused by an act of the tenant. Moreover, the position is not reasonable. The property owner was responsible for the condition of the MDP and was found liable for this accident. It and its direct insurer should bear the loss.

ARGUMENT

A.   The Additional Insured Endorsement Controls Over Paragraph 6

The sentence in Paragraph 6 stating that an entity is not an insured under that clause when that entity is "included as an insured by endorsement," unambiguously dictates that the scope of Carson's coverage under the Hartford policy is controlled by the Additional Insured Endorsement. "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Reserve Insurance Co. v. Pisciotta*, 30 Cal.3d 800, 807 (1982). Where the policy is clear and unequivocal, the only thing the insured may "reasonably expect" is the coverage afforded by the plain language of the mutually agreed-upon terms. *Sarchett v. Blue Shield of Calif.*, 43 Cal.3d 1, 15 (1987); *Pep Boys Manny Moe & Jack of Calif. v. Old Republic Ins. Co.,* 98 Cal.App.5th 329, 343

(2023) [insured's reasonable expectations of coverage "play no role" in policy interpretation where language unambiguous]; *Atlas Assur. Co., Ltd. v. McCombs Corp.*, 146 Cal.App.3d 135, 144 (1983). Here, Paragraph 6 states: "no such person or organization is an insured under this provision if such person or organization is included as an insured by an endorsement issued by us and made a part of this Coverage Part." No party in this action disputes that Carson is included as an insured under the "blanket" provision of the additional insured endorsement, form 2026. Accordingly, by its clear terms, Carson is not insured under Paragraph 6.

      Carson attempts to create an ambiguity by arguing that Carson is "not ***named*** in the Endorsement," and, therefore, could not reasonably have thought that coverage was controlled by the endorsement. As an initial matter, nothing in the word "named" requires the specificity Carson asserts. An entity can be "named" by the description of a group or class of entities. Moreover, Paragraph 6 does not state that an entity is not insured under that paragraph where the additional insured "is named in an Endorsement." It states that "no person or organization is an insured under this provision if such person or organization ***is included as an insured by an endorsement.***" The phrase "included as an insured" does not suggest that an entity must be particularly named. It unambiguously encompasses any circumstance by which an entity is added as an insured via an endorsement – including where insureds are added through a blanket provision, as here.

      Assuming arguendo that there is some ambiguity in the language, Carson and Liberty's reliance on the rule that a specific provision controls over a general provision is misplaced. In the interpretation of insurance contracts, "a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, even though the latter, standing alone, would be broad enough to include the subject to which the more specific provision relates." *General Ins. Co. v. Truck Ins. Exch.*, 242 Cal.App.2d 419, 426 (1966). In this case, an endorsement, specifically addressing the addition of insureds, is more specific than a provision in the body of the general liability form. A derivative of the rule that the specific governs over the general is that endorsements control over terms in the body of policy. In *Jane D. v. Ordinary Mut.*, 32 Cal. App. 4th 643, 651 (1995), a case cited by Liberty, the court held just that, finding that an endorsement controlled over a provision in the professional liability form, comprising the body of

the policy.  "Even if the general liability policy covers plaintiff's claims, these specific endorsements prevail over the more general terms of the general liability policy."  *Id*. at 651; see also, *Cont'l Cas. Co. v. Phoenix Const. Co*., 46 Cal. 2d 423, 431 (1956); *U. S. ex rel. Welch v. My Left Foot Child. Therapy, LLC*, 871 F.3d 791, 797 (9th Cir. 2017).

In this case, the form HG 0001, forming the body of the policy, included a section (Section II) entitled "Who Is An Insured," which itself included six subparagraphs, one of which addressed "additional insureds."  Section II was one of five sections in form HG 0001, a form that addressed the scope of coverage as laid out in the insuring agreements, applicable exclusions, conditions to coverage, and definitions.  To the body of the policy was added an endorsement that specifically dealt with the narrow issue of additional insureds, describing what entities were added to the policy and setting forth the terms of coverage applicable to those added insured, above and beyond the terms in the body of the policy itself.  The endorsement, not the 18-page body of the policy, more accurately reflected the parties' intent regarding the ***specific issue of additional insured coverage***.

