Gary R. Selvin, Cal. Bar No. 112030
Selvin Wraith LLP
6250 Claremont Avenue, Suite 200
Oakland, CA 94618
Telephone No.: 510.874.1814
Facsimile No.: 510.465.8976
gselvin@selvinwraith.com

Ezra S. Gollogly, admitted pro hac vice
Joseph Dudek, admitted pro hac vice
Kramon & Graham, P.A.
7500 East Pratt St., Suite 1100
Baltimore, MD 21202
Telephone No.: 410.752.6030
Facsimile No.: 410.361.8233
egollogly@kg-law.com
jdudek@kg-law.com

# In the United States District Court
## for the Northern District of California

| | |
|---|---|
| Hartford Fire Insurance Company, | No. 3:23-cv-06259 |
| Plaintiff, | **Hartford Fire Insurance Company's Reply in Support of its Cross-Motion for Full or Partial Summary Judgment** |
| v. | |
| Carson Madrona Company, LLC *et alia*, | Date: February 27, 2025 |
| Defendants. | Time: 10:00 a.m. |
| | Place: Courtroom 4 on the 17th Floor 450 Golden Gate Avenue San Francisco, California 94102 |
| | Judge: Vince Chhabria |
| | Filed: December 4, 2023 |
| | Trial: not scheduled |

REPLY ARGUMENT

Carson Madrona[1] and Liberty tie themselves in knots and point to other documents to avoid the language of the Hartford Policy. But the Hartford Policy, not those other theories or documents, governs Carson Madrona's coverage.

There are really three questions here: *First*, does the Blanket Endorsement control whether Carson Madrona qualifies as an additional insured under the Hartford Policy? *Second*, does the jury's verdict extinguish Carson Madrona's coverage under Hartford's policy? *Third*, in what order do the Hartford and Liberty policies respond to this loss? The answer to each question is resolved by the plain text of the insurance policies, the jury's verdict, and settled California law.

**The Blanket Endorsement**: Carson Madrona and Liberty now argue that the Blanket Endorsement is too ambiguous to be applied at all, because it is not clear enough that the endorsement's language—"blanket where required by written contract or agreement"— included Carson Madrona. ECF No. 69 at 6, 8–9, 15; ECF No. 70 at 8–12.[2] But the endorsement's use of "blanket" is clear notice that the endorsement applies to all additional insureds where required by contract, *see* Cross-Motion (ECF No. 67) at 14 (collecting cases), and all parties agree that the Lease Agreement was a "written contract" that "required" Ashley to obtain additional-insured coverage for Carson Madrona, *id.* at 14–15. Neither Carson Madrona

---

[1] Capitalized terms in this reply rely on definitions set out in Hartford's memorandum, ECF No. 67.

[2] ECF citations in this reply refer to the court-applied pagination (the blue page numbers at the top), not to the party-applied pagination (the black page numbers at the bottom).

nor Liberty offer any other reasonable reading of the text of the Blanket Endorsement, let alone one that would render it ambiguous.

**The jury verdict in favor of Ashley**: Carson Madrona and Liberty cannot avoid the jury's finding that Ashley was 0% responsible for Perez's injuries—the conclusion that no "reasonable person would consider" Ashley to have caused those injuries. ECF No. 67 at 16. Instead, Carson Madrona relies on foreign law to argue that "caused by" means the same as "arises from." ECF No. 70 at 13–14. But California law, which governs these insurance policies, says that "arising out of" is fundamentally different than "caused by."[3]

**The "other insurance" provisions**: Neither Liberty nor Carson Madrona confront Hartford's argument about the "other insurance" provisions in the Hartford and Liberty Policies, which dictate that Liberty is primary and Hartford is excess. Instead, despite explicit references in Hartford's Cross-Motion, ECF No. 68 at 21 (quoting ECF No. 64-10 at 97), Liberty quotes the wrong other-insurance provision from the Hartford Policy—the one that was deleted and replaced by endorsement. ECF No. 69 at 21. Needless to say, provisions that are deleted from an insurance policy are not operative. Liberty's effort to revive this language by reference to the Lease Agreement or a certificate of insurance should fail.

