UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CARSON MADRONA COMPANY, LLC, et al.,<br><br>　　　　　Defendants. | Case No. 23-cv-06259-VC<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 63, 64, 67, 68 |

Hartford's and Ace's motions for summary judgment are granted in part and denied in part, and Carson Madrona's and the Liberty parties' are denied. This order assumes the reader's familiarity with the facts, governing legal standards, and arguments made by the parties.

1. The endorsement, not the coverage form, governs coverage under the Hartford policy. The coverage form says that it does not apply to any entity that is made an insured by an endorsement. The blanket endorsement to the Hartford policy says that it applies "where required by written contract or agreement." So because the lease required Ashley to get commercial general liability insurance and add Carson Madrona as an additional insured, Carson Madrona is an insured under the endorsement (and not the coverage form). Even if the coverage form didn't expressly say that endorsements applied over it, under California law, the language of an "endorsement prevails over the general language contained in the body of the policy if the language of the endorsement is free from ambiguity." *Jane D. v. Ordinary Mutual*, 32 Cal. App. 4th 643, 651 (1995).

None of Carson Madrona's or Liberty's counterarguments succeed. There is no reason to think that the endorsement needed to identify Carson Madrona by name: The endorsement says that the declarations will include any information required to complete the endorsement's coverage schedule if that information is not shown. But the endorsement does show all the information necessary to complete its coverage schedule because it says it applies wherever "required by written contract or agreement." The rule that contractual ambiguities should be resolved against the drafter doesn't apply because the endorsement isn't ambiguous. The rule that specific provisions govern over general ones doesn't mean that the coverage form applies because the coverage form—which Carson Madrona and Liberty say is the more specific provision—says it doesn't apply where an endorsement does. Moreover, in insurance contracts, that rule means that (as noted above) unambiguous endorsements govern over the body of the policy. Applying the endorsement doesn't turn the coverage form into surplusage because, again, the coverage form expressly says that it doesn't apply when an endorsement does. Finally, Hartford's letters do not change this because they also include the language about the endorsement and otherwise reserve Hartford's right to deny coverage based on the policy terms.

2. Under the endorsement, Hartford had no duty to indemnify Carson Madrona. The better read of the endorsement's coverage of liability "caused, in whole or in part," by Ashley's acts or omissions is that the policy only provides for coverage where Ashley was a proximate cause of the loss. *See, e.g.*, *Burlington Insurance Co. v. NYC Transit Authority*, 79 N.E.3d 477, 482–84 (N.Y. 2017); *Dale Corp. v. Cumberland Mutual Fire Insurance Co.*, 2010 WL 4909600, at *4–7 (E.D. Pa. Nov. 30, 2010). The endorsement's reference to "liability" indicates a concern with legal causation. And to interpret the language as providing for coverage wherever Ashley was a but-for cause in a long chain of events that caused injury would create absurd results. Moreover, the "history and purpose of" the policy—which "may properly be used" as "an aid to discern the meaning of" disputed policy language—confirms this reading. *MacKinnon v. Truck Insurance Exchange*, 31 Cal. 4th 635, 653 (2003). That history indicates that the "caused, in whole or in part" language was adopted to narrow coverage and require something more than

2

but-for causation. *See Dale*, 2010 WL 4909600, at *5–6.

Based on the jury finding that Ashley was a zero percent substantial factor in causing Perez's injuries, the loss was not "caused, in whole or in part," by Ashley. So the loss was not covered under the endorsement. And because Hartford had no duty to indemnify Carson Madrona, it also did not owe any post-judgment interest (under the terms of the Hartford policy).