Even looked at more granularly, as Carson and Liberty wish to do, Paragraph 6 is not more specific than the endorsement.  Both expressly address coverage for risks related to the named insured's lease of property.  Both Paragraph 6 and the endorsement add entities as insureds when the named insured enters into a contract obliging it to provide that coverage.  Paragraph 6(c) states that coverage is extended to "any person or organization from whom you lease land or premises, but only with respect to liability arising out of the ownership, maintenance or use of the part of the land or premises leased to [the named insured."  The additional insured endorsement extends for injury "caused in whole or in part by [the named insured's] acts or omissions . . . in connection with your premises owned or rented to you."  The additional insured endorsement, just like Paragraph 6, expressly insures the risks associated with the named insured's rental of land.  While the endorsement does not use the word "lessor," in extending coverage to entities with whom the named insured has a written contract, for risks "in connection your premises . . . rented to you," the endorsement specifically encompasses lessors.

Carson argues further that Paragraph 6 controls here because ***exclusionary*** provisions in a policy must be strictly construed against the insurer.  Carson relies on *MacKinnon v. Truck Ins.*

*Exch.*, 31 Cal.4th 635, 652 (2003) and *All Star Seed v. Nationwide Agribusiness Ins. Co.*, 2014 WL 1286561 (S.D. Cal. 2014). In *MacKinnon*, the Court was faced with the question of whether the overspray of a pesticide that resulted in a bodily injury, fell within the policy's exclusion for damages arising from pollution, a term defined as any irritant or contaminant. The court held that a "broad interpretation of the pollution exclusion leads to absurd results and ignores the familiar connotations of the words used in the exclusion." *Id*. at 652.  In *All Star Seed*, the Court interpreted a property policy with respect to fire damage, to determine whether the loss was excluded under provisions requiring that haystacks be properly spaced.  The court found the term "stack" was not defined, such that the insured would not have been able to determine what constituted a "double-stacked loaf" versus a single stack and whether "double stacking would be a violation of the storage distance warranty." Neither of these cases applies here. Paragraph 6 does not exclude coverage for a particular damage or for a particular entity.  Further, while *All Star Seed* involved an ambiguity that was created in part by the existence of multiple endorsements requiring maintenance of spacing of various types of "stacks," the provisions at issue were exclusionary – they eliminated coverage for damage to haystacks that were not properly stored. The sentence at issue here is designed to eliminate ambiguity when two provisions apply.  It is not an exclusion, eliminating coverage for particular damages or entities, subject to strict construction, even assuming it is ambiguous.

      Liberty's argument that enforcement of this sentence of Paragraph 6 renders Paragraph "mere surplusage" is nonsensical.  The sentence states that endorsements apply instead of Paragraph 6, where endorsements are added.  By its nature, the sentence dictates that there are circumstances under which Paragraph 6 will not apply.  That was the point of the sentence.  Nor does enforcement of the sentence render all of Paragraph 6 does moot.  For example, paragraph 6 adds vendors (subparagraph a) and lessors of equipment (subparagraph b) as additional insureds.  The additional insured endorsement would not include those entities as additional insureds because the endorsement applies to risks associated with the named insured's "ongoing operations" and its owned or leased premises – risks that would not encompass risks associated with the use of vendors and leased of equipment. The general rules of contract interpretation stating that a Court should seek to give meaning to all words in a contract do not dictate that the sentence is unenforceable.

Finally, Liberty argues, and Carson implies that Hartford waived its right to assert the terms of the policy because Hartford's letters to Carson cited only Paragraph 6 and not the endorsement. Waiver always rests upon intent: "Case law is clear that 'waiver' is the intentional relinquishment of a known right after knowledge of the facts." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 31-32 (1995); *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 CA4th 1259, 1270 (2007). In each of the letters cited, Hartford expressly stated that it was not waiving the right to assert any coverage defense or limitation on coverage in the policy. See, e.g., Doc 63-13, p. 8 [Hartford is "not waiving any other defenses to or limitations on coverage, regardless of whether those defenses or limitations have been addressed in this or prior correspondence"]; Doc 63-14 [Hartford "continues to reserve all of its rights, positions and defenses in the matter. Neither this communication nor any prior or subsequent communications from or on behalf of Hartford should be construed as a waiver of any of Hartford's rights, positions or defenses"]. At no point did Hartford or ACE waive the right to assert the terms of the policy and neither Carson nor Liberty provide facts supporting an argument that they did.