In sum, the Hartford Policy limits coverage for Carson Madrona to damages because of bodily injury that Ashley *caused* (the jury found none) and a comparison of the other insurance clauses renders the Hartford Policy *excess* over Liberty's primary policy. Accordingly, this Court should hold that: Hartford had no duty to indemnify Carson Madrona against its settlement with

---

[3] While Hartford asserts that the defense verdict for Ashley and the jury's allocation of 100% liability to Carson Madrona and its property manager is insufficient to establish that the injuries "arose out of" Ashley's premises, that language is not controlling.

the Perezes; Hartford had no duty to defend Carson Madrona at least as of the jury verdict; and

Liberty, the primary carrier, owes Hartford the cost of defending Carson Madrona.

## I.     The Blanket Endorsement's plain, unambiguous text controls Carson Madrona's coverage under the Hartford Policy.

The additional-insured provisions in the general liability coverage form of the Hartford

Policy state that they do not apply to any "organization" that "is included as an insured by an

endorsement." ECF No. 64-10 at 27. Carson Madrona is an insured under the Blanket

Endorsement. *Id*. at 59. The Blanket Endorsement applies as a "blanket"—it "automatically

grants insured status to a person or organization that the named insured is required by contract to

add as an insured." Int'l Risk Mgmt. Inst., Inc. (IRMI), *blanket additional insured endorsement*,

Insurance Definitions (2025).[4] Indeed, the Blanket Endorsement elaborates on the meaning of

"blanket": "where required by written contract or agreement." ECF No. 64-10 at 59. All parties

agree that the Lease Agreement, ECF No. 64-7, required Carson Madrona to be added as an

insured under the Hartford Policy and that the Lease Agreement was "written."

Yet Carson Madrona and Liberty insist that the Blanket Endorsement does not mean

what it says; they say it is nonspecific, ambiguous, superfluous, inconsistent, and waived. They

are wrong on all counts.

*First*, Liberty and Carson Madrona argue that the Blanket Endorsement does not prevent

application of the coverage-form provisions, because the endorsement does not "specifically

name" Carson Madrona. ECF No. 69 at 11; ECF No. 70 at 7. But the question is not whether the

Blanket Endorsement *names* Carson Madrona; the question under the text of the Hartford Policy

---

[4] https://www.irmi.com/term/insurance-definitions/blanket-additional-insured-endorsement

is whether the Blanket Endorsement "included" Carson Madrona "an insured." ECF No. 64-10 at 27. For all the reasons above, it does.

Relatedly, Carson Madrona notes in a footnote that the Blanket Endorsement has a box for the "**Name** of Additional Person(s) or Organization(s)." ECF No. 70 at 7 n.1. From there, Liberty argues that because "blanket where required by contract" is not a name, the endorsement has no legal effect. That is not a reasonable reading of the endorsement in context, because as Liberty has explained elsewhere, it violates the rule against superfluity. ECF No. 69 at 12 (citing *S. Cal. Counseling Ctr. v. Great Am. Ins.* (C.D. Cal. 2014) 162 F. Supp. 3d 1045, 1050, 1053). Carson Madrona's reading would render the entire endorsement meaningless for want of a specific "name." That is needless here, because one can "name" or describe a large group or class of people, which this schedule does.[5] Here, the schedule names all those people or organizations who Ashley has promised to add as additional insureds by written contract, defining the Hartford Policy's blanket coverage.

*Second*, Carson Madrona and Liberty argue that because the Lessors coverage-form provision is "specific" and the Blanket Endorsement is "general," the rule favoring specific contract terms should make the coverage form available to Carson Madrona. ECF No. 69 at 11; ECF No. 70 at 10. But this canon of contract construction cannot prevail over contrary language in the Hartford Policy. *Alameda County Flood Control & Water Conservation Dist. v. Dep't of Water Res.* (2013) 213 Cal. App. 4th 1163, 1180 ("The language of a contract is to govern its

---

[5] Dictionary.com (2025) ("a word or a combination of words by which a person, place, or thing, a *body or class*, or any object of thought is designated, called, or known" (emphasis added)); *Name*, Samuel Johnson's Dictionary of the English Language (1773) ("[t]he term by which any kind or species is distinguished").

interpretation, if the language is clear and explicit, and does not involve an absurdity"). The Hartford Policy says that if an endorsement provides coverage, the coverage form does not—"no person or organization is an insured under this provision … if … included as an insured by endorsement." ECF No. 64-10 at 27. What's more, California courts have decided that the specific-over-general canon favors enforcing policy endorsements like the Blanket Endorsement, not background coverage-form provisions. *Cont'l Cas. Co. v. Phoenix Const. Co.* (1956) 46 Cal. 2d 423, 431 ("[I]f there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls."); *Fageol Truck & Coach v. Pac. Indem.* (1941) 18 Cal. 2d 731, 738 (same). So even if there were work for this canon to do, it would be work in Hartford's favor.