But Hartford and Ace may still have had a duty to defend Carson Madrona on appeal. Under California law, the duty to defend applies to claims that are "potentially covered," and only ends when "the action is concluded" or when it is evident that "the potential for coverage which previously appeared cannot possibly materialize." *Scottsdale Insurance Co. v. MV Transportation*, 36 Cal. 4th 643, 657 (2005). Because Carson Madrona's appeal could have resulted in a new trial—which could have resulted in a jury finding that Ashley was a proximate cause of the loss—there was still some potential for coverage. So while it's appropriate to grant summary judgment on the issue of Hartford's and Ace's duty to indemnify, it's not possible to do so regarding their duty to defend.[1]

3. The Ohio Security policy applies before the Hartford policy. The Ohio policy says that it is primary except that it is excess over other applicable primary policies. The Hartford policy says that it is excess over other policies except when those policies are "purchased specifically to apply in excess of" it. Because the Ohio policy was not purchased specifically to apply in excess of the Hartford policy, the Hartford policy is not primary here, which means that the Ohio policy is.[2]

---

[1] It's not clear from the parties' presentations whether Hartford and Ace satisfied any duty to defend they might still have had. But the parties indicated at the hearing that this issue would be mooted by this order's ruling on priority of coverage. So it's unnecessary to address the issue further in this order.

[2] At the hearing, Liberty's lawyer argued that the Hartford policy was primary because that was the "nature of the policy." But under California law, "if the meaning a layperson would ascribe to the language of a contract of insurance is clear and unambiguous," that meaning controls. *Grange Insurance Association v. Lintott*, 77 F. Supp. 3d 926, 934 (N.D. Cal. 2015). An insurance expert might understand the Hartford policy to be primary by its nature. But a layperson would interpret its clear statement that it is excess (except when another policy is purchased specifically to apply in excess of it) to mean that it is excess (except when another policy is purchased specifically to apply in excess of it).

3

The American Fire policy applies before the Ace policy. The American Fire policy says that it will pay the amount of loss in excess of the "Underlying Limits of Insurance." The "Underlying Limits of Insurance" is defined as the limits of "all applicable 'underlying insurance' stated in Item 5 of the declarations." And Item 5 of the declarations lists only the Ohio policy. So the American Fire policy attaches upon exhaustion of the Ohio policy. The Ace policy, by contrast, only pays loss in excess of the "retained limit," which is defined as the "total applicable limits of 'underlying insurance' and any applicable limit of 'other insurance.'" And "other insurance" is defined to include any insurance policy "providing coverage for damages covered in whole or in part by this policy" (unless purchased specifically to be in excess of the Ace policy). So the Ace policy doesn't attach until all other applicable insurance is exhausted—meaning that it wouldn't apply until after the American Fire policy is exhausted.

Liberty's counterarguments fail. Even assuming that Liberty did not forfeit this argument by not raising it in its briefs, the other insurance clauses in the Hartford and Ace policies are not disfavored escape clauses. These clauses do not say that the insurers are not liable for any loss covered by other insurance, only that the policies are excess to that other insurance. *See Underwriters of Interest Subscribing to Policy Number A15274001 v. ProBuilders Specialty Insurance Co.*, 241 Cal. App. 4th 721, 729 n.5 (2015).

Nor is Liberty right that Ashley's lease determines priority of coverage. "There is nothing that can make any of the policies at issue subject to the contractual obligations to which these carriers were not parties." *Reliance National Indemnity Co. v. General Star Indemnity Co.*, 72 Cal. App. 4th 1063, 1072 (1999). Unlike *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, this case does not involve a subrogated indemnity claim, and not all parties to the indemnity agreement are present. *See* 13 Cal. 3d 622, 627–34 (1975); *see also Reliance*, 72 Cal. App. 4th at 1079–83 (distinguishing *Rossmoor*). It therefore "looks more like the typical dispute between insurance carriers, which should be governed by general principles governing the interpretation and enforcement of 'other insurance' clauses between insurers." *Travelers Casualty & Surety Co. v. American Equity Insurance Co.*, 93 Cal. App. 4th 1142, 1152–58 (2001).

* * *

It wasn't entirely clear from the parties' presentations what claims and defenses this order resolves. A case management conference is set for April 25 to clarify that issue as necessary and to set a schedule for the rest of the case. A case management statement with a proposed schedule is due April 18. If the parties are able to resolve the remaining issues informally, they can file a stipulated dismissal before that, and the case management conference will be vacated.

**IT IS SO ORDERED.**

Dated: March 20, 2025

VINCE CHHABRIA
United States District Judge