B.  The Injury to Perez Was Not Caused By An Act of Stoneledge

The additional insured endorsement extends coverage to Carson only for "'bodily injury' . . . caused, in whole or in part, by [Stoneledge's] acts or omissions." Stated simply, the phrase means that the named insured must have done something (or failed to do something) which directly caused the injury to Perez. While the term "proximate cause" might be a legal term, it describes the common understanding of the phrase at issue: the named insured's acts must have caused damage such that a reasonable person would find that those acts contributed to the harm in more than a remote or trivial way. The named insured's acts need not be the predominant cause, but they must be *a cause*. The standard is one of reasonableness.

Carson and Liberty both argue directly or impliedly that the standard connoted by the wording of the endorsement is the same as the standard applied by Courts regarding additional insured clauses using the phrase "arising out of." California courts have consistently held that "arising out of" *is not* synonymous with "caused by," but instead conveys something broader. As the Ninth Circuit held in *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.*, 283 F.2d 659,

5

REPLY                                                                     Case No: 3:23-cv-06259-VC

664 (9th Cir. 1960): "'Arising out of' are words of much broader significance than 'caused by'. They are ordinarily understood to mean 'originating from' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having connection with' * * *." *Cordova* held that it would not "interject a requirement of causation" into the words "arising from." *Ibid*. The leading California case interpreting the phrase "arising out of" in the context of additional insured endorsements reasoned that the phrase did not mean "caused by," and held that "arising out of" extended coverage without regard to "cause":

> Insurance companies are free to, and commonly have, issued additional insured endorsements that specifically limit coverage to situations in which the additional insured is faced with vicarious liability for negligent conduct by the named insured. [Cites omitted.] We believe the better view is that when an insurer chooses not to use such clearly limited language in an additional insured clause, but instead grants coverage for liability "arising out of" the named insured's work, the additional insured is covered **without regard to whether injury was caused by the named insured or the additional insured**.

*Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal. App. 4th 321, 330 (1999) (emphasis added).

Further, multiple cases have held that the phrase "acts or omissions" placed further limitation on the extent of coverage. See, *St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surp. Lines Ins. Co.*, 101 Cal.App. 4th 1038 (2002). Addressing an additional insured endorsement extending coverage for damages "caused in whole or in part by your acts or omissions," and an indemnity provision in a contract between the insureds, the court in *First Mercury Ins. Co. v. Great Divide Ins. Co*., 241 F. Supp. 3d 1028, 1036 (N.D. Cal. 2017), held that "the language in the governing contracts does not make Elite [the named insured] broadly responsible for all liabilities incurred by the Forty Niner Defendants and the Santa Clara Defendants [the additional insureds], but instead makes Elite responsible only for those liabilities traceable at least in part to the acts or omissions of Elite or those acting on Elite's behalf." In that case, the 49ers, Santa Clara and Elite were sued by a patron at an event at the football stadium who was injured by an attack by another patron. The court held that the direct insurer for the 49ers and Santa Clara owed a duty of defense to its named insureds because those entities could be liable for the condition of the football stadium that was unrelated to the work of Elite, a security firm hired by the 49ers. The court reasoned that the direct insurer:

> would be responsible for covering liability that arises solely out of the allegedly inadequate provision of toilet facilities. Moreover, Defendant overlooks the possibility that, even if Elite provided services at the site where the toilet facilities

> were located, the state court proceedings could indicate that none of the Underlying Plaintiffs' harm was traceable to Elite's actions. This potential for the Santa Clara Defendants to be responsible for liability in the state court action is sufficient to trigger Defendant's duty to defend under *Maryland*. (*Id*. at 1036-7.)