*Third*, in a surprising turn, Liberty argues that applying the endorsement would render portions of the main coverage form superfluous. ECF No. 69 at 12–13. That is the whole point of endorsements—they modify, delete and replace language in coverage forms rendering portions irrelevant or inoperative. In this way they tailor the policy to be specific to a particular insured. Indeed, Ohio Security's and American Fire's own policies are bursting with endorsements precisely because they render portions of their coverage forms inoperative. *See, e.g.*, Ohio Security Policy (ECF No. 64-5) at 34–65. For example, the Ohio Security policy contains two definitions of "insured contract" that related to leases—one in the coverage form and one in a modifying endorsement. ECF No. 64-5 at 30, 42. Nobody is confused about which definition applies.

*Fourth*, Liberty argues that the Hartford Policy is "at the very least" ambiguous, because it has both a coverage-form Lessors provision and the Blanket Endorsement. ECF No. 69 at 12–13. But this is obviously not an ambiguity. The plain text of the Hartford Policy tells you how

to choose from between the Lessors provision and the Blanket Endorsement: the endorsement controls. *Alameda County Flood Control*, 213 Cal. App. 4th at 1180 (citing Cal. Civ. Code § 1638). And again, the Ohio Security policy would become just as "ambiguous." ECF No. 64-5 at 30, 42.

*Fifth*, Liberty tries to use the Lease Agreement and a certificate of insurance to avoid the plain language of the Hartford Policy. In Liberty's view, the Hartford Policy should be construed to provide whatever coverage was required by the Lease Agreement or described in the certificate of insurance. ECF No. 69 at 10–11, 21. Liberty offers no law supporting that view, and it flouts the text of the certificate itself: "THIS CERTIFICATE … CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER …. [IT] DOES NOT … AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES." ECF No. 64-21 at 2. Even if the certificate could change the coverage, it does not; it specifically says that additional insured coverage applies "in accordance" with the Hartford Policy's provisions.

*Sixth*, Carson Madrona argues that despite the text of the Hartford Policy, it reasonably expected coverage under the Lessors provision. ECF No. 70 at 9. But Carson Madrona points to no record evidence about what it "reasonably expected" the policy to mean in 2016. Indeed, Carson Madrona offers no evidence that it even *read* the Hartford Policy when Ashley purchased it, let alone what it expected the Hartford Policy to mean. It's argument now, 9 years later, that it can ignore the plain text of the Hartford Policy is neither objectively reasonable nor an "expectation."

Regardless, Carson Madrona misunderstands the reasonable expectations doctrine. The doctrine "does not allow coverage for insureds who fail to read or to understand their policies despite clear policy language." Karen K. Shinevar, *Reasonable Expectations in Insurance Contracts*,

13 U. Mich. J. L. Reform 603, 619 (1980).[6] Instead, under California law, the doctrine is a method of resolving ambiguity in an insurance policy. *Grange Ins. Association v. Lintott* (N.D. Cal. 2015) 77 F. Supp. 3d 926, 934. For the reasons above, there is no ambiguity to resolve here, so the doctrine is irrelevant.

*Seventh* and last, Liberty asserts in one sentence that Hartford has waived its rights under the Blanket Endorsement. "Waiver is the intentional relinquishment of a known right after full knowledge of the facts and depends upon the intention of one party only [here, Hartford]." *Oakland Raiders v. Oakland-Alameda County. Coliseum, Inc.* (2006) 144 Cal. App. 4th 1175, 1189. To support a waiver theory at summary judgment, Liberty must point to "clear and convincing evidence that does not leave the matter to speculation," because "doubtful cases will be decided against a waiver." *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.* (1994) 30 Cal. App. 4th 54, 60. Liberty offers no evidence that Hartford intended to waive its rights under the Blanket Endorsement. The two letters on which it relies were "subject to a full reservation of … Hartford's rights to deny or limit coverage, for the reasons explained in this letter, or for any other reason, based upon the terms of the policies and applicable law." ECF No. 64-11 at 8; *see* ECF No. 64-12 at 5 ("Hartford is not waiving any other defenses to or limitations on coverage"). Further, Liberty and Carson Madrona were on notice, for years, that Hartford potentially disputed whether it owed coverage to Carson Madrona. Cross-Motion (ECF No. 67) at 9–10. This is nothing like Liberty's only case, *Canadian Ins. v. Rusty's Island Chip Co.* (1995) 36 Cal. App. 4th 491, in which the insurer conceded waiver in the trial court and made

---

[6] https://repository.law.umich.edu/cgi/viewcontent.cgi?article=2145&context=mjlr

new, unpersuasive arguments on appeal. *See* ECF No. 69 at 13. Here, Hartford has consistently

protected its rights under the Hartford Policy against waiver.