Carson and Liberty argue that the phrase "caused in whole or in part by [the named insured's] acts or omissions" should be interpreted in exactly the same broad manner as "arising out of." The argument is contrary to California law and the plain meaning of the words.

      Because the clause in the endorsement states that the named insured must have acted to cause bodily injury, ACE contends the phrase imparts a requirement of some degree of fault on the part of the named insured. However, even if this Court were to hold that fault is not required, the damages for which Carson was held liable were not "caused" by Stoneledge, under any definition of that term. The arc flash was caused by the use of a pullout switch in the MDP that was rated for 240 volts, where a pullout switch rated for use up to 600 volts was needed. Stoneledge had nothing to do with the MDP. It did not modify the MDP or add the wrong pullout switch. That work was done long before Stoneledge was even a tenant. Carson itself testified that Stoneledge did not have the obligation or right to work on the MDP, as it was a "common area" under the exclusive control of Carson. RJN 15. Mr. Mountain had no understanding of the MDP, or which of two big electrical cabinets he had seen on the property fed power to the Stoneledge leased space. Further, he did not work on the MDP. After showing Perez where the electrical cabinets were, Mountain "left and [Perez] started working on them I guess." RJN 17. Stoneledge's only act was to call DP Electric. That act was not a cause of the accident that resulted in injury to Perez. As the Court held in *American Dynasty*, the insured's mere presence at the property is not enough to link Stoneledge to the injury to Perez.

      Carson argues that the acts of Perez caused his own injury, but Carson makes no effort to explain why acts of Perez should be considered "on behalf of Stoneledge." First, "on behalf of" means "as a representative of someone" or "for the benefit of someone." Perez did not represent Stoneledge to anyone. Nor did he work for the benefit of Stoneledge; he was an independent contractor, working for his own benefit, at his own discretion, and not under the direction or control of Stoneledge. Second, the mere fact that Stoneledge made the call which brought Perez to the property does not establish that Perez was doing work for Stoneledge. Under its lease, Carson was

obligated to provide a warehouse with a working power supply. When the power went out, Stoneledge looked for the property manager to fix the problem. Only because the property manager was not on site and had left a list of "Emergency Numbers" posted to his door, did Mr. Mountain call DP Electric. Stoneledge did not call an electrician to install new lighting fixtures or sockets in the warehouse to service Stoneledge's unique electrical needs. Stoneledge called DP Electric because it could not find the property manager and the power was out. And when Mr. Perez came to fix the problem, he was injured while working on the MDP – a part of the common area over which Carson had sole control. In arguing that the acts of Perez were on behalf of Stoneledge, Carson hangs its hat on the lone fact that Mountain dialed the number for DP Electric. That fact does not establish that Mr. Perez acted "on behalf of" Stoneledge, even assuming a meaning for that phrase that is broader than its common usage.

Liberty's argument regarding the "substantial factor" test grossly mischaracterizes ACE's position. Neither ACE nor Hartford has argued that the phrasing of the additional insured endorsement requires that the named insured be the predominant cause or, as Liberty writes, that it requires "a near exclusive causal connection between Ahsley Furniture's liability and that of Carson Madrona's." As the Supreme Court has explained "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical. Thus, 'a force which plays only an "infinitesimal" or "theoretical" part in bringing about injury, damage, or loss is not a substantial factor,' but a very minor force that does cause harm is a substantial factor. This rule honors the principle of comparative fault.'" *Bockrath v. Aldrich Chem. Co.*, 21 Cal. 4th 71, 79 (1999). The substantial factor test, which is often equated with "legal" or "proximate" cause, does not mean predominant cause. As used in this context, "substantial" simply means more than trivial. In this case, by finding that Stoneledge was not a "substantial factor" leading to Mr. Perez's injury, the jury necessarily found that Stoneledge's conduct ***did not contribute to the harm at all.*** The jury did not hold that Stoneledge's acts were not the predominant cause or were only a minor cause. The jury held that a reasonable person would not have considered Stoneledge to have contributed to the harm – not in whole and not in part. While ACE asserts that Carson is not covered where it is solely responsible for causing the harm, that is a far

cry from arguing that there must be a "near exclusive causal connection" between the named insured's conduct and the injury.