In sum, none of Carson Madrona's or Liberty's arguments for ignoring the plain text of

the Hartford Policy apply here. The Hartford Policy makes the Blanket Endorsement the sole

source of Carson Madrona's additional-insured status. Applying the Blanket Endorsement,

coverage under the Hartford Policy applies only to liability for injuries "caused, in whole or in

part," by Ashley. ECF No. 64-10 at 59.

## II.    Under the Blanket Endorsement, Hartford has no duty to indemnify Carson Madrona.

Under the Blanket Endorsement, Carson Madrona is entitled to coverage for the *Perez*

settlement only if Perez's injuries were "caused, in whole or in part," by Ashley. ECF No. 64-10

at 59. Carson Madrona has offered no evidence supporting its burden to show this causal

connection, so Hartford is entitled to summary judgment on indemnity.

A jury found that Ashley was a 0% substantial factor of Perez's injuries. That means

Ashley was not a "legal cause" of the injuries. *Espinosa v. Little Co. of Mary Hosp.* (1995) 31 Cal.

App. 4th 1304, 1317–1318. And based on the jury instructions, only an unreasonable person would

have considered Ashley to have contributed to Perez's harm. ECF No. 68-3, Tr. 14147 (July 6,

2023). Contrary to Carson Madrona's summary assertion that "Perez's injuries indisputably

were caused in whole or in part" by Ashley. ECF No. 70 at 11, the jury found that Perez's injuries

were not caused in whole (100% substantial factor) or in part (1%–99% substantial factor) by

Ashley.

Carson Madrona tries two ways to wriggle out from beneath the jury verdict. *First*, relying

exclusively on foreign jurisprudence, it argues that "caused by" means "arises from." ECF

No. 70 at 13–14. But under California law, "arises out of" coverage is fundamentally different than "caused by" coverage. "Arises out of" "connotes only a minimal causal connection *or incidental relationship*." *St. Paul Ins. v. Am. Dynasty* (2002) 101 Cal. App. 4th 1038, 1051 (emphasis added). Cases interpreting the phrase "arises out of" are inapt, because they do not tell us anything about the meaning of the phrase "caused by."

*Second*, Carson Madrona hypothesizes that the "caused by" requirement could be fulfilled by some non-negligent conduct of Perez which might have caused his injuries, noting that the jury only considered negligent causes. ECF No. 70 at 18–19. This argument presupposes that Perez was "acting on [Ashley's] behalf," which is incorrect. *See* Cross-Motion (ECF No. 67) at 17–18. If anything, Perez was acting on Carson Madrona's behalf, as Carson Madrona had designated him to satisfy Carson Madrona's duty to respond to electrical concerns. ACE's Motion (ECF No. 68) at 17–18. At any rate, the Blanket Endorsement limits Carson Madrona's coverage to "liability … caused, in whole or in part," by Ashley. ECF No. 64-10 at 59. Non-negligent conduct cannot have caused *liability*, because every theory of liability in the underlying action depended on a showing of negligence.[7]

Liberty makes a similar argument from *Foster Poultry Farms v. Contractors Bonding and Ins.* (E.D. Cal. 2022) 562 F. Supp. 3d 1152. In *Foster Farms* the underlying plaintiff could not sue his employer, Try-Us Transportation, because of California's workers' compensation bar. 562 F. Supp. 3d at 1161. Instead, he sued Foster Farms, the company that Try-Us was working for

---

[7] Carson Madrona also makes several arguments based on its belief that Hartford's position would limit additional insured coverage to vicarious liability. ECF No. 70 at 11, 13–17. Hartford has never advanced such a position. Had Perez's injuries been caused in part by Ashley's negligence, such that the jury allocated, say, a 10% substantial factor to Ashley, then Ashley and Carson Madrona would each be *directly* liable to Perez—there would be no *vicarious* liability.

under an independent contractor agreement. *Id.* at 1155. Foster Farms sought insurance coverage as an additional insured under Try-Us's insurance policy, which required that the injuries be "caused by [Try-Us's] negligence." *Id.* The court found that there was a *potential for* coverage, and thus a duty to *defend*, because Foster Farms's own affirmative defenses asserted that Try-Us's negligence caused the plaintiff's injuries. *Id.* at 1161. But *Foster Farms* tells us nothing about the duty to *indemnify*. Here, just like in *Foster Farms*, the parties to the underlying litigation all alleged that the others were at fault. But here, unlike in *Foster Farms*, a jury has resolved those allegations.