Further, Liberty blithely asserts that California applies the "minimal causal connection" standard with regard to "coverage disputes in the landlord tenant context," citing *Hartford Cas. Ins. Co. v. Travelers Indem. Co.*, 110 Cal. App. 4th 710 (2003). But *Hartford*, like most coverage cases, turned on the particular language at issue. In that case the court held that "nothing in the meaning of 'only with respect to' hints at a requirement of direct causation. Looking at the plain meaning of the questioned phrase, we find definitions indicating that 'only with respect to' merely indicates some relationship. *Id*. at 719. Significantly, *Hartford* distinguished *Consolidation Coal Co., Inc. v. Liberty Mut. Ins. Co.* (W.D.Pa.1976) 406 F.Supp. 1292, explaining:

> *Consolidation Coal* case involved an endorsement that added an additional insured, "'but only with respect to <u>acts or omissions of the named insured in connection with</u> the named insured's operations.'" (*Consolidated Coal,* 406 F.Supp. at 1294.) The focus of the court's analysis in *Consolidation Coal* was the meaning of the words "acts or omissions." (*Id*. at 1298.) The court held that unless the additional insured's liability was the result of an act or omission of the named insured there was no coverage. (*Id.* at 1298–1299.) In that case, the sole cause of the injury was the act of the additional insured's employee. (*Id.* at 1294.) The underlined language that narrowed the meaning of the endorsement in *Consolidation Coal* is not present in Hartford's policy. (*Hartford*, 110 Cal. App. 4th at 717–18.)

Here, as in *Consolidation Coal*, the endorsement expressly limits coverage to injury caused by the named insured's "acts or omissions," unlike the provision before the Court in *Hartford*. Further, the phrase "caused by in whole or in part," unlike the phrase "but only with respect to," does more than hint at the requirement of direct causation, it expressly requires it.

Liberty also cites *Nat'l Fire Ins. Co. of Hartford v. Fed. Ins. Co.*, 843 F. Supp. 2d 1011 (N.D. Cal. 2012), however that case, like so many cited by Liberty and Carson, dealt with the phrase "***arising out of*** the ownership, maintenance or use" of the premises. The case does not dictate a result here, where the language is clearly distinguishable. Liberty further asserts that *American Dynasty* does not apply because in that case, the parties stipulated that the explosion had nothing to do with the performance of the subcontract. It is true that there is no stipulation here. Instead, there is a jury verdict holding that Stoneledge had nothing to do with causing the injury; there is no need for a stipulation. *American Dynasty* is on point.

Carson creates a straw man in arguing that ACE's position is that an additional insured's liability must be vicarious in order for coverage to apply. ACE contends only that damage must be proximately caused by the named insured, not that the additional insured's liability is vicarious. In many factual circumstances an additional insured will be vicariously liable for the negligent acts of named insureds because of the relationship of the insureds (e.g., in the context of construction where general contractors are named as additional insureds to subcontractors' policies). However, a finding that "caused, in whole or in part by your acts or omissions" connotes proximate cause does not mean that vicarious liability is required.

Carson argues that if the insurers had meant proximate cause in the endorsement, they could have used those words. Just because language could be more precise or explicit does not mean it is ambiguous. *California Cas. Ins. Co. v. Northland Ins. Co.*, 48 Cal.App.4th 1682, 1694 (1996) [although "it might have promoted clarity" to state specifically that jet pump powered watercraft were excluded, there was no ambiguity in view of the plain language of the policy, which excluded all watercraft powered by inboard motors, without qualification based on their means of propulsion]; *City of Carlsbad v. Insurance Co. of State of Pa.*, 180 Cal.App.4th 176, 182 (2009); *Government Employees Ins. Co. v. Sup.Ct.*, 79 Cal.App.4th 95, 103 (2000) ["Perfection in drafting is not required, and probably not even possible"].