Liberty also tries to avoid the text of the Blanket Endorsement altogether, arguing from a handful of cases that other similar insurance policies usually cover landlords. ECF No. 69 at 11–17. In each case, the insurance policy provided fundamentally different coverage that did not depend on whether the named insured *caused* the injuries:

- *Hartford Cas. Ins. v. Travelers Indem.* (2003) 110 Cal. App. 4th 710, 714 (additional insured coverage "only *with respect to* your operations, 'your work' or facilities owned or used by you" (emphasis added));

- *Acceptance Ins. v. Syufy Enterprises*, 69 Cal. App. 4th 321, 324 (Cal. Ct. App. 1999) (additional insured coverage "only with respect to liability *arising out of* 'your work' for that insured by or for you" (emphasis added)); and

- *Nat'l Fire Ins. of Hartford v. Fed. Ins.*, 843 F. Supp. 2d 1011, 1014-15 (N.D. Cal. 2012) (additional insured coverage only "with respect to liability *arising out of* the ownership, maintenance or use of that specific part of the premises leased to [the restaurant]").

Other insurance policies with other text do not change the meaning of the Hartford Policy.

But Liberty's primary response to the jury verdict seems to be that the jury got it wrong. Liberty accuses Hartford of "conveniently omit[ting]" that the electrical panel that injured Perez supplies power to (among other things) the Ashley warehouse. ECF No. 69 at 18. That fact did

notthat Ashley caused Perez's injuries. Other facts proved more persuasive: the electrical panel was in a common area outside the Ashley premises and was controlled exclusively by Carson Madrona; Carson Madrona had the sole responsibility for maintaining that electrical panel, including ensuring that load-appropriate safety switches were used; Carson Madrona had failed for decades to keep the electrical panel up to code; and more. ECF No. 68 at 9-10; ECF No. 64-12. The resulting judgment (and the settlement of that judgment) are not for bodily injury caused, in whole or in part, by Ashley.

Neither Carson Madrona nor Liberty can point to any evidence that Ashley caused Perez's injuries. Thus, there is no genuine dispute of material fact, and Hartford is entitled to judgment as a matter of law declaring that Hartford has no duty to indemnify Carson Madrona against its settlement with the Perezes.

## III. Ohio Security's insurance is primary, and Ohio Security's extensive reliance on *Rossmoor* is severely misplaced.

California law creates a simple rule for organizing overlapping insurance. If the insurance text of the policies establishes a reconcilable priority of coverage, the court enforces the text. If not, the court declares the policies' other-insurance provisions repugnant, so that the insurance policies share coverage equally. *Century Sur. Co. v. United Pac. Ins.* (2003) 109 Cal. App. 4th 1246, 1260. "The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." *Travelers Cas. & Sur. v. Century Sur.* (2004) 118 Cal. 4th 1156, 1160.

Under this rule, the Ohio Security policy is primary. The Hartford Policy says that it is excess over all other available insurance. ECF No. 64-10 at 97. The Ohio Security says that it is ordinarily primary unless there is other "primary insurance available to" Carson Madrona. ECF

No. 64-5 at 29. Here, there was no other primary insurance available to Carson Madrona, because the Hartford Policy was excess.

Rather than engage with this argument, Liberty argues at length from deleted policy language and an inapt case. ECF No. 69 at 20–22 (discussing *Rossmoor Sanitation v. Pylon, Inc.* (1975) 13 Cal. 3d 622). *Rossmoor* was a subrogation case based on an indemnity agreement between two insureds, not a priority-of-coverage case. Indeed, the whole point of *Rossmoor* is that insurance companies may not rely on priority-of-coverage arguments to resolve coverage for subrogated *contract* claims.