Carson further asserts that drafting history and commentary are irrelevant in interpreting policy language. However, while the "history and purpose" of a provision are not determinative, they may be helpful in determining the meaning of disputed language. See *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 653 (2003) [history and purpose of pollution exclusion "may properly be used by courts as an aid to discern the meaning of disputed policy language"]. Insurance Services Office (ISO) publications often explain the purpose and intent of standard form policy provisions; such interpretative materials "may be of considerable assistance in determining coverage issues." *Montrose Chem. Corp. of Calif. v. Admiral Ins. Co.*, 10 Cal.4th 645, 670-671 (1995). Here, there is little question that by using the phrase "caused in whole or in part by your acts or omissions," the insurers intended to convey direct causation. After courts repeatedly gave the phrase "arising out of" a very broad interpretation, ISO changed the language:

> ISO . . . stated that this broad interpretation of 'arising out of' contradicted its own understanding of the intended scope of additional insured coverage and prompted the revision of [additional insured endorsements] in 2004. The phrase "arising out of" was removed, to be replaced by "caused in whole or in part by" which the ISO drafters believe expresses a stronger causal relationship. And instead of the open ended phrase "your ongoing operations," the 2004 edition ties the claim to "your acts or omissions." Under this new language it is not sufficient for the additional insured to show that injury or damage would not have occurred but for the fact that the named insured was performing operations. It will be necessary to show that some act or omission of the named insured actually caused the injury or damage.

Donald S. Malecki, Jack P. Gibson, *The Additional Insured Book*, pp. 175-6 (7th Ed. 2013).

ACE's interpretation of the clause is reasonable. In *Bank of the West v. Superior Court*, 2 Cal.4th 1254 (1992), the Supreme Court made it clear that in order to conclude that an ambiguity exists which will be construed against an insurer, it is necessary first to determine whether the coverage under the policy, which would result from such a construction, is consistent with the insured's *objectively reasonable expectations*. What is reasonable about Carson's demanding coverage from the insurers of its tenant on the facts here? Stoneledge had nothing to do with MDP and, as the jury determined, a reasonable person could not conclude that Stoneledge contributed to the harm. While Carson might reasonably expect coverage from its tenant for damages caused by the tenant, it could not reasonably expect coverage for a loss caused by its unpermitted modification of its property's central electrical distribution panel. The facts here illustrate that the most reasonable interpretation of the operative provision is that it requires proximate cause.

C.  Perez's Injuries Did Not Arise Out Of Stoneledge's Use of that Part of a Premises Leased to Stoneledge

While the phrase "arising out of" is broad, Paragraph 6 is not without limits. Coverage for the additional insured is limited to "use of that part of the land or premises leased to you." As Judge Alsup of this Court discussed in *Fireman's Fund Ins. Co. v. Discover Prop. & Cas. Ins. Co.*, 2009 WL 2591394 (N.D. Cal. 2009), where there is neither a causal connection nor an incidental relationship between an injury and a tenant's use of that part of the premises is leased, there is no coverage under the additional insured provision. In that case, the underlying plaintiff was injured while walking on a sidewalk, on her way to a bookstore for a book signing. She tripped over a temporary fence, placed on the common area because of construction in the area.

> The bookstore, however, was not instrumental in any of the acts that led to the injury. In fact, the following is undisputed: "Esowon had no control over, or any connection, with the construction project at the Mall or the temporary fencing utilized by National Construction Rentals. Esowon had no control over the maintenance of the public sidewalk where Melhado fell. Esowon did not have any control over the route or mode of transportation Melhado chose to take to travel to the bookstore" [Cite omitted]. The construction, temporary fencing, and resulting injury had *nothing* to do with the bookstore's use of the leased premises, but rather resulted entirely from construction activities in which the mall was separately and independently engaged. The sole cause of the incident was the mall and the construction company, not the bookstore. (*Id.*, at *4.)

Here, similarly, Stoneledge had nothing to do with the modification or maintenance of the MDP. Just as in *Discover Property*, "the connection here is too thin to support a finding of coverage under the endorsement . . . based on Esowon's use of the leased premises for the book signing event." *Id*. at *4.