This case is fundamentally different than *Rossmoor* because this case involves priority of coverage and contribution between two insurers, not subrogation. Liberty *has not* sued Ashley; it has instead sought declarations about the priority of Carson Madrona's insurance coverage, which requires an ordinary repugnance analysis. *Century*, 109 Cal. App. 4th at 1260. If Ohio Security *had* sued Ashley asserting Carson Madrona's contractual indemnity rights, the lawsuit would have failed. Carson Madrona has no rights against Ashley for Ohio Security to subrogate, because Carson Madrona and Ashley terminated their Lease Agreement, releasing any claims (including contractual indemnity claims) against one another.[8] Lease Termination (ECF No. 63-16) at 4. Indeed, the "direct claims between the carriers" that Liberty says exist in *Rossmoor*, ECF No. 69 at 20, were *rejected* by the *Rossmoor* court, instead holding that priority of coverage did not affect contractual indemnity rights. *Rossmoor*, 13 Cal. 3d at 634.

---

[8] Hartford has consistently argued that because the Lease Agreement was terminated, Liberty has no subrogated claim against Ashley that could itself be covered under the Hartford Policy. ECF No. 67 at 8 & n.8, 19, 22. Carson Madrona's argument that all such positions have been abandoned is mistaken. *Cf.* ECF No. 70 at 19-20.

Ohio Security is thus wrong when it argues that *Rossmoor* stands more generally for the idea that the Lease Agreement should control the priority-of-coverage analysis. *Travelers Cas. & Sur. Co. v. American Equity Ins. Co.* (2001) 93 Cal. App. 4th 1142, 1156 ("*Rossmoor* is distinguishable as an action primarily between two insureds on a contract for indemnity between the two. … Here, the action is between two insurers."). The language of the insurance policies controls the priority-of-coverage analysis. States have devised many ways to resolve competing other-insurance clauses, but they focus on the insurance policies, not some other document. Alan D. Windt, 2 *Insurance Claims & Disputes* § 7:3 (6th ed. March 2024), at https://tinyurl.com/WindtOtherIns.[9]

## IV.    Carson Madrona and Liberty concede that Hartford can owe interest on the judgment only if it owes some of the judgment.

No party has responded to Hartford's arguments about supplementary payments. *See* Cross-Motion (ECF No. 67) at 25–27. If Hartford owes none of the judgment, it can owe no prejudgment or post-judgment interest. *Id.* at 26 & n.23.

Applying these undisputed arguments, this Court should hold that: (1) because Hartford has no duty to indemnify Carson Madrona, it does not owe any interest; and (2) because Hartford

---

[9] If the priority of coverage were different and Hartford had a duty to defend Carson Madrona through appeal, then Hartford satisfied that duty. Liberty offers no evidence that Hartford ever withdrew its defense. Cross-Motion (ECF No. 67) at 24–25. In its reply, Liberty contends that Hartford's letters contesting coverage count as withdrawals. ECF No. 60 at 5. But Hartford's letters arguing that Liberty owed a defense obligation (and why Hartford did not) never said Hartford would cease defending Carson Madrona or withdraw its defense, and Liberty confirmed in writing that it understood Hartford was continuing to defend. ECF No. 67-6.

is excess of Liberty, Hartford owes no appellate defense fees or awarded costs, and Liberty owes

Hartford reimbursement for the cost of defending Carson Madrona through trial.[10]

## V.    Conclusion

For these reasons and the reasons that accompanied Hartford's notice of motion, this

Court should grant summary judgment in its favor as described in that notice of motion and deny

Liberty's and Carson Madrona's motions for summary judgment.

*/s/ Ezra S. Gollogly*

Gary R. Selvin (112030)
Selvin Wraith LLP
6250 Claremont Avenue, Suite 200
Oakland, CA 94618
Telephone No.: 510.874.1814
Facsimile No.: 510.465.8976
gselvin@selvinwraith.com

Ezra S. Gollogly
    admitted pro hac vice
Joseph Dudek
    pro hac vice pending
Kramon & Graham, P.A.
7500 East Pratt St., Suite 1100
Baltimore, MD 21202
Telephone No.: 410.752.6030
Facsimile No.: 410.361.8233
egollogly@kg-law.com
jdudek@kg-law.com

---

[10] If contrary to the analysis above, any defense fees or costs were determined to fall within Hartford's duty to defend Carson Madrona they must be halved twice—once to split liability between Carson Madrona and SanOak, then again to allocate Carson Madrona's share between Hartford and Ohio Security. *Id.* at 26–28.