The facts here are distinguishable from *Truck Ins. Exch. v. AMCO Ins. Co.*, 56 Cal. App. 5th 619 (2020), a case relied on by both Carson and Liberty. In *AMCO*, a restaurant customer was injured while seated in the restaurant when a car smashed through the doors and into the building, after a collision outside. In the underlying action, the restaurant patrons alleged that both the building owner and tenant had not done enough to prevent cars from entering the premises. The court held that the building owner was entitled to coverage under the tenant's policy: "Here . . . there is the requisite minimal causal connection between the property and the injuries. The Smiths were on the premises as customers of Holé Molé. Thus, Bascon's 'use' of the premises was the reason the Smiths were present when the car accident occurred." *Truck Ins. Exch. v. AMCO Ins. Co*., 56 Cal. App. 5th 619, 632 (2020). Here, unlike *AMCO*, the injured plaintiff was not in the leased space, nor was he a patron of Stoneledge's business. Mr. Perez was injured off the part of the premises leased by Stoneledge and on a common area of the property, and he was at the site to perform repair to that common area property, not to buy furniture.

D.     <u>The ACE Policy is Excess to the Primary Policies and American Policy</u>

Assuming arguendo that ACE owes indemnity for the judgment against Carson, ACE's policy applies only excess to the two primary policies and the American policy. As discussed in its moving papers, the ACE policy states that is applies in excess of "the total applicable limits of 'underlying insurance' ***and any applicable limit of 'other insurance' providing coverage to the 'insured.'***" Doc 63-5, p 10, 27. The American policy states that it is excess only to the specifically

identified underlying policy, issued by Ohio, meaning that its policy attaches as soon as the Ohio policy limit is exhausted. Accordingly, the attachment point of the American policy is at exhaustion of the $1 million Ohio policy, whereas the ACE policy applies excess to all other applicable insurance. Therefore, the ACE policy applies as excess to the primary and the American policy.

In arguing that ACE's excess policy applies before its own policy, American continues to assert that *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal. 3d 622 (1975), controls this dispute. It argued that *Reliance Nat. Indem. Co. v. Gen. Star Indem. Co.*, 72 Cal. App. 4th 1063 (1999) does not apply because *Reliance* dealt with a dispute between a primary insurer and an excess insurer, not two excess insurers, as here. American's argument is wrong and was expressly rejected in *Travelers Cas. & Surety Co. v. American Equity Ins. Co.*, 93 Cal.App.4th 1142 (2001). In that case, Preferred managed the Lakeview apartment complex, which was in receivership. The property management agreement between Preferred and the receiver required the receiver to indemnify Preferred for any liability arising out of the property management agreement, and also to name Preferred an additional insured on the receiver's policy. Preferred was the named insured on a policy issued by American and was an additional insured under a policy issued to the apartment owner by Travelers. Travelers accepted the defense and indemnification of Preferred, but American did not. Travelers settled the suit and then sued American for equitable contribution.

Relying on *Rossmoor*, American contended that, despite terms of its policy, which dictated that it should have shared obligations with Travelers, its coverage was excess over the coverage provided by Travelers because of the indemnity provision in the contract between Preferred and the receiver. The Court reviewed *Rossmoor* and *Reliance* and explained:

> *Reliance* is most easily distinguishable on the basis that it involved insurance coverage at different levels: a true primary policy and a true excess policy. . . . However, unlike *Reliance*, this case does not involve insurance coverage at different levels, or different risks reflected in premium costs. . . .
>
> *Rossmoor* is distinguishable as an action primarily between two insureds on a contract for indemnity between the two. . . .
>
> Here, the action is between two insurers, both of whom have issued contracts of insurance covering the same insured, Preferred Capital. Thus, the case looks more like the typical dispute between insurance carriers, which should be governed by general principles governing the interpretation and enforcement of "other insurance" clauses between insurers.

> *More importantly*, subrogation of the insurer to the rights of the insured presupposes the insured, Preferred Capital, has a right of indemnity from the receiver or from Lakeview under the indemnity agreement. *This determination was never made below and those parties (the receiver, Lakeview and Preferred Capital) are not parties to this action.* . . . [B]ecause it has not been established and we cannot say with certainty under the circumstances that Preferred Capital is entitled to indemnity from the receiver or Lakeview under the property management agreement, we never reach the equitable consideration which Rossmoor found controlling. (*Id*. at 1156-1157.)

The existence of a judgment against the indemnitor is the key distinction between *Rossmoor* on the one hand, and *Reliance* and *Travelers* on the other. In *Rossmoor,* because there was a judgment against Pylon for indemnity, the indemnity clause controlled over the language of the policies. Because there was no such judgment in *Reliance* and *Travelers*, the language of the policies controlled over the indemnity agreement.

      In this case, the indemnity provision in the lease between Carson and Stoneledge was not litigated, much less decided.  In this coverage action, American cannot assert an indemnity provision in a lease between Carson and Stoneledge as a basis of prioritizing coverage between the insurers, where the indemnity clause was never adjudicated.  Instead, it is the language of the policies which dictates how coverage applies.

      In arguing that the lease termination agreement is irrelevant, American wants its cake and to eat it too.  Assuming arguendo that Carson and Liberty can put the indemnity provision in the lease at issue in this case, then the lease termination is also at issue. Carson terminated its lease with Stoneledge and through that contract, released its rights against Stoneledge to enforce the indemnity agreement.  If American stands in the shoes of Carson to assert rights against Stoneledge and Stoneledge's insurers (rights of subrogation which, in fact, American has not asserted in this suit), American must also live with the fact that Carson terminated its right of indemnity before the Perez trial and judgment.  Carson and Liberty cannot assert the terms of the lease while arguing that the terms of the lease termination are irrelevant. The contracts either matter or they do not.

      Similarly, Carson and Liberty cannot assert that the lease indemnity provision applies, but rules regarding the interpretation of indemnity provisions do not.  To the extent the indemnity provision is of any relevance, its application was not determined in the Underlying Action and must be adjudicated here.  As discussed in ACE's moving papers, the indemnity in the lease would not

have bound Stoneledge to indemnify Carson with respect to the judgment against Carson – a judgment reflecting the sole negligence of Carson itself. Provisions purporting to hold an owner harmless without expressly mentioning an indemnitee's negligence, have been deemed to be 'general' clauses." *Rossmoor*, 13 Cal.3d at 628–629. Further, the indemnity provision is limited to the insured's use of the leased premises. In *Morlin Asset Mgmt. LP v. Murachanian*, 2 Cal. App. 5th 184 (2016), the court examined an indemnity clause in the parties' lease, requiring the tenant to indemnify and defend the landlords and their agents (except for their gross negligence or willful misconduct) against all claims and liabilities "arising out of, involving or in connection with, the use and/or occupancy of the Premises by [tenant]." *Id*. at 190. The injury at issue occurred when a visitor to the property fell in a common area. The court "conclude[d] as a matter of law that the indemnification clause in the lease does not extend to claims or liabilities arising out of this accident in the common areas over which the tenant had no control." *Id*. at 189. In this case as well, the indemnity clause would not apply to obligate Stoneledge to pay for the judgment against Carson.

American wants to waive the indemnity clause in the lease like a magic wand, asserting that its mere existence is sufficient to make its policy excess to the ACE policy. Instead, the language of the policies themselves dictates the priority of coverage. Here, that means that the ACE policy did not apply (if at all) until after the primary policies and after the American policy exhausted.

## CONCLUSION

ACE respectfully requests that this Court rule that ACE is entitled to summary judgment because it had no duty to indemnify Carson with respect to the Underlying Action. In the alternative, ACE requests that the Court declare that ACE had no duty to defend Carson and, therefore, has no obligation to reimburse pre-judgment interest or costs association with the judgment. With respect to the issue of priority, ACE also requests that the court declare that ACE's coverage applied excess to the two primary policies and to the American policy.

Dated: February 6, 2025                                    MORALES FIERRO & REEVES

By:  */s/Christine Fierro*
     CHRISTINE FIERRO
     Attorneys for Defendant ACE PROPERTY &
     CASUALTY INSURANCE COMPANY